# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **AARON CLARK,** | Case No. 2:08CV982 |
|         Plaintiff, | |
| v. | |
| **THE WALT DISNEY COMPANY; JAKKS PACIFIC, INC.; PLAY ALONG TOYS; KB TOYS; AMAZON.COM; and TOYS 'R US,** | |
|         Defendants. | |

## MOTION TO DISMISS

## (FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6))

LACA_2082628.1

Dockets.Justia.com

Defendants JAKKS Pacific, Inc., Play Along Toys, and Toys "R" Us respectfully submit this motion seeking an Order dismissing all of the claims asserted against them in the above-entitled action pursuant to Federal Rule of Civil Procedure 12(b)(6).  The basis for this motion is set forth in the accompanying Memorandum of Law.

Dated:  January 2, 2008

Respectfully submitted,

By:  /s/ *Michael C. Lueder*
Michael C. Lueder
Foley & Lardner LLP
777 E. Wisconsin Ave.
Milwaukee, WE 53202
Tel:  (414) 297-4900
Trial Attorney

/s/ *Grant E. Kinsel*
Grant Kinsel
(Pro Hac Vice)
Foley & Lardner LLP
555 South Flower St.,  Suite 3500
Los Angeles, CA  90071
Tel: (213) 972-4500
*Attorneys for JAKKS Pacific, Inc., Play Along Toys, KB Toys, and Toys "R" Us, The Walt Disney Company*

LACA_2082628.1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................. 1

II.   FACTS ................................................................................................................. 2
      A.    The '272 Patent ...................................................................................... 2
      B.    The Accused Posters .............................................................................. 3

III.  ARGUMENT ........................................................................................................ 4
      A.    Standards for Dismissal .......................................................................... 4
      B.    Clark Fails To Allege Facts Sufficient To Constitute A Claim For Patent
            Infringement ............................................................................................ 5
            1.    The Law Of Patent Infringement ................................................. 5
            2.    Properly Construed, Claims 1 And 5 Require A Housing Prepared
                  With The Art That Will Be Covered When The Housing Unit Is
                  Placed On The Poster ................................................................... 7
            3.    The Accused Posters Cannot Infringe The '272 Patent As A Matter
                  Of Law ......................................................................................... 11
      C.    Clark Fails To Allege Facts Sufficient To Constitute A Claim For False
            Advertising .............................................................................................. 12
            1.    A False Advertising Claim Requires False Statements, Which
                  Clark Has Not Alleged ................................................................. 12
      D.    Clark Fails To Allege Facts Sufficient To Constitute A Cause Of Action
            Under The Ohio Deceptive Trade Practices Act ..................................... 14

IV.   CONCLUSION ................................................................................................... 15

LACA_2082628.1

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619 (6th Cir. 2002) .................................................................................................................14

*American Council of Certified Podiatric Physicians and Surgeons v. American Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606 (6th Cir. 1999) ............................................11

*Bradt v. Kelsey-Hayes Wheel Corporation*, 14 F.Supp. 709 (E.D. Mich. 1936) ............................7

*Doe v. SexSearch.com*, 502 F.Supp.2d 719 (N.D. Ohio 2007) .........................................9

*Dow Chem Co. v. Sumitomo Chem. Co.*, 341 F.3d 1370 (Fed. Cir. 2001) ......................................6

*Gazette v. City of Pontiac*, 41 F.3d 1061 (6th Cir. 1994) ..................................................5

*Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298 (6th Cir. 2001).........11

*Insituform Technologies v. Cat Contracting, Inc.*, 161 F.3d 688 (Fed. Cir. 1998) .........................5

*Inverness Med. Switz. Gmbh v. Princeton Biomeditech Corp.*, 309 F.3d 1365 (Fed. Cir. 2002) .................................................................................................................6

*Kahn v. Gen. Motors, Corp.*, 135 F.3d 1472 (Fed. Cir. 1998) .........................................5

*Kegel Co. v. AMF Bowling, Inc.*, 127 F.3d 1420 (Fed. Cir. 1997) ...................................5

*Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716 (6th Cir. 1996).................................5

*Mountain Top Beverage Group, Inc. v. Wildlife Brewing N.B., Inc.*, 338 F.Supp.2d 837 (S.D. Ohio 2004) ..................................................................................................14

*Murphy v. Sofamor Danek Gp., Inc.*, 123 F.3d 394 (6th Cir. 1997) .................................5

*Mylan Laboratories, Incorporated v. Matkari*, 7 F.3d 1130 (4th Cir. 1993)................................13

*Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ................................4

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc) ...................................6

*Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434 (6th Cir. 1988) ....................................4

*Tex Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002)......................................6

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) .........................................5, 6

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997) ...........................................5

ii

*Windsor v. The Tennessean*, 719 F.2d 155 (6th Cir. 1983) ...............................................4

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

15 U.S.C. § 1125(a) ....................................................................................................11

Fed. R. Civ. Proc. 12(b)(6) ...................................................................................1, 4, 5

LACA_2082628.1

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Defendants JAKKS Pacific, Inc., Play Along Toys (collectively "JAKKS") and Toys "R" Us ("TRU") (collectively referred to as "Defendants")[1] respectfully submit this memorandum of law in support of their Motion to Dismiss all claims asserted by Plaintiff Aaron Clark ("Clark") in the above entitled action pursuant to Fed. R. Civ. Proc. 12(b)(6).

## I.  INTRODUCTION

Clark asserts a claim for patent infringement against products that, under no possible set of facts, can infringe.  He also asserts a claim for false advertising under the Lanham Act and the Ohio Deceptive Trade Practices Act without alleging any advertising, let along any *false* advertising.  Simply put, all three claims for relief are fatally detective and fail as a matter of law.

As to the patent claim, Clark alleges that two posters manufactured by JAKKS (the "Accused Posters") infringe U.S. Patent No. 5,548,272 (the "'272 patent").  The '272 patent discloses a "talking poster" comprised of a poster, a housing unit, a speech circuit, and a trigger. The concept is that the housing unit for the speech device can be camouflaged by covering the housing unit with art from the underlying poster.  As disclosed by the '272 patent, when the housing unit is attached to the poster, the housing looks like the art on that portion of the poster that is covered by the housing, thereby causing the housing to blend into the underlying poster. The entire point of the '272 patent is to disclose a speaker housing that is virtually imperceptible to the viewer.

---

[1]     Not all defendants in this action are required to respond to the Complaint at this time.  The Walt Disney Company has not yet been served.  Amazon, Inc. has been dismissed, and KB Toys, Inc. has filed for bankruptcy protection and is therefore protected by an automatic stay.  (*See*, Advice of Bankruptcy, Docket No. 10).

LACA_2082628.1

The Accused Posters that Clark claims infringe the '272 patent do not have a housing unit that meets this limitation. As the Court will see, the housing units for the Accused Posters are simply placed over the artwork and do not contain any type of matching art. The Accused Posters, therefore, do not—and cannot—infringe as a matter of law. Moreover, because Clark attached images of the Accused Posters to his Complaint (*see,* Exs. A and B to the Complaint), and because the failure to meet this limitation is apparent from the images themselves, this Court can make its non-infringement determination on this Motion to Dismiss based on the four corners of the Complaint.

Clark's claims for false advertising under the Lanham Act and the Ohio Deceptive Trade Practices Act are also defective. These claims lack the essential element necessary to allege false advertising: A false or misleading statement or description of fact used in advertising. Because Clark has not alleged any false or misleading statements or descriptions of fact, the Court must also grant Defendants' motion to dismiss as to the Second and Third Claims for Relief.

## II.     FACTS

### A.     The '272 Patent

Clark is the owner and inventor of the '272 patent. The '272 patent,[2] entitled *Talking Poster* issued on August 20, 1996. The '272 patent includes five claims—one independent apparatus claim, three dependent apparatus claims, and one independent method claim. Claim 1 states,

> 1. An assembly, comprising:
>
> a poster comprised of a first material, said poster having a first surface, said first surface including poster art thereon;

---

[2]     The '272 patent is attached as Ex. 1 to the Declaration of Grant Kinsel (the "Kinsel Decl."). The Court may take judicial notice of the '272 patent because it was attached to the Complaint as an Exhibit. *See, Bovee v. Coopers Cybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001).

LACA_2082628.1

a housing comprised of a second material, said housing attached to a portion of said first surface of said poster; a speaker concealed between said housing and said first surface of said poster;

an electric circuit including a sound production component, operatively connected to said speaker and concealed between said housing and said first surface of said poster;

a trigger attached to said electric circuit and concealed within said housing, said trigger adapted to be actuated through said housing to produce said sound;

wherein a surface of said housing is prepared with ***a matching art*** which is ***substantially the same*** as that [area] of said poster art which appears on said portion of said poster that said ***housing covers*** when said housing is attached to said poster, such that ***said housing artistically blends*** in with the surrounding poster art that is not covered by said housing.

('272 patent at 2:57-3:13 [emphasis added].)

The key limitation are in the last element and are identical in independent Claims 1 and 5. These limitations, requires that the housing surface be prepared with art that matches the portion of the poster art over which the housing is placed so that the housing "artistically blends in" with the surrounding poster. These limitations are not directed to a housing that merely looks similar to or that has complementary colors with the underlying poster. Rather, these limitations were intended to ensure that the speaker housing is covered with the very ***same*** art that will be covered-up when the housing unit is placed onto the poster.

### B. The Accused Posters

Images of the Accused Posters are attached as Exhibits "A" and "B" to the Complaint (see, Complaint at ¶¶ 8 and 9) and are reproduced below.[3] JAKKS is a leading manufacturer of

---

[3] The originals of these images are attached to the Kinsel Decl. as Exs. 2 and 3. As stated in the Kinsel Decl., counsel for Clark provided these color copies of Exhibits A and B from the Complaint. The Court may take judicial notice that these are the products accused of infringement because they were attached as Exhibits to the Complaint. *See, Bovee,* 272 F.3d at 360.

LACA_2082628.1

toys. JAKKS manufactures the Accused Posters. TRU is a toy retailer. According to the Complaint, Clark purchased at least one of the Accused Posters from TRU.

 

As the Court can see, the housing for the speaker units on the Accused Posters (the blue objects at the bottom of the posters) are not covered with "matching art" that is "substantially the same" as the underlying art so that the speakers "artistically blend" with the underlying art. To the contrary, the speaker units are placed *over* the top of the poster art, covering-up the underlying art, directly contrary to the teaching of the '272 patent.

## III. ARGUMENT

### A. Standards for Dismissal

A motion to dismiss under Rule 12(b)(6) is designed to test "whether a cognizable claim has been pleaded in the complaint." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). In considering such a motion, the court is limited to evaluating whether a plaintiff's complaint, along with materials properly subject to judicial notice, sets forth allegations sufficient to make out the elements of a cause of action. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983). Dismissal under Rule 12(b)(6) streamlines litigation by

4

"dispensing with needless discovery and fact-finding" on claims that are legally untenable in the first place. *See Neitzke v. Williams*, 490 U.S. 319, 326-27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

All factual allegations made by a plaintiff are deemed admitted and ambiguous allegations must be construed in his favor. *Murphy v. Sofamor Danek Gp., Inc.*, 123 F.3d 394, 400 (6th Cir. 1997). A complaint should be dismissed under Rule 12(b)(6) where "it appears beyond doubt that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996) (*quoting Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). While the complaint need not specify every detail of a plaintiff's claim, it must give the defendant "'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994) (*quoting Conley*, 355 U.S. at 47).

**B.      Clark Fails To Allege Facts Sufficient To Constitute A Claim For Patent Infringement**

### *1.      The Law Of Patent Infringement*

The patentee bears the burden of pleading and proving infringement. *Kegel Co. v. AMF Bowling, Inc.*, 127 F.3d 1420, 1425 (Fed. Cir. 1997). Patent infringement requires that an accused product have ***all*** the same elements, or substantial equivalents thereof, present in the claim of the patent. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997). If ***even one element***, or limitation, is not present, the accused product does not, as a matter of law, literally infringe. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581 (Fed. Cir. 1996).

A two-step analysis is performed to determine whether a patent has been infringed. *CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co.*, KG, 224 F.3d 1308 (Fed. Cir. 2000). "First, the claims must be correctly construed to determine the scope of the claims. Second, the claims

5

must be compared to the accused device" to determine if the limitations are met.  *Kahn v. Gen. Motors, Corp.*, 135 F.3d 1472, 1476 (Fed. Cir. 1998).

The first step, claim construction, is a question of law for the Court.  *Insituform Technologies v. Cat Contracting, Inc.*, 161 F.3d 688, 692 (Fed. Cir. 1998).  Generally, the terms of the claim are given their ordinary meaning, unless it appears that the inventor used them differently.  *Vitronics*, 90 F.3d at 1582.  Where, as here, the claim terms are ordinary, non-technical terms, claim construction consists of no more than application of the common, ordinary meaning of the terms.  "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc).

In determining the ordinary and customary meaning of claim terms, the court relies on intrinsic evidence.  First, the court looks to the claim language.  *See Dow Chem Co. v. Sumitomo Chem. Co.*, 341 F.3d 1370, 1372 (Fed. Cir. 2001); *Vitronics Corp.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  Second, the court will turn to the specification, which, is the "single best guide to the meaning of a disputed term."  *Phillips*, 415 F.3d at 1315.  Further, if provided, the court will look to the prosecution history.  *Id.*

Additionally dictionaries, a special form of extrinsic evidence, are also useful.  *Tex Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1203 (Fed. Cir. 2002); *Inverness Med. Switz. Gmbh v. Princeton Biomeditech Corp.*, 309 F.3d 1365, 1372 (Fed. Cir. 2002).  In *Phillips*, the Federal Circuit affirmed that courts may "consult dictionaries and technical treatises 'at any time to better understand claim terms.'"  *Phillips*, 415 F.3d at 1321 (*quoting Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1584 n.6 (Fed. Cir. 1996)).

6

After construing the terms of the claims according to the above rules of construction, the court then proceeds to the second step—comparing the construed limitations to the accused products. While generally a question of fact, comparison of the construed limitations to the accused products may be done on a motion to dismiss where—as here—the accused products are properly before the court. "The law is well established that where the alleged infringing device or devices are before the court . . . the question of infringement may be determined upon a motion to dismiss." *Bradt v. Kelsey-Hayes Wheel Corporation*, 14 F.Supp. 709, 709 (E.D. Mich. 1936). "If the defendant tenders to the court the things it is making, and the plaintiff agrees that they are the things which are relied upon as being the infringing structures, then the court does have a chance to determine the issue." *Id.* at 710.

2. ***Properly Construed, Claims 1 And 5 Require A Housing Prepared With The Art That Will Be Covered When The Housing Unit Is Placed On The Poster***

Claims 1 and 5 have identical language with respect to the housing unit surface. Claim 1 states: "wherein a surface of said housing is prepared with a matching art which is substantially the same as that [area] of said poster art which appears on said portion of said poster that said housing covers when said housing is attached to said poster, such that said housing artistically blends in with the surrounding poster art that is not covered by said housing." ('272 patent, cls. 1 & 5.) As is clear from the plain ordinary meaning of these terms, the housing surface must be prepared so that it matches the art that is covered by the housing. The claim language compels this result when it requires the housing surface be prepared with "matching art" that is "substantially the same" as the area of the poster art that the "housing covers" when it is attached to the poster. Put differently, the claims require that the housing surface "match" with and be "substantially the same" as the art that the housing covers. The claims describe the result of so

LACA_2082628.1

preparing the housing surface as causing the housing to "artistically blend[] in" with the poster. There simply is no other plausible meaning for these words.

The common dictionary definitions of the terms are also consistent with this reading. "Match" is defined as "[a] person or thing that is exactly like another; counterpart." *American Heritage Dictionary of the English Language*, ed. 1981, at p. 805.[4] "Blend" means to "combine or mix so as to render the constituent parts indistinguishable from one another." *Id.* at 140. Reading the two together, the housing surface must be prepared art that is exactly like the art over which the housing is placed so that the housing and poster become "indistinguishable from one another." This, after all, is exactly the purpose of the supposed invention of the '272 patent.

This meaning—that the housing surface must be prepared with art that matches the art over which the housing is placed—is also compelled by the specification. For instance, in discussing the preferred embodiment, the inventor described the preparation of the surface of the housing as follows: "When finished, the material piece [covering the housing] will artistically fit onto the poster, without any disruption in the poster artwork. In other words, the material piece will have the ***exact*** coloring and ***artwork*** on it, as if the material piece was not present." ('272 patent at 2:24-29 [emphasis added].) In describing the novelty of the alleged invention, the inventor states, "[t]he present invention is a novel method and apparatus for providing sound techniques under a material that ***incorporates*** the poster artwork into the material." ('272 patent at 1:18-20 [emphasis added].) The inventor further explains that the "material is painted with ***a portion of the artwork from the poster***." ('272 patent at 1:20-23 [emphasis added].) Further, the benefit of the invention is described as providing a "poster with the sound equipment without interfering with the artwork on the poster." ('272 patent at 1:58-60.)

---

[4]    Attached to the Kinsel Decl. as Ex. 4.  The Court may take judicial notice of these materials as they come from sources not reasonably subject to dispute. *F.R.E. 201*.

LACA_2082628.1

The figures also illustrate that the housing surface must be prepared with the art over which the housing is placed. For instance, in Fig. 1 the uneven lines 15 (highlighted in red) represent a continuation of the artwork on the underlying poster: "The uneven and broken lines 15 shown on the face of material piece 10 exemplify *portions of poster artwork*." ('272 patent at 1:66-2:11 [emphasis added].) Thus, it is not just that the housing surface be part of the same color scheme as the underlying poster. Rather, the surface must *include* the portions of the artwork over which the housing will be placed.





This is even more clearly shown in Fig. 4, to the right annotated in red and blue. As the specification describes Fig. 4: "Fig. 4 is a cutaway view of the present invention as applied to a poster. An outline of the material piece is shown in dashed lines at 32 to indicate that the material piece may not be visible on the poster except on close inspection." ('272 patent at 12-16.) As the figure shows, the artwork underlying the portion of the poster where the housing is placed is continued on the housing material so that the housing becomes part of the underlying artwork. Put differently, the material covering the housing must be prepared in such a way that it fits like a puzzle piece onto the underlying artwork.

9

LACA_2082628.1

The prosecution history further confirms this reading.[5] In the first office action on October 10, 1995, the examiner rejected all claims of the application on the grounds of obviousness.[6] The applicant responded on March 19, 1995, attempting to avoid the rejection. The applicant argued that his invention was not obvious in light of the cited art because unlike the cited art, the housing module of the invention "allows artwork to be placed on the blister pack . . . so that the electronic circuitry and sound emanating means under the housing is 'camouflaged' in the poster presentation."[7] The applicant went on to distinguish his invention by claiming that the housing "can be printed with artwork so as to visually blend in with the actual artwork of the poster, and ***effectively hide*** the sound module so as not to disturb or interrupt the visual flow of the poster."[8]

In January 1996, the examiner interviewed the applicant, and the examiner's notes of the interview further confirm that the surface of the housing must be prepared with the art over which the housing is to be placed. The examiner's notes reveal that she was prepared to grant the patent, provided the applicant amend the claims "to add limitations to the claim such that it emphasizes the blister pack is printed so that it blends in with the artwork at the area where the

---

[5]     The Court is entitled to take judicial notice of the entire prosecution history for the '272 patent because portions of the prosecution history were attached to the Complaint. Specifically, Exhibit H to the Complaint includes, not only the '272 patent as issued, but the original application, all claims of which were rejected by the PTO. *See, Doe v. SexSearch.com*, 502 F.Supp.2d 719, 728 (N.D. Ohio 2007).

[6]     *See,* Kinsel Decl. Ex. 5, at pp. 66-70.

[7]     *See,* Kinsel Decl. Ex. 5, at pp. 73-76. The "blister pack" referred to in the original application was subsequently removed from the claims and replaced by reference only to the surface of the housing. The examiner believed that the blister pack was not an inventive step, and this language was removed from the final version of the claims.

[8]     *See,* Kinsel Decl. Ex. 5, at p. 76 [emphasis added].

10

blister pack is attached to."[9]  Subsequently, the applicant filed an amendment with the language of Claims 1 and 5 quoted above.

### 3. The Accused Posters Cannot Infringe The '272 Patent As A Matter Of Law

Because Clark has proffered the Accused Posters by attaching their images to the Complaint, the Court has before it all that it needs to decide this motion.  Both independent claims (Claims 1 and 5) of the '272 patent require that the surface of the  housing for the sound element be prepared with the art that will be covered by the housing.  As is clear from the images of the Accused Posters above, the surface of the sound housing units on the Accused Posters is not prepared with the art over which they are placed.  To the contrary, the housing units are simply colored blue and placed over the underlying art.  Contrary to the teaching of the '272 patent, and far from fitting like a puzzle piece, the housing units in the Accused Posters are simply placed on top of the poster art, interrupting it and not "artistically blending" into it. They are not, in the inventor's words, "camouflaged," do not become "indistinguishable" from the underlying Poster Art, and do not "effectively hide" the sound module.

Because the facts as alleged by Clark, as a matter of law, cannot state a cause of action for patent infringement, the Court should grant Defendants' motion to dismiss.  Moreover, because the Accused Posters cannot infringe as a matter of law, the Motion to Dismiss should be granted without leave to amend.  This is not a mere failure to properly plead.  This is a substantive, fatal failure that requires dismissal of Clark's claim for relief for patent infringement.

---

[9] *See,* Kinsel Decl. Ex. 5, at p. 78.

**C.     Clark Fails To Allege Facts Sufficient To Constitute A Claim For False Advertising**

**1.     A False Advertising Claim Requires False Statements, Which Clark Has Not Alleged**

False advertising first and foremost requires that the plaintiff allege an advertisement that is false.  15 U.S.C. § 1125(a) prohibits the use in commerce of "any word, term, name, symbol or device, . . . or any false designation of origin, false or misleading description of fact."   In the Sixth Circuit, a plaintiff must plead and prove five separate elements to state a claim for false advertising including,

> (1) the defendant has made false or misleading ***statements of fact*** concerning his product or another's; (2) the statement actually or tends to deceive a substantial portion of the intended audience; (3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; (4) the advertisements were introduced into interstate commerce; and (5) there is some causal link between the challenged statements and harm to the plaintiff.

*Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298, 323 (6th Cir. 2001) (emphasis added); *see also, American Council of Certified Podiatric Physicians and Surgeons v. American Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999); *McCarthy On Trademarks*, § 27:24 (prima facie case require a plaintiff to plead and prove that the defendant, *inter alia,* "1.  Uses a false or misleading [¶] A. Description of fact or [¶]  B. Representation of Fact.")

Clark fails to allege any false or misleading descriptions or representations of fact.  Clark identifies nothing on the product, the packaging, or any other advertising that constitutes a false statement or description of fact.  Rather, Clark alleges that the "use" of the Accused Posters "suggest[s] to consumers that Plaintiff's '272 Patent in some way sponsors or approves Defendants' actions or services."   (Complaint at ¶ 62.)   But Clark proffers no allegations suggesting that Defendants' made any statements or representations that Clark—or his patent—

12

support, sponsors, or approves of the Posters.  Indeed, as noted in the Complaint, neither Clark nor the '272 patent are mentioned anywhere on the product packaging.  As the Complaint states, the Posters do not "bear any license for a patent, patent registration number or patent pending insignia to reflect any marketing, licensing or retail rights to manufacture, market, sell or distribute the" Accused Posters.  (Complaint at ¶ 36.)  This allegation is fatal to Clark's claim because it proves that Defendants made **no** factual statements of any kind that were even remotely false or misleading.

Instead of identifying any literally or even impliedly false statements or descriptions of fact, Clark seems to allege that the very act of placing an allegedly infringing product into the stream of commerce—without **any** accompanying false advertising or false statements of fact—constitutes false advertising.  First, as noted above, the Accused Posters, as a matter of law, cannot infringe.  Second, even assuming *arguendo* that the Accused Posters infringed, Clark would still fail to allege facts sufficient to state a claim for relief for false advertising.

It is beyond dispute that a literally or impliedly false ***statement*** is the lynchpin for a false advertising claim.  This point was made very clearly by the Fourth Circuit in *Mylan Laboratories, Incorporated v. Matkari*, 7 F.3d 1130 (4th Cir. 1993).  In that case, Mylan sued a number of generic drug manufacturers for, among other things, false advertising under section 43(a) of the Lanham Act.  Mylan proffered a number of theories, including that by placing their products into the stream of commerce with standard packaging inserts, the defendants were effectively falsely advertising that their products were FDA approved.  Like Clark, Mylan identified no false statement in the advertising or other product literature stating that the products were FDA approved.  Consequently, the defendants moved to dismiss, and the district court granted the motion.

LACA_2082628.1

The Fourth Circuit affirmed the district court's dismissal. The court found that Mylan "nowhere points to any statement or representation in the defendants' advertising which declared 'proper FDA approval.'" *Id.* at 1139. The court went on to state that this "fatal deficiency cannot be cured by contentions that the very *act* of placing a drug on the market, with standard package inserts often used for FDA-approved drugs, somehow implies (falsely) that the drug had been 'properly approved by the FDA.'" *Id.* (emphasis in original). The court found such a theory "quite simply, too great a stretch under the Lanham Act." *Id.*

Clark is attempting to do exactly what Mylan could not. Clark's allegations do not point to any statement or representation in which the Defendants' state "approved by the owner of the '272 patent." Neither Clark, nor his patent are identified, mentioned, noted or implied in any statement associated with any of the Accused Posters. Rather, Clark, like Mylan, is attempting to broaden the Lanham Act into a general commercial conduct statute, regulating conduct without any mooring to advertising. But the Lanham Act squarely prohibits such an expansion and specifically requires a statement of fact used in advertising. Simply put, in the absence of any identified false advertising, the false advertising statute has no application.

### D. Clark Fails To Allege Facts Sufficient To Constitute A Cause Of Action Under The Ohio Deceptive Trade Practices Act

For the same reasons that Clark's Complaint fails to allege facts sufficient to state a cause of action for violation of the Lanham Act, the Complaint also fails to state facts sufficient to allege a cause of action for violation of the Ohio Deceptive Trade Practices Act. That is because "[c]laims for . . . false designation of origin under the Ohio Deceptive Trade Practices Act and the Ohio common law are subject to the same standards as their federal counterparts." *Mountain Top Beverage Group, Inc. v. Wildlife Brewing N.B., Inc.*, 338 F.Supp.2d 837, 840 n.1 (S.D. Ohio 2004) *citing Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 288 (6th Cir. 1997). Additionally "[b]oth Ohio and federal courts have recognized that the same

14

analysis applies to claims under Ohio's statutory and common law of unfair competition and the Lanham Act." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 626 n.2 (6th Cir. 2002).

Because Clark has failed to allege any advertising, any false statement of fact, or any false description of fact, Clark's claim under the Ohio Deceptive Trade Practice Act fails, just as his claim under the Lanham Act fails.

## IV.    CONCLUSION

For all of the reasons stated above, the Court should grant Defendants' motion to dismiss, and because no amendment is possible to revive these claims, the Court should not grant leave to amend.


Dated:  January 2, 2008                             Respectfully submitted,

                                                    By:  /s/ *Michael C. Lueder*
                                                    Michael C. Lueder
                                                    Foley & Lardner LLP
                                                    777 E. Wisconsin Ave.
                                                    Milwaukee, WE 53202
                                                    Tel:  (414) 297-4900
                                                    Trial Attorney


                                                    /s/ *Grant E. Kinsel*
                                                    Grant Kinsel
                                                    (Pro Hac Vice)
                                                    Foley & Lardner LLP
                                                    555 South Flower St.,  Suite 3500
                                                    Los Angeles, CA  90071
                                                    Tel: (213) 972-4500
                                                    *Attorneys for JAKKS Pacific, Inc., Play Along Toys, KB Toys, and Toys "R" Us, The Walt Disney Company*

LACA_2082628.1

## CERTIFICATE OF SERVICE

I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served today with a copy of this document via the Court's CM/ECF system per Local Rule 5.2. Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

Dated: January 2, 2009                     /s/ Grant E. Kinsel

| | |
|---|---|
| Brian Edward Dickerson<br>The Dickerson Law Group<br>5003 Horizons Drive<br>Suite 200<br>Upper Arlington , OH 43220<br>614-339-5370<br>Fax: 614-442-5942<br>bdickerson@dickerson-law.com<br><br>Kevin R Conners<br>5003 Horizons Drive Suite 101<br>Columbus , OH 43220<br>614-562-5877<br>kevinconners@kevinconners.com<br><br>Sharlene I Chance<br>The Dickerson Law Group<br>5003 Horizons Drive<br>Suite 200<br>Columbus , OH 43220<br>614-339-5370<br>Fax: 614-442-5942<br>schance@dickerson-law.com | Attorneys for Plaintiff Aaron Clark |

16