# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRIC OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **AARON CLARK,** | : | |
| | : | |
| *Plaintiff,* | : | |
| **v.** | : | **Case No. 2:08CV982** |
| | : | |
| **THE WALT DISNEY COMPANY, et al.,** | : | **Judge Holschuh** |
| *Defendants.* | : | |
| | : | **Magistrate Judge Abel** |

## PLAINTIFF AARON CLARK'S MEMORANDUM IN OPPOSITION TO DEFENDANT JAKKS PACIFIC, INC., PLAY ALONG TOYS AND TOYS "R" US' MOTION TO DISMISS

Now comes Plaintiff, Aaron Clark ("Plaintiff") by and though undersigned counsel and respectfully submits this Memorandum in Opposition to Defendants JAKKS Pacific, Inc.'s ("JAKKS"), Play Along Toys ("PAT") and Toys "R" Us' (collectively "Defendants") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 11). The reasons in support of Plaintiff's Memorandum in Opposition are fully set forth in the accompanying Memorandum in Support.

Respectfully submitted,

**THE DICKERSON LAW GROUP, P.A.**

/s/ Brian E. Dickerson
Brian E. Dickerson    (0069227)
Sharlene I. Chance    (0070999)
Kevin R. Conners    (0042012)
5003 Horizons Drive, Suite 101
Columbus, OH 43220
Telephone: (614) 339-5370
Facsimile: (614) 442-5942
bdickerson@dickerson-law.com
schance@dickerson-law.com
kconners@dickerson-law.com
*Attorneys for Plaintiff Aaron Clark*

# TABLE OF CONTENTS

I.      INTRODUCTION                                                           2

II.     FACTUAL AND PROCEDURAL HISTORY                                         7

III.    LAW AND ARGUMENT                                                       9

        A.      Rule 12(b)(6) of the Federal Rules of Civil Procedure         9

        B.      The '272 Patent                                              11

        C.      Defendants' Misinterpretation of the '272 Patent            13

        D.      Plaintiff's Complaint Sets Forth the Necessary Causes of Action
                For Defendants' Infringement of Plaintiff's '272 Patent      15

        E.      Plaintiff has Sufficiently Stated a Claim for False Designation of
                Origin under § 43(a) of the Lanham Act, 15 U.S.C. and under the
                Ohio Deceptive Trade Practices Act                          21

IV.     CONCLUSION                                                           23

CERTIFICATE OF SERVICE                                                       24

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Allied Gator, Inc. v. NPK Construction Equipment, Inc.*, 937 F. Supp. 694 (N.D. Ohio 1996)     3
*Arrow v. Federal Reserve Bank of St. Louis*, 358 F.3d 392 (6th Cir. 2004)                       10
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)                                             7
*C&F Packing Co. v. IBP, Inc.*, 224 F.3d 1296 (Fed. Cir. 2000)                                   10
*Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F. 3d 1111 (6th Cir. 1996)      22
*Chapman Law Firm Co. v. Greenleaf Constr. Co.*, 490 F.3d 934 (Fed. Cir. 2007)                    9
*Conley v. Gibson*, 355 U.S. 41 (1957)                                                            10
*Daddy's Junky Music Inc. v. Big Daddy's Family Music, Ctr.*,
      109 F. 3d 275 (6th Cir. 1997)                                                            21, 22
*Eon-Net LP v. Flagstar Bancorp*, 249 Fed. Appx. 189 (Fed. Cir. 2007)                             3
*Frisch's Restaurant, Inc. v. Elby's Big Boy, Inc.* 670 F.2d 642 (6th Cir. 1982)                 23
*Fuji Kogyo Co., Ltd. v. Pac. Bay Int'l, Inc.*, 461 F.3d 675 (6th Cir. 2006)                      7
*GMI Holdings, Inc. v. Stanley Door Systems, Inc.*, 943 F. Supp. 1420 (N.D. Ohio 1996)            3
*Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*,
      931 F. 2d 1100 (6th Cir. 1991)                                                           22, 23
*Johnson & Johnston Assocs. v. R.E. Serv. Co.*, 285 F.3d 1046, 1053 (Fed. Cir. 2002)              7
*Johnson v. Jones*, 149 F. 3d 494 (6th Cir. 1998)                                                 22
*Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142 (Fed. Cir. 2004)                            3

*Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389 (6th Cir. 1998)                                    10
*Little v. UNUM Provident Corp.*, 196 F. Supp. 2d 659 (S.D. Ohio 2002)                              11
*Lyon v. Quality Courts United, Inc.*, 249 F.2d 790 (6th Cir. 1957)                                 22
*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995)                                3
*Mayer v. Mylod*, 988 F.2d 635 (6th Cir. 1993)                                                    9, 10
*McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354 (Fed. Cir. 2007)                                 *passim*
*Phonometrics, Inc. v. Hospitality Franchise Systems, Inc.*, 203 F.3d 790 (Fed. Cir. 2000)      *passim*
*Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134 (6th Cir. 1983)                           7, 9
*Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978)                                    11
*Sagliccolo v. Eagle Ins. Co.*, 112 F.3d 226 (6th Cir. 1997)                                        10
*Scheid v. Fanny Farmer Candy Shops, Inc.* 859 F.2d 434 (6th Cir. 1988)                             10
*Scheuer v. Rhodes*, 41415 U.S. 232 (1974)                                                        2, 10
*Sequoyah v. Tennessee Valley Authority*, 620 F.2d 1159 (6th Cir. 1980)                              4
*Victoria's Secret Stores v. Artco Equip. Co.*, 194 F. Supp. 2d 704 (S.D. Ohio 2002)                21
*Vitronics Corp. v. Conceptronic, Inc.* 90 F.3d 1576 (Fed. Cir. 1996)                                3
*Weiner, D.M.P. v. Klais & Co., Inc.*, 108 F.3d 86 (6th Cir. 1997)                                   2
*Wimberly v. Clark Controller Co.*, 364 F.2d 225 (6th Cir. 1966)                                     3
*Yameta Co. v. Capitol Records, Inc.* 279 F. Supp. 582 (S.D.N.Y 1968)                               23

**Statutes, Rules and Constitutional Provisions**

15 U.S.C. § 1125(a)                                                                            6, 21, 23
Fed.R.Civ.P. 12(b)                                                                              *passim*
Fed.R.Civ.P. 12(f)                                                                                   3
U.S. Constitution, Article I, Section 8                                                              7

## SUMMARY

On August 20, 1996, the U.S. Patent and Trademark Office ("PTO") issued the '272 Patent, which is entitled "Talking Poster" to Plaintiff. Plaintiff is engaged in the design, marketing, distribution and sale of the Talking Posters. The '272 Patent "relates generally to the art of posters and more particularly to a talking poster that projects a recorded sound using a device that is attached to the poster with material that is painted to match the color scheme of the poster art." (Doc. 2, Exhibit H, *'272 Patent 1:7-11*). The scope of the invention is not to be considered or limited by the preferred embodiments provided for in the disclosures, as modifications are possible without departing from the spirit of the invention as evidenced by Claims 1 through 5 in the '272 Patent. *'272 Patent 2:52-54*.

On October 17, 2008, Plaintiff filed a Complaint against Defendants The Walt Disney Company, JAKKS Pacific, Inc. ("JAKKS"), Play Along Toys ("PAT"), KB Toys, Amazon.com and Toys "R" Us asserting three causes of action related to the Defendants' misappropriation of Plaintiff's patent rights of the '272 Patent.  (Doc. 2, First, Second and Third Claims for Relief).  In his Complaint, Plaintiff alleges that Defendants, being aware of the '272 Patent, have infringed on Plaintiff's patent by manufacturing, reproducing and/or selling Hannah Montana Talking Posters and Cheetah Girls Talking Posters which embody the subject matter claimed in the '272 Patent. Doc. 2.  Plaintiff is engaged in the design, marketing, distribution and sale of the Talking Posters. Doc. 2, ¶24.

On January 2, 2009, Defendants JAKKS, PAT and Toys "R" Us filed a Motion to Dismiss arguing that its products cannot infringe against Plaintiff's '272 Patent because the concept of Plaintiff's patent requires the housing unit for the speech device to be identical or camouflaged by covering the housing unit with art from the underlying poster art.  The Defendants contend that since the housing units of its infringing posters are "simply placed over the artwork and do not contain any type of matching art" that the posters cannot infringe on Plaintiffs '272 Patent as a matter of law.  Doc. 11, p. 7.  In order to survive Defendants' motion to dismiss for failure to state a claim Plaintiff only has to set forth allegations sufficient to make out the elements of the causes of action not demonstrate that there is an actual patent infringement or engage in a claims analysis. *See*, *Phonometrics, Inc. v. Hospitality Franchise Systems, Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000); *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356-57 (Fed. Cir. 2007).

Defendants' understanding of the '272 Patent is wholly misplaced.  Nowhere in the '272 Patent are the words "camouflaged" or "identical" used. The background and summary of the '272 Patent plainly states that the housing unit is attached to the poster with "***material that is painted to***

***match the color scheme of the poster art***." Doc. 2, Exhibit H, *'272 Patent 1:7-11* (***Emphasis added***). As discussed in greater detail in Plaintiff's Memorandum in Support of his Opposition to Defendants' Motion to Dismiss, Claims 1 and 5 of the '272 Patent are void of any use of the words "camouflaged" or "identical." Defendants, without citing to any such language in the '272 Patent, erroneously conclude that "the housing surface must be prepared [with] art that is exactly like the art over which the housing is placed so that the housing and poster become 'indistinguishable from one another.'" Doc. 11, p. 13. The housing unit does not have to be identical to the underlying poster. The intent of the '272 Patent is that any housing unit be designed to artistically "blend" with the rest of the poster (*'272 Patent 3:11-13* and *'272 Patent 4:15-16*) not that the housing unit has to be "identical" "exact" or "camouflaged" with the rest of the Talking Poster.

Images of Defendants' infringing posters, attached to Plaintiff's Complaint as Exhibits A and B (Doc. 2) are *only* two examples of Defendants' infringing posters that are in the marketplace. These exhibits are not representative of an exhaustive list of Defendants' infringing posters as Plaintiff is unable to determine, at this stage of the proceedings without conduct any discovery, the totality of the numerous infringing posters disseminated within the marketplace. This Court's review of the infringing posters attached to Plaintiff's Complaint and included in his Opposition, will demonstrate its infringing nature of the '272 Patent. The housing was prepared with matching art that is substantially the same as the poster art that the housing unit covers so that the housing artistically blends with the rest of the poster.

These images are of Defendants' infringing poster. Displayed on the left is one The Hannah Montana Talking Poster (Image 1), which infringe on the '272 Patent. Image 1 has a "matching" pink housing unit of which the pink hue is "substantially" similar and "matching" to the interior color of the "Hannah Montana" logo and color scheme of the poster. The housing unit artistically

"blends" with the surrounding poster art that is not covered and is designed to match the poster art and look attractive as an overall design. The housing unit: (1) is placed on the front and over the top of the poster art so as to artistically "blends" into the poster in any way that would be graphically attractive; (2) is of the same color scheme and hue as the underlying poster art thereby making the housing "substantially" similar and "matching" to the color of the logo and color scheme of the poster; and (3) artistically "blends" with the surrounding poster art that is not covered and is designed to match the poster art and look attractive as an overall design – all of which violate Claims 1 and 5 Plaintiff's '272 Patent.

Defendants' actions in applying a housing unit to its infringing posters much like the housing unit which embodies the subject matter claimed in Plaintiff's '272 Patent is or could be more likely to cause confusion or mistake as to the actual origin of the product, in particular leading the public to believe that Plaintiff's '272 Patent in some way sponsors or approves Defendants' manufacture, reproduction and sale of the infringing posters or that Defendants are associated or affiliated with Plaintiff's '272 Patent. Section 43(a) of Lanham Act, 15 U.S.C. § 1125(a), was intended not only to prevent false designations as to origin, but to protect consumers and competitors against all forms of misdescription of products and services in commerce.

Assuming the facts of Plaintiff's Complaint are true, this Honorable Court also has to assume the Claims of the '272 Patent are accurate and that the Defendants' products infringe on these Claims and the law supports the requested relief. This Honorable Court should not dismiss Plaintiff's Complaint as Defendants have failed to meet its burden of proving that no causes of action exist.

<u>**MEMORANDUM IN SUPPORT**</u>

## I.      INTRODUCTION

A motion to dismiss for failure to state a claim requires this Honorable Court to evaluate whether Plaintiff's Complaint sets forth allegations sufficient to make out the elements of the causes of action. *See*, *Phonometrics, Inc. v. Hospitality Franchise Systems, Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000) ("The Rule 12(b)(6) pleading requirement for a complaint for infringement cannot be extended to require a plaintiff to specifically include each element of the claims of the asserted patent."). Rather, "a patentee need only plead facts sufficient to place the alleged infringer on notice." *Id.* at 794. *See also*, *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356-57 (Fed. Cir. 2007).

Plaintiff's Complaint must be construed in a light most favorable to him as the nonmoving party and the allegations set forth taken as true. *See*, *Scheuer v. Rhodes*, 41415 U.S. 232 (1974). As a general rule, matters outside the pleadings cannot be considered in determining a motion to dismiss unless the motion is converted to one for summary judgment. *Weiner, D.M.P. v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997). However, the Sixth Circuit considers documents attached to a motion to dismiss as part of the pleadings, if they are referred to in the complaint and are central to the claim. *Id.* at 89.

Attached to Defendants' Motion to Dismiss is the Declaration of Grant Kinsel filed in support of Defendants' motion (Doc. 11). In this Declaration, Mr. Kinsel cites and refers to documents and evidence which are matters outside the record and beyond Plaintiff's Complaint. Specifically, Mr. Grant refers to and has attached as evidence, the history of U.S. Patent No. 5,548,272 ("the '272 Patent"), entitled "Talking Poster" and photocopied pages from the American Heritage Dictionary of the English Language. Mr. Grant's Declaration and the documents or

evidence referred to, cited and attached are extraneous materials beyond the pleadings and may not be introduced in support of Defendants' Motion to Dismiss and as such should be stricken by this Honorable Court.[1] *See*, *Notes of Advisory*, Fed.R.Civ.P. 12(b); *Wimberly v. Clark Controller Co.*, 364 F.2d 225, 228 (6th Cir. 1966).

The '272 Patent history is not part of Plaintiff's Complaint and as such is outside the four corners of the Complaint and should be excluded by the Honorable Court. The Defendants are attempting to use this stage of the proceedings to have this Honorable Court conduct a *Markman* [*v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*), *aff'd* 517 U.S. 370, 116 S. Ct. 1384, 134 L Ed. 2d 577 (1996)] analysis. Since the *Markman* decision, claim construction has most frequently been handled in conjunction with a hearing on a motion for summary judgment. *Allied Gator, Inc. v. NPK Construction Equipment, Inc.*, 937 F. Supp. 694 (N.D. Ohio 1996); *GMI Holdings, Inc. v. Stanley Door Systems, Inc.*, 943 F. Supp. 1420 (N.D. Ohio 1996), *appeal denied* (Fed. Cir. 1997) 111 F.3d 142. As such, a *Markman* hearing is not the proper vehicle at the notice pleading stage. *Eon-Net LP v. Flagstar Bancorp*, 249 Fed. Appx. 189 (Fed. Cir. 2007); *Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142 (Fed. Cir. 2004).

Plaintiff respectfully requests this Honorable Court to consider Defendants' motion as a Motion to Dismiss without considering the matters outside the pleading. Here, the prosecution history attached to Defendants' Motion to Dismiss falls outside the pleadings. Courts often refuse to consider such materials on a motion to dismiss and generally "look at the patent's prosecution history [only] *if it is part of the record in the case*." *Allied Gator*, 937 F. Supp. at 697 (*emphasis added*); *Vitronics Corp. v. Conceptronic, Inc.* 90 F.3d 1576, 1582 (Fed. Cir. 1996).

---

[1] Plaintiff has filed the proper Motion to Strike pursuant to Fed.R.Civ.P. 12(f) as it pertains to the admissibility of the evidence offered in Mr. Kinsel's Declaration and any documents and evidence referred, cited and attached thereto for purposes of Defendants' pending Motion to Dismiss.

However, if this Court decides to treat Defendants' motion as a Motion for Summary Judgment, Plaintiff requests the proper notice and leave for the opportunity to provide supplemental briefing pertinent to a Rule 56 motion. *See*, Fed. R. Civ. P. 12(b)(6) (if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56"); *Sequoyah v. Tennessee Valley Authority*, 620 F.2d 1159, 1161 (6th Cir. 1980), *cert denied*, 449 U.S. 953, 66 L. Ed. 2d 216, 101 S. Ct. 357 (Under Rule 12(b), when matters outside the pleadings are presented to the court, and not excluded, a motion to dismiss for failure to state a claim is treated as one for summary judgment).

At the onset of its Motion to Dismiss, Defendants maintain that Plaintiff "asserts a claim for patent infringement against products that, under no possible set of facts, can infringe." Doc. 11, p. 6. However, a careful review of Plaintiff's Complaint, the '272 Patent, the infringing products and the arguments set forth herein will provide enough facts and evidence for this Honorable Court to determine that Defendants' products are infringing and that there is no basis to dismiss Plaintiff's Complaint against Defendants.

Defendants open its arguments in support for its Motion to Dismiss with misstatements of law and fact. First, Defendants' main argument and basis for its Motion to Dismiss rests on its conclusion, *albeit* erroneous, that "[t]he concept [of the '272 Patent] is that the housing unit for the speech device can be camouflaged by covering the housing unit with art from the underlying poster." Doc. 11, p. 6. Defendants also misstate the entire point of the '272 patent is to disclose a speaker housing that is virtually imperceptible to the viewer. Respectfully, Defendants' attempt to mask its infringing actions against Plaintiff's '272 Patent are shameless. In order to put an end to

Defendants' flawed interpretation of the '272 Patent, a plain reading and understanding of Plaintiff's Claims asserted in the Patent, quashes Defendants' theories or assertions.

A plain reading of the '272 Patent reveals that nowhere in the patent are the words "camouflaged" or "identical" used. The background and summary of the '272 Patent states that "[t]he present invention relates generally to the art of posters and more particularly to a talking poster that projects a recorded sound using a device that is attached to the poster with ***material that is painted to match the color scheme of the poster art***." Doc. 2, Exhibit H, *'272 Patent 1:7-11* (***Emphasis added***). The concept of the '272 Patent is the talking poster with the housing being one part of the intent of the patent.

The Defendants believe that since the housing units of its infringing posters are "simply placed over the artwork and do not contain any type of matching art" that the posters cannot infringe on Plaintiffs '272 Patent as a matter of law. Doc. 11, p. 7. Again, Defendants are mistaken due to its incorrect interpretation and understanding of the '272 Patent. As discussed in further detail *infra*, the '272 Patent provides for the housing to be placed on the posters covering the art in a manner that blends in to the rest of the surrounding poster; never does the '272 Patent use the word "camouflaged" or "identical." Claims 1 and 5, the specific claims alleged within the causes of actions in Plaintiff's Complaint are void of any such language. If this Honorable Court is to review the '272 Patent history, which Plaintiff argues is not permissible on a 12(b)(6) Motion to Dismiss as the patent history is not part of the record, then the Court will discover that the "camouflaged" language Defendants refer to relates to the preferred embodiment of the blister pack, which are to Claims 3 and 4 of the '272 Patent. The housing does not have to be identical to the underlying poster. The intent of the '272 Patent is that any housing unit be designed to artistically **blend** with

the rest of the poster – not that the housing unit has to be "identical" "exact" or "camouflaged" with the rest of the Talking Poster.[2]

Images of Defendants' infringing posters, attached to Plaintiff's Complaint as Exhibits A and B are *only* two examples of Defendants' infringing posters that are in the marketplace. Also attached to the Compliant, as Exhibit F, are website printouts demonstrating the various other infringing posters that Defendants are selling or offering to sell within this Honorable Court's district. However, these exhibits are not representative of an exhaustive list of Defendants' infringing posters as Plaintiff is unable to determine, at this stage of the proceedings without conducting any discovery, the totality of the numerous infringing posters disseminated within the marketplace. While Defendants are handpicking and attempting to focus this Court's attention on only two infringing posters, Plaintiff respectfully reminds this Honorable Court of Exhibit F (Doc. 2) in addition to other infringing poster that may exist through the exchange of discovery and initial disclosures.

Furthermore, in its Motion to Dismiss, Defendants blatantly misconstrue Plaintiff's causes of action asserted in his Complaint, filed October 17, 2008 (Doc. 2). Specifically, Defendants state that Plaintiff "asserts a claim for false advertising under the Lanham Act and the Ohio Deceptive Trade Practices Act without alleging any advertising, let along [sic] any *false* advertising." Doc. 11, p. 6 (***Emphasis in original***). A careful reading of Plaintiff's Complaint, specifically the second and third causes of action, reveals that Plaintiff has not raised a false advertising cause of action, but rather a **false designation of origin** under § 43(a) of the Lanham Act 15 U.S.C. § 1125(a) and the Ohio Deceptive Trade Practices Act and it relates to Defendants infringing on Plaintiff's '272

---

[2] Defendants, without citing to any such language in the '272 Patent, erroneously conclude that "the housing surface must be prepared art that is exactly like the art over which the housing is placed so that the housing and poster become 'indistinguishable from one another.'" Doc. 11, p. 13.

Patent in the sale, offer for sale, importation and/or use of the Hannah Montana Talking Poster and Cheetah Girls Talking Posters ("Talking Posters" or "infringing posters"). *See*, Doc. 2, Second and Third Claims for Relief.

In order for Defendants to be successful with their motion to dismiss, Defendants' have the burden of proving that no causes of action as set forth in Plaintiff's Complaint exist. Defendants have failed to meet this burden. *See*, *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983); *Phonometrics*, 203 F.3d at 794; *McZeal*, 501 F.3d at 1356-57.

Assuming the facts of Plaintiff's Complaint are true, the Court also has to assume the Claims of the '272 Patent are accurate and that the Defendants' products infringe on these Claims and the law supports the requested relief. *See*, *Phonometrics*, 203 F.3d at 794 ("a patentee need only plead facts sufficient to place the alleged infringer on notice."); *See also*, *McZeal*, 501 F.3d at 1356-57. As demonstrated in detail below, Plaintiff's Complaint contains more than bare assertions or legal conclusions and presents "enough facts to state a claim to relief that is plausible on its face." *Id.*, at 1356-57; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

## II.    FACTUAL AND PROCEDURAL HISTORY

On August 20, 1996, the U.S. Patent and Trademark Office ("PTO") issued the '272 Patent, which is entitled "Talking Poster" to Plaintiff. Congress enacted U.S. Patent laws under its constitutional grant of authority to protect the discoveries of inventors. *See*, U.S. Constitution, Article I, Section 8. The patent law grants Plaintiff the right to exclude others from making, using, or selling his invention[3].

---

[3] The right to exclude others also includes infringing produces or devices that are equivalent to Plaintiff's claimed invention. The doctrine of equivalents extends the right to exclude beyond the literal scope of the claims. *Johnson & Johnston Assocs. v. R.E. Serv. Co.*, 285 F.3d 1046, 1053 (Fed. Cir. 2002); *Fuji Kogyo Co., Ltd. v. Pac. Bay Int'l, Inc.*,

On October 17, 2008, Plaintiff filed a Complaint against Defendants The Walt Disney Company, JAKKS, PAT, KB Toys[4], Amazon.com[5] and Toys "R" Us asserting three causes of action related to the Defendants' misappropriation of Plaintiff's patent rights of the '272 Patent. (Doc. 2, First, Second and Third Claims for Relief). In his Complaint, Plaintiff alleges that Defendants, being aware of the '272 Patent, have infringed on Plaintiff's patent by manufacturing, reproducing and/or selling Hannah Montana Talking Posters and Cheetah Girls Talking Posters which embody the subject matter claimed in the '272 Patent. Doc. 2. Plaintiff is engaged in the design, marketing, distribution and sale of the Talking Posters. Doc. 2, ¶24.

Plaintiff's '272 patent incorporates sound into posters featuring prominent entertainers, cartoon characters and blockbuster movie characters, such as Warner Brother's Batman Forever, Looney Toons and Space Jam (Michael Jordan); Comedy Central's South Park; New Line Cinema's Austin Powers 1 and 2; Saban Entertainment's Power Rangers; Toho Co., Inc.'s Godzilla; The Ohio State University's Official Collegiate Product; Dic Entertainment's Sailor Moon and Bump in the Night; and Winterland Entertainment's NSYNC, Backstreet Boys and Ricky Martin. Doc. 2, ¶26.

Defendants JAKKS and PAT are leaders within the toy manufacturing, reproduction and retail selling industry and were both aware of Plaintiff's '272 Patent when they manufactured, reproduced and sold the infringing posters. Doc. 2, ¶¶45-46. Defendants JAKKS and PAT manufacture and market a line of infringing posters, which have a major element described in the '272 Patent and conform to all assertions of the '272 Patent Claim 1. Doc. 2, ¶¶45-46. Defendant Toys "R" Us, also a leader within the toy industry (Doc. 11, p. 9), was aware as early as 2002 to late 2003 of the '272 Patent before distributing the infringing posters which did not bear any patent

---

461 F.3d 675, 688 (6th Cir. 2006) (the scope of a patent is not limited to its literal terms but also embraces all equivalents to the claims described).

[4] On December 11, 2008, Defendant KB Toys, Inc. filed for Chapter 11 bankruptcy in the United States Bankruptcy Court of Delaware. *See*, *In re KB Toys, Inc.*, Case No.: 08-13269-KJC, Doc. 1.

[5] Plaintiff dismissed Defendant Amazon.com, without prejudice, on December 12, 2008. *See*, Doc. 6.

license or registration designation.  Doc. 2, ¶49.  Defendants' infringing posters are equivalent to the '272 Patent.

## III.    LAW AND ARGUMENT

### A.    <u>Rule 12(b)(6) of the Federal Rules of Civil Procedure</u>

Federal Rules of Civil Procedure 12(b)(6) provides that a complaint may be dismissed if it fails to state a claim upon which relief can be granted.   Because a motion under Fed.R.Evid. 12(b)(6) is directed solely to the complaint itself, *See*, *Roth Steel Prods.* 705 F.2d at 155, the focus is whether the plaintiff is entitled to offer evidence to support the causes of action, rather than on whether the plaintiff will ultimately prevail. "The Rule 12(b)(6) pleading requirement for a complaint for infringement cannot be extended to require a plaintiff to specifically include each element of the claims of the asserted patent."  *Phonometrics*, 203 F.3d at 794; *McZeal*, 501 F.3d at 1356-57.

The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). A motion to dismiss for failure to state a claim upon which relief can be granted is purely procedural question not pertaining to patent law.  *McZeal*, 501 F.3d at 1356-57.  Therefore, the law of the regional circuit applies.  *Id.*

This Honorable Court's task in considering a motion to dismiss for failure to state a claim is not to determine whether a Plaintiff will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Chapman Law Firm Co. v. Greenleaf Constr. Co.*, 490 F.3d 934, 938 (Fed. Cir. 2007).  The function of Plaintiff's Complaint is to afford the Defendants fair notice of what Plaintiff's causes of action are and the grounds upon which it rests. *See*, *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir.

1998). Plaintiff's Complaint need not set down in detail all the particularities of the First, Second and Third Claims for Relief. Federal Rules of Civil Procedure Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." However, Plaintiff's Complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.* 859 F.2d 434, 436 (6th Cir. 1988) (*Emphasis in original*).

When considering a motion to dismiss pursuant to Rule 12(b)(6), this Honorable Court must construe Plaintiff's Complaint in the light most favorable to Plaintiff and accept all well-pleaded material allegations in the Complaint as true. *See*, *Scheuer*, 416 U.S. at 236; *Mayer*, 988 F.2d at 638; *Arrow v. Federal Reserve Bank of St. Louis*, 358 F.3d 392, 393 (6th Cir. 2004). This Court indulges in all reasonable inferences that might be drawn from Plaintiff's pleading. *See*, *Sagliccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228 (6th Cir. 1997); *McZeal*, supra; *C&F Packing Co. v. IBP, Inc.*, 224 F.3d 1296 (Fed. Cir. 2000).

> The Rule 12(b)(6) pleading requirements for a complaint of infringement cannot be extended to require a plaintiff to specifically include each element of the claims of the asserted patent. Such requirements do not require a patentee to amend its claims to include specific allegations about each limitation once a court has construed the claims of the patent. To impose such requirements would contravene the notice pleading standard, and would add needless steps to the already complex process of patent litigation. Instead, a patentee need only plead facts sufficient to place the alleged infringer on notice. This requirement ensures that an accused infringer has sufficient knowledge of the facts alleged to enable it to answer the complaint and defend itself.

*Phonometrics*, 203 F.3d at 794. Plaintiff's Complaint may not be dismissed because his causes of action do not support the legal theory he relies upon, since it is up to this Honorable Court to determine if the allegations provide for relief of *any* possible theory. This Honorable Court will grant a motion for dismissal under Rule 12(b)(6) if there is an absence of law to support Plaintiff's

causes of action, or of facts sufficient to make a valid cause of action, or if on the face of the complaint there is an insurmountable bar to relief indicating that Plaintiff does not have a claim. *See*, *Little v. UNUM Provident Corp.*, 196 F. Supp. 2d 659, 662 (S.D. Ohio 2002), *citing*, *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978).

### B. The '272 Patent

This Honorable Court's determination or analysis shall not include patent law, but rather procedural law in that this Court is required to assume all facts alleged by Plaintiff as true and a proper claim has been asserted. *See*, *Phonometrics*, 203 F.3d at 794; *McZeal*, 501 F.3d at 1356-57. The subject matter of the '272 Patent involves a Talking Poster with an attached housing unit, just like the alleged infringing products of the Defendants.

The '272 Patent "relates generally to the art of posters and more particularly to a talking poster that projects a recorded sound using a device that is attached to the poster with material that is painted to match the color scheme of the poster art." *'272 Patent 1:7-11.* The scope of the invention is not to be considered or limited by the preferred embodiments provided for in the disclosures[6], as modifications are possible without departing from the spirit of the invention as evidenced by Claims 1 through 5 in the '272 Patent.

Defendants infringing posters conform to Claim 1, the independent claim of the '272 Patent, and Claim 5, and are therefore infringing. Claim 1 of the '272 Patent provides:

> 1. An assembly, comprising
>
> a poster comprised of first material, said poster having a first surface, said first surface including poster art thereon;
>
> a housing comprised of a second material, said housing attached to a portion of said first surface of said poster;

---

[6] *See*, *272 Patent 1:56-67 and 2:1-51.*

a speaker concealed between said housing and said first surface of said poster;

an electric circuit including a sound production component, operatively connected to said speaker and concealed between said housing and said first surface of said poster;

a trigger attached to said electric circuit and concealed within said housing, said trigger adapted to be actuated through said housing to produce said sound;

wherein a surface of said housing is prepared with a matching art which is substantially the same as that area of said poster art which appears on said portion of said poster that said housing covers when said housing is attached to said poster, such that said housing artistically blends in with the surrounding poster art that is not covered by said housing.

*'272 Patent 2:57-3:1-12.* A plain reading of Claim 1 demonstrates that the '272 Patent does not require the housing to be "camouflaged" "identical" "exact" or the "same" to the surrounding art that is not covered by the housing unit. Rather, the patent requires the housing unit to be prepared with "matching" art that is "substantially" the same as the poster art that the housing unit covers so that the housing unit artistically "blends" in with the poster art.

Claim 5 of the '272 Patent provides:

5. A method for making a talking poster, comprising the steps of:

providing a poster with poster art on a first surface thereof;

providing human actuatable sound components adapted to be contained on said poster;

providing a housing adapted to be secured onto a portion of said first surface of said poster;

applying matching art to said housing which is substantially the same in that area of said poster art which appears on said portion of said poster that said housing covers when said housing is attached to said poster, such that said housing artistically blends in with the surrounding poster art that is not covered by said housing; and

12

securing said housing onto said portion of said first surface of said poster, such that said housing conceals said sound components.

*'272 Patent 4:1-18.* Again an analysis of Claim 5 demonstrates that the '272 Patent does not require the housing to be "camouflaged" "identical" "exact" or the "same" to the surrounding art that is not covered by the housing unit. Rather, the patent explicitly requires the housing unit to be prepared with "matching" art that is "substantially" the same as the poster art that the housing unit covers so that the housing unit artistically "blends" in with the poster art. As explained in detail below, Defendants posters infringe on the '272 Patent.

## C. **Defendants' Misinterpretation of the '272 Patent**

In its analysis of the '272 Patent, Defendants argue that the key limitations relating to the infringement deal with the surface of the housing. In its Motion to Dismiss, Defendants state that:

> …the housing surface be prepared with the art that matches the portion of the poster art over which the housing is placed so that the housing 'artistically blends in' with the surrounding poster. These limitations are not directed to a housing that merely looks similar to, or that has complementary colors with the underlying poster. Rather these limitations were intended to ensure that the speaker housing is covered with the very *same* art that will be covered-up when the housing unit is placed onto the poster.[7]

Doc 11, p. 8 (***Emphasis in original***).

The language of the '272 Patent is designed to refer to a housing that is "similar" or "complimentary" which are both words similar in definition to "substantially" "matching" and "blends" and are common terms used interchangeably. The intent of the patent was to protect from any device that matches, blends, or is substantially similar – "housing artistically blends" - into the poster to look attractive. *'272 Patent 3:10-11.* The infringing posters are designed in a way which

---

[7] Again, this demonstrates Defendants' misinterpretation of the '272 Patent. Nowhere within Claims 1 and 5 and the introduction of the '272 Patent does it require that the housing unit be covered with the "same" art as the surrounding poster. If the '272 Patent provided for this, Defendants would cite directly to the part of the '272 Patent and Claims where the language appears. Defendants have failed to do so because the '272 Patent is devoid of such language.

comports with the '272 Patent - to attractively and artistically blend, match and look substantially similar to other colors and designs on the poster which they are covering.

Defendants, in an effort to break up portions of Claim 1 to fit its needs, attempts to confuse this Honorable Court of the true meaning and intent of the '272 Patent, but to more importantly, sway this Honorable Court's attention away from its blatant violation of the infringing posters with the '272 Patent. A full reading of dependant claim, Claim 1 and Claim 5 of the '272 Patent does not state that the housing must be "camouflaged" "exact" or "identical" or "very same" the underlying poster. The intent behind the '272 Patent provides "that housing artistically blends with surrounding poster art that is not covered by said housing." *'272 Patent 3:11-13* and *'272 Patent 4:15-16*. If this was the true intent of the '272 Patent, the inventor and patent examiner would have used words such as "camouflaged" "exact" and/or "identical" in describing the housing unit.

Furthermore, Defendants argue that "the material covering the housing must be prepared in such a way that it fits like a puzzle piece onto the underlying artwork." Doc. 11, p. 9. Again, the '272 Patent does not provide such a description ("fits like a puzzle piece") in Claim 1 or Claim 5. The Defendants focus its arguments on the art that is directly underneath the housing. However, Plaintiff's Claim 1 and Claim 5 are concerned with the overall look of the poster, to which the Defendants are in obvious violation. The intent of the '272 Patent is that the housing unit blends in with the poster and not that the housing be printed to be "camouflaged", to be "exact" or "identical" to what it covers.

In another attempt by Defendants to demonstrate that the Defendants' posters are not infringing, Defendants maintain, notwithstanding the correct reading of the '272 Patent, that its "speaker units are placed ***over*** the top of the poster art, covering-up the underlying arts, directly contrary to the teaching in the '272 patent." Doc. 11, p. 11 (***Emphasis in original***). Rather,

Defendants reading of the '272 Patent is misplaced. Claim 1 explicitly requires that the housing unit cover the poster art. In pertinent part, Claim 1 of the '272 Patent reads:

> \*\*\*

> wherein a surface of said housing is prepared with a matching art which is substantially the same as that area of said poster art which appears on said portion of said poster that said **housing covers** when said housing is attached to said poster, **such that said housing artistically blends in with the surrounding poster art that is not covered by said housing**.

*'272 Patent 3:6-12* (**Emphasis added**). The '272 Patent provides for the housing to be placed on the posters covering the art in a manner that blends in to the rest of the surrounding poster – "such that said housing artistically blends in with the surrounding poster art that is not covered by said housing." The housing does not have to be "camouflaged" "exact" or "identical" to the underlying poster; otherwise the PTO would have required this language in the Claim. The intent of the '272 Patent is that any housing designed to artistically blend with the rest of the poster would be infringing, as the Defendants posters do in this very instance.

### D. Plaintiff's Complaint Sets Forth the Necessary Causes of Action for Defendants' Infringement of Plaintiff's '272 Patent

Defendants openly admit that its "speaker units are placed *over* the top of the poster art, covering-up the underlying art, directly contrary to the teaching of the '272 Patent." Doc. 11, p. 9. Defendants' admission of the placement of the housing unit of the infringing posters is not contrary to the teaching of the '272 Patent, but in direct violation of its express terms: "[t]he use of the present invention allows that material covering the sound hardware to be placed *anywhere on the surface* of the poster artwork." *272 Patent 1:26-28*.

In addition, the fact that the housing unit would match or look graphically and artistically attractive to the Talking Posters was obvious. Defendants maintain that "limitations were intended to ensure that the speaker housing is covered with the very *same* art that will be covered-up when

the housing unit is placed onto the poster." Doc. 11, p. 8. As provided for above, this language is not contained within the '272 Patent Claims. Defendants are attempting to persuade this Honorable Court to focus on one of the preferred embodiments. Additional language was added, not as a limitation but to place further protection against more sophisticated future embodiments - embodiments such as the Defendants' infringing posters: "The scope of the invention is not to be considered limited…and modifications are possible without departing from the spirit of the invention…" *'272 Patent 2:52-54.* The intent was to protect from any device that matches, blends, or is substantially similar - anything that is going to blend into the Talking Poster and look attractive. As Defendants would like for this Honorable Court to believe, the patent does not mandate that the housing has to be "camouflaged" "exact" or "identical" to the color scheme of the poster art.

As demonstrated in detail below, the housing unit of Defendants' infringing posters (1) is placed on the front and over the top of the poster art so as to artistically "blends" into the poster in any way that would be graphically attractive; (2) is of the same color scheme and hue as the underlying poster art thereby making the housing "substantially" similar and "matching" to the color of the logo and color scheme of the poster; and (3) artistically "blends" with the surrounding poster art that is not covered and is designed to match the poster art and look attractive as an overall design – all of which violate Claims 1 and 5 Plaintiff's '272 Patent.

Claim 1 of the '272 Patent instructs that the housing unit is placed on the posters covering up the art:

> \*\*\*
> wherein a surface of said housing is prepared with a **matching** art which is **substantially** the same as that area of said poster art which appears on said portion of said poster that said housing covers when said housing is attached to said poster, such that said housing artistically **blends** in with the surrounding poster art that is not covered by said housing.

*'272 Patent 3:6-12* (**Emphasis added**).

Claim 5 of the '272 Patent provides in part:

> ***
>
> applying **matching** art to said housing which is **substantially** the same in that area of said poster art which appears on said portion of said poster that said housing covers when said housing is attached to said poster, such that said housing artistically **blends** in with the surrounding poster art that is not covered by said housing…

*'272 Patent 4:9-15* (**Emphasis added**).

Here, the housing unit on Defendants' infringing posters is prepared with art that resembles or harmonizes with the area of the poster art of which the housing unit covers so that the housing unit artistically harmonizes with the surrounding poster art that the housing unit does not cover.[8] Defendants mention that "the material piece will artistically fit onto the poster, without any disruption in the poster artwork. In other words, the material piece will have the exact coloring and artwork on it, as would the space on the poster board where the piece resides, if the material piece was not present" (*'272 Patent 2:24-29*), but yet fail to acknowledge that this is just "**one example method** for construing a preferred embodiment of the invention." *'272 Patent 2:18-19* (**Emphasis added**).

The true intention of the '272 Patent is expressed in the last portion of the last paragraph of Claim 1: "such that said housing artistically blends in with the surrounding poster art that is not covered by said housing." *'272 Patent 3:10-12*. Defendants, throughout its pleadings, are attempting to limit this Court's focus and in this argument on the art that is directly underneath the housing unit: "As is apparent from the images of the Accused Posters…the surface of the sound

---

[8] If this Honorable Court requires Plaintiff to provide extrinsic evidence, which is more appropriate at a *Markman* hearing, Plaintiff will provide extrinsic support, i.e., the dictionary, which sustains Plaintiff's position and not the Defendants flawed arguments.

housing units on the Accused Posters is not prepared with the art over which they are placed. To the contrary, the housing units are simply colored blue and placed over the underlying art." Doc. 11, p. 16. Claim 1 of the '272 Patent is concerned with the overlook of the Talking Poster.

The intent of the '272 Patent is that the housing unit blends in with the poster art not covered by the housing unit. Claim 1 of the '272 Patent does not require that the housing unit be printed identically to what it covers – the poster art. The overall intent, to which the Defendants are infringing, was to protect the placement of an electronic housing unit placed on the front of the poster art that would blend into the poster in any way that would be artistically and graphically attractive. "The scope of the invention is not to be considered limited…and modifications are possible without departing from the spirit of the invention" as evidence by Claims 1 through 5. *'272 Patent 2:52-55*. Defendants argue that the housing units do not "artistically blend" into the poster art. Based on the foregoing analysis, Defendants are mistaken.

The following infringing posters[9] (identified below as Images 1 and 2), attached to Plaintiff's Complaint (Doc. 2, Exhibits A and B) are in direct violation of the '272 Patent:

---

[9] As explained above, these infringing posters are a small sampling of the many Talking Posters which Defendants have manufactured, reproduced, sold, offer to sell and/or imported into the United States and which are infringing on Plaintiff's '272 Patent. Plaintiff has also provided this Court with additional evidence of Defendants' infringing posters which violate the '272 Patent. *See*, Doc. 2, Exhibit F. However, due to the early stage of these proceedings Plaintiff is unable to determine, without conducting any discovery, how many infringing posters do exist in the marketplace.




**Image 1**                                                                                          **Image 2**

These images are of Defendants' infringing poster.  Displayed on the left is one The Hannah Montana Talking Poster (Image 1), which infringe on the '272 Patent.  Image 1 has a "matching" pink housing unit of which the pink hue is "substantially" similar and "matching" to the interior color of the "Hannah Montana" logo and color scheme of the poster.  The housing unit artistically "blends" with the surrounding poster art that is not covered and is designed to match the poster art and look attractive as an overall design.

Image 2, The Cheetah Girls Talking Poster, which also infringes on the '272 Patent, also shows a "matching" purple electronic housing unit of which the purple hue used is "substantially" similar and "matching" to the purple color outlining the word "Cheetah Girls" and is designed enough so as to artistically "blends" into the surrounding  poster.

Additionally, these two infringing posters have designs on the housing which are part of the scheme of the poster art which cannot be easily viewed through the above photographs of Images 1 and 2.  Both Image 1 and Image 2 demonstrates that the housing unit was placed on the front of the

poster art so as to artistically blend into the poster in any way that would be graphically attractive – the intent of the '272 Patent to which the Defendants are infringing.[10]

The following figures (Fig. 1 and 4) and drawings of the '272 Patent, which in addition to supporting the above terms, are preferred embodiments and are not limitations to the '272 Patent:



Figure 1 represents a plain view of the material piece of the '272 Patent invention for covering sound hardware on a Talking Poster. *'272 Patent 1:42-43*. Figure 4 is a cutaway view of the Talking Poster of the '272 Patent invention. *'272 Patent 1:50-51*. An examination of the infringing posters to Claim 1 and the above figures under the '272 Patent, demonstrates that there can be many different embodiments of how and where the sound apparatus is attached and the degree to which it blends with the poster art. "The scope of the invention is not to be considered limited by the above disclosure and modifications are possible without departing from the spirit of the invention…" *'272 Patent 2: 52-55*.

The Defendants, by affixing the housing units to the bottom of the infringing posters, have made a selection on the location of the housing unit on the poster just as is stated within the language of the '272 Patent.[11] The selection of the housing unit is substantially similar, if not

---

[10] "[t]he use of the present invention allows that material covering the sound hardware to be placed **anywhere on the surface** of the poster artwork." *272 Patent 1:26-28*.

[11] "The use of the present invention allows that material covering the sound hardware to be placed **anywhere on the surface** of the poster artwork." *272 Patent 1:26-28*

identical, to the placement language within the '272 Patent and the location, at the very least, is equivalent to the language in Patent '272. Based on the foregoing, Defendants' infringing posters violate Plaintiff's '272 Patent and as such, this Honorable Court should deny Defendants' Motion to Dismiss.

E. **Plaintiff has Sufficiently Stated a Claim for False Designation of Origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(A) and under the Ohio Deceptive Trade Practices Act.**[12]

Plaintiff's Complaint set forth that the:

¶60. Defendants['] use of the [infringing posters] which embody the subject matter claimed in the 272 Patent, is likely to cause confusion, to cause mistake, and to deceive the consumer as to the origin, source and sponsorship of the service.

¶61. Defendants act of placing for sale the [infringing posters], which embody the subject matter claimed in the 272 Patent…amount to false designation of the origin under 15 U.S.C. § 1125(a).

Doc. 2.

15 U.S.C. § 1125(a)(1)(A) provides:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any **false designation of origin**, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person

***

---

[12] Claims for infringement and false designation of origin under the Ohio Deceptive Trade Practices Act and Ohio common law are subject to the same "likelihood of confusion" standards as their federal counterparts. *See*, *Daddy's Junky Music Inc. v. Big Daddy's Family Music, Ctr.*, 109 F. 3d 275, 288 (6th Cir. 1997). *Victoria's Secret Stores v. Artco Equip. Co.*, 194 F. Supp. 2d 704, 724 n. 8 (S.D. Ohio 2002) ("The Court notes the same analysis applies to [federal] trademark infringement, unfair competition, Ohio common law, and Ohio's deceptive trade practices statutes").

"A Lanham Act claim for false designation of origin must contain two elements: (1) the false designation must have a substantial economic effect on interstate commerce; and (2) the false designation must create a likelihood of confusion." *Lyon v. Quality Courts United, Inc.*, 249 F.2d 790, 795 (6th Cir. 1957). A Lanham Act claim for false designation of origin must contain two elements: (1) the false designation must have a substantial economic effect on interstate commerce; and (2) the false designation must create a likelihood of confusion. *Johnson v. Jones*, 149 F. 3d 494, 502 (6th Cir. 1998).

The Sixth Circuit requires that Plaintiff's claim for false designation of origin requires proof of a likelihood of confusion. *Daddy's Junky Music*, 109 F. 3d at 288; *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F. 2d 1100, 1106 (6th Cir. 1991). In considering whether a likelihood of confusion exists, the following eight factors must be considered[13]:

1. strength of the mark;
2. relatedness of the goods;
3. similarity of the marks;
4. evidence of actual confusion;
5. marketing channels used;
6. likely degree of purchaser care;
7. defendant's intent in selecting the mark; and
8. likelihood of expansion of the product lines using the marks.

*Homeowners*, 931 F. 2d at 1106; *Frisch's Restaurant, Inc. v. Elby's Big Boy, Inc.* 670 F.2d 642 (6th Cir.), *cert denied*, 459 U.S. 916, 74 L. Ed. 2d 182, 103 S.Ct. 231 (1982).

Here, the grant of the '272 Patent by the PTO allows Plaintiff the right to use the '272 Patent under the name "Talking Poster." Defendants have applied a housing unit to its Talking Posters much like the housing unit which embodies the subject matter claimed in Plaintiff's '272 Patent so that the public is likely to believe that the product was produced by Plaintiff himself. Defendants

---

[13] These eight factors are not "an end in themselves, and are not all of equal significance." *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F. 3d 1111, 1123 (6th Cir. 1996).

were aware of Plaintiff's '272 Patent when it respectively manufactured, reproduced and sold the infringing posters within the State of Ohio and the Southern District of Ohio.

Such conduct on Defendants' behalf is or could be more likely to cause confusion or mistake as to the actual origin of the product, in particular leading the public to believe that Plaintiff's '272 Patent in some way sponsors or approves Defendants' manufacture, reproduction and sale of the infringing posters or that Defendants are associated or affiliated with Plaintiff's '272 Patent.

Section 43(a) of Lanham Act, 15 U.S.C. § 1125(a), was intended not only to prevent false designations as to origin, but to protect consumers and competitors against all forms of misdescription of products and services in commerce. *Yameta Co. v. Capitol Records, Inc.* 279 F. Supp. 582 (S.D.N.Y 1968) *reversed on other grounds*, 393 F. 2d 91 (2nd Cir. 1968)

Based on the foregoing the Defendants are liable under the Lanham Act and the Ohio Deceptive Trade Practices Act for false designation of origin.

## IV.    CONCLUSION

Defendants' have failed to prove that no causes of action as set forth in Plaintiff's Complaint exist.   "The Rule 12(b)(6) pleading requirement for a complaint for infringement cannot be extended to require a plaintiff to specifically include each element of the claims of the asserted patent." *Phonometrics,* 203 F.3d at 794.  Plaintiff is only required to plead facts sufficient to place Defendants on notice.  *Id.* at 794; *McZeal*, 501 F.3d at 1356-57.

Plaintiff's Complaint satisfies the pleading requirements to survive Defendants' Motion to Dismiss.  Plaintiff has (1) alleged jurisdiction; (2) set forth a statement that the Plaintiff owns the '272 Patent; (3) set forth a statement that Defendants have been infringing the '272 Patent by manufacturing, reproducing and/or selling the infringing posters which embody the subject matter claimed in the '272 Patent; and (4) set forth a demand for an injunction and damages.  *See*, *McZeal*,

501 F.3d at 1356-57. In construing Plaintiff's Complaint in the light most favorable to Plaintiff and accepting all well-pleaded material allegations in the Complaint as true, this Honorable Court should not dismiss Plaintiff's Complaint as Defendants have failed to meet its burden of proving that no causes of action exist.

In the alternative, if this Court decides to convert Defendants' Motion to Dismiss to a Motion for Summary Judgment, Plaintiff respectfully request he be given the reasonable opportunity to present all evidence and materials made pertinent to such motion by Rule 56.

Respectfully submitted,

**THE DICKERSON LAW GROUP, P.A.**

/s/ Brian E. Dickerson_____
Brian E. Dickerson     (0069227)
Sharlene I. Chance     (0070999)
Kevin R. Conners     (0042012)
5003 Horizons Drive, Suite 101
Columbus, OH 43220
Telephone: (614) 339-5370
Facsimile:  (614) 442-5942
bdickerson@dickerson-law.com
schance@dickerson-law.com
kconners@dickerson-law.com
*Attorneys for Plaintiff Aaron Clark*

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2009, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system upon counsels of record.

/s/ Sharlene I. Chance_____
Sharlene I. Chance     (0069227)
*Attorney for Plaintiff Aaron Clark*

24