## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **AARON CLARK,**<br><br>      Plaintiff,<br><br>v.<br><br>**THE WALT DISNEY COMPANY; JAKKS PACIFIC, INC.; PLAY ALONG TOYS; KB TOYS; AMAZON.COM; and TOYS 'R US,**<br><br>      Defendants. | Case No. 2:08CV982 |

## DEFENDANTS JAKKS PACIFIC INC., PLAY ALONG TOYS AND TOYS "R" US'

## REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | ARGUMENT | 2 |
| | A. Clark Concedes That The Accused Posters Cannot Possibly Infringe | 2 |
| | B. The Court May Find Non-Infringement On A Motion To Dismiss | 6 |
| | 1. The Court May Construe Claim Terms On A Motion To Dismiss | 6 |
| | 2. The Common Ordinary Meaning Of The Claim Terms Requires That the Housing Surface Be Prepared With Art That Is Indistinguishable From The Underlying Art | 8 |
| | 3. The Court May Reach The Non-Infringement Decision On This Motion To Dismiss | 9 |
| | 4. There Is No Reason To Convert This Motion To A Summary Judgment Motion, But Even If The Court Decides To Do So, The Motion Must Be Granted And Judgment Entered | 10 |
| | C. Clark's Lanham Act Claim Is Contrary to Supreme Court Authority | 12 |
| III. | CONCLUSION | 14 |

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Acumed LLC v. Stryker Corp.*, 483 F.3d 800 (Fed. Cir. 2007) ...................................................... 7

*Bradt v. Kelsey-Hayes Wheel Corporation*, 14 F.Supp. 709 (E.D. Mich. 1936) .......................... 10

*Dastar Corporation v. Twentieth Century Fox Film Corporation,* 539 U.S. 23, 123 S.Ct. 2041 (2003) ............................................................................................................................. 12

*Doe v. Sexsearch.com,* 502 F. Supp. 2d 719 (N.D. Ohio, 2007) ................................................... 11

*Dow Chem Co. v. Sumitomo Chem. Co.*, 341 F.3d 1370 (Fed. Cir. 2001) ...................................... 6

*Environmental Instruments, Inc. v. Sutron Corp.*, 877 F.2d 1561 (Fed. Cir. 1989) ....................... 3

*Eon-Net LP*, 249 Fed.Appx. 189, 193-194 (Fed.Cir. 2007) ............................................................ 7

*Exigent Technology, Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301 (Fed. Cir. 2006) ..................... 6

*Inverness Med. Switz. Gmbh v. Princeton Biomeditech Corp.*, 309 F.3d 1365 (Fed. Cir. 2002) ................................................................................................................................... 6

*Jackson v. City of Columbus,* 194 F.3d 737 (6th Cir. 1999) ........................................................ 11

*Kioto,* 381 F.3d 1142, 1147 (Fed. Cir. 2004) .................................................................................. 7

*Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015 (5th Cir.1996) ............................................. 11

*Michigan Bell Telephone Co. v. Strand,* 26 F. Supp. 2d 993 (W.D. Mich. 1998) ........................ 11

*Nieman v. NLO, Inc.*, 108 F.3d 1546 (6th Cir.1997) .................................................................... 11

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) .......................................................... 10

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192 (3d Cir.1993) .......... 11

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ........................................................ 2, 6, 7

*Svete v. Wunderlich,* 2008 WL 4425509, at * 2, *5 (S.D. Ohio, Sept. 30, 2008) ......................... 11

*Tex Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002) ....................................... 6

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) ........................................... 6

*Wedgewood Ltd. P'ship I. v. Township of Liberty, Ohio*, 456 F. Supp. 2d 904 (S.D. Ohio, 2006) ............................................................................................................................. 11

LACA_2109326.2

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

15 U.S.C. § 1125(a) ..................................................................................................13

*Fed. R. Civ. Proc.* 26(b)(1) ......................................................................................10

Federal Rule of Civil Procedure 12(b)(6) ...........................................................11, 12

Federal Rule of Civil Procedure 12(d) .....................................................................11


**STATE: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

Rule 56 ................................................................................................................12, 14


**OTHER AUTHORITIES**

*American Heritage Dictionary of the English Language* ..................................... 8-9

## I. INTRODUCTION

Once the unsupported conclusions, mis-cited law, and *non sequiturs* are parsed from Plaintiff Aaron Clark's ("Clark") Opposition to Defendants JAKKS Pacific, Inc., Play Along Toys and Toys "R" Us' (collectively, "Defendants") Motion to Dismiss, one thing is clear: Clark's claims must be dismissed.

As to the patent-related claim, Clark admits that the Accused Posters cannot, under any conceivable fact pattern, infringe the '272 patent. Claims 1 and 5—which according to Clark are the infringed claims—require that the surface of the sound device's housing unit be "prepared with a matching art which is substantially the same as that [area] of said poster art which appears on said portion of said poster that ***said housing covers*** when said housing is attached to said poster . . . ." In his opposition, Clark concedes that the housing surface does not match the art that is covered by the housing as required by the claims. Instead, Clark claims that the housing matches "the interior color of the 'Hannah Montana' logo and color scheme of the poster," and "the purple color outlining the word 'Cheetah Girls.'" (Opp. at p. 19) In other words, Clark does not even attempt to show how the surface of the housing matches the art that is covered by the housing as required by the patent. This failure is fatal and requires dismissal of Clark's patent claim because Clark has identified no set of facts under which the Accused Posters can infringe.

Clark's other arguments are similarly facile. Clark seems to claim that the Court may not construe the terms of the '272 patent and may not reach the question of non-infringement on this motion to dismiss. But Clark fails to cite even a single case that actually so holds, relying instead on a mixture of pure *ipse dixit* and misrepresented citations. Clark makes the similarly preposterous claim that the Court may not consider either the portions on the file history or dictionary definitions submitted by Defendants because they are not within "the four corners" of

1

the Complaint. To reach this conclusion, Clark ignores the universally applied black-letter law that the Court may consider materials subject to judicial notice in connection with a motion to dismiss, and that the materials Defendants submitted are unquestionably subject to judicial notice.

Perhaps Clark's most far-fetched arguments is his argument in support of the Lanham Act claim.[1] Clark's argument, essentially, is that by selling allegedly infringing products, Defendants misrepresent the origin of those products because Clark is the true inventor. Putting aside the fact that Clark concedes that the Accused Posters cannot infringe, Clark's Lanham Act argument runs him directly against the Supreme Court, which has already held that *exactly* the type of claim that Clark attempts to gin-up here is not cognizable as a matter of law under the Lanham Act.

In short, Clark's arguments fail in every possible way, and expose the truly frivolous nature of this case. This Court has an opportunity to minimize the unnecessary expense of litigating a case that, under no circumstances, has a future. Even entertaining every assumption in Clark's favor will not salvage this case. Thus, this Court should dismiss this case with prejudice consistent with the Federal Rules' admonition to "secure the just, speedy, and inexpensive determination of every action and proceeding."

**II.    ARGUMENT**

### A. Clark Concedes That The Accused Posters Cannot Possibly Infringe

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005), *quoting Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004). ***All*** of the words in the claim "have meaning and must be

---

[1] Clark makes no attempt to salvage the Ohio Deceptive Trade Practices claim, relegating that claim to the waste bin.

LACA_2109326.2

given effect." *Environmental Instruments, Inc. v. Sutron Corp.*, 877 F.2d 1561, 1564 (Fed. Cir. 1989) (abrogated on other grounds). "The claims alone delimit the right to exclude; only they may be infringed." *Id.* Thus, it is axiomatic that each and every claim limitation must be found in the accused device for an accused device to infringe, and Clark's admissions in his opposition brief demonstrate that this simply is not and cannot be the case here.

Claims 1 and 5 require that the "surface of said housing is prepared with a matching art which is substantially the same as that [area] of said poster art which appears on said portion of said poster that said housing covers when said housing is attached to said poster . . ." (*See,* Kinsel Decl.[2] at Ex. 1, c1 and c5.) There can be no dispute that the art that the housing surface must match, therefore, is the art that the housing "covers" when the housing is attached to the poster. For purposes of these claims, therefore, it is utterly besides the point that the housing surface matches some *other* portion of the poster that the housing does not cover. One need only look to the art over which the housing is placed to determine whether there is infringement.

Here, Clark concedes the obvious—namely, that the housing surface does not match the art over which the housing is placed. Instead, according to Clark, with respect to the Hanna Montana poster, the housing unit matches the "logo and color scheme of the poster." (Opp. at p. 19.) Similarly, the Cheetah Girls housing surface matches the "purple color outlining the word 'Cheetah Girls' and is designed enough so as to artistically 'blend[]' into the surrounding poster." (Id.) But it is not enough that the Accused Posters use a color that is a "substantially" "matching" "hue" as Clark claims. Rather, the housing surface must match the area over which the housing is placed. And not even Clark contends that to be the case with respect to the Accused Posters.

---

[2] Kinsel Decl. was filed in support of Defendant's Opening Papers [Docket No. 11-2].

3

Perhaps the simplest way to illustrate the difference between what the claims require on the one hand, and what the Accused Posters actually do on the other, is to compare a poster made in accordance with the invention disclosed in the '272 patent with the Accused Posters. Clark claims that the '272 patent "incorporates sound into posters featuring prominent entertainers . . . such as . . . Ricky Martin." (Opp. at p. 8.) Below is an image of a Ricky Martin poster with the speaker housing circled in red:



As the Court can see, the speaker housing—when prepared in the manner required by Claims 1 and 5—matches the area that it covers. In the Ricky Martin example, the speaker housing is covered with a purple and white checked pattern that matches the purple and white check background over which the housing is placed.

In contrast, the Accused Posters simply do not include this element of the claim. The limitations of Claims 1 and 5 that require the housing surface to match the art that is covered by the housing is not met, and cannot be met, as shown most dramatically by the images attached to Clark's complaint. (*See,* Kinsel Decl. at Exs. 2 and 3.) Indeed, nowhere in Clark's opposition does he even try to argue that the housing surface matches the art that the housing covers (as opposed to some other portion of the poster).

 

Thus, Clark's concession in his opposition that the housing surface on the Accused Posters matches only portions of the Accused Posters *other than* the art over which the housing is placed, is fatal.

### B. The Court May Find Non-Infringement On A Motion To Dismiss

Clark's next argument fares no better than his first. Clark claims that the Court may not reach the question of non-infringement on this motion to dismiss. But Clark cites no law standing for this proposition and ignores all contrary law.

#### *1. The Court May Construe Claim Terms On A Motion To Dismiss*

Claim construction is a question of law for the Court and may be reached on a motion to dismiss. *Exigent Technology, Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1311 (Fed. Cir. 2006) ("[C]laim construction is a legal issue.") Claim construction is nothing more than applying the common, ordinary meaning of the claim terms as understood by one of ordinary skill in the art. In reaching its construction of the common, ordinary meaning, the Court may turn to the patent specification, the file history, and even dictionaries, all of which are properly before the Court on this motion to dismiss. *See Dow Chem Co. v. Sumitomo Chem. Co.*, 341 F.3d 1370, 1372 (Fed. Cir. 2001); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996); *Tex Digital Sys., Inc. v. Telegenix, Inc*., 308 F.3d 1193, 1203 (Fed. Cir. 2002); *Inverness Med. Switz. Gmbh v. Princeton Biomeditech Corp*., 309 F.3d 1365, 1372 (Fed. Cir. 2002). When construing claims, a court must begin by "look[ing] to the words of the claims themselves . . . to define the scope of the patented invention." *Phillips*, 415 F.3d at 1312. "The task of comprehending those words is not always a difficult one. 'In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application

6

of the widely accepted meaning of commonly understood words." *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 805, (Fed. Cir. 2007) *quoting Phillips,* 415 F.3d at 1314.

As pointed out in Defendants' moving papers, the terms at issue here—"matching art," "substantially the same," "covers," "blends"—are all common words with ordinary meanings that are readily apparent. Clark has not shown that the inventor used these terms in some special, technical fashion that would preclude the Court from applying the common, ordinary meaning for these terms. Instead, as the Federal Circuit has observed, claim construction in this case "involves little more than the application of the widely accepted meaning of commonly understood words." *Philips*, 415 F.3d at 1314. There is no reason in law or fact that the Court cannot reach these constructions on this motion to dismiss.

Clark asserts that the Court may not conduct a *Markman* hearing at the noticed pleading stage. But, of course, no such hearing is necessary as all claim terms have ordinary, non-technical meanings that may be determined based upon the materials before the Court (the patent, its claims and specification, undisputed dictionary definitions, and the patent file history). Moreover, the cases Clark cites are not to the contrary. For instance, Clark cites *Eon-Net LP v. Flagstar Bancorp* and *Koito Mfg. co. v. Turn-Key-Tech, LLC.* Neither of these cases stand for the proposition that the Court cannot construe patents on a motion to dismiss, and both were decided in the context of motions for summary judgment—not motions to dismiss. In *Eon-Net*, the Court found that the district court improperly granted summary judgment on issues of non-infringement without giving the non-moving party notice and an opportunity to present evidence and argument in opposition. *Eon-Net LP*, 249 Fed.Appx. 189, 193-194 (Fed.Cir. 2007). Here, Clark had such an opportunity. In *Koito,* the Court simply referenced the fact that the trial court had conducted a *Markman* hearing and construed the claim language in the context of summary judgment. *Kioto,* 381 F.3d 1142, 1147 (Fed. Cir. 2004). Putting these clearly miscited cases

7

aside, Clark does not cite *a single case* for the dubious proposition that the Court may not construe the terms of this patent, which contain nothing but commonly understood terms, on this motion to dismiss.

### 2. *The Common Ordinary Meaning Of The Claim Terms Requires That the Housing Surface Be Prepared With Art That Is Indistinguishable From The Underlying Art*

While on the one hand contending that the Court may not construe the patent's claims, Clark also seeks to do just that—only incorrectly. (*See,* Opp at page 5). Clark attempts to define the terms "matching," "substantially" and "blends," so broadly as to render them essentially meaningless. Clark offers no basis for these definitions, no citations to the patent supporting them, and no opposing dictionary definitions. Instead, he just states these definitions as though by stating them, he has proven them. For instance, Clark claims that "[t]he language of the '272 Patent is designed to refer to a housing that is 'similar' or 'complimentary' which are both words similar in definition to 'substantially' 'matching' and 'blends' and are common terms used interchangeably." (Opp. at p. 13.) Clark offers no explanation based on the patent claims, specification, file history or even competitive dictionaries to support this claim. He claims only that the "concept" of the '272 patent is "the talking poster with the housing being once part of the intent of the patent." (Opp. at p. 10.) But, of course, a "concept" cannot be infringed; only a valid claim can, and a claim has specific words and meaning, which Clark cannot simply ignore.

As explained in Defendants' Opening Brief, the common, ordinary meaning of the term "match" is "a person or thing that is exactly like another; counterpart." *American Heritage Dictionary of the English Language,* p. 805 (Kinsel Decl. Ex. 4.) "Blend" means "To combine or mix so as to render the constituent parts indistinguishable from one another." *Id.* at p. 141 (Kinsel Decl. Ex. 4.) Thus, Claims 1 and 5 clearly require that the housing surface be prepared with art that is substantially the counterpart of the art over which the housing is placed so that the

8

housing becomes indistinguishable from the art that is not covered by the housing. This is exactly the configuration of the Ricky Martin poster, above, and is exactly what is required by the claims of the patent.

This construction is further supported—as if further support were needed—by the background and summary of the '272 patent which Clark cites. That section states: "The present invention is a novel method and apparatus for providing sound techniques under a material that *incorporates* the poster artwork into the material." ('272 patent at 1:18-20 [emphasis added].) [3] The inventor further explains that the "material is painted with *a portion of the artwork from the poster*." ('272 patent at 1:20-23 [emphasis added].) Further, the benefit of the invention is described as providing a "poster with the sound equipment without interfering with the artwork on the poster." ('272 patent at 1:58-60.)

### 3. The Court May Reach The Non-Infringement Decision On This Motion To Dismiss

As with Clark's claim that the Court may not construe the terms of the patent on a motion to dismiss, Clark's claim that the Court may not reach a non-infringement determination on a motion to dismiss is based on, at most, wishful thinking. Clark does not cite a single case standing for the proposition that the Court may not make a non-infringement determination when the accused products are before the Court as they are in this case. As pointed out in the Opening Brief, Clark attached images of the Accused Posters as Exhibits to the Complaint. The failure of these Accused Posters to meet each and every limitation contained in Claims 1 and 5 of the '272 patent is clear from the pictures themselves. As a result, the Court has all that it needs to make

---

[3] "Incorporates" is also perfectly consistent with the terms "match" and "blend" from Claims 1 and 5. "Incorporate" means "to unite with or blend indistinguishably into something already in existence;" "to cause to merge or combine together into a united whole." *American Heritage Dictionary of the English Language*, ed. 1981, at p. 666. (emphasis added).

9

its non-infringement determination, and as was pointed out more than seventy years ago: "The law is well established that where the alleged infringing device or devices are before the court . . . the question of infringement may be determined upon a motion to dismiss." *Bradt v. Kelsey-Hayes Wheel Corporation*, 14 F.Supp. 709, 709 (E.D. Mich. 1936). Clark offers nothing to the contrary.

Clark seems to contend that dismissal is inappropriate as there may be other—as yet unidentified posters—that infringe the patent. But, of course, if the posters that are identified in the Complaint do not infringe, which they clearly do not, then Clark cannot maintain this action based on other products that he has not even identified as potentially infringing. As the Advisory Committee stated in discussing whether a plaintiff is entitled to discovery for claims not alleged: "The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." *Fed. R. Civ. Proc.* 26(b)(1), Advisory Committee Notes, 2000 Amendment. Clark has not alleged any product—other than the Accused Posters—that supposedly infringe the patent-in-suit, and he is not entitled to discovery to develop new claims based on other products not already identified in the Complaint. Simply put, it is improper to claim infringement in the mere hope of someday obtaining discovery that might—someday—support a charge of infringement. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 363 (1978). Clark must do his diligence ***before*** he files a Federal Court lawsuit.

        *4.*      *There Is No Reason To Convert This Motion To A Summary Judgment Motion, But Even If The Court Decides To Do So, The Motion Must Be Granted And Judgment Entered*

Clark takes exception with Defendants' request that the Court consider dictionary definitions and excerpts from the '272 patent's file history. As discussed in Defendants'

LACA_2109326.2

separately filed Opposition to Motion to Strike, Clark's claims are seriously misplaced, and the Court is unambiguously permitted to consider the materials Defendants submitted. *See Svete v. Wunderlich,* 2008 WL 4425509, at * 2, *5 (S.D. Ohio, Sept. 30, 2008) (while matters outside the pleadings generally not considered on a motion to dismiss, court may consider public records or other matters properly judicially noticed.); *see also Wedgewood Ltd. P'ship I. v. Township of Liberty, Ohio*, 456 F. Supp. 2d 904 (S.D. Ohio, 2006); *Doe v. Sexsearch.com,* 502 F. Supp. 2d 719, 728 (N.D. Ohio, 2007) (documents a defendant attaches to a motion to dismiss are considered part of the pleadings if they are (1) referred to in the plaintiff's complaint and (2) are central to his claims.); *Michigan Bell Telephone Co. v. Strand,* 26 F. Supp. 2d 993, 996 (W.D. Mich. 1998) ("In deciding a motion under Federal Rule of Civil Procedure 12(b)(6), it is proper for the Court to take judicial notice of facts which are indisputable because they are capable of ready determination from resources whose accuracy cannot be reasonably questioned.") (citations omitted).

Moreover, there is no reason to convert Defendants' motion to dismiss to a summary judgment motion as Defendants have only requested that the Court consider materials that are subject to judicial notice. Materials that are referred to in a complaint or subject to judicial notice are exempted from Federal Rule of Civil Procedure 12(d)'s requirement to convert a 12(b) motion into a summary judgment motion when materials outside the complaint are considered. *See, e.g., Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir.1997) (public records); *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1018 (5th Cir.1996) (judicial notice); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir.1993) (letter decisions of governmental agencies); *Jackson v. City of Columbus,* 194 F.3d 737, 745 (6th Cir. 1999). Thus, Rule 12(d) does not apply here.

LACA_2109326.2

But even if the Court converted this motion to a Rule 56 motion, it nevertheless must be granted. Clark fails to comply with Rule 56(f)'s requirement of an affidavit that states specific reasons why facts essential to the opposition cannot be presented. Indeed, Clark had the opportunity to present opposing dictionary definitions, or opposing excerpts from the prosecution history, specification or claims. Clark had the same access to this information as did Defendants. The fact that he failed to present any such materials simply indicates that opposing materials do not exist; not that he had insufficient opportunity to obtain them. As such, whether treated as a Rule 12(b)(6) motion, or as a converted Rule 56 motion, the result is the same: The case is over and must either be dismissed with prejudice or judgment entered in Defendants' favor.

### C. Clark's Lanham Act Claim Is Contrary to Supreme Court Authority[4]

Clark's Lanham Act claim is precluded by directly controlling Supreme Court authority. Clark's basic claim is that by selling products that allegedly infringe the '272 patent, Defendants are misrepresenting the origin of their products because Clark, and not the Defendants, is the origin of the underlying intellectual property. (Opp. at p. 22.) Essentially, Clark's theory is a reverse palming-off theory. Unfortunately for Clark, however, his theory runs ***directly contrary*** to *Dastar Corporation v. Twentieth Century Fox Film Corporation,* 539 U.S. 23, 123 S.Ct. 2041 (2003).

In *Dastar,* the Supreme Court specifically rejected *exactly* the theory that Clark attempts here. In *Dastar*, the plaintiff owned a copyright on a television series. The defendant used portions of the television series in its own video and sold the video under the defendant's name. No attribution of any kind was made to the plaintiff as the copyright owner of the underlying work. The plaintiff sued for copyright infringement and false designation of origin under the

---

[4] Clark offers no defense of his Ohio Deceptive Trade Practices Act and, therefore, dismissal should be entered accordingly.

12

Lanham Act. Exactly as Clark does here, the plaintiff in *Dastar* alleged that by the defendant's selling its infringing product, it was falsely representing the origin of the work. The Supreme Court flatly rejected this theory.

The Lanham Act creates a federal remedy against a person who uses in commerce either "a false designation of origin, or any false description or representation" in connection with "any goods or services." 15 U.S.C. § 1125(a). The Supreme Court found that "origin" as used in the Lanham Act does not mean the intellectual property creator of the underlying work, but rather, the creator of the physical product. Thus, because the defendant's product—exactly as is the case here—did not misrepresent who created the physical product, the plaintiff could not state a claim for false designation of origin. "[A]s used in the Lanham Act, the phrase 'origin of goods' is in our view incapable of connoting the person or entity that originated the ideas or communications that 'goods' embody or contain. Such an extension would not only stretch the text, but it would be out of accord with the history and purpose of the Lanham Act and inconsistent with precedent." *Id.* at p 32.

Thus, precisely as in *Dastar*, even if one assumes *arguendo* that the Accused Posters infringe the '272 patent—which of course they absolutely do not—Clark still could not state a claim for false designation of origin based simply on Defendants' sales of the Accused Posters. Clark has not alleged that any statements on the products or their packaging falsely states who physically created the products. His theory, like the plaintiff's theory in *Dastar*, is that the supposed "origin" of the underlying intellectual property is being misrepresented. But as the Supreme Court held in *Dastar,* such a theory is not cognizable under the Lanham Act. The Lanham Act requires some false statement as to the physical source of the products, which Clark has not alleged. As such, Defendants' motion to dismiss must be grated because as a matter of Supreme Court authority, the theory that Clark peddles here falls flat.

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion to Dismiss, or in the alternative, enter judgment for Defendants pursuant to Rule 56.

Dated: February 10, 2009

Respectfully submitted,

By: /s/ *Michael C. Lueder*
Michael C. Lueder
Foley & Lardner LLP
777 E. Wisconsin Ave.
Milwaukee, WE 53202
Tel: (414) 297-4900
Trial Attorney

/s/ *Grant E. Kinsel*
Grant Kinsel
(Pro Hac Vice)
Foley & Lardner LLP
555 South Flower St., Suite 3500
Los Angeles, CA 90071
Tel: (213) 972-4500
*Attorneys for JAKKS Pacific, Inc., Play Along Toys, KB Toys, and Toys "R" Us, The Walt Disney Company*

# CERTIFICATE OF SERVICE

I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served today with a copy of this document via the Court's CM/ECF system per Local Rule 5.2. Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

Dated: February 10, 2009 /s/ Grant E. Kinsel

| | |
|---|---|
| Brian Edward Dickerson<br>The Dickerson Law Group<br>5003 Horizons Drive<br>Suite 200<br>Upper Arlington , OH 43220<br>614-339-5370<br>Fax: 614-442-5942<br>bdickerson@dickerson-law.com<br><br>Kevin R Conners<br>5003 Horizons Drive Suite 101<br>Columbus , OH 43220<br>614-562-5877<br>kevinconners@kevinconners.com<br><br>Sharlene I Chance<br>The Dickerson Law Group<br>5003 Horizons Drive<br>Suite 200<br>Columbus , OH 43220<br>614-339-5370<br>Fax: 614-442-5942<br>schance@dickerson-law.com | Attorneys for Plaintiff Aaron Clark |