IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRIC OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AARON CLARK, | : | |
| | : | |
|     *Plaintiff,* | : | |
| v. | : | Case No. 2:08CV982 |
| | : | |
| THE WALT DISNEY COMPANY, et al., | : | Judge Holschuh |
| | : | |
|     *Defendants.* | : | Magistrate Judge Abel |

**PLAINTIFF AARON CLARK'S MEMORANDUM IN OPPOSITION
TO DEFENDANT THE WALT DISNEY COMPANY'S MOTION TO DISMISS
PURSUANT TO FED.R.CIV.P. 12(b)(2) FOR LACK OF PERSONAL JURISDICTION**

Now comes Plaintiff, Aaron Clark ("Plaintiff") by and though undersigned counsel and respectfully submits this Memorandum in Opposition to Defendant The Walt Disney Company's ("TWDC") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) (Doc. 16). The reasons in support of Plaintiff's Memorandum in Opposition are fully set forth in the accompanying Memorandum in Support.

    Respectfully submitted,

    **THE DICKERSON LAW GROUP, P.A.**

    /s/ Brian E. Dickerson_____
    Brian E. Dickerson    (0069227)
    Sharlene I. Chance    (0070999)
    Kevin R. Conners    (0042012)
    5003 Horizons Drive, Suite 101
    Columbus, OH 43220
    Telephone: (614) 339-5370
    Facsimile: (614) 442-5942
    bdickerson@dickerson-law.com
    schance@dickerson-law.com
    kconners@dickerson-law.com
    *Attorneys for Plaintiff Aaron Clark*

**MEMORANDUM IN SUPPORT**

I.  **INTRODUCTION AND FACTUAL BACKGROUND**

On August 20, 1996, the U.S. Patent and Trademark Office ("PTO") issued the '272 Patent, which is entitled "Talking Poster" to Plaintiff. Plaintiff is engaged in the design, marketing, distribution and sale of Talking Posters. Doc. 2, ¶24. Congress enacted U.S. Patent laws under its constitutional grant of authority to protect the discoveries of inventors. *See*, U.S. Constitution, Article I, Section 8. The patent law grants Plaintiff the right to exclude others from making, using, or selling his invention[1].

On October 17, 2008, Plaintiff filed a Complaint against Defendants TWDC, JAKKS, PAT, KB Toys[2], Amazon.com[3] and Toys "R" Us asserting three causes of action related to the Defendants' misappropriation of Plaintiff's patent rights of the '272 Patent. (Doc. 2). Specifically, Plaintiff sets forth that Defendant TWDC, being aware of the '272 Patent as early as August 1996 and as late as 1999, has infringed on Plaintiff's patent by manufacturing, reproducing and/or selling Hannah Montana Talking Posters and Cheetah Girls Talking Posters ("infringing posters"), which embody the subject matter claimed in the '272 Patent. Doc. 2. Offered for sale on its website, Disney.com, are Hannah Montana and Cheetah Girls Talking Posters which infringe on Plaintiff's '272 Patent.

On January 23, 2009, Defendant TWDC filed a Fed.R.Civ.P. 12(b)(2) Motion to Dismiss for lack of personal jurisdiction arguing that Plaintiff has no basis for asserting personal

---

[1] The right to exclude others also includes infringing produces or devices that are equivalent to Plaintiff's claimed invention. The doctrine of equivalents extends the right to exclude beyond the literal scope of the claims. *Johnson & Johnston Assocs. v. R.E. Serv. Co.*, 285 F.3d 1046, 1053 (Fed. Cir. 2002); *Fuji Kogyo Co., Ltd. v. Pac. Bay Int'l, Inc.*, 461 F.3d 675, 688 (6th Cir. 2006) (the scope of a patent is not limited to its literal terms but also embraces all equivalents to the claims described).

[2] On December 11, 2008, Defendant KB Toys, Inc. filed for Chapter 11 bankruptcy in the United States Bankruptcy Court of Delaware. *See*, *In re KB Toys, Inc.*, Case No.: 08-13269-KJC, Doc. 1.

[3] Plaintiff dismissed Defendant Amazon.com, without prejudice, on December 12, 2008. *See*, Doc. 6.

jurisdiction and as such, this Honorable Court should dismiss Plaintiff's Complaint as it pertains to the Causes of Actions asserted against TWDC. Specifically, TWDC argues that as a holding company incorporated in Delaware and maintaining offices only in New York and California, TWDC has (1) no contacts in Ohio; (2) conducts no business in Ohio; (3) has no offices in Ohio; (4) has no employees in Ohio; (5) no agent for service of process in Ohio; (6) no property in Ohio; and (7) "does not, and never has, made, used, sold, offered for sale, or imported for sale" any of the infringing posters. Doc. 16, *Declaration of Marsh Reed*.

According to Defendant TWDC's website at www.disney.com, Defendant TWDC, either directly or through its subsidiaries, conducted business in via various means, throughout the United States and throughout the State of Ohio. Plaintiff has pleaded sufficient facts that Defendant TWDC, through its subsidiaries, initiated contacts with Ohio to establish personal jurisdiction. There has not been any discovery to explore whether there is also a basis for finding corporate veil piercing, or alter ego or other secondary liability on Defendant TWDC for the acts of its subsidiary operating in Ohio. However, the acts of Defendant TWDC and its subsidiaries are so closely aligned that this Honorable Court can reasonably establish jurisdiction over Defendant TWDC.

## II. LAW AND ARGUMENT

### A. Federal and Ohio law

Personal jurisdiction issues in a patent infringement case are reviewed under Federal Circuit law. *Silent Drive Inc. v. Strong Indus.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003); *Deprenyl Animal Health, Inc. v. University of Toronto Innovations Found.*, 297 F.3d 1343, 1348 (Fed. Cir. 2002); *Logan Farms v. HBH, Inc.*, 282 F. Supp. 2d 776, (S.D. Ohio 2003). The Sixth Circuit has recognized that a federal district court, sitting in diversity jurisdiction, must apply the law of

the forum state to determine whether it has personal jurisdiction over a non-resident defendant. *Nationwide Mutual Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790-793 (6th Cir. 1996).

Plaintiff bears the burden of demonstrating personal jurisdiction. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2001); *Pride Distributors, Inc. v. Nuzzolo*, 2007 U.S. Dist. LEXIS 26657 (E.D. Mich. Apr. 10, 2007). This burden can be met by "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Neogen Corp.*, 282 F.3d at 887, *quoting Provident Nat'l Bank v. California Fed. Savings Loan Ass'n*, 819 F.2d 434, 437 (3rd Cir. 1987). The Sixth Circuit has affirmatively recognized that Plaintiff must only make a prima facie showing of jurisdiction and that evidentiary burden "is relatively slight." *See, Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 987 (6th Cir. 1992); *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988).

Prior to discovery, the plaintiff must only make a prima facie showing that the defendant is subject to personal jurisdiction and the pleadings and affidavits must be "construed in the light most favorable to the plaintiff." *Silent Drive*, 326 F.3d at 1201; *Theunissen v. Mattews*, 935 F.2d 1454, 1458 (6th Cir. 1991). Thus, in deciding whether the plaintiff has made such a showing, the court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor. *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). Any pleadings and affidavits submitted must be viewed in a light most favorable to Plaintiff, and this Honorable Court should not weigh "the controverting assertions of the party seeking dismissal." *Theunissen v. Mattews*, 935 F.2d at 1459. The Sixth Circuit has explained:

> The procedural scheme which guides the district court in disposing of Rule 12(b)(2) motions is well-settled. The plaintiff bears the burden of establishing that jurisdiction exists. Additionally, in the face of a

4

> properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction…
>
> Presented with a properly supported 12(b)(2) motion and opposition, the court has three procedural alternatives: it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions. The court has discretion to select which method it will follow, and will only be reversed for abuse of that discretion. However, the method selected will affect the burden of proof the plaintiff must bear to avoid dismissal...Where the court relies solely on the parties' affidavits to reach its decision, the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal.

*Id.* at 1458.

"Personal jurisdiction over an out-of-state defendant arises from certain minimum contacts with [the forum] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Air Products and Controls, Inc. v. Safetech Int'l, Inc.*, 503 F. 3d 544 (6th Cir. 2007), *quoting*, *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945). *See also*, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). In determining whether due process is satisfied in a patent case, the Federal Circuit has identified three factors for consideration: 1) whether the defendant purposefully directed its activities at residents of the forum; (2) whether the claim arises out of or relates to the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is reasonable and fair. *Silent Drive*, 326 F.3d at 1201-02, *citing*, *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001). *See also*, *Calphalon Corp v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000), *quoting*, *Southern Machine Co. v. Mohasco Indust., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

Personal jurisdiction must be either general or specific. General jurisdiction may exist where a defendant "has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant… ." *Kerry Steel, Inc. v. Paragon Indust., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997), *citing*, *Helicopteros Nacionales de Columbia S.A. v. Hall*, 466 U.S. 408, 414-15, 104 S.Ct. 1868, 80 L. Ed. 2d 404 (1984). Specific jurisdiction, on the other hand, "exposes the defendant to suit in the forum state only on claims that 'arise out of or relate to' a defendant's contacts with the forum." *Kerry Steel, Inc.*, 106 F.3d at 149; *Helicopteros Nacionales*, 466 U.S. at 414-15.

Here, personal jurisdiction over Defendant TWDC is based on its commercial activities relating to manufacturing, licensing, using, reproducing and/or selling the infringing posters which embody the subject matter claimed in the '272 Patent within the State of Ohio. When jurisdiction is alleged, this Honorable Court must look to Ohio's long-arm statute and determine whether TWDC is amenable to service of process under that statute. Fed.R.Civ.P. 4(k)(1)(A); *Silent Drive*, 326 F.3d at 1200; *Hildebrand v. Steck Mfg. Co., Inc.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002). Ohio's long-arm statute limits the state's personal jurisdiction over non-resident defendant and provides in pertinent part that:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1) Transacting any business in this state;
>
> (2) Contracting to supply services or goods in this state;
>
> (3) Causing tortious injury by an act or omission in this state;
>
> (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other

> persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

> ***

Ohio Rev. Code § 2307.382(A), Although other subsections of the long-arm statute "may require direct contact with the state, [Federal Circuit] analysis of the plain meaning and application by Ohio courts of subsection (4) leads . . . to [the] conclusion that no such contact is required under that subsection." *Schwanger v. Munchkin, Inc.*, 1999 U.S. App. LEXIS 25038 (Fed. Cir. Oct. 7, 1999). Subsection (4) applies to defendants who act outside of Ohio to cause tortious injury inside the state. Long-arm jurisdiction over such defendants exists if they regularly do or solicit business in Ohio, engage in any other persistent course of conduct, or derive substantial revenue from goods used or consumed or services rendered in this state. *Id.*

### B. This Court Has Personal Jurisdiction Over Defendant TWDC In Accordance With Federal and Ohio Statutes.

The mere presence of the parent company is not sufficient basis for jurisdiction, unless the parent is acting as the agent of the subsidiary, or the parent's control over the subsidiary is such that the subsidiary is merely a department of the parent. *Grill v. The Walt Disney Co.*, 683 F. Supp. 66, 69 (S.D. N.Y. 1988) (court failed to confer jurisdiction were record devoid of Disney Company acting as an agent for Disney World Company or that Disney World Company is merely a department of Disney Company). Jurisdiction over a subsidiary can be based upon the activities of the parent corporation if it is clear that the parent is acting as an "agent" of the subsidiary. The activities of both must be so interrelated that one cannot reasonably separate the two corporate entities. *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983); *Schulman v. Walt Disney World Co.*, 1992 U.S. Dist. LEXIS 2267; *Grill*, supra at 69.

Distinguishable from *Grill* supra, the facts of this case demonstrates that Defendant TWDC possesses such minimum contacts with the State of Ohio that the existence of jurisdiction would comport with "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316. Defendant TWDC conducted acts and activities in the State of Ohio sufficient to subject itself to personal jurisdiction under both the general and specific jurisdiction statutes referenced in the preceding paragraphs.

    *1.    Defendant TWDC's contacts with Ohio are sufficient to confer general jurisdiction.*

Defendant TWDC in its Motion to Dismiss (Doc. 16) argues that as a holding company, incorporated in Delaware and maintaining offices only in New York and California, TWDC has (1) no contacts in Ohio; (2) conducts no business in Ohio; (3) has no offices in Ohio; (4) has no employees in Ohio; (5) no agent for service of process in Ohio; (6) no property in Ohio; and (7) "does not, and never has, made, used, sold, offered for sale, or imported for sale" any of the infringing posters. *See*, Doc. 16, *Declaration of Marsha Reed*. To the contrary, Defendants TWDC directly and through the actions of its subsidiaries and business segments, have engaged in sufficient acts in Ohio to subject itself to personal jurisdiction in Ohio. Defendant TWDC and its business segments' commercial contacts with Ohio meet the continuous and systematic contacts test applied in *Helicopteros*, 466 U.S. at 414-15.

Foremost, Defendant TWDC and its business segments, through its highly interactive website, Disney.com, makes, sells and solicits business in the State of Ohio and serves Ohio's markets. *See*, Doc. 2, Exhibit C. The Affidavit of Dennis Hanzel, attached to Plaintiff's Complaint (Doc. 2, Exhibit G) provides that "Disney's website listed a Hannah Montana singing

poster 'If We Were a Movie' for sale at $5.99." *Affidavit of Dennis Hanzel*, ¶17. The opening sentence of Defendant TWDC's Form 10-K provides that:

> The Walt Disney Company, together with its subsidiaries, is a diversified worldwide entertainment company with operations in four business segments: Media Networks, Parks and Resorts, Studio Entertainment, and Consumer Products. For convenience, the terms 'Company' and 'we' are used to refer collectively to the parent company and the subsidiaries through which our various businesses are actually conducted.

*The Walt Disney Company Securities and Exchange Commission Form 10-K*, filed November 20, 2008, attached hereto as Exhibit "A." Defendant TWDC, together with its business segments targets its electronic advertising "worldwide" and maintains Disney.com from which large numbers of Ohio customers can regularly make purchases and interact with Defendant TWDC's sales representatives. Defendant TWDC's sale of the infringing Hannah Montana and Cheetah Girls Talking Posters on its website (Doc. 2, Exhibits C and G) has allowed it to generate sales worldwide and within the State of Ohio. Defendant TWDC's 2008 Annual Report, attached hereto as Exhibit "B" reveals that revenue from Defendant TWDC and its business segments is combined into TWDC's overall revenue numbers and provided in consolidated results. Annual Report, p. 58. "The Company evaluates the performance of its operating segments based on segment operating income and management uses aggregate segment operating income as a measure of the overall performance of the operating businesses." Annual Report, p. 59. "2008 vs. 2007 Revenues for the year increased 7% or $2.3 billion, to $37.8 billion; net income decreased 6%, or $260 million, to $4.4 billion; and diluted earnings per share increased 1% to $2.28." Annual Report p. 58.

Additionally, Defendant TWDC's Form 10-K provides that "The Company owns nine very high frequency (VHF) television stations, six of which are located in the top-ten markets in

the United States, and one ultra-high frequency (UHF) television station…" Form 10-K, Domestic Television Stations, p.2. One of the stations listed is located in Toledo, Ohio. Defendant TWDC and its subsidiaries and business segments own 41 Radio Disney stations, including a station in Cleveland, Ohio. Form 10-K, p. 6. As such, Defendant TWDC's bold assertion that it does not conduct any business in Ohio, engage in any sales or advertising activity of any kind, including within the State of Ohio is factually inaccurate as Defendant TWDC's own Form 10-K report provides that the Company (Defendant TWDC and its subsidiaries) and its business segments conduct business and generate revenue in the State of Ohio.

Moreover, Defendant TWDC "maintains pension plans and postretirement medical benefits plans covering most of its employees…" at the radio and television stations in the State of Ohio. Form 10-K, p. 91. Defendant TWDC also offers stock options and stock appreciation rights which are granted to eligible participants of Defendant TWDC and its Affiliates (Form 10-K, Appendix A to Amended and Restated 1995 Stock Incentive Plan) and a stock incentive plan (Form 10-K, Exhibit 10.24). Defendant TWDC further has established an Employees Deferred and Compensation Plan "to provide retirement income to certain employees and to equalize the benefits of employees participating in certain retirement plans… [The TWDC] desires to provide certain designated key management and highly compensated Employees with enhanced retirement benefits…" Form 10-K, Exhibit 10.28, Article I. Again, the compensation plans benefits Ohio citizens who work for the radio business segment of Defendant TWDC.

Defendant TWDC's contact with the State of Ohio is not occasional or infrequent, but are ongoing, consistent and has resulted in sophisticated sales. Defendant TWDC, its subsidiaries and its business segments' sale of the Hannah Montana and Cheetah Girls infringing talking

10

posters "worldwide" and in the State of Ohio has enabled Defendant TWDC to increase its sales by $2.3 billion in one year. Defendant TWDC has a relationship with its business segments which conduct business in the State of Ohio. At this early stage of these proceedings, Plaintiff has adequately pled that there is general jurisdiction over Defendant TWDC due to its interactive website advertising plus substantial sales. Plaintiff has presented a prima facie case that Defendant TWDC has conducted the slightest act of doing business in Ohio. *Lanier v. Am. Bd. Of Endodontics*, 843 F. 2d 901, 906 (6th Cir. 1988), *cert denied*, 488 U.S. 926, 109 S.Ct. 310, 102 L. Ed. 2d 329 (1988). *See also*, *Schottenstein v. Schottenstein*, 2004 U.S. Dist. LEXIS 23864 (S.D.N.Y. Nov.8, 2004), attached hereto as Exhibit "C."

> *2. This Honorable Court has specific jurisdiction over Defendant TWDC as Defendant TWDC and its business segments have purposefully availed itself to the privilege of conducting activities within the State of Ohio, thus invoking the benefits and protections of the laws of this state.*

The purposeful availment requirement "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen*, 444 U.S. at 297. A defendant that has purposefully availed itself of the protection of the forum state "has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to consumers, or, if the risks are too great, severing its connection with the State." *Id.* The requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts." *Burger King*, 471 U.S. at 475. Defendant TWDC has "reached out beyond one state and create[d] continuing relationships and obligations with citizens of another state" subjecting it to regulation and sanctions to the State of Ohio for its actions. *Burger King*,

471 U.S. at 473. Long-arm jurisdiction over such defendants exists if they regularly do or solicit business in Ohio, engage in any other persistent course of conduct, or derive substantial revenue from goods used or consumed or services rendered in this state. *Schwanger v. Munchkin, Inc.*, 1999 U.S. App. LEXIS 25038 (Fed. Cir. Oct. 7, 1999).

    a. <u>Defendant TWDC has deliberately and purposefully availed itself, on a very large "worldwide" scale, of the benefits of doing business within the State of Ohio.</u>

Here, Plaintiff has made a *prima facie* showing that Defendant TWDC purposefully availed itself to the benefits and protection of Ohio's law. Defendant TWDC transacts business in the State of Ohio. Defendant TWDC and its business segments own Disney television and radio stations in the State of Ohio. Defendant TWDC owns and operates Disney Interactive Media Group ("DIMG") and Disney Online. DIMG is a subsidiary of Defendant TWDC and oversees various websites and interactive media owned by Defendant TWDC and its business segments. *See*, Exhibit "D." DIMG generates revenue mainly through advertising sales, sponsorships, subscriptions, and video game sales. Disney Online operates Disney.com (Disney.go.com or DisneyShopping.com), the No. 1 kids' entertainment and family community website. Exhibit D. Defendant TWDC and its business segments' operation of Disney.com, an interactive website, constitute purposeful availment.

The Sixth Circuit recognized that "operation of an Internet website can constitute the purposeful availment of the privilege of acting in a forum state… 'if the website is interactive to a degree that reveals specifically intended interaction with residents of the state.'" *Bridgeport Music, Inc. v. Still N The Water Publishing*, 327 F.3d 472, 483, *quoting*, *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002). Here, Defendant TWDC and its business segments host or operate Disney.com, which offers for sale the infringing Talking Posters sold on the internet for option

12

of shipment to the State of Ohio and this Honorable Court's jurisdiction. Defendant TWDC has purposefully availed itself of acting in the State of Ohio. Plaintiff has set forth sufficient argument to establish purposeful availment as a result of Defendant TWDC and its business segments' internet activity.

      b. <u>Plaintiff's causes of action arise from Defendant TWDC's activities in the State of Ohio.</u>

The Sixth Circuit applies a "lenient standard that applies when evaluating the 'arising from' criterion…" *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002). Defendants TWDC's contacts with the State of Ohio are related to the operative facts of the controversy such that Defendant TWDC is subject to jurisdiction of this Honorable Court. Plaintiff's Complaint for patent infringement (Doc. 2) arose from Defendant TWDC's contacts with Ohio. "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts. *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996). All that is required is "that the cause of action, or whatever type, have a substantial connection with the defendant's in-state activities." *Third Natl. Bank v. WEDGE Group, Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989). Defendant TWDC and its business segments own and operate Disney.com. Defendant TWDC committed patent infringement in offering to sell or by selling the infringing Hannah Montana and Cheetah Girls Talking Posters on Disney.com in the State of Ohio (Doc. 2, Exhibits C and G). In light of the Sixth Circuit's lenient standard, Plaintiff's has demonstrated that his claims "arise from" Defendant TWDC's contacts with Ohio.

      c. <u>The exercise of jurisdiction is reasonable in light of the connection that exists between Defendant TWDC and Ohio.</u>

An inference arises that this factor is satisfied if the first two requirements, as set forth above. are met. *Compuserve Inc.*, 89 F.3d at 1268. Here, several factors are relevant to the reasonableness inquiry and exercising jurisdiction over Defendant TWDC "including the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *Id.*

Defendant TWDC might argue it may suffer a burden in having to defend in Ohio; however, as a "worldwide entertainment company" Defendant TWDC cannot reasonably object to this burden given that Defendant TWDC has transacted business in Cleveland, Toledo and Columbus, Ohio. Ohio has a significant interest in discouraging patent infringement within the state and also has a substantial interest in cooperating with other states to provide a forum for efficiently litigating a plaintiff's cause of action. *Bird*, 289 F.3d at 875. Contrary to Defendant TWDC's argument that "[w]hile Clark has also thrown in a makeweight claim for violation of the Ohio Deceptive Trade Practices Act, this case will be controlled by Federal law" (Doc. 16, p. 13-14, fn omitted), Ohio maintains a legitimate business interest in protecting the business interests of its citizens even if claims asserted involve federal law. *Id.*

    3.    *Current case law supports jurisdiction over Defendant TWDC.*

In December 2008, the Western District of Michigan, Northern Division decided the case of *Keeley v. Airgas, Inc.*, 2008 U.S. Dist. LEXIS 104546 (E.D. Mich Dec. 19, 2008), (attached hereto as Exhibit "E") where it determined, after its review of Airgas' annual report and Form 10-K, that it was proper for the court to exercise general or specific jurisdiction over the company.

In *Keeley*, the plaintiff brought an action against Defendant Airgas, Inc. alleging breach of contract, violations of ERISA, federal and state securities laws, and state conversion and misrepresentation laws. Similar to Defendant TWDC, Airgas moved for dismissal under Fed.R.Civ.P. 12(b) for lack of personal jurisdiction and improper venue. In denying Airgas' motion, the Court concluded Airgas' identity merged with its subsidiaries, thereby subjecting it to personal jurisdiction, either general or specific. *Keeley*, 2008 U.S. Dist. LEXIS, at * 36.

The Court in reviewing Airgas' annual report and Form 10-K report determined that Airgas controlled the subsidiary based upon (1) Airgas issuing stock to employees of the subsidiary; (2) that the annual report discussed the employees of the subsidiary stores as one large, cohesive group; (3) that the opening of the Airgas' annual report explained that the parent and its subsidiaries were collectively referred to as "we," "us," "our," or "Company"; (4) that the Form 10-K made no differentiation between Airgas and its subsidiaries; (5) that Airgas directly compensated it subsidiary employees through an incentive plan, offers a pension plan – which demonstrates a strong unity of financial interest between Airgas and its subsidiary. *Id.*

The Court held that Airgas considered itself and its subsidiaries to be one comprehensive "Company" with combined income, expenses, and liabilities. *Id.* at *36. The subsidiaries are not delineated in any way. The subsidiaries and Airgas are so closely aligned they are effectively merged. *See also*, *Sehringer v. Big Lots, Inc.* 532 F. Supp. 2d (M.D. Fla. 2007) (case involving parent-subsidiary relationship where the magistrate judge also analyzed the corporation's annual report and Form 10-K report for evidence that the parent corporation controlled the subsidiary retail stores).

As in *Keeley*, the activities of Defendant TWDC are merged enough with its subsidiaries that the Southern District of Ohio can exercise personal jurisdiction, either general or specific.

In addition to the reasons in support stated above, further review of Defendant TWDC's Form 10-K, reveals that Defendant TWDC considers itself and its subsidiaries to be one comprehensive "Company." "The Walt Disney Company, together with its subsidiaries, is a diversified worldwide entertainment company with operations in four business segments: Media Networks, Parks and Resorts, Studio Entertainment, and Consumer Products." Exhibit A, p.1.

Furthermore, the Annual Report shows combined financing for Defendant TWDC and its subsidiaries: "The Company has various contractual obligations which are recorded as liabilities in our consolidated financial statements." Annual Report, p. 67. Defendant TWDC further asserts that it maintains integrated control:

> MANAGEMENT'S REPORT ON INTERNAL CONTROL OVER FINANCIAL REPORTING
>
> Management is responsible for establishing and maintaining adequate internal control over financial reporting…The Company's internal control over financial reporting includes those policies and procedures that (i) pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the Company; (ii) provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with generally accepted accounting principles, and that receipts and expenditures of the Company are being made only in accordance with authorizations of management and directors of the Company; and (iii) provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use, or disposition of the Company's assets that could have a material effect on the financial statements.
>
> Internal control over financial reporting is designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements prepared for external purposes …
>
> Under the supervision and with the participation of management, including our principal executive officer and principal financial officer, we conducted an evaluation of the effectiveness of our internal control over financial reporting…

Annual Report, p. 99.

Where the identity of the parent company is merged enough with its subsidiaries, a court can exercise personal jurisdiction, either general or specific. *Keeley*, 2008 U.S. Dist. at *36. This Honorable Court may exercise jurisdiction over TWDC, as the parent corporation, for the acts of its subsidiaries based on the notion that Defendant TWDC and its entities are so closely aligned that it is reasonable for TWDC to anticipate being haled before this Honorable Court because of its relationship with the Disney.com. *See*, *Keeley*, 2008 U.S. Dist. at *36. *See also*, *Niemi v. NHK Spring Co., Ltd.*, 276 F.Supp.2d 717, 721 (E.D. Mich. 2003), *quoting*, *In re Telectronics Pacing Systems, Inc.*, 953 F. Supp. 909, 919 (S.D. Ohio 1997), *citing*, *Velandra v. Regie Nationale Des Usines Renault*, 336 F.2d 292, 297 (6th Cir. 1964). Here, the Declaration of Marsh Reed does not dispute or allege that Defendant TWDC lacks any control over the actions of its subsidiaries or that the Company and its subsidiaries are not closely aligned.

"[A] corporation and its alter ego are the same entity-thus the jurisdictional contacts of one are the jurisdictional contacts of the other for purposes of the *International Shoe* due process analysis." *Systems Div., v., Teknek Electronics, Ltd.*, 253 Fed. Appx. 31, 37 (Fed. Cir. 2007) (Emphasis in original); *See also*, *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1069 n. 17 (9th Cir. 2000) ("Although jurisdiction over a subsidiary does not automatically provide jurisdiction over a parent . . . where the parent totally controls the actions of the subsidiary so that the subsidiary is the mere alter ego of the parent, jurisdiction is appropriate over the parent as well."). Where the identity of the parent company is merged enough with its subsidiaries a court can exercise personal jurisdiction, either general or specific. *Keeley* 2008 U.S. Dist. at *36.

Merger is the notion that the parent and subsidiary are "so closely aligned that it [is] reasonable for the parent to anticipate being 'haled' into court in the forum because of its

relationship with its subsidiary." *Executone of Columbus, Inc. v. Inter-Tel, Inc.*, 2006 U.S. Dist. LEXIS 78909 (S.D. Ohio 2006), *citing*, *In re Telectronics Pacing Systems, Inc.*, 953 F. Supp. 909, 919 (S.D. Ohio 1997). Courts have looked at factors such as ownership, control and integrated management in determining if a parent/subsidiary is "merged" so that the subsidiary's contacts should be imputed to the parent corporation. *Bradford Co. v. Afco Mfg.*, 560 F. Supp. 2d 612, 631, citing *Telectronics*, 953 F. Supp. at 919; *National Labor Relations Board v. Fullerton Transfer & Storage Ltd., Inc.*, 910 F. 2d 331, 336 (6th Cir. 1990) ("whether the two enterprises have substantially identical management, business, purpose, operation, equipment, customers, supervision and ownership").

Here, Defendant TWDC, though is subsidiaries and business segments, has conducted numerous contracts and activities in the State of Ohio sufficient to subject itself to personal jurisdiction here under both the general and specific jurisdiction law referred to above. It is clear that Defendant TWDC has engaged in sufficient contacts with Ohio. Similarly to *Keeley*, Defendant TWDC's identity is merged enough with its subsidiaries to subject it to personal jurisdiction, either general or specific. Upon this Honorable Court's review of Defendant TWDC's Annual Report and Form 10-K, attached hereto as Exhibits A and B respectively, it is apparent that Defendant TWDC considers itself and all of its subsidiaries to be one comprehensive "Company" with combined income, expenses and liabilities. Employees receive Defendant TWDC stock as compensation, as well as benefits under one health insurance benefits plan. It is apparent that Defendants TWDC and its subsidiaries interests are so closely aligned that they are effectively merged. Defendant TWDC's emphasis on the "Company's" worldwide and international presence indicates that is has "purposely availed" itself of doing business in the State of Ohio and could thus expect to be haled before this Honorable Court's jurisdiction.

Furthermore, there is also no undue burden on Defendant TWDC, a giant corporation, in litigating in Ohio. *Beverly Hills Fan Co*, 21 F. 3d at 1568. It comports with fair play and substantial justice to require Defendant TWDC to defend itself before this Honorable Court, as Defendant TWDC conducts business in the State of Ohio on a regular basis and generated sales from its business in the forum state.

Additionally, if this Honorable Court, after drawing all reasonable inferences in a light most favorable to Plaintiff, determines that Plaintiff has not satisfied the "relatively slight" of making a prima facie showing of jurisdiction, then Plaintiff should be allowed to conduct discovery as it relates to personal jurisdiction in order to combat Reed's declaration. The decision to grant discovery or an evidentiary hearing before ruling on a 12(b)(2) motion is discretionary. *Intera Corp. v. Henderson*, 428 F.3d 605, 614, n.7 (6th Cir. 2005). Discovery would serve the purpose of and provide Plaintiff with the opportunity to uncover any facts that would aid in Plaintiff's jurisdiction argument. As such, Plaintiff respectfully requests this Honorable Court allow him to conduct discovery to demonstrate that jurisdiction exists. *See*, *Fortis Corporate Ins. v. Viken Ship Management*, 450 F.3d 214 (6th Cir. 2006); Theunissen, 935 F.2d at 1465; *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989); *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir.) (discovery may be appropriate when a defendant moves to dismiss for lack of jurisdiction), *cert. denied*, 454 U.S. 893, 102 S. Ct. 388, 70 L. Ed. 2d 207 (1981).

### III. CONCLUSION

Here, Plaintiff's burden, although "relatively slight," is to demonstrate personal jurisdiction. *American Greetings Corp.*, 839 F.2d at 1169; *Neogen Corp.*, 282 F.3d at 887. As discovery has not been completed in this manner, Plaintiff is only required to make a prima facie

showing that Defendant TWDC is subject to personal jurisdiction. In drawing all reasonable inferences arising from the proof, and resolving all factual disputes in the Plaintiff's favor, this Honorable Court should deny Defendant TWDC's motion to dismiss for lack of personal jurisdiction.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court deny Defendant TWDC's motion to dismiss for lack of personal jurisdiction.

Respectfully submitted,

**THE DICKERSON LAW GROUP, P.A.**

/s/ Brian E. Dickerson_____
Brian E. Dickerson     (0069227)
Sharlene I. Chance     (0070999)
Kevin R. Conners       (0042012)
5003 Horizons Drive, Suite 101
Columbus, OH 43220
Telephone: (614) 339-5370
Facsimile:  (614) 442-5942
bdickerson@dickerson-law.com
schance@dickerson-law.com
kconners@dickerson-law.com
*Attorneys for Plaintiff Aaron Clark*

### CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2009, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system upon counsels of record.

/s/ Sharlene I. Chance_____
Sharlene I. Chance     (0070999)
*Attorney for Plaintiff Aaron Clark*