# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **AARON CLARK,**<br><br>Plaintiff,<br><br>v.<br><br>**THE WALT DISNEY COMPANY; JAKKS PACIFIC, INC.; PLAY ALONG TOYS; KB TOYS; AMAZON.COM; and TOYS 'R US,**<br><br>Defendants. | Case No. 2:08CV982 |

**THE WALT DISNEY COMPANY'S REPLY BRIEF IN SUPPORT OF MOTION TO**

**DISMISS PURSUANT TO FEDERAL RULE OF**

**CIVIL PROCEDURE 12(b)(2)**

# TABLE OF CONTENTS

                                                                                                                                **Page**

I. INTRODUCTION ................................................................................................ 2

II. TWDC'S MERE OWNERSHIP OF STOCK IN OPERATING COMPANIES DOES NOT SUBJECT TWDC TO PERSONAL JURISDICTION IN OHIO .................. 3

    A. Clark Ignores the Record and Relies on Unsupported Argument ........................... 4

    B. Clark Offers no Basis to Disreguard TWDC's Corporate Structure and Pierce the Corporate Veil ....................................................................................... 6

        1. TWDC's 10-K Does Not Establish A Merger Of TWDC And Its Operating Entities ................................................................................................ 7

III. CONCLUSION .................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269 (6th Cir. 1998)..........................................2, 3, 6, 7

*Keeley v. Airgas, Inc.*, 2008 WL 5422691 (W.D. Mich.) ................................................................9

*Keeton v. Hustler Magazine*, 465 U.S. 770, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984) ..................3

*Rush v. Savchuk*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980) ..........................................3

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

Federal Rule of Civil Procedure 12(b)(2) .........................................................................................6

## I. INTRODUCTION

Clark's Opposition brief is the best evidence that this Court lacks personal jurisdiction over The Walt Disney Company ("TWDC"). In the 19 pages that make-up the brief and the more than 400 pages worth of attachments (all of which appear to be TWDC's SEC filings although none are authenticated by declaration or otherwise), Clark fails to identify even *a single action* taken by TWDC that could arguably lead to a conclusion of personal jurisdiction. Moreover, Clark offers absolutely no evidence to support his position that corporate formalities should be disregarded and that the alleged acts of TWDC's subsidiaries should provide a basis for this Court's jurisdiction over TWDC.

To be sure, Clark's brief identifies a website owned and operated by a TWDC subsidiary and television and radio stations owned by another TWDC subsidiary. But nowhere in Clark's forest of dead trees does he identify anything that *TWDC* has done that results in personal jurisdiction in this Court over TWDC. Rather, Clark's brief proves what TWDC has already said: TWDC is a holding company that owns a number of subsidiaries. TWDC does not operate websites, television or radio stations, and does not sell any products, including the products accused of infringement in this case. These key facts remain unchanged and unchallenged by Clark's brief.

Clark's brief essentially argues that because TWDC's 10-K and Annual Report use terms like "We" or "the Company" to include TWDC and its operating entities, and because these documents report financial results on a consolidated basis, TWDC and its subsidiaries are a single entity for purposes of establishing jurisdiction. The Sixth Circuit in *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269 (6th Cir. 1998), expressly rejected a plaintiff's similar attempt to rely on statements in an annual report to support jurisdiction. Moreover, Clark's argument misunderstands the nature of SEC reporting. The SEC requires companies to file reports in

2
LACA_2118021.3

"plain English," and use terms like "We" or "The Company," without distinguishing between the holding company and the operating companies. Clark's position that TWDC's compliance with SEC reporting requirements justifies disregarding the corporate distinction between TWDC and its subsidiaries is incorrect as a matter of fact and law.

At its core, Clark's brief is nothing more than argument without evidentiary support and a recitation of the thoroughly discredited claim that ownership of a subsidiary, without more, results in jurisdiction over the parent. The Supreme Court, the Sixth Circuit, and every other court to review such an argument have all roundly rejected it, and this Court should too.

**II. TWDC'S MERE OWNERSHIP OF STOCK IN OPERATING COMPANIES DOES NOT SUBJECT TWDC TO PERSONAL JURISDICTION IN OHIO**

The Supreme Court and the Sixth Circuit long ago settled the question that mere ownership of a subsidiary does not, without more, result in personal jurisdiction over a parent. As the Supreme Court pointed out more than twenty years ago, "[e]ach defendant's contacts with the forum State must be assessed individually." *Keeton v. Hustler Magazine*, 465 U.S. 770, 781 n. 13, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984). "The requirements of International Shoe . . . must be met as to each defendant over whom a state court exercises jurisdiction." *See Rush v. Savchuk*, 444 U.S. 320, 332, 100 S.Ct. 571, 579, 62 L.Ed.2d 516 (1980). It is not enough to review the acts of a subsidiary and conclude that ownership of that subsidiary results in jurisdiction over the parent. As the Sixth Circuit has said, jurisdiction over a holding company turns on whether the plaintiff provides "sufficient evidence for [the court] to conclude that [the holding company] is being brought into court for something that ***it has done***, not for something that [the subsidiary] has done." *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1274 (6th Cir. 1998) [emphasis added]. For Clark to demonstrate that the Court has jurisdiction over TWDC, Clark must show business conducted ***by TWDC—not its subsidiaries—*** in the state of Ohio.

3

### A. Clark Ignores the Record and Relies on Unsupported Argument

Clark's argument ignores the evidentiary support TWDC offered in support of its Motion and fails to offer *even a single fact* purportedly supporting jurisdiction over TWDC. For example, Clark asserts:

- "TWDC, together with its business segments targets its electronic advertising worldwide and maintains Disney.com from which large numbers of Ohio customers can regularly make purchases and interact with Defendant TWDC's sales representatives." (Opp. at p. 9.)

Clark offers no evidence of TWDC's supposed worldwide electronic advertising, nor does he offer evidence that TWDC—as opposed to an unidentified "business segment"—has any role whatsoever with respect to this website.

Clark also does not mention, let alone offer evidence contradicting, the declaration of Marsh Reed filed in connection with TWDC's Motion in which Ms. Reed specifically declared under the penalty of perjury that "TWDC does not, and never has, hosted the website located at http://disneyshopping.go.com . . . TWDC does not, and has never, sold or offered for sale any products, including the Accused Posters, on or through the Website." (Reed Decl. at ¶ 6 [Docket No. 16-2].) Clark ignores this statement as if it simply was not made.

Clark next states that Ohio customers can "interact with Defendant TWDC's sales representatives." (Opp. at p. 9.) Not a single document, declaration, statement, fact, or anything else supports this claim, and it is directly contrary to Reed's sworn declaration. Clark then goes on to argue:

- "Defendant TWDC's sale of infringing Hannah Montana and Cheetah Girls Talking Posters on *its* website . . . has allowed it to generate sales worldwide and within the State of Ohio" (Opp. at p. 9 [emphasis added].)

4

Again, Clark makes these statements with no evidentiary support. TWDC does not sell anything, including the Accused Posters. To repeat what Ms. Reed stated in her sworn declaration: "TWDC does not now, and has never, hosted the website located at http://disneyshopping.go.com . . . TWDC does not now, and has never, sold or offered for sale any products, including the Accused Posters, on or through the Website." (Reed Decl. at ¶ 6 [Docket No. 16-2].) Clark's statement that TWDC *sells* allegedly infringing products on *its* website is false and completely unsupported (and unsupportable). TWDC sells nothing and does not host or operate any website.

Clark also baldly asserts:

- "Defendant TWDC transacts business in the State of Ohio." (Opp. at p. 12.)

- "Defendant TWDC owns *and operates* Disney Interactive Media Group . . . and Disney Online." (Opp. at p. 12 [emphasis added].)

- "Defendant TWDC and its business segments' operation of Disney.com, an interactive website, constitutes purposeful availment." (Opp. at p. 12.)

Again, Clark offers no evidence supporting these assertions. TWDC is a holding company. It does not operate websites. It does not sell products. It "owns stock in a variety of corporations operating in, among others, the fields of entertainment, recreation, and consumer products." (Reed Decl. at ¶ 3 [Docket No. 16-2].)

To establish even a *prima facie* burden of proof to support personal jurisdiction over TWDC, Clark was obligated to come forward with *evidence*—not unsupported assertions — showing that TWDC—not its subsidiaries—took some action in the State of Ohio that could establish TWDC's presence in Ohio. Clark fails to do this. And, saying something as though it is true without offering any evidentiary support, does not satisfy this burden.

5

### B. Clark Offers no Basis to Disregard TWDC's Corporate Structure and Pierce the Corporate Veil

Clark's core argument is that TWDC and various unidentified subsidiaries combine to form one amalgamated entity over which the Court has jurisdiction. Never mind that Clark fails to identify any particular subsidiary over which the Court has jurisdiction. And never mind that Clark has yet to identify any actions taken *by TWDC* that result in personal jurisdiction. From Clark's perspective, because there are a number of operating entities, and because TWDC owns stock in those entities, this Court (and presumably every other court in the nation) has personal jurisdiction over TWDC. Clark's argument fails as a matter of law.

The seminal Sixth Circuit case concerning jurisdiction over a parent corporation based on an in-forum subsidiary is *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269 (6th Cir. 1998). In *Dean*, the plaintiff was a former employee of Motel 6 who was assaulted while working in the motel. Plaintiff sued each entity in the ownership chain from the operating company to the French holding company, Accor. Accor moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2). The district court granted the motion and the Sixth Circuit affirmed.

The Sixth Circuit noted that the *sine qua non* of personal jurisdiction is the purposeful availment factor, "under which the defendant must 'purposefully avail[] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* at 1273 *quoting Burger King v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). The Sixth Circuit held that to satisfy this key element there must be "some overt actions connecting the defendant with the forum state" *id.* at 1274, and mere ownership of a subsidiary is not such an overt act. The plaintiff offered a variety of facts in an attempt to establish affirmative actions by the holding company including that: (1) the operating entity held itself out as "an Accor company;" (2) Accor renders management, consulting and financial services to the operating company in exchange for fees; (3) Accor strategically placed

6

its employees in management positions in the operating company hierarchy; (4) Accor oversaw the operating company's budget; (5) **the Accor annual report referred to the company as operating Motel 6; and (6) the annual report stated that one of the company goals was to improve Motel 6's performance**. The Sixth Circuit found this evidence insufficient, holding "[a]lthough we are required to consider the evidence in a light most favorable to Dean, no light can be so favorable as to somehow close these evidentiary gaps." *Id.* at 1275.

This case is decidedly weaker than *Dean*. In *Dean,* the plaintiff was able to identify an in-forum subsidiary and at least identified some actions—albeit insufficient—by the holding company. Here, Clark has not identified an in-forum subsidiary over which the Court has jurisdiction, and, more importantly, has not identified a *single overt action* taken by TWDC—as distinguished from its operating entities—in Ohio.

### 1. TWDC's 10-K Does Not Establish A Merger Of TWDC And Its Operating Entities

Clark relies exclusively on supposed statements from TWDC's 10-K and Annual Report as purportedly showing that TWDC is "merged" with its subsidiaries.[1] These materials show no such thing and the Sixth Circuit in *Dean* made clear that broad statements in an annual report do not provide a basis to disregard corporate distinctions and provide a basis for jurisdiction.

Clark points to language in the 10-K and Annual Report that defines the term "the Company" to include both TWDC and its operating subsidiaries, aggregates revenue, and reports on subsidiaries' operation of television and radio stations, as supposed evidence that TWDC and its subsidiaries are merged. In fact, all that language demonstrates is TWDC's adherence to SEC rules. As pointed out in the declaration of David Thompson filed concurrently

---

[1] These materials were not properly authenticated and are therefore not even properly before the Court. As such, TWDC moves to strike these materials.

7

with this brief, the SEC "plain English" rules require that public companies use simple, straightforward language in their securities documents. The SEC directs companies to avoid "legalese" and to use "a new style of thinking and writing" in disclosures to the public. (Thompson Decl. ¶ 6.) The SEC Staff specifically calls for the use of plain English shorthand phrases rather than technical language, and recommends the use of words like "we" or "the Company" to refer to the parent company and its subsidiaries together, rather than making the legal distinctions between corporations that lawyers would ordinarily do. (Thompson Decl. ¶ 6.) These distinctions, in the SEC's view, are not generally material to an investor's understanding of a company's consolidated business and assets. (Thompson Decl. ¶ 6.) Indeed, the SEC gives a specific example where two distinct corporations are referred to by the collective term "we." (Thompson Decl. ¶ 6.)

In compliance with these rules, TWDC's 10-K and annual reports are written to convey information to the reader about the operations of TWDC and its subsidiaries in a readily understandable and readable form suitable for the intended audience for these reports—shareholders and potential investors—not to make legal distinctions. (Thompson Decl. ¶ 7.) For this audience, the details of specific corporate organizations within the TWDC "group" are not material investment-related information. (Thompson Decl. ¶ 7.) It is plainly wrong to use the SEC mandated language, which for reporting purposes only does not distinguish the operations, and legal separation, of the parents from the subsidiaries, to argue that separate legal entities are somehow not distinct, that their operations are combined, or that a parent corporation owns or operates an asset of its subsidiary. As pointed out in the Thompson Declaration, TWDC and each of its subsidiaries take care to maintain appropriate corporate formalities and preserve corporate separateness in their respective business operations. (Thompson Decl. ¶ 7.) Clark identifies no facts to the contrary.

LACA_2118021.3

In a final attempt to bolster his claim to a merger of TWDC and its operating subsidiaries, Clark relies on an incorrect characterization of *Keeley v. Airgas, Inc.*, 2008 WL 5422691 (W.D. Mich.). In *Keeley*, an unpublished decision from the Western District of Michigan, the plaintiff sued Airgas for breach of contract and violations of ERISA. Airgas owned the stock of a Michigan subsidiary for which the plaintiff worked. Airgas moved to dismiss for want of personal jurisdiction and the court denied the motion.

In contrast to the facts of this case, in *Keeley* the plaintiff offered evidence the court there determined was sufficient to show actions taken by the parent company in the forum state. For instance, the plaintiff offered evidence that he received the stock option grants that were the subject of the litigation directly from the parent. Plaintiff also received letters directly from the parent stating that it was the parent corporation, as opposed to the in-forum subsidiary, that granted the options. Plaintiff offered evidence that his paycheck came from the holding company, and that he had been invited by the holding company to the annual stockholder meeting and received proxy statements from the holding company. In short, the plaintiff offered evidence of actions taken by the holding company in the forum state that the court in *Keeley* concluded justified asserting jurisdiction over it.

Here, Clark does not identify any actions taken by TWDC that could possibly support jurisdiction in Ohio over TWDC. All that Clark alleges is the ownership of subsidiaries that own and operate a website and television and radio stations. Clark offers nothing to establish that these entities are operated by TWDC. TWDC and its subsidiaries are separate entities, each operating separately and respecting corporate formalities. (Thompson Decl. at ¶ 7.)

### III. CONCLUSION

Clark fails to offer any evidence establishing even a *prima facie* case that this Court has personal jurisdiction over TWDC. Accordingly, the Court should grant TWDC's motion to dismiss.


Dated: February 24, 2009                                Respectfully submitted,

<div style="margin-left: 50%;">

By: /s/ *Michael C. Lueder*
Michael C. Lueder
Foley & Lardner LLP
777 E. Wisconsin Ave.
Milwaukee, WE 53202
Tel: (414) 297-4900
Trial Attorney

/s/ *Grant E. Kinsel*
Grant Kinsel
(Pro Hac Vice)
Foley & Lardner LLP
555 South Flower St., Suite 3500
Los Angeles, CA 90071
Tel: (213) 972-4500
*Attorneys for JAKKS Pacific, Inc., Play Along Toys, KB Toys, and Toys "R" Us, Inc., The Walt Disney Company*

</div>

# CERTIFICATE OF SERVICE

I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served today with a copy of this document via the Court's CM/ECF system per Local Rule 5.2. Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

Dated: February 24, 2009 /s/ Grant E. Kinsel

| | |
|---|---|
| Brian Edward Dickerson<br>The Dickerson Law Group<br>5003 Horizons Drive<br>Suite 200<br>Upper Arlington , OH 43220<br>614-339-5370<br>Fax: 614-442-5942<br>bdickerson@dickerson-law.com<br><br>Kevin R Conners<br>5003 Horizons Drive Suite 101<br>Columbus , OH 43220<br>614-562-5877<br>kevinconners@kevinconners.com<br><br>Sharlene I Chance<br>The Dickerson Law Group<br>5003 Horizons Drive<br>Suite 200<br>Columbus , OH 43220<br>614-339-5370<br>Fax: 614-442-5942<br>schance@dickerson-law.com | Attorneys for Plaintiff Aaron Clark |