IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **AARON CLARK,** | : | |
| Plaintiff, | : | **Case No. 2:08-cv-982** |
| v. | : | **Judge Holschuh** |
| **THE WALT DISNEY CO., et al.,** | : | **Magistrate Judge Abel** |
| Defendants. | : | |
| | : | |

## MEMORANDUM OPINION & ORDER

Plaintiff Aaron Clark filed suit against The Walt Disney Company, Jakks Pacific, Inc., Play Along Toys, KB Toys, Amazon.com, and Toys R Us, alleging patent infringement, false designation of origin, and deceptive trade practices.[1] This matter is currently before the Court on two motions filed by Defendants Jakks Pacific, Inc., Play Along Toys and Toys R Us: (1) a motion to dismiss for failure to state a claim upon which relief can be granted (Doc. 11); and (2) a motion to take judicial notice of certain documents submitted in support of the motion to dismiss (Doc. 12). For the reasons stated below, both of those motions are granted in part.

### I.   Background and Procedural History

According to the Second Amended Complaint, Plaintiff Aaron Clark is the sole owner of U.S. Patent No. 5,548,272 ("the 272 Patent"), issued by the United States Patent and Trademark

---

[1] Plaintiff later dismissed his claims against Amazon.com. His Second Amended Complaint includes BabyUniverse, Inc., EToys Direct, Inc. and Disney Shopping, Inc. as additional defendants.

Office on August 20, 1996. (Sec. Am. Compl. ¶¶ 24, 28).[2] His invention is entitled "Talking Poster." Essentially, by pushing a button attached to the surface of the poster, one can activate a pre-recorded message or song. Plaintiff obtains licenses from various entertainment companies and then produces Talking Posters featuring various entertainers, cartoon characters and movie characters. These Talking Posters are then sold in a variety of retail establishments. Plaintiff has also licensed his technology to other companies so that they can manufacture and market their own Talking Posters. (Id. at ¶¶ 25-27).

Plaintiff alleges that Defendants have participated in the manufacturing, distribution, and licensing of Hannah Montana Talking Posters and Cheetah Girls Talking Posters, and have sold, offered to sell or imported Talking Posters which embody the subject matter claimed in the 272 Patent. Plaintiff further alleges that because Defendants have done so without a licensing agreement, Defendants' conduct infringes on his 272 Patent. (Id. at ¶¶ 31-34). Plaintiff filed suit against Defendants alleging patent infringement, false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and a violation of the Ohio Deceptive Trade Practices Act, Ohio Revised Code § 4165.02.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Jakks Pacific, Inc., Play Along Toys and Toys R Us have filed a motion to dismiss for failure to state a claim upon which relief can be granted. Defendants also ask the Court to take judicial notice of certain

---

[2] After Defendants moved to dismiss for failure to join an indispensable party, Plaintiff filed a motion for leave to file a Third Amended Complaint, adding John Peirano as a party plaintiff. Those motions are not yet fully briefed. According to the proposed Third Amended Complaint, Peirano holds a 50% ownership share of the 272 Patent. (Third Am. Compl. ¶ 28). The substance of the claims asserted in the Third Amended Complaint remains the same. Therefore, even if Plaintiff is granted leave to file the Third Amended Complaint, Defendants' pending motions to dismiss are not rendered moot.

documents submitted in support of that motion.

## II. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint may be dismissed if it fails to state a claim upon which relief can be granted. Because a motion under Rule 12(b)(6) is directed solely to the complaint itself, Roth Steel Prods. v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983), the focus is on whether the plaintiff is entitled to offer evidence to support the claims, rather than on whether the plaintiff will ultimately prevail. Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 184 (2005) (citing Scheuer v. Rhodes, 4l6 U.S. 232, 236 (1974)). The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993).

The function of the complaint is to afford the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. See Conley v. Gibson, 355 U.S. 41, 47 (1957); Lewis v. ACB Business Serv., Inc., 135 F.3d 389, 405 (6th Cir. 1998). A complaint need not set down in detail all the particularities of a plaintiff's claim. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." However, the complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988) (emphasis in original). Bare assertions of legal conclusions are insufficient. See id.; Allard v. Weitzman (In re DeLorean Motor Co.), 991 F.2d 1236, 1240 (6th Cir. 1993). Likewise, "a formulaic recitation of the elements of a cause of action" is not enough. Bell Atlantic Corp. v.

3

Twombly, 550 U.S. 544, 555 (2007); Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. See Scheuer, 4l6 U.S. at 236; Arrow v. Federal Reserve Bank of St. Louis, 358 F.3d 392, 393 (6th Cir. 2004); Mayer, 988 F.2d at 638. The Court will indulge all reasonable inferences that might be drawn from the pleading. See Saglioccolo v. Eagle Ins. Co., 112 F.3d 226, 228 (6th Cir. 1997). However, it will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. See Gregory v. Shelby County, 220 F.3d 433, 446 (6th Cir. 2000); Lewis, 135 F.3d at 405.

The Court will grant a motion for dismissal under Rule 12(b)(6) if there is an absence of law to support a claim of the type made, or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. Little v. UNUMProvident Corp., 196 F. Supp. 2d 659, 662 (S.D. Ohio 2002) (citing Rauch v. Day & Night Mfg. Corp., 576 F.2d 697 (6th Cir. 1978)).

**III.  Analysis**

Defendants Jakks Pacific, Inc., Play Along Toys and Toys R Us have moved to dismiss Plaintiff's claims of patent infringement, false designation of origin, and deceptive trade practices for failure to state a claim upon which relief can be granted. For the reasons stated below, the Court grants the motion to dismiss the false designation of origin and deceptive trade practices claims. However, with respect to the patent infringement claim, the Court converts the motion to dismiss into a motion for summary judgment and will give the parties the opportunity to supplement the record.

### A. Patent Infringement Claim

Federal law provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States, or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). Plaintiff alleges that Defendants have infringed the 272 Patent by "manufacturing, distributing, importing, selling and/or offering for sale the Hannah Montana Talking Poster and Cheetah Girls Talking Poster and/or other Posters which embody the subject matter claimed in the 272 Patent." (Sec. Am. Compl. ¶ 40). More specifically, Plaintiff maintains that Defendants have infringed Claims 1 and 5 of the 272 Patent. Those Claims read as follows:

> What is claimed is:
>
> 1. An assembly, comprising:
>
> a poster comprised of a first material, said poster having a first surface, said first surface including poster art thereon;
>
> a housing comprised of a second material, said housing attached to a portion of said first surface of said poster;
>
> a speaker concealed between said housing and said first surface of said poster;
>
> an electric circuit including a sound production component, operatively connected to said speaker and concealed between said housing and said first surface of said poster;
>
> a trigger attached to said electric circuit and concealed within said housing, said trigger adapted to be actuated through said housing to produce said sound;
>
> wherein a surface of said housing is prepared with a matching art which is substantially the same as that area of said poster art which appears on said portion of said poster that said housing covers when said housing is attached to said poster, such that said housing artistically blends in with the surrounding poster art that is not covered by said housing.

***

    5. A method for making a talking poster, comprising the steps of:

        providing a poster with poster art on a first surface thereof;

        providing human actuatable sound components adapted to be contained on said poster;

        providing a housing adapted to be secured onto a portion of said first surface of said poster;

        applying matching art to said housing which is substantially the same as that area of said poster art which appears on said portion of said poster that said housing covers when said housing is attached to said poster, such that said housing artistically blends in with the surrounding poster art that is not covered by said housing; and

        securing said housing onto said portion of said first surface of said poster, such that said housing conceals said sound components.

(Claims 1 and 5 of the 272 Patent; Ex. J to Sec. Am. Compl.).

In order to succeed on a claim of patent infringement, a plaintiff must prove that the accused product contains "elements identical or equivalent to each claimed element of the patented invention." Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co., 520 U.S. 17, 40 (1997). Defendants maintain that Plaintiff cannot do so since the surface of the housing unit on the Accused Posters is not "prepared with a matching art which is substantially the same as that area of said poster art which appears on said portion of said poster that said housing covers when said housing is attached to said poster, such that said housing artistically blends in with the surrounding poster art that is not covered by said housing."

Exhibit A to this Memorandum Opinion and Order is an example of an NSync Talking Poster licensed by Plaintiff, and was previously attached as Exhibit K to the Second Amended Complaint. In this poster, the housing is printed with art which is substantially the same as the

art appearing directly underneath it on the poster, *i.e.*, a portion of the band member's blue jeans and shoe, such that the housing artistically blends in with the surrounding poster. Exhibit B to this Memorandum Opinion and Order is an example of a Hannah Montana poster manufactured and sold by Defendants, and was previously attached as Exhibit A to the Second Amended Complaint. In this poster, the housing unit consists of a solid color bar attached across the bottom of the poster. Defendants contend that although the color of the housing unit on the Accused Poster complements the color scheme used in the poster, the housing unit is not prepared with a "matching art which is substantially the same"as the underlying artwork. Defendants maintain that in comparing the Accused Posters to the plain language set forth in Claims 1 and 5 of the 272 Patent, it is obvious that there is no infringement.

The process of determining whether an accused product infringes a patent involves two steps. First, the Court must construe the claims of the patent to determine their proper scope. This question of claim construction is to be decided by the Court as a matter of law. Second, a factfinder must determine whether the accused product infringes the asserted claim as properly construed. Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1581-82 (Fed. Cir. 1996) (citing Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995)).

In determining the proper scope of the patent claim, the Court looks first "to the words of the claims themselves." The Court must also consider the specification "to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning." Finally, the Court may consider "the prosecution history of the patent, if in evidence." Vitronics, 90 F.3d at 1582. If these documents unambiguously define the scope of the patented invention, there is no need for the Court to consider any extrinsic evidence. Id. at 1583. Although it is often

helpful for the Court to hold an evidentiary hearing (a "Markman" hearing) on claim construction, this is not necessarily required. In some cases, particularly where the patent claims do not contain complex, technical language, a court may be able to interpret the claims based only on the paper record. See Rogers v. Desa Int'l, Inc., 166 F. Supp. 2d 1202, 1204-05 (E.D. Mich. 2001).

In Bradt v. Kelsey-Hayes Wheel Corporation, 14 F. Supp. 709 (E.D. Mich. 1936), the court noted that "[t]he law is well established that where the alleged infringing device or devices are before the court in response to interrogatories or a motion for particulars, the question of infringement may be determined upon a motion to dismiss." Id. at 709. Citing Bradt, Defendants argue that based on solely on the documents currently before the Court, including documents attached to Plaintiff's Second Amended Complaint and other documents submitted by Defendants in support of their motion to dismiss, the Court is able to: (1) construe the scope of the patent claims; and (2) determine whether the Accused Posters infringe on the claims of the 272 Patent.

Plaintiff maintains that Defendants have too narrowly construed the scope of the claims in the 272 Patent. He argues that the allegations in his Complaint are sufficient to withstand Defendants' motion to dismiss. In the alternative, Plaintiff argues that if the Court considers certain documents attached to Defendants' motion to dismiss, that motion must be converted to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d), and he must be given the opportunity to supplement the record. As a general rule, a court cannot consider matters outside the four corners of the complaint when ruling on a motion to dismiss under Rule 12(b)(6). If a party presents matters outside the pleadings to the court and the court does not

8

exclude those materials from consideration, the court must treat the motion as a motion for summary judgment under Federal Rule of Civil Procedure 56 and give all parties a reasonable opportunity to present all pertinent material. Fed. R. Civ. P. 12(d).

Exceptions to this rule, however, do exist. For example, since copies of written instruments attached as exhibits to a pleading are a part of that pleading for all purposes, Fed. R. Civ. P. 10(c), the court may consider any documents that the plaintiff has attached to the complaint. The court may also consider documents that a defendant attaches to a motion to dismiss if the documents are referred to in the complaint and are central to Plaintiff's claims. Weiner v. Klais & Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997). In addition, the court may consider public records and matters of which a court may take judicial notice. See Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999), abrogated on other grounds, Swierkiewicz v. Sorema, 534 U.S. 506 (2002); New England Health Care Employees Pension Fund v. Ernst & Young, LLP, 336 F.3d 495, 501 (6th Cir. 2003).

Defendants ask the Court, in ruling on the pending motion to dismiss, to consider five exhibits attached to the Declaration of Grant Kinsel, which was filed in support of their motion to dismiss. Plaintiff does not object to the Court's consideration of the first three exhibits, all of which were attached as exhibits to the Complaint. Exhibit 1 is a copy of the 272 Patent. Exhibits 2 and 3 are pictures of two of the allegedly infringing Talking Posters. Because these three exhibits were attached to Plaintiff's Complaint, they are part of the pleadings and the Court may properly consider them without converting the motion to dismiss into a motion for summary judgment.

Plaintiff does, however, object to Exhibits 4 and 5, and argues that the Court may not consider them without converting the motion to dismiss into a motion for summary judgment. Exhibit 4 consists of two pages from the American Heritage Dictionary of the English Language containing definitions of the words "blend" and "match," both included in the 272 Patent claims.

Defendants maintain that the Court can take judicial notice of these dictionary definitions without converting the motion into a motion for summary judgment. Federal Rule of Evidence 201 permits the Court to take judicial notice, at any stage of the proceeding, of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201 (b) and (f). A dictionary is one of those sources whose accuracy cannot reasonably be questioned and, as a general rule, courts may consult a dictionary at any stage of the litigation to determine the meaning of words and phrases. See Comerica Bank v. Lexington Ins. Co., 3 F.3d 939, 944 (6th Cir. 1993) (finding that the district court properly took judicial notice of a dictionary definition). The Court, therefore, can take judicial notice of the dictionary definitions contained in Exhibit 4 without converting the motion to dismiss into a motion for summary judgment.

Exhibit 5, which consists of the patent file history (the prosecution history) of the 272 Patent, is more problematic. As Defendants note, portions of the file history, *i.e.,* the patent itself and the original patent application, were attached to Plaintiff's Complaint. Clearly, the Court may consider these documents without converting the motion into a motion for summary judgment. The other portions of the patent file history, however, were not attached to the Complaint.

As the court noted in Vitronics, the file history is often relevant to the claim construction analysis. In this case, it appears that Plaintiff's original patent claims were all rejected as being indefinite and "unpatentable over Hoshi (US Patent No. 4,934,079)." (Ex. 5 to Kinsel Decl.). In the original patent application, Plaintiff claimed that the Talking Poster included a blister pack that housed the speaker "wherein said blister pack matches the artwork of the poster to which it is attached." (Id.). After receiving the notice of rejection, Plaintiff amended his claims. He stated that his invention was distinguishable from Hoshi in that his housing "allows artwork to be placed on the blister pack, by lithograph color technology, for example, so that the electronic circuitry and sound emanating means under the housing is 'camouflaged' in the poster presentation." He also stated that, unlike Hoshi, his invention allowed the housing to "be printed with artwork so as to visually blend in with the actual artwork of the poster, and effectively hide the sound module so as not to disturb or interrupt the visual flow of the poster." (Id.). It appears that the 272 Patent was issued only after Plaintiff's claims were amended to reflect this distinction.

In the Court's view, this portion of the patent file history is relevant and may be helpful in construing the claims contained in the 272 Patent. The question is whether the Court may consider it without converting the motion to dismiss into a motion for summary judgment. Courts may consider matters of public record without converting a motion to dismiss into a motion for summary judgment, particularly when authenticity is not in dispute. Papasan v. Allain, 478 U.S. 265, 268 n.1 (1986); Doe v. SexSearch.com, 551 F.3d 412, 416 (6th Cir. 2008); Jones v. City of Cincinnati, 521 F.3d 555, 562 (6th Cir. 2008). The file history is part of the public record of a patentee's claim. Vitronics, 90 F.3d at 1583. Nevertheless, some courts have

refused to consider a patent's file history in conjunction with a motion to dismiss. See Cortland Line Co., Inc. v. Orvis Co., No. 97-CV-1294, 1997 WL 808608, at *2 (N.D.N.Y. Jan. 5, 1997). See also Safe-Strap Co., Inc. v. Koala Corp., 270 F. Supp. 2d 407, 416 n.5 (S.D.N.Y. 2003) (noting that because a patent's prosecution history falls outside the pleadings, courts often refuse to consider it on a motion to dismiss if it is not already part of the record in the case). In another case, where the parties submitted the file history in connection with a motion to dismiss and/or motion for summary judgment, the court treated the motion as a motion for summary judgment. See Allied Gator, Inc. v. NPK Construction Equipment, Inc., 937 F. Supp. 694 (N.D. Ohio 1996).

In the Court's view, under the circumstances presented here, this is the better option. The Court hereby notifies the parties that, with respect to the patent infringement claim only, it will treat Defendants' motion to dismiss as a motion for summary judgment. Because the patent claims at issue in this case are not overly complex and contain no technical or scientific terms, the Court believes that it can conduct a proper claim construction analysis based solely on the paper record, and without the need for a Markman hearing. After conducting the claim construction analysis, the Court will then determine whether genuine issues of material fact preclude summary judgment on the question of whether the Accused Posters infringe on the 272 Patent.

First, however, the Court will give the parties the opportunity to supplement the record as they see fit. Plaintiff shall have 45 days from the date of this Memorandum Opinion and Order to submit any additional briefs and/or exhibits he desires the Court to consider in connection with the pending motion for summary judgment on the patent infringement claim. Defendants

shall then have 21 days to submit any additional briefs and/or exhibits in support of their motion.[3]

### B. Lanham Act and Ohio Deceptive Trade Practices Act Claims

Count 2 of Plaintiff's Second Amended Complaint alleges that Defendants' conduct constitutes false designation of origin under § 43(a) of the Lanham Act.[4] That statute states:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). Plaintiff alleges that because the Accused Posters embody the subject matter claimed in the 272 Patent, Defendants' conduct in placing them for sale constitutes false designation of origin which is likely to cause confusion and mistake, and to deceive the consumer as to the origin, source and sponsorship of the Accused Posters. (Sec. Am. Compl. ¶¶

---

[3] If additional time is needed, the parties may file an appropriate motion.

[4] Count 2 of the Second Amended Complaint also makes a passing reference to "false advertising." (Sec. Am. Compl. ¶ 63). In their motion to dismiss, Defendants argue that, absent an express or impliedly false statement, Plaintiff's false advertising claim necessarily fails. Plaintiff does not address this argument in his memorandum in opposition. Since Plaintiff has impliedly conceded that a false advertising claim is not viable, the Court will focus, as Plaintiff did, exclusively on the false designation of origin claim.

13

58-61).

Count 3 of Plaintiff's Second Amended Complaint asserts a similar state law claim under Ohio's Deceptive Trade Practices Act. That statute states, in pertinent part:

> A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person does any of the following: . . .
>
> (2) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
> (3) Causes likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another.

Ohio Revised Code § 4165.02(A). Again, Plaintiff alleges that Defendants' conduct causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of the Accused Posters. (Sec. Am. Compl. ¶¶ 66-67).

Because the Lanham Act and the Ohio Deceptive Trade Practices Act are substantially similar, "an analysis appropriate for a determination of liability under section 43(a) of the Lanham Act is also appropriate for determining liability under the Ohio Deceptive Trade Practices Act." Worthington Foods, Inc. v. Kellogg Co., 732 F. Supp. 1417, 1431 (S.D.Ohio 1990). See also Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center, 109 F.3d 275, 288 (6th Cir. 1997).

Plaintiff does not allege that the Accused Posters contain any false or misleading statements concerning his approval or sponsorship. In fact, neither Plaintiff nor his patent are mentioned anywhere on the packaging of the Accused Posters. Rather, Plaintiff contends that because Defendants' Accused Posters embody the subject matter claimed in the 272 Patent, the public is likely to believe that the Accused Posters were produced by Plaintiff or were somehow sponsored or approved by him, and that the sale of the Accused Posters therefore constitutes a

false designation of origin.

Defendants argue that Plaintiff's claims are based on a "reverse passing off theory" and are foreclosed by the Supreme Court's decision in Dastar Corporation v. Twentieth Century Fox Film Corporation, 539 U.S. 23 (2003). Defendants are only partially correct. Although Plaintiff's claims are not based on a "reverse passing off theory," they are foreclosed by the holding in Dastar.

In Dastar, Twentieth Century Fox had allowed its copyright on a World War II television series to expire. Dastar copied portions of that series, which was now in the public domain, modified it slightly, labeled it with a different name, and sold the video set as its own product, giving no credit to Twentieth Century Fox. Twentieth Century Fox sued, alleging reverse passing off in violation of § 43(a) of the Lanham Act.

The Supreme Court noted that reverse passing off claims constitute a false designation of origin and are actionable under the Lanham Act. Id. at 30. However, the Court found that Dastar's conduct did not equate to reverse passing off. "Reverse passing off" occurs when the "producer represents someone else's goods or services as his own." Id. at 27 n.1. The Court noted that "if Dastar had bought some of [Defendant's] videotapes and merely repackaged them as its own," Twentieth Century Fox would undoubtedly have a claim for false designation of origin. Id. at 31.

However, Dastar's alleged wrongdoing was "vastly different." Dastar took a work in the public domain, modified it, and then marketed it as its own without giving credit to the true source of the work product. The relevant issue was whether the Lanham Act's reference to the "origin" of the "goods" should be construed to mean the manufacturer or producer of the product

that was marketed, *i.e.*, Dastar, or the creator of the underlying work that was copied, *i.e.*, Twentieth Century Fox. Id. The Court held as follows:

> We think the most natural understanding of the "origin" of "goods"- the source of wares - is the producer of the tangible product sold in the marketplace, in this case the physical Campaigns videotape sold by Dastar. . . . [A]s used in the Lanham Act, the phrase "origin of goods" is in our view incapable of connoting the person or entity that originated the ideas or communications that "goods" embody or contain. Such an extension would not only stretch the text, but it would be out of accord with the history and purpose of the Lanham Act and inconsistent with precedent.

Id. at 31-32. The Court noted that "[t]he consumer who buys a branded product does not automatically assume that the brand-name company is the same entity that came up with the idea for the product, or designed the product - and typically does not care whether it is. The words of the Lanham Act should not be stretched to cover matters that are typically of no consequence to purchasers." Id. at 32-33.

The Court rejected the idea that communicative products, *i.e.,* those valued for the intellectual content they convey, should be treated any differently. Id. at 33. It stated that "in construing the Lanham Act, we have been 'careful to caution against misuse or over-extension' of trademark and related protections into areas traditionally occupied by patent or copyright." Id. at 34 (quoting TrafFix Devices, Inc. v. Marketing Displays, Inc., 532 U.S. 23, 29 (2001)). "'The Lanham Act . . . does not exist to reward manufacturers for their innovation in creating a particular device; this is the purpose of patent law and its period of exclusivity.'" Id. (quoting TrafFix, 532 U.S. at 34). The Court concluded as follows:

> reading the phrase "origin of goods" in the Lanham Act in accordance with the Act's common-law foundations (which were not designed to protect originality or creativity), and in light of the copyright and patent laws (which were), we conclude that the phrase *refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods. Cf.* 17 U.S.C. § 202 (distinguishing between a copyrighted work and "any

16

> material object in which the work is embodied"). To hold otherwise would be akin to finding that § 43(a) created a species of perpetual patent and copyright, which Congress may not do. *See Eldred v. Ashcroft*, 537 U.S. 186, 208, 123 S.Ct. 769, 154 L.Ed.2d 683 (2003).

Id. at 37 (emphasis added). The Court noted that if Twentieth Century Fox had renewed its copyright in the television series, "it would have had an easy claim of copyright infringement." However, because Dastar was the "'origin' of the products it sold as its own," Twentieth Century Fox could not prevail on its Lanham Act claim. Id. at 38.

In this case, as in Dastar, Plaintiff does not allege that Defendants purchased his Talking Posters, repackaged them, and sold them as their own. Therefore, Defendants' conduct does not constitute reverse passing off; if it did, it would be actionable under the Lanham Act. However, for the reasons stated in Dastar, Plaintiff has not stated a viable Lanham Act claim of false designation of origin. Defendants' conduct has not created any likelihood of confusion as to the "origin" of the Accused Posters. Defendants are the producers of the Accused Posters that they sell as their own. Plaintiff may be the origin or source of the *idea* for the Accused Posters. However, as the Supreme Court noted in Dastar, the Lanham Act was not designed to protect originality and creativity. To the extent that Plaintiff alleges that Defendants have misappropriated his intellectual property, his recourse lies in an action for patent infringement, not false designation of origin or deceptive trade practices.

The recent case of Baden Sports, Inc. v. Molten USA, Inc., 556 F.3d 1300 (Fed. Cir. 2009) is also illustrative. Baden alleged that Molten infringed on its patent for a basketball with new "cushion control technology." Baden also asserted a false advertising claim under the Lanham Act based on allegations that Molten had misrepresented itself as the source of the innovation. Citing Dastar, the appellate court held that Baden's claims were not actionable

17

under § 43(a)(1)(A) of the Lanham Act because Molten's advertising did not cause confusion as to the origin of the basketballs. Id. at 1306.

For the reasons stated above, the Court concludes that Counts 2 and 3 of Plaintiff's Second Amended Complaint fail to state a claim upon which relief can be granted. The Court therefore grants Defendants' motion to dismiss those claims.

## IV. Conclusion

For the reasons stated above, Defendants' motion to take judicial notice (Doc. 12) is **GRANTED IN PART and DENIED IN PART**.

Defendants' motion to dismiss for failure to state a claim upon which relief can be granted (Doc. 11) is **GRANTED** with respect to Plaintiff's claims of false designation of origin and deceptive trade practices. With respect to Plaintiff's claim of patent infringement, however, the Court converts Defendants' motion to dismiss (Doc. 11) into a motion for summary judgment. Plaintiff shall have 45 days from the date of this Memorandum Opinion and Order to supplement the record; Defendants shall then have 21 days to reply.[5]

**IT IS SO ORDERED.**

Date: June 19, 2009                     **/s/ John D. Holschuh**
                                        John D. Holschuh, Judge
                                        United States District Court

---

[5] The Court notes that there are three other pending motions in this case. Defendant Walt Disney Company's motion to dismiss for lack of personal jurisdiction will be ruled upon in a separate order. Defendants' motion to dismiss for failure to join an indispensable party and Plaintiffs' related motion for leave to file a Third Amended Complaint are not yet fully briefed.