**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **AARON CLARK and JOHN PEIRANO,** | Case No. 2:08-CV-00982 |
| **Plaintiffs** | |
| **v.** | |
| **THE WALT DISNEY COMPANY; JAKKS PACIFIC, INC.; PLAY ALONG TOYS; KB TOYS; AMAZON.COM; and TOYS "R" US; BABYUNIVERSE, INC.; ETOYS DIRECT, INC.; DISNEY SHOPPING, INC.,** | Judge Holschuh<br><br>Magistrate Judge Abel |
| **Defendants.** | |

**MOTION OF DEFENDANTS JAKKS PACIFIC, INC., PLAY ALONG TOYS,**

**TOYS "R" US, AND DISNEY SHOPPING, INC.**

**FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11**

Defendants JAKKS Pacific, Inc., Play Along Toys, Toys "R" Us, and Disney Shopping, Inc. (collectively "Defendants") respectfully submit this motion for sanctions seeking an Order granting Defendants' attorneys' fees pursuant to Federal Rule of Civil Procedure 11 in the above captioned action. The basis for this motion is set forth in the accompanying Memorandum of Law. A proposed order is also submitted herewith.


Dated: October 7, 2009                          Respectfully submitted,

                                                By: /s/ Michael C. Lueder
                                                Michael C. Lueder
                                                Foley & Lardner LLP
                                                777 E. Wisconsin Ave.
                                                Milwaukee, WE 53202
                                                Tel: (414) 297-4900
                                                Trial Attorney


                                                /s/ Grant E. Kinsel
                                                Grant Kinsel (Admitted Pro Hac Vice)
                                                Michael Song (Admitted Pro Hac Vice)
                                                Foley & Lardner LLP
                                                555 South Flower St., Suite 3500
                                                Los Angeles, CA 90071
                                                Tel: (213) 972-4500

                                                Attorneys for Defendants
                                                JAKKS PACIFIC, INC., PLAY ALONG
                                                TOYS, TOYS "R" US, AND DISNEY
                                                SHOPPING, INC.

1

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **AARON CLARK and JOHN PEIRANO,** | Case No. 2:08-CV-00982 |
| **Plaintiffs** | |
| **v.** | |
| **THE WALT DISNEY COMPANY; JAKKS PACIFIC, INC.; PLAY ALONG TOYS; KB TOYS; AMAZON.COM; and TOYS "R" US; BABYUNIVERSE, INC.; ETOYS DIRECT, INC.; DISNEY SHOPPING, INC.,** | Judge Holschuh  Magistrate Judge Abel |
| **Defendants.** | |

**DEFENDANTS JAKKS PACIFIC, INC., PLAY ALONG TOYS, TOYS "R" US, AND
DISNEY SHOPPING, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11**

## TABLE OF CONTENTS

Page

I.    SUMMARY .................................................................................................. 1

II.   INTRODUCTION ....................................................................................... 3

III.  FACTUAL BACKGROUND ........................................................................ 4
      A.   Plaintiffs' Claim of Patent Infringement in the Complaint(s) ............................... 4
           1.   Plaintiffs and Their Counsel Ignored the Only Reasonable
                Construction of the "Housing Surface" Claim Limitation......................... 5
           2.   Plaintiffs Accused Posters that Can Never Possibly Meet the
                "Housing Surface" Claim Limitation................................................. 6
      B.   Early Communications Between the Parties................................................. 6
           1.   Defendants Immediately Informed Plaintiffs of the Frivolousness
                of the Complaint and Even Attempted a Nuisance-Value
                Settlement ................................................................................... 6
           2.   Defendants Served a Rule 11 Motion on Plaintiffs' Counsel
                Further Informing Plaintiffs of the Frivolousness of the Complaint .......... 7
      C.   Defendants' Motion to Dismiss Plaintiffs' Claim of Patent Infringement
           Pursuant to Federal Rule of Civil Procedure 12(b)(6)........................................ 8
           1.   Defendants' Rule 12(b)(6) Motion Demonstrated the Frivolousness
                of Plaintiffs' Claim of Patent Infringement ..................................... 8
           2.   Plaintiffs' Opposition to Defendants' Rule 12(b)(6) Motion
                Showed Their Failure to Conduct a Reasonable Pre-Filing
                Investigation................................................................................ 9
                a.   Plaintiffs' Arguments Were Not Warranted by Existing
                     Law ................................................................................. 9
                b.   Plaintiffs' Allegations Did Not Have Evidentiary Support .......... 10
                c.   Plaintiffs' Arguments Demonstrate Their Bad Faith and
                     Improper Purpose in Filing the Complaint ................................. 11
      D.   Plaintiffs' Discovery Responses Related to Claim of Patent Infringement.......... 11
           1.   Plaintiffs' Discovery Responses Regarding Their Assessment of
                Patent Infringement (Interrogatory No. 11, Request for Production
                No. 6) ......................................................................................... 12
           2.   Plaintiffs' Deficient Discovery Responses Regarding Claim
                Construction (Interrogatory Nos. 8-9, Request for Production No.
                3) ............................................................................................... 14
                a.   Plaintiffs' First Interrogatory Responses on March 13, 2009....... 14
                b.   Plaintiffs' Supplemental Interrogatory Responses on April
                     24, 2009.......................................................................... 15
                c.   Plaintiffs' Second Production of Documents on June 19,
                     2009.............................................................................. 16

# TABLE OF CONTENTS (CONT.)

Page

3. Plaintiffs' Deficient Discovery Responses Regarding a Claim Chart Comparing the Accused Products to the Claims (Interrogatory No. 3) ................................................................ 16

E. Defendants' Motion for Summary Judgment ........................................................ 17

 1. Plaintiffs' Frivolous Construction of the "Housing Surface" Claim Limitation in Opposing Defendants' Motion for Summary Judgment ............................................................................. 17

 2. Plaintiffs' Frivolous Arguments to Support Their Frivolous Construction of the "Housing Surface" Claim Limitation ...................... 19

  a. Plaintiffs' Arguments Were Not Warranted by Existing Law ................................................................................... 19

  b. Plaintiffs' Allegations Did Not Have Evidentiary Support .......... 19

  c. Plaintiffs' False Accusations Show Their Bad Faith and Improper Purpose in Filing the Complaint ................................. 20

F. Defendants' Motions to Dismiss Demonstrated Plaintiffs and Their Counsel's Failure to Conduct a Reasonable Pre-Filing Investigation ................. 20

 1. Defendants' Rule 12(b)(7) Motion to Dismiss Due to Plaintiffs' Misrepresentations of Ownership ......................................................... 20

 2. TWDC's Rule 12(b)(2) Motion to Dismiss Due to Plaintiffs False Assertions of Personal Jurisdiction Based on Unfounded Assumptions ..................................................................................... 22

 3. Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiffs' Claims of False Designation of Origin and Deceptive Trade Practices ................... 24

G. Plaintiffs Needlessly Increased Defendants' Costs of Defense ........................... 25

 1. Plaintiffs Unreasonably Increased Defendants' Costs Related to Their Motions to Dismiss ..................................................................... 25

 2. Plaintiffs Unreasonably Increased Defendants' Costs by Refusing to Stay Discovery ................................................................................ 27

 3. Plaintiffs Unreasonably Increased Defendants' Costs by Serving Deficient Responses to Discovery Requests ........................................... 27

IV. LEGAL STANDARDS ...................................................................................... 29

A. Federal Rule of Civil Procedure 11 ................................................................... 29

B. The Sixth Circuit Applies an Objective Standard of "Reasonableness Under the Circumstances" to the Pre-Filing Requirements of Rule 11 ............... 29

C. Application of the Pre-Filing Requirements of Rule 11 to Patent Cases............. 30

D. Additional Requirements of Rule 11 ................................................................. 31

 1. Safe Harbor Provision of Rule 11 ...................................................... 31

 2. Continuing Duty to Review and Reevaluate under Rule 11 ................... 32

V. ARGUMENT................................................................................................... 33

A. Plaintiffs' Construction of the "Housing Surface" Claim Limitation of the '272 Patent Was Objectively Baseless........................................................... 33

 1. Plaintiffs' Baseless Construction Was Not Warranted by Law ............... 35

ii

# TABLE OF CONTENTS (CONT.)

Page

2. Plaintiffs and Their Counsel Violated Rule 11 By Asserting Frivolous Arguments to Support Their Baseless Claim Construction ................................................................ 35

    a. Plaintiffs Asserted Unwarranted Legal Arguments to Support Their Baseless Claim Construction .................. 36

    b. Plaintiffs Asserted Unfounded Factual Allegations to Support Their Baseless Claim Construction ................... 36

    c. Plaintiffs' Vexatious Litigation Tactics Show Their Bad Faith and Improper Purpose In Filing a Frivolous Complaint ................................................................ 37

B. A Reasonable Pre-Filing Investigation Would Have Shown that the Accused Product Could Never Infringe the '272 Patent ...................................... 38

1. An Objectively Reasonable Claim Construction Was Straightforward and Could Not be Reasonably Disputed ........................ 38

2. The Accused Products Could Never Infringe Under an Objectively Reasonable Claim Construction ................................................ 39

C. The Evidence Shows That Plaintiffs and Their Counsel Failed to Conduct an Objectively Reasonable Pre-Filing Investigation .................................... 39

1. The Only Evidence of Any Pre-Filing Investigation Is Clark's Objectively Unreasonable Visual Inspection ........................................... 40

2. There Is No Evidence That Plaintiffs' Counsel Conducted Any Pre-Filing Investigation ................................................................ 41

3. Plaintiffs Bear the Burden to Demonstrate a Reasonable Pre-Filing Investigation ................................................................ 42

D. Plaintiffs' Deficient Responses to Discovery Show That Plaintiffs and Their Counsel Failed to Conduct a Reasonable Pre-Filing Investigation ............. 43

1. Plaintiffs' Deficient Discovery Responses Related to Claim Construction ................................................................ 44

2. Plaintiffs' Deficient Discovery Responses Related to Claim Charts Comparing the Accused Products to the Claims ..................................... 45

E. Plaintiffs' Failure to Conduct a Reasonable Pre-Filing Investigation Is Further Demonstrated by Other Baseless Allegations .......................................... 46

1. Plaintiffs' Misrepresentations Regarding Standing to Bring a Claim of Patent Infringement ................................................................ 46

2. Plaintiffs' Failure to Conduct a Reasonable Pre-Filing Investigation of the Correct Disney Defendant and Personal Jurisdiction ................................................................ 47

3. Plaintiffs' Failure to Conduct a Reasonable Pre-Filing Investigation Regarding Claims of False Designation of Origin .............. 50

F. Defendants Satisfied Rule 11's Safe Harbor Provision ....................................... 50

VI. CONCLUSION ................................................................ 52

iii

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Abamson v. Walt Disney Co.*,
132 Fed. Appx. 273 (11th Cir. 2005) ......................................................................49

*Antonious v. Spalding & Evenflo Cos.*,
275 F.3d 1066 (Fed. Cir. 2002) .......................................................30, 31, 33, 39

*Barrett v. Walt Disney Co.*,
No. 02-1285, 2003 U.S. Dist. LEXIS 19782 (D. Conn. May 1, 2003) ...................49

*Bus. Guides, Inc. v. Chromatic Commc
'ns Enters., Inc.*, 498 U.S. 533,554 (1991) ...........................................................29

*Classen Immunotherapies, Inc. v. Biogen IDEC*,
381 F. Supp. 2d 452 (D. Md. 2005) ......................................................................48

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990) ............................................................................................30

*Dark Horse Trading Co. v. Walt Disney Co.*,
No. 98-5251, 1999 U.S. Dist. LEXIS 7896 (N.D. Ill. 1999) ..................................49

*Datamize, LLC v. Plumtree Software, Inc.*,
417 F.3d 1342 (Fed. Cir. 2005) ............................................................................45

*Diego, Inc. v. Audible, Inc.*,
505 F.3d 1362 (Fed. Cir. 2007) ......................................................................32, 42

*Economy v. R.J. Reynolds Tobacco Co.*,
No. 1:92-CV-1543, 1993 U.S. Dist. LEXIS 21067 (N.D. Ohio Jan. 7, 1993) .......48

*F&G Research, Inc. v. Google Inc.*,
No. 06-60905, 2007 U.S. Dist. LEXIS 70072 (S.D. Fla. Sept. 20, 2007) ..............34

*Frank v. D'Ambrosi*,
4 F.3d 1378 (6th Cir. 1993) .................................................................................43

*Fuji Photo Film U.S.A., Inc. v. Aero Mayflower Transit Co.*,
112 F.R.D. 664 (S.D.N.Y. 1986) .........................................................................48

*Herron v. Jupiter Transp. Co.*,
858 F.2d 332 (6th Cir. 1988) ........................................................................ Passim

LACA_2358748.4

# TABLE OF AUTHORITIES (CONT.)

Page

*ICU Med., Inc. v. Alaris Med. Sys., Inc.*,
  558 F.3d 1368 (Fed. Cir. 2009) ................................................................. 30-31, 34

*Imonti v. Cherokee Data Sys.*,
  No. 89-CV-71121, 1989 U.S. Dist. LEXIS 17822 (E.D. Mich. Oct. 3, 1989) ....................48

*In re Nat'l Century Fin. Enters.*,
  No. 2:03-MD-1565, 2009 U.S. Dist. LEXIS 68379 (S.D. Ohio July 16, 2009) ....................42

*Kassab v. Aetna Indus., Inc.*,
  54 Fed. Appx. 819 (6th Cir. 2002) ..........................................................................43

*Keck v. Graham Hotel Sys.*,
  566 F.3d 634 (6th Cir. 2009) ........................................................................ 43-44

*Lahera v. Walt Disney Co.*,
  No. 08-11677, 2008 U.S. Dist. LEXIS 64726 (E.D. Mich. Aug. 22, 2008) ..........................49

*Mann v. G & G Mfg., Inc.*,
  900 F.2d 953 (6th Cir. 1990), *cert. denied*, 498 U.S. 959 (1990) ........................ 30, 32-33, 42

*Michod v. Walker Magnetics Group, Inc.*,
  115 F.R.D. 345 (N.D. Ill. 1987) ....................................................................... 46-48

*Micromesh Tech. Corp. v. Am. Rec. Prods.*,
  No. C-06-6030 MHP, 2007 U.S. Dist. LEXIS 64241 (N.D. Cal. Aug. 29, 2007) ..................44

*Nat'l Ass'n of Radiation Survivors v. Tumage*,
  115 F.R.D. 543 (N.D. Cal. 1987) ..........................................................................43

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (en banc) ................................................................38

*Ridder v. City of Springfield*,
  109 F.3d 288 (6th Cir. 1997) ........................................................................30, 32

*S. Bravo Sys., Inc. v. Containment Techs. Corp.*,
  96 F.3d 1372 (Fed. Cir. 1996) ................................................................40, 42, 50

*Sherman Treaters Ltd. v. Ahlbrandt*,
  115 F.R.D. 519 (D.D.C. 1987) ..............................................................................47

*Shulman v. Walt Disney World Co.*,
  No. 91-5259, 1992 U.S. Dist. LEXIS 2267 (E.D. Penn. Feb. 25, 1992) ................................49

v

## TABLE OF AUTHORITIES (CONT.)

Page

*Tech. Recycling Corp. v. City of Taylor*,
    186 Fed. Appx. 624 (6th Cir. 2006)........................................................................43

*Triune Star, Inc. v. Walt Disney Co.*,
    No. 07-1256, 2008 U.S. Dist. LEXIS 96136 (C.D. Ill. Nov. 24, 2008)...........................Passim

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,
    208 F.3d 981 (Fed. Cir. 2000)..................................................................... 31-32, 42

### REGULATORY CASES

*Rapp v. Walt Disney Co.*,
    48 U.S.P.Q.2d (BNA) 1157 (E.D. Penn. 1998) ......................................................49

### FEDERAL STATUTES

35 U.S.C. § 103.........................................................................................................45

35 U.S.C. § 112.........................................................................................................45

### RULES

FED. R. CIV. P. 11 ...............................................................................................Passim

FED. R. CIV. P. 11(a).................................................................................................31

FED. R. CIV. P. 11(b)(1)-(3).....................................................................................29

FED. R. CIV. P. 11(b) and (c)....................................................................................32

FED. R. CIV. P. 11(c)(2)............................................................................................32

FED. R. CIV. P. 26(b)(5)............................................................................................42

vi

## I.     SUMMARY

Defendants JAKKS Pacific, Inc., Play Along Toys, Toys "R" Us, and Disney Shopping, Inc. (collectively "Defendants") respectfully submit this memorandum of law in support of their motion for sanctions pursuant to Federal Rule of Civil Procedure 11.  This memorandum focuses on Plaintiffs and their counsel's: (1) filing of a frivolous Complaint asserting a baseless claim of patent infringement; (2) failure to conduct an objectively reasonable pre-filing investigation; and (3) assertions of unwarranted legal arguments and unfounded factual allegations in support of their baseless claim of patent infringement.  Pursuant to S.D. Ohio Civ. R. 7.2(a)(3), Defendants provide the following short summary of the three substantive sections of this memorandum, including the "Factual Background" and "Legal Standards" sections, and application of those legal standards to the facts, *i.e.* the "Argument" section.[1]

*First*, the "Factual Background" section (III) provides an accounting of some of Plaintiffs' unreasonable actions at each stage of this litigation.  *See infra* at pp. 4-28.  These stages include: (A) the filing of the Complaint; (B) early communications between the parties; (C) Defendants' motion to dismiss Plaintiffs' claim of patent infringement pursuant to Rule 12(b)(6); (D) Plaintiffs' deficient discovery responses and other abusive discovery practices; and (E) Defendants' (converted) motion for summary judgment.  For example, this section outlines some of Plaintiffs' violations of Rule 11 in their memoranda in opposition to Defendants' motion to dismiss and motion for summary judgment, including unwarranted legal arguments, unsupported factual allegations, and vexatious litigation tactics.

---

[1]     For the Court's convenience, the Summary, Introduction, Factual Background, Legal Standards, Argument and Conclusion sections each begin at the top of a new page.  *See infra* at pp. 1, 3, 4, 29, 33, 52.

1

The "Factual Background" section also discusses (F) how Plaintiffs' allegations related to their claim of patent infringement (*e.g.*, misrepresentations of standing, unfounded accusations against defendants, claims of false designation of origin) also demonstrate that Plaintiffs and their counsel failed to conduct a reasonable pre-filing investigation. Finally, this section lists a few examples of how (G) Plaintiffs unreasonably and unnecessarily increased Defendants' costs defending themselves against a frivolous claim for no good reason.

*Second*, the "Legal Standards" section (IV) sets forth the pre-filing investigation requirements imposed by Rule 11, and the legal standards that the Sixth Circuit and the Federal Circuit have developed in determining whether to impose sanctions under Rule 11. *See infra* at pp. 29-32. This section also discusses other requirements of Rule 11, such as the safe harbor provision and continuing duty to review and reassess.

*Third*, the "Argument" section (V) discusses: (A) Plaintiffs' frivolous claim construction; (B) how a reasonable investigation would have disclosed the frivolousness of Plaintiffs' claim of patent infringement; and (C) evidence showing that Plaintiffs did not conduct a reasonable pre-filing investigation. *See infra* at pp. 33-51. This section also discusses how (D) Plaintiffs' discovery responses and (E) Defendants' motions to dismiss, further demonstrate that Plaintiffs and their counsel failed to conduct a reasonable pre-filing investigation. Further, this section compares Plaintiffs' actions to those in similar cases where courts have awarded sanctions for similar types of unreasonable conduct and based on similar types of evidence. *See, e.g., Triune Star, Inc. v. Walt Disney Co.*, No. 07-1256, 2008 U.S. Dist. LEXIS 96136, at *21-26 (C.D. Ill. Nov. 24, 2008). Finally, the "Argument" section establishes that Defendants' complied with Rule 11's safe harbor provision and attempted to mitigate its costs in this case, but were thwarted by Plaintiffs' unreasonable and vexatious litigation tactics.

LACA_2358748.4

## II.     INTRODUCTION

Defendants respectfully move for an order imposing sanctions pursuant to Federal Rule of Civil Procedure 11.  This case is the archetype for Rule 11 sanctions.

A single read of the patent-in-suit, U.S. Patent No. 5,548,272 (the "'272 patent"), and a simple visual inspection of the accused products was all that was needed to avoid this lawsuit and the hundreds of thousands of dollars in costs and fees incurred by the Defendants.  One read-through of the '272 patent would have revealed that to infringe, the surface of the speaker housing would have to be prepared with "matching art" that is "substantially the same" as the art that the "housing covers."  Plaintiffs have always known that this was the scope of the '272 patent, as all of their commercial embodiments practiced just such a construction.  A non-destructive visual inspection—indeed, just a glance—at the accused products would have demonstrated that they were missing this key limitation.

This case was filed for only one reason: to hold-up large companies in the hope of extorting a settlement payment.  There can be no other reason, as there is **_no_** reading of the '272 patent under which the accused products can possibly infringe.  Thus, the only explanation for this lawsuit is that it was filed for purposes unrelated to the vindication of a legal position.

In the end, however, Plaintiffs' motivation in filing this case is besides the point.  The only thing that matters is that:  (1) the Complaint was utterly baseless; and (2) Plaintiffs' counsel could have determined that the case was utterly baseless with a thirty-second pre-suit investigation.  Rule 11 sanctions, therefore, are appropriate and should run against Plaintiffs Aaron Clark ("Clark"), John Peirano ("Peirano") (collectively "Plaintiffs") and their counsel.

LACA_2358748.4

### III.    FACTUAL BACKGROUND

#### A.    Plaintiffs' Claim of Patent Infringement in the Complaint(s)

On October 17, 2008, Clark, through his attorneys, filed a Complaint in this Court alleging a claim of patent infringement.[2]  Compl. at ¶¶ 38-56 (Dkt. #2).  The '272 patent, entitled *Talking Poster,* issued to Clark on August 20, 1996.[3]  The '272 patent includes five claims—one independent apparatus claim, three dependent apparatus claims, and one method claim. Independent claim 1 recites:

> 1. An assembly, comprising:
>
> a poster comprised of a first material, said poster having a first surface, said first surface including poster art thereon;
>
> a housing comprised of a second material, said housing attached to a portion of said first surface of said poster; a speaker concealed between said housing and said first surface of said poster;
>
> an electric circuit including a sound production component, operatively connected to said speaker and concealed between said housing and said first surface of said poster;
>
> a trigger attached to said electric circuit and concealed within said housing, said trigger adapted to be actuated through said housing to produce said sound;
>
> wherein a surface of said housing is prepared with a ***matching art*** which is ***substantially the same as*** that area [sic] of said poster art which appears on said portion of said poster that ***said housing covers*** when said housing is attached to said poster, such that said housing ***artistically blends in*** with the surrounding poster art that is ***not covered*** by said housing.

'272 patent at 2:57-3:12 (emphasis added).

---

[2]    Plaintiffs' allegations in the Complaint related to their claim of patent infringement are discussed *infra* at §§ III.F.1-III.F.2.  Plaintiffs' non-patent claims in the Complaint are discussed *infra* at § III.F.3.

[3]    A copy of the '272 patent is attached as Ex. "1" to the Declaration of Grant E. Kinsel ("Kinsel Decl."), submitted herewith.

LACA_2358748.4

The original Complaint has been amended three times to change the named parties, but otherwise, each Amended Complaint repeated the same claim of patent infringement.  *See also infra* at §§ III.F.1-III.F.2.  On July 8, 2009, Clark and Peirano filed a Third Amended Complaint containing substantially the same allegations for a claim of patent infringement as in the original Complaint.  *See* 3d Am. Compl. at ¶¶ 37-54 (Dkt. # 51).  Unless otherwise noted, this motion refers to Clark and Peirano collectively as "Plaintiffs."

As discussed below, Plaintiffs and their counsel filed a Complaint alleging a frivolous claim of patent infringement against accused products that could ***never*** infringe the ***only*** reasonable construction of the claims in the patent-in-suit.  Thus, their filing of the Complaint ***alone*** demonstrates their failure to conduct a reasonable pre-filing investigation.

### 1.  Plaintiffs and Their Counsel Ignored the Only Reasonable Construction of the "Housing Surface" Claim Limitation

The key limitation of the '272 patent—and the one so obviously missing from the accused products—concerns the surface of the housing ("housing surface"):

> wherein a surface of said housing is prepared with a ***matching art*** which is ***substantially the same as*** that area [sic] of said poster art which appears on said portion of said poster that ***said housing covers*** when said housing is attached to said poster, such that said housing ***artistically blends in*** with the surrounding poster art that is ***not covered*** by said housing.

'272 patent at 3:6-12; 4:11-17 (emphasis added).

According to the plain, ordinary meaning of the words of the "housing surface" claim limitation, every claim of the '272 patent requires a "housing surface" prepared with "matching art" that is "substantially the same" as the art on the portion of the poster that the "housing covers," so that the housing "artistically blends in" with the portions of the poster that are "not covered" by the housing.  *Id.*  As Defendants have previously set forth in exhaustive detail, the claims, specification, and prosecution history support only this construction.  *See generally*

5

Defs.' Mem. Supp. Mot. Dismiss at 7-11 (Dkt. # 11); Defs.' Reply Mem. Supp. Mot. Dismiss at 8-9 (Dkt. # 22); Defs.' Reply Mem. Supp. Mot. Summ. J. at 3-15 (Dkt. # 55).

> ### 2. Plaintiffs Accused Posters that Can Never Possibly Meet the "Housing Surface" Claim Limitation

In the Complaint, Plaintiffs accuse *Hannah Montana* and *Cheetah Girls* posters (the "accused products") of infringing the '272 patent.[4] Compl. at ¶¶ 33, 41 (Dkt. # 2); 3d Am. Compl. at 32, 40 ¶¶ (Dkt. # 51). As is immediately clear from just a cursory glace at the accused products, the "housing surfaces" are ___not___ prepared with "matching art" that is "substantially the same" as the portion of the poster that the "housing covers," so that the housing "artistically blends in" with the portions of the poster that are "not covered" by the housing. To the contrary, the "housing surfaces" on the accused products are prepared with a monochrome color, and no attempt is made to match the art on the housings to the art underneath the housings. Accordingly, there was never even a possibility of infringement.

> ### B. Early Communications Between the Parties

> ### 1. Defendants Immediately Informed Plaintiffs of the Frivolousness of the Complaint and Even Attempted a Nuisance-Value Settlement

Because it was so immediately obvious that Plaintiffs would never be able to make a successful claim of infringement of the '272 patent, Defendants' counsel immediately contacted Plaintiffs' counsel in an attempt to avoid expensive and protracted litigation. Defendants even attempted a nuisance-value settlement, offering Plaintiffs $5,000 to resolve the dispute. At the same time, Defendants' counsel put Plaintiffs' counsel on notice of the frivolousness of the case:

---

[4] Images of all nine of the accused products are attached as Exhibit "2" to the Kinsel Decl. *See also* Compl., Ex. A-B (Dkt. # 2-2 to 2-3); 1st Am. Compl., Ex. A-B (Dkt. # 28-2 to 28-3); 2d Am. Compl., Ex. A-D (Dkt. # 45-2 to 45-5); 3d Am. Compl., Ex. A-D (Dkt. # 51-2 to 52-5).

LACA_2358748.4

> Finally, as I mentioned, we seem to have strikingly different views on the merits of this lawsuit.  While reasonable minds can certainly differ, I think that your client is going to be extremely hard-pressed to show that JAKKS' products infringe the patent-in-suit.  …  We truly believe that this case is one that should be immediately settled before the parties incur substantial expenses and before ***your client becomes responsible for significant attorneys' fees***.

E-mail from Grant Kinsel, Foley & Lardner LLP, to Brian Dickerson, Dickerson Law Group (Nov. 13, 2008) (emphasis added).[5]  Plaintiffs rejected Defendants' settlement offer, and ignored Defendants' counsel's warning that the Complaint was frivolous.

### 2. Defendants Served a Rule 11 Motion on Plaintiffs' Counsel Further Informing Plaintiffs of the Frivolousness of the Complaint

On November 17, 2008, Defendants served Plaintiffs with a complete Rule 11 motion describing in detail why the Complaint was frivolous.[6]  The Rule 11 motion cited the applicable case law regarding claim construction, patent infringement, and the requirements imposed by Rule 11 for patent infringement claims.  *See* Rule 11 Mot. at 4-6, 9-10 [Kinsel Decl., Ex. 4].  The Rule 11 motion also explained why the accused products could never meet the properly construed "housing surface" claim limitation, and therefore, could never infringe any claim of the '272 patent.  *Id.* at 2-3, 6-9.  In short, even if Plaintiffs or their counsel did not understand that proving infringement would be impossible when they filed the Complaint, they were informed of the frivolousness of this case when they were served with a Rule 11 Motion in November 2008.  Notwithstanding receipt of the Rule 11 motion, Plaintiffs refused to dismiss the case.  If anything, Plaintiffs' unreasonable demands and vexatious litigation tactics got worse after being put on notice of the frivolousness of this case.

---

[5]     A copy of the e-mails between Defendants' counsel (Kinsel) and Plaintiffs' counsel (Dickerson) on November 13, 2008 is attached as Exhibit "3" to the Kinsel Decl.

[6]     Copies of the Rule 11 motion and e-mails between Kinsel and Dickerson on November 17, 2008 are attached as Exhibit "4" to the Kinsel Decl.

LACA_2358748.4

**C.      Defendants' Motion to Dismiss Plaintiffs' Claim of Patent Infringement Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

On January 2, 2009, Defendants raised the meritless nature of Plaintiffs' claim of patent infringement to the Court at the very first opportunity by filing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), demonstrating the frivolousness of the Complaint.  *See* Defs.' Mem. Supp. Mot. Dismiss (Dkt. # 11).  On January 30, 2009, Plaintiffs filed a brief in opposition to Defendants' motion to dismiss ("Opposition"), not only further demonstrating the frivolousness of the Complaint, but also demonstrating that Plaintiffs and their counsel failed to conduct a reasonable pre-filing investigation.  *See* Pls.' Mem. Opp'n Defs.' Mot. Dismiss (Dkt. # 19).  Defendants' motion to dismiss and Plaintiffs' Opposition are discussed below.

**1.      Defendants' Rule 12(b)(6) Motion Demonstrated the Frivolousness of Plaintiffs' Claim of Patent Infringement**

In their motion to dismiss, Defendants construed the same "housing surface" claim limitation according to the same plain, ordinary meaning of the words, based on the same applicable case law, the same citations to the written description, and the same dictionary definitions set forth in the Rule 11 motion served on Plaintiffs' counsel.  *Compare* Defs.' Mem. Supp. Mot. Dismiss at 2-11 (Dkt. # 11) *with* Rule 11 Mot. at 2-9 [Kinsel Decl., Ex. 4].  Further, Defendants demonstrated that a construction based on the plain, ordinary meaning was supported by: (1) Clark's statements during prosecution of the '272 patent; and (2) the PTO examiner's issuance of the '272 patent only after Clark amended the claims "to add limitation to the claim such that to emphasize the blister pack is printed so that it blends in with the artwork at the area where the blister pack is attached to."  *See* Defs.' Mem. Supp. Mot. Dismiss at 10-11 (Dkt. # 11) (quoting Examiner Interview Summary Record at 1 (Jan. 23, 1996)).  Under this construction, Defendants demonstrated that the accused products could never possibly infringe any claim of the '272 patent because they did not meet the "housing surface" claim limitation.  *Id.* at 11.

8

2.      **Plaintiffs' Opposition to Defendants' Rule 12(b)(6) Motion Showed Their Failure to Conduct a Reasonable Pre-Filing Investigation**

Plaintiffs and their counsel filed a brief in opposition to Defendants' motion to dismiss containing nothing but frivolous legal arguments and blatant factual misrepresentations.  *See* Pls.' Mem. Opp'n Defs.' Mot. Dismiss at 13-20 (Dkt. # 19).  Although these frivolous arguments were made three months *after* the Complaint was filed, they are evidence that Plaintiffs and their counsel failed to conduct a reasonable investigation *before* filing the Complaint.

a.      **Plaintiffs' Arguments Were Not Warranted by Existing Law**

The only argument in the Opposition possibly interpreting the words of the claims was Plaintiffs' conclusory argument that the words "similar," "complimentary," "substantially," "matching" and "blends" are all "common terms used interchangeably."  *Id.* at 13.  Plaintiffs, unsurprisingly, failed to cite a single case supporting their defining five different words to have exactly the same meaning.  *Id.*  Moreover, Plaintiffs failed to cite a single case supporting *any* aspect of their arguments related to claim construction.  *Id.* at 11-21.

Instead, Plaintiffs made frivolous legal arguments to justify their ignoring explicit words in the claims.  For example, Plaintiffs focused on sixteen of the sixty-three words comprising the "housing surface" claim limitation (*i.e.*, "housing artistically blends in with the surrounding poster art that is not covered by said housing"), concluded that these sixteen words described the "intent" of the '272 patent, and used this "intent" to ignore all the other words in the "housing surface" claim limitation.  *Id.* at 13-18 (citing '272 patent at 3:10-11).  Specifically, Plaintiffs argued that the '272 patent was not concerned with the art the "housing covers" because the "intent" defines the scope of the patent.  *Id.* at 14, 18.

Similarly, Plaintiffs focused on the first sentence of the specification (*i.e.*, "painted to match the color scheme of the poster art"), concluded that this sentence described the "concept"

9

of the '272 patent, and then used this "concept" to ignore all the other words in the specification. *Id.* at 5, 11 (citing '272 patent at 1:7-11). Specifically, Plaintiffs argued that the scope of the '272 patent was not limited to the only embodiment described in the specification because the "concept" of the patent is broader than the words in the claims. *Id.* at 16-17, 20. Indeed, Plaintiffs argued that the last sentence of the ***specification*** (*i.e.*, "modifications are possible without departing from the spirit of the invention") broadened the scope of the ***claims***. *Id.* at 20 (citing '272 patent at 2:52-55).

Had Plaintiffs and their counsel conducted a reasonable pre-filing claim construction analysis as required by Rule 11, they would have been able to cite to at least some case law supporting their construction, even if their citation misunderstood or misapplied patent law. Indeed, had Plaintiffs' counsel researched the patent statutes and Federal Circuit precedent *before* filing suit, they would have learned that the specification contains "a written description of the invention" and the scope of the patent is defined by the claims. *See* 35 U.S.C. § 112. Unfortunately, they did not conduct this basic inquiry, but rather made frivolous arguments in direct conflict with well-settled patent law to support their baseless interpretation of the claims.

**b.     Plaintiffs' Allegations Did Not Have Evidentiary Support**

The allegations in the Opposition regarding the prosecution history of the '272 patent also demonstrated that Plaintiffs and their counsel had not fully considered the entire prosecution history before filing suit. For example, Plaintiffs stated that "[a]dditional ***language was added, not as a limitation*** but to place further protection against more sophisticated future embodiments." *See* Pls.' Mem. Opp'n Defs.' Mot. Dismiss at 13-20 (Dkt. # 19) (emphasis added). As discussed above, the PTO examiner specifically stated the amendment was "***to add limitation to the claim***." Plaintiffs and their counsel apparently did not review the Examiner Interview Summary Record.

10

In addition, Plaintiffs stated that Clark used the word "camouflage" during prosecution to describe the preferred embodiment of a blister pack in dependent claims 3 and 4. *Id.* at 5. Plaintiffs and their counsel apparently did not fully consider Clark's use of the word "camouflage" during prosecution as they apparently withdrew this flawed argument in a subsequent brief. *Compare* Pls.' Mem. Opp'n Defs.' Mot. Dismiss at 5 (Dkt. # 22) *with* Pls.' Mem. Opp'n Defs.' Mot. Summ. J. at 17-20 (Dkt. # 54). Had Plaintiffs and their counsel conducted a reasonable pre-filing claim construction analysis, they would have been able to address the prosecution history more fully than with two blatant misrepresentations.

### c. Plaintiffs' Arguments Demonstrate Their Bad Faith and Improper Purpose in Filing the Complaint

The two statements described above were Plaintiffs' only statements in the Opposition even addressing the prosecution history. Instead, Plaintiffs urged the Court ignore the prosecution history, and requested leave to provide supplemental briefing if the Court considered the prosecution history and converted Defendants' motion to dismiss into a motion for summary judgment. *See* Pls.' Mem. Opp'n Defs.' Mot. Dismiss at 4-5 (Dkt. # 19). Had Plaintiffs and their counsel conducted a reasonable pre-filing claim construction analysis as required by Rule 11, they would not have needed supplemental briefing that wasted the Court's time and the parties' resources, but rather would have been able to set forth their arguments in the Opposition.

### D. Plaintiffs' Discovery Responses Related to Claim of Patent Infringement

After Defendants' motion to dismiss had been fully briefed and was pending before the Court, on February 11, 2009, Defendant JAKKS Pacific, Inc. ("JAKKS") served Plaintiffs with a First Set of Interrogatories (Nos. 1-23) and a First Set of Requests for the Production of Documents (Nos. 1-60). Plaintiffs' responses to these discovery requests, including all of their supplemental responses to-date, are listed below:

11

- On March 13, 2009, Plaintiffs provided their initial responses to JAKKS' First Interrogatories.

- On March 13, 2009, Plaintiffs provided their initial written responses to JAKKS' First Requests for Production and made some documents available for copying.

- On April 3, 2009, Plaintiffs provided supplemental responses to Interrogatory Nos. 2-5, 7, 13-14, and 21-23.

- On April 24, 2009, Plaintiffs provided supplemental responses to Interrogatory Nos. 8 and 9.

- On May 18, 2009, Plaintiffs provided second supplemental responses to Interrogatory Nos. 4, 5, 12, 13 and 17.

- On June 19, 2009, Plaintiffs provided a supplemental production of documents responsive to JAKKS' First Requests for Production.[7]

Discussed below are a sample of Plaintiffs' responses to Defendants' discovery requests further demonstrating Plaintiffs and their counsel's unreasonable pre-litigation investigation.  *See also infra* at § III.G.3 (discussing discovery conferences due to Plaintiffs' deficient responses).

1.    **Plaintiffs' Discovery Responses Regarding Their Assessment of Patent Infringement (Interrogatory No. 11, Request for Production No. 6)**

JAKKS' Interrogatory No. 11 sought identification of "all analyses performed to assess with any of Defendants' products infringe the Patent-in-Suit, including the identity of who performed such analyses, and when."  *See* JAKKS' Interrog. # 11 [Kinsel Decl., Ex. 5].

Similarly, JAKKS' Request for Production No. 6 sought "[a]ll documents evidencing, reflecting, or referring to written opinions, analyses, or communications concerning the … alleged infringement of, the Patent-in-Suit …."  *See* JAKKS' Req. Produc. Docs. # 6 [Kinsel Decl., Ex. 6].

---

[7]    Excerpts from JAKKS' First Set of Interrogatories, Plaintiffs' Responses, Supplemental Responses, and Second Supplemental Responses, and related correspondence, are attached as Exhibit "5" to the Kinsel Decl.  Excerpts from JAKKS' First Set of Requests for Production of Documents, Plaintiffs' Responses, and related correspondence, are attached as Exhibit "6" to the Kinsel Decl.

LACA_2358748.4

In the first, and only, response to Interrogatory No. 11, Plaintiffs stated:

> Plaintiff performed an analysis in the middle of 2008.  Plaintiff identified that Defendants' poster has artwork, ***a sound module*** containing electronics ***which is designed to blend into and match with the artwork***, able to be activated, and attached to the poster art.  Additional analysis has been performed by other parties to which all non-privileged expert witness testimony responsive to this Interrogatory will be produced 60 days before the deadline for completing all discovery per the Court's Preliminary Pretrial Order.

*See* Pls.' Resp. Interrog. # 11 (emphasis added) [Kinsel Decl., Ex. 5].  Plaintiffs' counsel later confirmed that Clark's "analysis" in the middle of 2008 was "a visual infringement analysis and as such he has no written documents in his custody, possession or control."  Letter from Sharlene Chance, Dickerson Law Group, to Michael Song, Foley & Lardner LLP at 2 (Apr. 30, 2009) [Kinsel Decl., Ex. 6].

While Plaintiffs' response to Interrogatory No. 11 referred to "additional analysis" conducted by "other parties," Plaintiffs never supplemented their discovery responses to include any such analysis.  Indeed, facing a dispositive motion for summary judgment, Plaintiffs only offered the wholly conclusory, completely unsupported, and inadmissible declaration of an expert in graphic design.  *See infra* at §  III.E.2.  Moreover, the "expert analysis" of the graphic designer was likely ***not*** conducted ***before*** the filing of the Complaint, as neither the analysis or supporting materials were ever provided in response to discovery requests related to claim construction.  *See infra* at § III.D.2.

In addition, despite serving their initial responses to Defendants' discovery requests on March 13, 2009, Plaintiffs have ***never*** provided a privilege log listing any responsive documents withheld based on a claim of privilege.  Indeed, the identification of any pre-filing investigation, as opposed to the actual analysis and conclusion, would not be privileged anyhow.

     2.       **Plaintiffs' Deficient Discovery Responses Regarding Claim Construction (Interrogatory Nos. 8-9, Request for Production No. 3)**

JAKKS' Interrogatory Nos. 8 and 9 sought Plaintiffs' claim construction and all supporting evidence, respectively.   Specifically, these interrogatories requested Plaintiffs identify: (1) their "construction of each and every limitation" for each asserted claim of the '272 patent; and (2) all evidence supporting their claim construction, including but not limited to, "all references from the specification or prosecution history[,] … dictionary definitions, citations to learned treatises and Prior Art, and testimony of percipient and expert witnesses."  *See* JAKKS' Interrogs. # 8 & 9 [Kinsel Decl., Ex. 5].

     a.       **Plaintiffs' First Interrogatory Responses on March 13, 2009**

On March 13, 2009, Plaintiffs initially responded to Interrogatory No. 8 with the following "construction" of the "housing surface" claim limitation of claim 1:

> … the surface of the housing is prepared with ***matching art substantially the same as the surrounding art on the poster*** as to blend in artistically with the poster. In other words, pink housing matches pink on the poster and is designed to look attractive and artistically blend with the poster in order to look attractive as a product.

*See* Pls.' Resp. Interrog. # 8 [Kinsel Decl., Ex. 5] (emphasis added).[8]  In addition, in response to Interrogatory No. 9, Plaintiffs responded with the following "supporting evidence":

> In addition and in support of Plaintiff's claims, there are ***several references in the patent history*** referring to the general term and idea of enabling a talking poster as a new concept and invention. … Furthermore, ***reference can be found*** stating that matching art itself would not be considered an inventive step because the function of the device would not be modified from prior inventions.   So ultimately, the patent was received upon convincing the patent office of the uniqueness of the overall "spirit of the invention," with which they agreed.

*See* Pls.' Resp. Interrog. # 9 [Kinsel Decl., Ex. 5] (emphasis added).

---

[8]     Plaintiffs actually referenced a prior response.  Indeed, Plaintiffs provided one response to six different interrogatories.  *See* Pls.' Resp. Interrog. # 2, 3, 5, 7-9 [Kinsel Decl., Ex. 5].

Plaintiffs' counsel claimed that Clark's responses were "to the best of his ability," "provided references to the prosecution history," and would be "supplemented as he discovers additional information."  *See* Letter from Chance to Kinsel (Mar. 16, 2009) [Kinsel Decl., Ex. 5]. As discussed *infra* at § III.G.3, Judge Abel ordered Plaintiffs to supplement their deficient responses to Interrogatory Nos. 8 and 9.  *See* Order at 2 (Apr. 14, 2009) (Dkt. # 37).

### b.   Plaintiffs' Supplemental Interrogatory Responses on April 24, 2009

In their supplemental response to Interrogatory Nos. 8 and 9, served on April 24, 2009, rather than actually interpret any word in the "housing surface" claim limitation, Plaintiffs instead responded with irrational, attorney argument:

> … It is not intended that one piece of the sentence would be singled out and argued on its own, or that any individual word or description would be taken out of the sentence and argued out of context. … The last sentence of claim one on this Patent is intended to say that when the housing is placed on the poster, it will be done in a manner such that the end product is ***attractive, professional*** and that the housing does not ***stick out like a sore thumb***.  '272 Patent 1:7-15.  This sentence of the claim ***is not concerned with what the housing covers*** …

> ***Broad words*** were used to convey the concept of "artistically blends."  Certainly, the sentence is carefully crafted to cover a potential future embodiment with a housing that potentially could match exactly, but does not require such, and at the same time is ***intentionally written in vague enough form*** with use of ***broad words*** so as not to limit the scope of, excuse, exclude or fail to protect in any way use of a housing which simply attractively blends, as is stated in the claim itself. '272 Patent 1:55-2:1-55. … The intent was to protect against any copy cat of our Talking Poster concept brought into the marketplace, which ***would obviously be done*** in an ***attractive and professional*** manner and we have done so.

*See* Pls.' 1st Suppl. Resp. Interrog. # 8 & 9 [Kinsel Decl., Ex. 5].  In addition to the citations to the specification of the '272 patent subsumed in Plaintiffs' written response, Plaintiffs also attached dictionary definitions from the internet, dubiously dated April 24, 2009.  *Id.*

Plaintiffs, however, did not provide any further details of the vague references to the prosecution history in their initial response.  Plaintiffs also did not identify any additional

15

materials or evidence supporting their construction, such as those offered in their brief in opposition to Defendants' motion for summary judgment. *See infra* at § III.E.2. Specifically, in their April 24, 2009 supplemental responses, Plaintiffs did not include any additional extrinsic evidence, such as Shapiro's "expert testimony" on claim construction (*i.e.*, "the color, finish, and surface artwork of the housing form a harmonious visual effect with the art on the poster") or documents supporting Shapiro's "expert testimony" (*e.g.*, Color Wheel, Pantone Color Guide).

### c.   Plaintiffs' Second Production of Documents on June 19, 2009

JAKKS' Request for Production No. 3 sought "[a]ll file histories and correspondence relating, in any way, to the prosecution of the Patent-in-Suit …." JAKKS' Req. Produc. Docs. # 3 [Kinsel Decl., Ex. 6]. Defendants were forced to contact Plaintiffs' counsel after Plaintiffs inexplicably failed to produce the prosecution history in response to Defendants' Request. *See* Letter from Song to Chance (Apr. 27, 2009) [Kinsel Decl., Ex. 6]. Indeed, Plaintiffs did not even produce the entire prosecution history of the '272 patent until June 19, 2009. *See* Letter from Chance to Song (June 19, 2009) [Kinsel Decl., Ex. 6].

### 3.   Plaintiffs' Deficient Discovery Responses Regarding a Claim Chart Comparing the Accused Products to the Claims (Interrogatory No. 3)

JAKKS' Interrogatory No. 3 sought a "chart identifying specifically where each limitation of each Asserted Claim is found within each Accused Instrumentality …." *See* JAKKS' Interrog. # 3 [Kinsel Decl., Ex. 5]. Plaintiffs' response on March 13, 2009 did not include a claim chart, but rather stated:

> Defendants have a poster including poster art; a housing comprised of a second material which is attached to the poster art; … and the ***surface of the housing is prepared with matching art substantially the same as the surrounding art on the poster as to blend in artistically with the poster.*** In other words, pink housing matches pink on the poster and is designed to look attractive and artistically blend with the poster in order to look attractive as a product.

*See* Pls.' Resp. Interrog. # 3 (emphasis added) [Kinsel Decl., Ex. 5].

16

As discussed *infra* at § III.G.3, Judge Abel ordered Plaintiffs to supplement their deficient response to Interrogatory No. 3. *See* Order at 1 (Apr. 14, 2009) (Dkt. # 37). Plaintiffs' supplemental response on April 3, 2009 included the text of claims 1 and 5 of the '272 patent and arrows pointing to different parts of the accused products. *See* Pls.' 1st Suppl. Resp. Interrog. # 3 [Kinsel Decl., Ex. 5]. As with Plaintiffs' initial response, the supplemental response never identified "matching art" that was "substantially the same" as the art the "housing covers," but rather identified the art "not covered" by the housing as "matching" the housing surface. *Id.* Thus, Defendants were again forced to seek a discovery conference to compel Plaintiffs to supplement their deficient discovery response. *See infra* at § III.G.3. In the only time he ever disagreed with Defendants at any discovery conference, Judge Abel held:

> Plaintiff has responded to the interrogatory. If defendants' interpretation of the claims is correct, then I read plaintiff's answer to the interrogatory to ***concede that the claim element at issue is not literally infringed by the accused devices because there is no poster art under the housings of the two allegedly infringing devices thus far identified by plaintiff***.

*See* Order at 2 (Apr. 20, 2009) (Dkt. # 41) (emphasis added).

### E.   Defendants' Motion for Summary Judgment

#### 1.   Plaintiffs' Frivolous Construction of the "Housing Surface" Claim Limitation in Opposing Defendants' Motion for Summary Judgment

On June 19, 2009, the Court found the prosecution history to be relevant to its construction of the "housing surface" claim limitation, converted Defendants' motion to dismiss into a motion for summary judgment, and granted Plaintiffs' request to submit additional briefing. *See* Order at 11-12 (June 19, 2009) (Dkt. # 48). As per the Court's June 19, 2009 Order: (1) on August 3, 2009, Plaintiffs filed a supplemental brief in opposition to Defendants' motion for summary judgment; and (2) on August 24, 2009, Defendants filed a supplemental

17

reply brief in support of their motion for summary judgment.  *See* Pls.' Mem. Opp'n Defs.' Mot. Summ. J. (Dkt. # 54); Defs.' Reply Mem. Supp. Mot. Summ. J. (Dkt. # 55).

       As set forth in detail in Defendants' supplemental reply brief, Plaintiffs proposed a frivolous claim construction of the "housing surface" claim limitation that ignores explicit words of the claims.  *See* Defs.' Reply Mem. Supp. Mot. Summ. J. at 5-13 (Dkt. # 55).  Further, as Defendants have repeatedly stated, and as the Court has already found, Clark specifically added the "housing surface" claim limitation to overcome a prior art rejection by the U.S. Patent and Trademark Office ("PTO") examiner, and this narrowing amendment was required for the '272 patent to even issue.  *Id.* at 4-7 (Dkt. # 55) (citing Defs.' Mem. Supp. Mot. Dismiss at 10-11, Ex. 5 at 78 (Dkt. # 11 & 11-7)); Order at 11 (June 19, 2009) (Dkt. # 48).

       As a reminder of the frivolousness of Plaintiffs' last construction of the "housing surface" claim limitation in view of the explicit words added during prosecution to overcome a prior art rejection, below is a table comparing Plaintiffs' construction of the "housing surface" claim limitation with the original and issued words of the claims of the '272 patent.  *See* Defs.' Reply Mem. Supp. Mot. Summ. J. at 5 (Dkt. # 55) (Table 2).

| **Original Claim** | **Issued Claim** | **Plaintiffs' Construction** |
|---|---|---|
| "…wherein said *blister pack* | "… wherein a surface of said *housing* is prepared with | "the color, finish, and surface artwork of the *housing* |
|  | a *matching* art which is *substantially the same as* that area of said poster art which appears on said portion of said poster that said *housing covers* when said housing is attached to said poster, |  |
| *matches* the *artwork of the poster* to which it is attached …" | such that said housing *artistically blends in* with the *surrounding poster art* that is *not covered* by said housing." | form a *harmonious visual effect* with the *art on the poster*." |

LACA_2358748.4

> 2.     **Plaintiffs' Frivolous Arguments to Support Their Frivolous Construction of the "Housing Surface" Claim Limitation**

Throughout this case, Plaintiffs have ignored the plain, ordinary meaning of the claim terms, and have tried every manner of tactic to avoid a reasonable reading of the claims.  As demonstrated at length in Defendants' briefs in support of their motion to dismiss / motion for summary judgment, Plaintiffs' arguments attempting to support their frivolous claim construction were completely baseless.  *See generally* Defs.' Mem. Supp. Mot. Dismiss at 5-11 (Dkt. # 11); Defs.' Reply Mem. Supp. Mot. Dismiss at 1-12 (Dkt. # 22); Defs.' Reply Mem. Supp. Mot. Summ. J. at 5-19 (Dkt. # 55).  As discussed below, Plaintiffs' frivolous arguments also violated Rule 11.

> a.     **Plaintiffs' Arguments Were  Not Warranted by Existing Law**

Disregarding well-established Federal Circuit precedent, Plaintiffs asserted frivolous legal arguments to support their unreasonable construction by (among others): (1) proposing a claim construction that would invalidate the patent as indefinite or obvious; and (2) grossly misapplying basic patent law (*e.g.*, construing claims in context, importing limitations from specification, etc.).  *See* Defs.' Reply Mem. Supp. Mot. Summ. J. at 10-13, 17 n.14, 20 n.17 (Dkt. # 55).

> b.     **Plaintiffs' Allegations Did Not Have Evidentiary Support**

Plaintiffs asserted unfounded allegations to support their unreasonable construction by (among others): (1) arguing that a person of ordinary skill in the art for a utility patent claiming an electronic device is a graphic designer; and (2) grossly misrepresenting the factual evidence (*e.g.*, examiner's interview summary, prior art, etc.).  *Id.* at 4 n.6, 10 n.10, 14 n.13.

19

c. **Plaintiffs' False Accusations Show Their Bad Faith and Improper Purpose in Filing the Complaint**

Plaintiffs made specious accusations against Defendants and Defendants' construction of the "housing surface" claim limitation based on the plain, ordinary meaning of the words by (among others): (1) falsely accusing Defendants' construction of failing to give meaning to all the words of the claims; and (2) falsely accusing Defendants' counsel of misleadingly quoting a Supreme Court decision by failing to educate Plaintiffs' counsel about an inapplicable exception 14 pages later in the decision. *Id.* at 6-7, 7 n.9, 18 n.15.

F. **Defendants' Motions to Dismiss Demonstrated Plaintiffs and Their Counsel's Failure to Conduct a Reasonable Pre-Filing Investigation**

Defendants' have filed three motions to dismiss pursuant to Federal Rule of Civil Procedure 12 in this litigation. In addition to Plaintiffs' filing of a frivolous claim of patent infringement, Defendants' motions to dismiss further demonstrate that Plaintiffs and their counsel failed to conduct a reasonable pre-filing investigation.

1. **Defendants' Rule 12(b)(7) Motion to Dismiss Due to Plaintiffs' Misrepresentations of Ownership**

On May 18, 2009, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure to join a necessary and indispensable party. *See* Defs.' Mot. Dismiss (Dkt. # 46). As demonstrated by Defendants' Rule 12(b)(7) motion to dismiss, Plaintiffs and their counsel's lack of adequate pre-suit diligence is further shown by their repeated misrepresentations regarding ownership of the '272 patent in the Complaint and two amended Complaints.[9]

---

[9] It is well-settled that a co-owner of a patent is a necessary and indispensable party to an action for patent infringement. *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1467-68 (Fed. Cir. 1998) ("An action for infringement must join as plaintiffs all co-owners.").

LACA_2358748.4

Specifically, Plaintiffs alleged that Clark was "the ***sole owner*** of the 272 Patent" and "has been and ***still is*** the rightful owner of ***all*** rights, title and interest to the 272 Patent." *See* Compl. at ¶¶ 29, 39 (Dkt. # 2) (emphasis added); *see also* 1st Am. Compl. at ¶¶ 29, 39 (Dkt. # 28).  The Complaint, however, attached a purported "assignment of license" that showed that the '272 patent was assigned jointly to Clark ***and Peirano***.[10]  *See* Compl., Ex. K (Dkt. # 2-12); *see also* 1st Am. Compl., Ex. K (Dkt. # 28-12).  Had Plaintiffs or their counsel simply read the documents they attached to the Complaint, they would have known that these allegations were false.

Due to the apparent inconsistencies in the Complaint, Defendants served discovery requests seeking copies of the actual assignment agreements—filed and maintained as public records at the PTO.  *See* JAKKS' Req. Produc. Docs. # 26 [Kinsel Decl., Ex. 6].  Defendants, however, were forced to incur unnecessary costs by obtaining the actual assignment agreements directly from the PTO because Plaintiffs and their counsel apparently did not have possession of the assignment agreements.  *See* Letter from Chance to Song at 2 (May 8, 2009) [Kinsel Decl., Ex. 6].  The actual assignment agreements confirmed that Clark assigned a partial interest to the '272 patent to Peirano on December 16, 1998 and again on May 1, 1999.  *See* Song Decl. Supp. Mot. Dismiss, Ex. 2-3  (Dkt. # 46-4, 46-5).  Had Plaintiffs or their counsel investigated publicly-available documents that Plaintiffs themselves signed and filed at the PTO before filing the Complaint, they would have known that these key factual allegations were false.

---

[10]    The "assignment of license" attached to the Complaints was not the actual assignment agreements between Clark and Peirano, but was rather a copy of the assignment record for the '272 patent from the PTO dated April 12, 1999, almost 10 years before the filing of the Complaint.

21

Defendants also requested Plaintiffs describe the complete chain of title of the patent-in-suit in an interrogatory.  *See* JAKKS' Interrog. # 15 [Kinsel Decl., Ex. 5].  On March 13, 2009, Plaintiffs confirmed that the '272 patent was assigned jointly to Clark and Peirano.  *See* Pls.' Resp. JAKKS' Interrog. # 15 [Kinsel Decl., Ex. 5].  On May 7, 2009, however, Plaintiffs inexplicably repeated their misrepresentations regarding ownership in another amended Complaint.  *See* 2d Am. Compl at ¶¶ 28, 38, Ex. M (Dkt. # 45, 45-14).  In view of their prior discovery responses, Plaintiffs' allegations in the Second Amended Complaint were ***knowingly false***, demonstrating Plaintiffs and their counsel's complete disregard for their Rule 11 obligations or this Court.

### 2. TWDC's Rule 12(b)(2) Motion to Dismiss Due to Plaintiffs False Assertions of Personal Jurisdiction Based on Unfounded Assumptions

On January 23, 2009, Defendant The Walt Disney Company ("TWDC") filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. *See* TWDC Mot. Dismiss (Dkt. # 16).  As demonstrated by TWDC's Rule 12(b)(2) motion to dismiss, Plaintiffs' lack of pre-suit diligence is further shown by their: (1) baseless assertions regarding personal jurisdiction based solely on unfounded and unconfirmed assumptions; and (2) baseless allegations regarding the actions of Disney entities incorrectly named as defendants in this case.

Specifically, in the Complaint, Plaintiffs *assumed* that TWDC sold accused products via the Disney websites listed in the Complaint without any evidence that TWDC even owned or operated the Disney websites, let alone sold accused products via the Disney websites.  *See* Compl. at ¶¶ 10, 37 (Dkt. # 2); Order at 2-3 (Sept. 21, 2009) (Dkt. # 61).  Notably, Plaintiffs attached a copy of a printout from the website <disneyshopping.com> which included in the address "DSIProductDisplay." *See* Compl., Ex. C (Dkt. # 2-4).

22

As Defendants informed Plaintiffs, TWDC is merely a holding company and has **never** hosted **any website**, including the website mentioned in the Complaint, and has **never** offered for sale or sold **any product**, including the accused products.  *See* Reed Decl. Supp. TWDC's Mot. Dismiss at ¶¶ 3, 6, 7 (Dkt. # 16-2); TWDC's Mem. Supp. Mot. Dismiss at 3-5 (Dkt. # 16); TWDC's Reply Mem. Supp. Mot. Dismiss at 4-6 (Dkt. # 34).

When confronted with these undisputed facts, Plaintiffs persisted without exercising any reasonable diligence by incorrectly naming two additional Disney entities as defendants in this action.  *See* 1st Am. Compl. at ¶¶ 2f-2i, 10, 37 (Dkt. # 28).  Indeed, only when Defendants' counsel *voluntarily* identified the proper party for them, did Plaintiffs correctly name the entity that actually sold accused products on the <disneyshopping.com> website—Disney Shopping, Inc. ("DSI").  *See* Pls.' Mot. File 2d Am. Compl. at 1 (Dkt. # 43).  But despite the fact that Plaintiffs could not even identify DSI as the correct party in two Complaints, after Defendants' counsel *voluntarily* identified DSI for them, Plaintiffs *assumed* that DSI was controlled by TWDC without any evidence supporting their unfounded assumptions.  *See* 2d Am. Compl. at ¶¶ 2, 2a-2j, 36 (Dkt. # 43).

In addition, as discussed *infra* at § III.G.1, Plaintiffs needlessly increased Defendants' costs in defending against the frivolous Complaint by seeking discovery from TWDC of evidence supporting its allegations of personal jurisdiction that Rule 11 requires *before* filing suit.  Indeed, as Judge Abel recently noted:  "Plaintiffs' discovery requests **assume** that TWDC has such a close relationship with DSI that DSI's actions are those of TWDC. Plaintiffs have offered **no evidence** that proves that assertion."  Order at 2 (Sept. 21, 2009) (emphasis added) (Dkt. # 61).

23

No doubt due to Judge Abel's harsh criticism at the discovery conference, Plaintiffs recently stipulated to dismiss TWDC without prejudice. *See* Stipulation of Dismissal (Dkt. # 62). The harm caused by their baseless allegations in the Complaint, however, has already been inflicted on the Defendants.

### 3. Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiffs' Claims of False Designation of Origin and Deceptive Trade Practices

In their Rule 12(b)(6) motion to dismiss Plaintiffs' frivolous claim of patent infringement, Defendants also moved to dismiss Plaintiffs' claims of false designation of origin under the Lanham Act and Ohio deceptive trade practices. *See* Defs.' Mem. Supp. Mot. Dismiss at 12-15 (Dkt. # 11); Compl. at ¶¶ 38-71 (Dkt. # 2).[11] These claims depended entirely on Plaintiffs' claim of patent infringement, as this Court noted:

> Plaintiff does not allege that the Accused Posters contain any false or misleading statements concerning his approval or sponsorship. … Plaintiff contends that because Defendants' Accused Posters embody the subject matter claimed in the 272 Patent, the public is likely to believe that the Accused Posters were produced by Plaintiff or were somehow sponsored or approved by him, and that the sale of the Accused Posters therefore constitutes a false designation of origin.

*See* Order at 14-15 (June 19, 2009) (Dkt. # 48).

Further, as this Court also noted, the Supreme Court has held that "'[t]he Lanham Act … does not exist to reward manufacturers for their innovation in creating a particular device; this is the purpose of patent law and its period of exclusivity.'" *Id.* at 16 (quoting *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34 (2003) (quoting *Traffix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 34 (2001))). Based on Supreme Court precedent, this Court granted Defendants' Rule 12(b)(6) motion to dismiss Plaintiffs' claims of false designation

---

[11] Upon the Court's entry of final judgment, Defendants plan to file a motion for a finding of exceptional case and for an award of attorneys' fees pursuant to 15 U.S.C. § 1117(a)(3) and 35 U.S.C. § 285.

LACA_2358748.4

of origin and deceptive trade practices.  *Id.* at 17-18.  Thus, Plaintiffs' counsel failed to conduct a reasonable pre-filing inquiry that their claims of false designation of origin and deceptive trade practices were warranted by existing law.

    **G.**    **Plaintiffs Needlessly Increased Defendants' Costs of Defense**

        **1.**    **Plaintiffs Unreasonably Increased Defendants' Costs Related to Their Motions to Dismiss**

Plaintiffs' vexatious litigation tactics unreasonably increased Defendants' already unnecessary costs in defending themselves against a frivolous Complaint.  For example, in their initial opposition to Defendants' Rule 12(b)(6) motion to dismiss, Plaintiffs refused to address the prosecution history or propose any construction of the single claim limitation at issue.  *See generally* Pls.' Mem. Opp'n Defs.' Mot. Dismiss (Dkt. # 19).  Plaintiffs even requested the Court ignore evidence relevant to its claim construction, requested leave to file supplemental briefing if the Court considered the prosecution history, barely addressed the prosecution history in its supplemental briefing, and again requested the Court ignore relevant evidence.  *Id.* at 4-5, 16; Pls.' Mem. Opp'n Defs.' Mot. Summ. J. at 17-20 (Dkt. # 54).  Had Plaintiffs conducted a proper pre-filing investigation, there would have been no need for supplemental briefing.

Similarly, Plaintiffs' conduct related to TWDC's Rule 12(b)(2) motion to dismiss also unreasonably increased Defendants' costs of defense.  While TWDC's Rule 12(b)(2) motion was pending, Defendants' counsel *voluntarily* identified DSI, a solvent Disney entity over whom the Court had personal jurisdiction.  Defendants' counsel even *voluntarily* accepted service of the summons and complaint on DSI's behalf, with the hope and expectation that Plaintiffs would realize that one Disney entity—an entity that could satisfy any judgment and the entity that committed the acts alleged to constitute infringement in the Complaint—was enough and dismiss TWDC.  But reasonableness did not prevail on Plaintiffs' side of the ledger, and when the Court

25

permitted Plaintiffs to take discovery regarding personal jurisdiction from TWDC, Plaintiffs did not hesitate to further run-up Defendants' costs for no reason at all. *See* Order at 1-2 (July 9, 2009) (Dkt. # 52). Although TWDC's discovery responses *unequivocally* demonstrated that the Court did not have jurisdiction over TWDC, and although ultimately denied by the Court, Plaintiffs moved to compel, not TWDC, but DSI and every other Disney entity to respond to Plaintiffs' discovery requests on TWDC. *See* Order at 2 (Sept. 21, 2009) (Dkt. # 61). Judge Abel even took special notice of TWDC's concerns about the expense of this litigation and whether TWDC was even a necessary party to this litigation. *Id.* at 4.

Finally, Plaintiffs' most egregious litigation tactic in violation of Rule 11 related to Defendants' Rule 12(b)(7) motion to dismiss. Specifically, Defendants' counsel informed Plaintiffs' counsel of their misrepresentations to the Court regarding standing, and that Peirano had to be named as a plaintiff, citing applicable case law and factual evidence. *See* Letter from Song to Chance at 1-2 (May 13, 2009) [Kinsel Decl., Ex. 7].[12] Yet, Plaintiffs' counsel did not offer any explanation or disclose any corrective action it planned to take. *See* Letter from Chance to Song (May 16, 2009) at 1 n.1 [Kinsel Decl., Ex. 7]. Indeed, Plaintiffs were unapologetic about their misrepresentations to the Court and unconcerned about possible sanctions or the requirements of Rule 11. *Id.* at 2 n.2. Accordingly, Plaintiffs forced Defendants to incur the costs of filing another motion to dismiss. *See* Defs.' Mot. Dismiss (Dkt. # 46). Only while that motion was pending did Plaintiffs' counsel take their responsibility to truthfully assert standing seriously, and request leave to amend their complaint to name Peirano as a co-plaintiff.

---

[12] Copies of correspondence between counsel on May 13, 2009 and May 16, 2009 are attached as Exhibit "7" to the Kinsel Decl.

LACA_2358748.4

*See* Pls.' Mot. File 3d Am. Compl. (Dkt. # 47).  In fact, Plaintiffs have **never** explained how these blatant misrepresentations pervaded three separate Complaints.

### 2.    Plaintiffs Unreasonably Increased Defendants' Costs by Refusing to Stay Discovery

As discussed above, Defendants raised the frivolousness of Plaintiffs' claim of patent infringement at the very first opportunity.  *See supra* at III.C.  Because it was so clear that the accused products could *never* possibly infringe the '272 patent, Defendants proposed a stay in discovery pending resolution of their Rule 12(b)(6) motion to dismiss.  *See* Rule 26(f) Report at 6 (Dkt. # 17).  Plaintiffs, however, objected and Magistrate Judge Abel did not stay discovery, but stated that he would address Defendants' burden concerns for specific requests in discovery conferences.  *See* Order at 4-5 (Feb. 3, 2009) (Dkt. # 20).

When Plaintiffs propounded unreasonably burdensome discovery requests, Defendants renewed their request for a stay in discovery.  *See* Letter from Song to Chance at 1-2 (May 13, 2009) [Kinsel Decl., Ex. 7].  After the Court's conversion of Defendants' motion to dismiss into a motion for summary judgment, Defendants even agreed to respond to any request relevant to the Court's ruling on Defendants' motion for summary judgment.  *See* Order at 3 (July 7, 2009) (Dkt. # 50).  Plaintiffs, however, were unsatisfied, and moved to compel unneeded discovery responses.  At a discovery conference, Judge Abel denied Plaintiffs' motion and limited the scope of discovery, effectively granting Defendants' request for a stay in spite of Plaintiffs unreasonable demands.  *Id.* at 4-5.

### 3.    Plaintiffs Unreasonably Increased Defendants' Costs by Serving Deficient Responses to Discovery Requests

As discussed above, Plaintiffs failed to even construe the single limitation at issue—the "housing surface" limitation—in their Opposition to Defendants' Rule 12(b)(6) motion to dismiss.  *See supra* at § III.C.2.  Thus, after being denied the requested stay, Defendants

27

propounded discovery requests seeking Plaintiffs' position on the merits of the lawsuit. Plaintiffs' responses to Defendants' discovery requests, however, were manifestly unreasonable and indicative of their bad faith.

For example, Plaintiffs repeatedly failed to properly answer even the most rudimentary interrogatories, necessitating numerous communications between counsel and two discovery conferences. In total, Judge Abel ordered Plaintiffs to supplement their responses to 14 interrogatories (of 23 propounded) and to further supplement their responses to 3 interrogatories. *See* Order (Apr. 14, 2009) (Dkt. # 37); Order (Apr. 20, 2009) (Dkt. # 41)  In short, Judge Abel agreed with Defendants on every single issue raised except for one, for which he stated:

> If defendants' interpretation of the claims is correct, then I read plaintiff's answer to the interrogatory to ***concede that the claim element at issue is not literally infringed by the accused devices because there is no poster art under the housings of the two allegedly infringing devices thus far identified by plaintiff***.

*See* Order at 2 (Apr. 20, 2009) (Dkt. # 41) (emphasis added). In contrast, Judge Abel denied every motion to compel raised by Plaintiffs in discovery conferences. *See* Order at 4-5 (July 7, 2009) (Dkt. # 50); Order at 2-4 (Sept. 21, 2009) (Dkt. # 61).

Further, Plaintiffs also ran-up Defendants' costs by failing to produce even basic documents (*e.g.*, file history, assignments and licenses of the patent-in-suit) and making specious excuses (*e.g.*, arguing that these documents were not in Clark's "possession, custody or control"), again necessitating numerous communications between counsel. Plaintiffs even refused to scan and produce paper documents electronically, instead forcing Defendants' counsel to arrange for copying in Ohio where no Defendant nor Defendants' counsel have an office. *See* Letter from Chance to Kinsel at 1-2 (Mar. 16, 2009) [Kinsel Decl., Ex. 6].

LACA_2358748.4

## IV.    LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 11

Federal Rule of Civil Procedure 11 states:

> By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery ….

FED. R. CIV. P. 11(b)(1)-(3).  The Supreme Court has held that at the "heart of Rule 11" is the message conveyed by the signer's certification that he "has conducted a  reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both …."  *See Bus. Guides, Inc. v. Chromatic Communications Enters., Inc.*, 498 U.S. 533, 554 (1991).   The Supreme Court has also held that the "central purpose of Rule 11 is to deter baseless filings." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 394 (1990).

### B.    The Sixth Circuit Applies an Objective Standard of "Reasonableness Under the Circumstances" to the Pre-Filing Requirements of Rule 11

The Sixth Circuit has held that "[u]nder Rule 11, sanctions may be imposed if a reasonable inquiry would have disclosed that the pleading, motion, or paper is (1) not well grounded in fact, (2) not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, or (3) interposed for any improper purpose such as harassment or delay."  *Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 335 (6th Cir. 1988) (citing

LACA_2358748.4

cases). The Sixth Circuit test for imposition of Rule 11 sanctions is whether the attorney's conduct was "reasonable under the circumstances." *Ridder v. City of Springfield*, 109 F.3d 288, 297, 293 (6th Cir. 1997) (citing *Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 958 (6th Cir. 1990), *cert. denied*, 498 U.S. 959 (1990)). Under this test, subjective bad faith is irrelevant, as the inquiry is an "objective standard of reasonableness." *See Mann*, 900 F.2d at 958 (citing cases). Accordingly, the Sixth Circuit has held that "[Rule 11] mandate[s] the imposition of sanctions when warranted by specious arguments and/or abusive practices." *Herron*, 858 F.2d at 335.

### C.  Application of the Pre-Filing Requirements of Rule 11 to Patent Cases

Although the Federal Circuit applies the law of the regional circuit to Rule 11 motions, *see ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1381 (Fed. Cir. 2009), particulars unique to patent cases are considered under the Sixth's Circuit "reasonable under the circumstances" test. For example, a pre-filing assessment is especially important in patent cases, as the Federal Circuit has warned:

> [A] patent suit can be an expensive proposition. Defending against baseless claims of infringement subjects the alleged infringer to undue costs—precisely the scenario Rule 11 contemplates. Performing a pre-filing assessment of the basis for each infringement claim is, therefore, extremely important.

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000) (applying Ninth Circuit law). "Advancing even a single invalid theory forces the defendant to respond and to do work it should not have been required to do." *Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1075 (Fed. Cir. 2002).

The Sixth Circuit's "reasonableness under the circumstances" test must also be applied to the two steps of assessing patent infringement: (1) claim construction, and (2) comparison of the accused product to the properly construed claims. Similar to the standard set forth in *Herron* discussed above, the Federal Circuit has held that Rule 11 is violated "when an objectively

30

reasonable attorney would not believe, based on some actual evidence uncovered during the pre-filing investigation, that *each claim limitation* reads on the accused device either literally or under the doctrine of equivalents." *Antonious*, 275 F.3d at 1074 (emphasis added) (applying Fourth Circuit law). Stated another way, a Rule 11 motion requires a court to determine: "(1) whether the complaint [or relevant document] is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing it." *ICU Med., Inc.*, 558 F.3d at 1381 (applying Ninth Circuit law).

In addition, in patent cases, an attorney cannot rely solely on the client's lay opinion, but must conduct an *independent* pre-filing claim construction analysis and comparison of the accused products with the construed claims. *Antonious*, 275 F.3d at 1072-74; *see also* FED. R. CIV. P. 11(a). Accordingly, the Federal Circuit has held that once a litigant files a motion for Rule 11 sanctions, the burden of proof *shifts* to the non-movant to show it made a reasonable pre-suit inquiry:

> In bringing a claim of infringement, the patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement. Failure to do so should ordinarily result in the district court expressing its broad discretion in favor of Rule 11 sanctions, at least in the absence of a sound excuse or considerable mitigating circumstances.

*View Eng'g, Inc.*, 208 F.3d at 986 (Fed. Cir. 2000); *see also Diego, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1368 (Fed. Cir. 2007).

**D.     Additional Requirements of Rule 11**

**1.     Safe Harbor Provision of Rule 11**

The safe harbor provision of Rule 11 states:

A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or

appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

FED. R. CIV. P. 11(c)(2). In the Sixth Circuit, "sanctions under Rule 11 are unavailable unless the motion for sanctions is served on the opposing party for the full twenty-one day 'safe harbor' period before it is filed with or presented to the court; this service and filing must occur prior to final judgment or judicial rejection of the offending contention." *Ridder*, 109 F.3d at 297.

### 2. Continuing Duty to Review and Reevaluate under Rule 11

"[A]n attorney and the litigant have a continuing obligation to review and reevaluate their pleadings, motions and other papers and upon discovery that such papers were without merit, to immediately dismiss the action at the risk of inviting the imposition of Rule 11 sanctions." *Herron*, 858 F.2d at 336; *see also Mann*, 900 F.2d at 959. Thus, the obligations under Rule 11 "are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." FED. R. CIV. P. 11(b) and (c) advisory committee's notes on 1993 amendments. Accordingly, the Sixth Circuit has held that if a reasonable inquiry should have revealed that the claims in a Complaint were not well-grounded, then all subsequent pleadings also violate Rule 11. *Mann*, 900 F.2d at 960 n.6.

32

## V. ARGUMENT

Defendants respectfully request the Court impose sanctions against Plaintiffs and their counsel because their claim of patent infringement was not warranted by law (or a non-frivolous extension of law), not well grounded in fact, and was filed for an improper purpose. *See Herron*, 858 F.2d at 335; *Antonious*, 275 F.3d at 1074. Plaintiffs and their counsel violated Rule 11 when they filed a Complaint alleging a claim of patent infringement based on an objectively baseless claim construction. Had Plaintiffs and their counsel conducted an objectively reasonable pre-filing inquiry they would have never accused products that cannot infringe the only reasonable construction of the claims. In addition to their filing of the Complaint, the evidence shows that the only pre-filing inquiry conducted by Plaintiffs was objectively unreasonable because it did not compare any accused product to each and every limitation of any claim. Further, there is no evidence that Plaintiffs' counsel conducted any independent pre-filing analysis. Indeed, Plaintiffs and their counsel's failure to conduct an objectively reasonable pre-filing investigation is demonstrated by their deficient discovery responses, other baseless allegations requiring in the Complaint, and their general ignorance of the law.

### A. Plaintiffs' Construction of the "Housing Surface" Claim Limitation of the '272 Patent Was Objectively Baseless

The Court should impose Rule 11 sanctions against Plaintiffs and their counsel for asserting an objectively baseless claim construction that ignored explicit words added to the claims during prosecution to overcome a rejection based on the prior art. *See supra* at § III.E. The Federal Circuit has confirmed that a court may award attorneys' fees as a Rule 11 sanction where a plaintiff's claim of patent infringement is dependent on a frivolous claim construction. *See ICU Med., Inc.*, No. 04-00689, 2007 U.S. Dist. LEXIS 34467, at *47-51 (C.D. Cal. Apr. 16, 2007) (granting Rule 11 sanctions where the plaintiff's construction "plainly defied the asserted

33

patents' claims, specification and drawings and found no extrinsic support in applicable dictionaries or treatises"), *aff'd*, 558 F.3d at 1381; *see also F&G Research, Inc. v. Google Inc.*, No. 06-60905, 2007 U.S. Dist. LEXIS 70072, at *47-51 (S.D. Fla. Sept. 20, 2007).

Indeed, about the time Plaintiffs filed their Complaint in this Court, the U.S. District Court for the Central District of Illinois granted a motion for Rule 11 sanctions in a strikingly similar case. *See Triune Star, Inc. v. Walt Disney Co.*, No. 07-1256, 2008 U.S. Dist. LEXIS 96136, at *21-26 (C.D. Ill. Nov. 24, 2008). In *Triune Star, Inc.*, the plaintiff sued several large companies for infringing its patent on a telecommunications locating system, including TWDC. *Triune Star, Inc.*, 2008 U.S. Dist. LEXIS 96136, at *1-2. During prosecution of the patent-in-suit, the PTO rejected the independent claims based on prior art, but stated that two *dependent* claims—both containing a "miniature infrared camera" element—would be allowable if written in independent form. *Id.* at *2-3. In its arguments and responses to the prior art rejection, the plaintiff amended the independent claims to include the "miniature infrared camera" element from the dependent claims, and subsequently, the PTO issued the patent-in-suit. *Id.* at *3-4.

During litigation, the plaintiff argued that the "miniature infrared camera" element "does not limit … the claim to a camera having a spectral response limited to the infrared range of wavelengths." *Id.* at *4. The court, however, disagreed and relying on the plain, ordinary meaning of the word "infrared," the specification, and the prosecution history, the court construed the "miniature infrared camera" claim limitation to mean "a miniature camera that is capable of operating and generating images in at least the infrared spectrum." *Id.* at *12-17. Based on this construction, the court granted summary judgment of non-infringement for the defendants, finding no literal infringement and no infringement under the doctrine of equivalents based on prosecution history estoppel. *Id.* at *17-21.

34

In granting the defendants' motion for Rule 11 sanctions, the court held that: (1) the plaintiff's construction was "legally frivolous and essentially attempts to read the word 'infra-red' out of the claims;" (2) a reasonable investigation would have shown that the accused products did not meet the infrared camera element; and (3) in view of the file history there was "simply no valid or remotely reasonable basis for ignoring the substantive addition that the specification of the infra-red camera made to the claims." *Id.* at *22-24. The court held that a construction that allowed the plaintiff to ignore the word "infrared," "did not come close to establishing a reasonable interpretation." *Id.* at *24-25.

### 1.    Plaintiffs' Baseless Construction Was Not Warranted by Law

Exactly like the patentee in *Triune Star*, to overcome a prior art rejection during prosecution of the '272 patent, Clark amended his claims to add the "housing surface" claim limitation, and the PTO only issued the '272 patent after Clark made this narrowing amendment. *See supra* at § III.E.1. Exactly like the plaintiff in *Triune Star*, having obtained the '272 patent, Plaintiffs sued several large companies, including TWDC, for patent infringement. Exactly like the plaintiff in *Triune Star*, Plaintiffs proposed a construction of the "housing surface" claim limitation that ignored explicit words added to the claims to overcome the prior art rejection. *Id.*. And exactly like the court held in *Triune Star*, "[t]here is simply no valid or remotely reasonable basis for ignoring the substantive addition that the specification of [the "housing surface" claim limitation] made to the claims in [Clark's] patent." *Triune Star, Inc.*, 2008 U.S. Dist. LEXIS 96136, at *23.

### 2.    Plaintiffs and Their Counsel Violated Rule 11 By Asserting Frivolous Arguments to Support Their Baseless Claim Construction

Plaintiffs' construction was actually more baseless and unfounded than the sanctioned construction in *Triune Star*. Specifically, in Plaintiffs' briefs filed in opposition to Defendants'

LACA_2358748.4

motion to dismiss and motion for summary judgment, Plaintiffs and their counsel made arguments unwarranted by existing law (or a non-frivolous extension of law) and not well grounded in fact.  Rather, their arguments suggested that they filed a claim of patent infringement in bad faith for an improper purpose

      a.    **Plaintiffs Asserted Unwarranted Legal Arguments to Support Their Baseless Claim Construction**

In their brief in opposition to Defendants' motion to dismiss, Plaintiffs asserted frivolous legal arguments to support their unreasonable construction by (among others): (1) arguing that the "intent" or "context" of the '272 patent, rather than the plain, ordinary meaning of the words in the claims, defined the scope of the patented invention; and (2) failing to cite any case law supporting any aspect of their argument on claim construction.  *See supra* at § III.C.2.a.  Further, in their supplemental brief in opposition to Defendants' motion for summary judgment, disregarding well-established Federal Circuit precedent, Plaintiffs asserted frivolous legal arguments to support their unreasonable construction by (among others): (1) proposing a claim construction that would invalidate the patent as indefinite or obvious; and (2) grossly misapplying basic patent law (*e.g.*, construing claims in context, importing limitations from specification, etc.).  *See supra* at § III.E.2.a.

      b.    **Plaintiffs Asserted Unfounded Factual Allegations to Support Their Baseless Claim Construction**

In their brief in opposition to Defendants' motion to dismiss, Plaintiffs asserted unfounded factual allegations to support their unreasonable construction by (among others): (1) falsely alleging that Clark only used "camouflage" during prosecution in reference to a blister pack, not a housing surface; and (2) falsely alleging that Clark's amendment adding words to the claims were not meant "to add limitation" but to protect against future embodiments.  *See supra* at § III.C.2.b.  Further, in their supplemental brief in opposition to Defendants' motion for

36

summary judgment, Plaintiffs asserted unfounded factual allegations to support their unreasonable construction by (among others): (1) arguing that a person of ordinary skill in the art for a utility patent claiming an electronic device is a graphic designer; and (2) grossly misrepresenting the factual evidence (*e.g.*, examiner's interview summary, prior art, etc.).  *See supra* at § III.E.2.b.

<strong>c.  Plaintiffs' Vexatious Litigation Tactics Show Their Bad Faith and Improper Purpose In Filing a Frivolous Complaint</strong>

Unlike Plaintiffs, the plaintiff in *Triune Star* had at least some evidence of good faith, as it tried to limit the scope of the litigation until after the court's ruling on claim construction, and had a good faith basis to object to the defendants' claim construction as overreaching.  *Triune Star*, 2008 U.S. Dist. LEXIS 96136, at *24-25 (holding "the proper construction of the claims lies somewhere between the two versions cited by the parties," rejecting plaintiffs' arguments of good faith, and granting Rule 11 motion).  In contrast, Plaintiffs took every opportunity to expand the scope of the litigation, forcing Defendants to needlessly incur unnecessary costs and fees to defend themselves against a frivolous Complaint.  *See supra* at § III.G.  For example, premised entirely on their own assumptions, Plaintiffs frivolously argued that the Court had personal jurisdiction over TWDC based on the actions of its subsidiaries.  *See supra* at § III.F.2.  Even the sanctioned plaintiff in *Triune Star* would not make that frivolous argument.  *Triune Star, Inc.*, No. 07-1256, 2008 U.S. Dist. LEXIS 62305, at *9-10 (C.D. Ill. Aug. 14, 2008).

In addition, Plaintiffs unscrupulously attacked Defendants' construction based on the **plain, ordinary meaning** of the words with baseless accusations.  For example, after proposing a claim construction that ignored words in the claims, Plaintiffs incredulously alleged that Defendants failed to give meaning to all the words of the claims.  *See supra* at § III.E.2.c.  Further, in an attempt to hide their many infractions, Plaintiffs asked the Court two times to

37

ignore the prosecution history, including in the supplemental briefing allowed only because the Court already found the prosecution history relevant to its construction. *See supra* at §§ III.C.2.c, III.G.1.

> **B.** **A Reasonable Pre-Filing Investigation Would Have Shown that the Accused Product Could Never Infringe the '272 Patent**

> > **1.** **An Objectively Reasonable Claim Construction Was Straightforward and Could Not be Reasonably Disputed**

The construction of the terms in the '272 patent was never subject to reasonable debate, as it requires nothing more than the application of their plain, ordinary meaning. As the Court previously held: "the patent claims at issue in this case are not overly complex and contain no technical or scientific terms." *See* June 19, 2009 Order at 12 (Dkt. # 48). As Defendants have repeatedly noted:

> [T]he ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words.

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc), (quoting *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 805 (Fed. Cir. 2007)). Thus, by just reading the words of the claims, a reasonable attorney would have concluded that the '272 patent requires a "housing surface" prepared with "matching art" that is "substantially the same" as the art on the portion of the poster that the "housing covers," so that the housing "artistically blends in" with the portions of the poster that are "not covered" by the housing. *See supra* at § III.A.1. Had Plaintiffs and their counsel simply read all of the words of the claims, they would have known that there simply is ***no*** other objectively reasonable construction.

38

**2.      The Accused Products Could Never Infringe Under an Objectively Reasonable Claim Construction**

A cursory glance at the accused products immediately shows that the "housing surfaces" on the accused products are *not* prepared with "matching art" that is "substantially the same" as the portion of the poster that the "housing covers," so that the housing "artistically blends in" with the portions of the poster that are "not covered" by the housing.  To the contrary, the "housing surfaces" on the accused products are prepared with a monochrome color, and no attempt is made to match the art on the housings to the art  underneath the housings.  *See supra* at § III.A.2.  Had Plaintiffs and their counsel conducted a thirty second pre-filing comparison of the accused products to the plain, ordinary meaning of the words in the claims, they would have known that there simply was ***never*** any possibility of infringement.

**C.      The Evidence Shows That Plaintiffs and Their Counsel Failed to Conduct an Objectively  Reasonable Pre-Filing Investigation**

The filing of the Complaint alleging a frivolous claim of patent infringement ***alone*** demonstrates that Plaintiffs and their counsel failed to conduct a reasonable pre-filing investigation.  *See supra* at V.B.1-2.  In addition, the only evidence of any pre-filing inquiry is Clark's visual inspection of a poster.  *See supra* at § III.D.1.  Clark's inspection, however, was objectively unreasonable because he did not determine whether each and every claim limitation, including the "housing surface" claim limitation, read on the accused poster.  *See Antonious*, 275 F.3d at 1074.  Moreover, there is no evidence that Plaintiffs' counsel conducted any pre-filing analysis whatsoever.  *See supra* at § III.D.1.  The Federal Circuit has held that sanctions are appropriate based on similar evidence.

For example, in *S. Bravo Sys.*, the Federal Circuit held that a "substantial Rule 11 showing" was made where: (1) the only evidence of a pre-suit inquiry was the plaintiff's visual inspection of the accused product at a trade show and review of product literature; and (2) there

39

LACA_2358748.4

was no evidence that the plaintiff's attorneys conducted an independent investigation as to the facts and legal merits of the claim. *See S. Bravo Sys., Inc. v. Containment Techs. Corp.*, 96 F.3d 1372, 1375 (Fed. Cir. 1996) (reversing district court's denial of Rule 11 motion for failure to explain denial despite "substantial Rule 11 showing"). The Federal Circuit noted:

> If the district court finds that [the plaintiff's] attorneys conducted no investigation of the factual and legal merits of [the] claims other than to rely on [the plaintiff's] lay opinion that [the defendant] was infringing the [patent-in-suit], it would be difficult to avoid the conclusion that sanctions are appropriate.

*Id.* at 1375.

As discussed below, the only evidence of any pre-filing inquiry in this case was Clark's visual inspection of one accused poster and there is no evidence that Plaintiffs' counsel conducted any pre-filing investigation whatsoever. As the Federal Circuit held in *S. Bravo Sys.*, "it would be difficult to avoid the conclusion that sanctions are appropriate." *Id.*

### 1. The Only Evidence of Any Pre-Filing Investigation Is Clark's Objectively Unreasonable Visual Inspection

There is evidence of only one analysis performed *before* the filing of the Complaint that assesses whether the accused products infringe the '272 patent, and even that analysis has "no written document" verifying exactly when it was performed. *See supra* at § III.D.1. Specifically, in response to an interrogatory, Plaintiffs stated that "in the middle of 2008," Clark visually inspected one accused product, and identified that it "has artwork, [and] a sound module containing electronics which is designed to ***blend into and match with the artwork***." *Id.* (emphasis added). Clark's "visual infringement analysis," however, did not meet the requirements of Rule 11 because it failed to include: (1) any claim construction analysis; or (2) any comparison of the poster to each and every element of any claim of the '272 patent.

While claim construction is a matter of law, Defendants have maintained throughout this litigation that the claims should be construed according to the plain, ordinary meaning of the

words.  *See supra* at § III.C.1.  Had Clark simply read all the words of any claim of the '272 patent, he would have known that every claim requires that the housing be prepared with "matching art" that is "substantially the same" as the artwork that the "housing covers" when the housing is attached to the poster.  Had Clark reviewed the prosecution history or cited prior art, he would have remembered that the "housing surface" limitation was required for the '272 patent to even issue.  Had Clark compared the poster to ***each and every*** limitation of any claim of the '272 patent—including the "housing surface" claim limitation—he would have known that the poster cannot infringe any claim of the '272 patent.  It was objectively unreasonable for Clark to not consider all the words of at least one claim of the '272 patent.

## 2.    There Is No Evidence That Plaintiffs' Counsel Conducted Any Pre-Filing Investigation

Notably absent from Plaintiffs' discovery responses regarding patent infringement assessments is any evidence of any analysis conducted by Plaintiffs' counsel.  *See supra* at § III.D.1.  Despite supplementing other responses, Plaintiffs have never supplemented their response to discovery seeking identification of Plaintiffs' patent infringement assessments or produced any documents evidencing any analysis conducted by Plaintiffs' counsel.  *Id.*

Further, the Federal Rules of Civil Procedure provide that "a party withhold[ing] information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, … must …  describe the nature of the documents, communications, or tangible things not produced or disclosed … enabl[ing] other parties to assess the claim."  FED. R. CIV. P. 26(b)(5).  Thus, even if Plaintiffs claimed that their counsel's pre-filing assessment was privileged, they would have at least identified that analysis in a privilege log.

41

Plaintiffs, however, have never provided any privilege log.  Should Plaintiffs' counsel now attempt to belatedly disclose any pre-filing investigation and claim they withheld the analysis based on privilege, the Court should preclude Plaintiffs from relying on such evidence as a sanction for the untimely production.  *See, e.g.*, *In re Nat'l Century Fin. Enters.*, No. 03-1565, 2009 U.S. Dist. LEXIS 68379, at *59-69 (S.D. Ohio July 16, 2009) (prohibiting affirmative use of evidence as a sanction for failure in providing a timely privilege log).

In sum, as the Federal Circuit stated in *S. Bravo Sys.*, where Plaintiffs' only pre-filing inquiry was an objectively unreasonable visual inspection, and there is no evidence that Plaintiffs' counsel conducted an objectively reasonable independent infringement analysis, "it [is] difficult to avoid the conclusion that sanctions are appropriate."

### 3. Plaintiffs Bear the Burden to Demonstrate a Reasonable Pre-Filing Investigation

Plaintiffs and their counsel bear the burden of showing exactly what pre-filing investigation they conducted and showing exactly why that pre-filing analysis was objectively reasonable and not frivolous.  *See Diego, Inc.*, 505 F.3d at 1368; *View Eng'g, Inc.*, 208 F.3d at 986.  Plaintiffs may argue that they had a good-faith belief in a non-frivolous claim construction position by which they could prove infringement.  This is nonsense.  The inquiry under Rule 11 is an objective reasonable standard of reasonableness.  *Mann*, 900 F.2d at 958.

As previously detailed in prior briefs, Plaintiffs' construction of the "housing surface" limitation is to ignore the existence of this limitation.  *See* Defs.' Reply Mem. Supp. Mot. Summ. J. at 3, 6-7, 10-12 (Dkt. # 55).  Steadfastly refusing to acknowledge the existence of a claim limitation is simply not reasonable.  *See Triune Star, Inc.*, 2008 U.S. Dist. LEXIS 96136, at *22-25.  Plaintiffs and their counsel had an obligation to be, or become, familiar with the law before filing suit, and their ignorance of the law does not make their position reasonable.  Rather, their

42

ignorance of the law makes their position objectively unreasonable.  *See Frank v. D'Ambrosi*, 4 F.3d 1378, 1387 (6th Cir. 1993) (affirming imposition of sanctions where counsel did not research law); *Kassab v. Aetna Indus., Inc.*, 54 Fed. Appx. 819, 826 (6th Cir. 2002) (affirming imposition of sanctions where defendants had to expend resources teaching plaintiffs' counsel basic labor law).

### D.     Plaintiffs' Deficient Responses to Discovery Show That Plaintiffs and Their Counsel Failed to Conduct a Reasonable Pre-Filing Investigation

Plaintiffs' deficient discovery responses further show that Plaintiffs and their counsel failed to conduct a reasonable pre-filing investigation.  The Sixth Circuit has recently confirmed that failure or refusal to respond to discovery requests may lead to an adverse inference about the nature of such evidence, and applied this principle to motions for sanctions.  *See Keck v. Graham Hotel Sys.*, 566 F.3d 634, 640 (6th Cir. 2009) (applying an adverse inference of discrimination for failure to produce documents) (citing *Nat'l Ass'n of Radiation Survivors v. Tumage*, 115 F.R.D. 543, 557 (N.D. Cal. 1987)); *Tech. Recycling Corp. v. City of Taylor*, 186 Fed. Appx. 624, 638 (6th Cir. 2006) (awarding discovery sanctions under Rule 37 where "plaintiffs' egregious failure to comply with discovery orders supports a powerful adverse inference about the strength of plaintiffs' case").

Under the same principle, courts have considered discovery failures as evidence of an unreasonable pre-filing investigation under Rule 11, including in patent cases.  *See, e.g.*, *Nat'l Ass'n of Radiation Survivors*, 115 F.R.D. 543, 557 (N.D. Cal. 1987) (imposing Rule 11 sanctions against Veteran's Administration due to failure to conduct reasonable inquiry into factual basis of discovery responses and subsequent pleadings) (cited in *Keck*, 566 F.3d at 640); *Micromesh Tech. Corp. v. Am. Rec. Prods.*, No. C-06-6030 MHP, 2007 U.S. Dist. LEXIS 64241, at *17-21 (N.D. Cal. Aug. 29, 2007) (holding "discovery failures as evidence of an unreasonable pre-

43

litigation investigation").  For example, in *Micromesh Tech. Corp.*, in awarding sanctions under Rule 11, the court noted plaintiff's lack of any cognizable infringement investigation into the accused products, the plaintiff's dilatory and evasive tactics in discovery, and especially noted the plaintiff's essentially worthless claim charts merely repeating the claims and generically applying them to the accused products.  *Micromesh Tech. Corp*, 2007 U.S. Dist. LEXIS 64241, at *17-21.

       1.       **Plaintiffs' Deficient Discovery Responses Related to Claim Construction**

On March 13, 1996, five months after the filing of the Complaint, Plaintiffs' responded to discovery requests seeking their claim construction with nothing more than a regurgitation of the claims, except for the deletion of the "housing surface" claim limitation obviously missing from the accused products.  *See supra* at § III.D.2.a.  Further, the only supporting evidence disclosed by Plaintiffs were vague references to the prosecution history that they apparently abandoned in supplemental responses and briefs.  *Id.*  Indeed, Plaintiffs did not even produce a complete copy of the file history of the patent-in-suit until June 19, 2009, eight months after filing the Complaint.  *See supra* at § III.D.2.c.

On April 24, 2009, after the Court ordered Plaintiffs to supplement their deficient discovery responses, Plaintiffs proposed a claim construction containing mainly attorney argument and cited a couple sentences from the specification and dictionary definitions printed from the internet six months after the filing of the Complaint.  *See supra* at § III.D.2.b.  In addition to still ignoring the words of the claims, the construction Plaintiffs proposed would render the claims of the '272 patent invalid.  For example, the claims would be invalid as obvious under 35 U.S.C. § 103.  *Id.* ("The intent was to protect against any copy cat of our

Talking Poster concept brought into the marketplace, which **would obviously be done** in an attractive and professional manner and we have done so.") (emphasis added).

In addition, the claims would be invalid as indefinite as 35 U.S.C. § 112 requires the claims "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention." *Id.* ("**Broad words** were used to convey the concept of 'artistically blends.' Certainly, the sentence … is intentionally written in **vague enough form** with use of **broad words** so as not to limit the scope …") (emphasis added). Plaintiffs' construction would also render the claims invalid as indefinite based on Federal Circuit precedent as it would be dependent on the subjective opinion of unnamed persons. *Id.* ("The last sentence of claim one on this Patent is intended to say … the end product is **attractive**, **professional** and that the housing **does not stick out like a sore thumb**.") (emphasis added). *See Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed. Cir. 2005) (holding patent invalid as indefinite based on the term "aesthetically pleasing").

After Defendants informed Plaintiffs of these deficiencies, Plaintiffs changed their claim construction again in their supplemental brief in opposition to Defendants' motion for summary judgment. *See supra* at III.E.1. Plaintiffs' initial and supplemental discovery responses and continually changing claim construction are evidence that Plaintiffs and their counsel failed to conduct an objectively reasonable claim construction analysis before filing the Complaint.

### 2. Plaintiffs' Deficient Discovery Responses Related to Claim Charts Comparing the Accused Products to the Claims

Throughout this litigation, Plaintiffs have only compared the accused products to their frivolous claim construction. Indeed, Defendants propounded discovery specifically directed to this point, to force Plaintiffs to specifically identify the "matching art" that was "substantially the

same" as the art the "housing covers."  *See supra* at § III.D.3.  Plaintiffs could not answer this question in discovery, prompting Judge Abel to note:

> If defendants' interpretation of the claims is correct, then I read plaintiff's answer to the interrogatory to *concede that the claim element at issue is not literally infringed by the accused devices because there is no poster art under the housings of the two allegedly infringing devices thus far identified by plaintiff*.

*See* Order at 2 (Apr. 20, 2009) (Dkt. # 41) (emphasis added).

###    E.    Plaintiffs' Failure to Conduct a Reasonable Pre-Filing Investigation Is Further Demonstrated by Other Baseless Allegations

Plaintiffs' failure to conduct a proper pre-filing investigation is also demonstrated by other allegations in the Complaint that are not well grounded in fact or not warranted by existing law, including:  (1) Plaintiffs' misrepresentations related to standing to bring a claim of patent infringement; (2) Plaintiffs' false allegations regarding the Disney entities in naming incorrect defendants and alleging jurisdiction; and (3) Plaintiffs' baseless claims of false designation of origin and deceptive trade practices.  Courts have awarded sanctions under Rule 11 for these types of unsupported allegations alone.

###    1.    Plaintiffs' Misrepresentations Regarding Standing to Bring a Claim of Patent Infringement

Plaintiffs' failure to conduct any pre-filing investigation is demonstrated by their repeated misrepresentations regarding standing to sue for patent infringement.  Courts have granted a motion for Rule 11 sanctions for failing to conduct a reasonable pre-filing investigation of their standing to bring a claim for patent infringement.  *See, e.g.*, *Michod v. Walker Magnetics Group, Inc.*, 115 F.R.D. 345, 346 (N.D. Ill. 1987); *cf. Sherman Treaters Ltd. v. Ahlbrandt*, 115 F.R.D. 519, 522-24 (D.D.C. 1987).  In *Michod*, the plaintiff sued for patent infringement based on its allegation that it was the exclusive licensee of the patent-in-suit.  *Michod*, 115 F.R.D. at 346. When subsequent discovery, proved that plaintiff was in fact a *non-exclusive* licensee, the court

ordered the plaintiff to pay the defendant's reasonable attorneys' fees as a sanction for their false allegations in violation of Rule 11, stating:

> Rule 11 requires litigants to think before they file. Legally and factually vacuous pleadings impose costs on other litigants and the court, and those responsible must pay the bill.

*Id.* at 346-47.

Here, Plaintiffs alleged that Clark was "the ***sole owner*** of the 272 Patent" and "has been and ***still is*** the rightful owner of ***all*** rights, title and interest to the 272 Patent" in the original Complaint. *See supra* at § III.F.1. As in *Michod*, subsequent discovery indisputably proved that Plaintiffs' allegations of sole ownership were utterly false. *Id.* Had Plaintiffs simply read the documents that they themselves attached to their own Complaint or investigated publicly-available documents that they themselves signed and filed at the PTO, they would have known that key factual allegations were utterly false. *Id.* Plaintiffs lackadaisical approach is inconsistent with the strict obligations imposed by Rule 11.

### 2. Plaintiffs' Failure to Conduct a Reasonable Pre-Filing Investigation of the Correct Disney Defendant and Personal Jurisdiction

Plaintiffs' failure to conduct a reasonable pre-filing investigation is further demonstrated by their repeated failure to name the correct Disney entity selling accused products over the internet and their assertion that TWDC is subject to jurisdiction in Ohio based on their groundless assumptions that TWDC controls the actions of its subsidiaries.

"Requiring parties to determine the accuracy that they are suing the correct parties … is the most ***basic factual inquiry*** in any lawsuit." *Classen Immunotherapies, Inc. v. Biogen IDEC*, 381 F. Supp. 2d 452, 457 (D. Md. 2005) (granting Rule 11 sanctions for plaintiffs' filing claims against incorrect defendants without performing an infringement analysis) (quoting *Callahan v. Schoppe*, 864 F.2d 44, 46-47 (5th Cir. 1989)) (emphasis added). "Tolerance of factual

47

contentions in initial pleadings by plaintiffs or defendants when specifically identified as made on information and belief does not relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances; ***it is not a license to join parties***, make claims, or present defenses ***without any factual basis or justification***."  FED. R. CIV. P. 11(b) and (c) advisory committee's notes on 1993 amendments (emphasis added).

For example, in *Classen Immunotherapies, Inc.*, the court granted a motion for Rule 11 sanctions based-in-part on the plaintiff's failure to conduct a proper pre-filing investigation of which Kaiser-Permanente entity administered vaccinations allegedly infringing the plaintiff's patent.  *Id.* at 456-57.  Similarly, courts have granted a motion for Rule 11 sanctions for filing a complaint without considering whether jurisdiction was proper.  *See, e.g.*, *Imonti v. Cherokee Data Sys.*, No. 89-71121, 1989 U.S. Dist. LEXIS 17822, at *10 (E.D. Mich. Oct. 3, 1989); *Economy v. R.J. Reynolds Tobacco Co.*, No. 92-1543, 1993 U.S. Dist. LEXIS 21067, at *6-11 (N.D. Ohio Jan. 7, 1993); *Fuji Photo Film U.S.A., Inc. v. Aero Mayflower Transit Co.*, 112 F.R.D. 664, 667-68 (S.D.N.Y. 1986); *cf. Michod*, 115 F.R.D. at 346-47 (granting Rule 11 motion based-in-part on failure to investigate facts supporting venue).

In the original Complaint, Plaintiffs *assumed* that TWDC sold accused products via the Disney websites listed in the Complaint without any evidence that TWDC even owned or operated the Disney websites, let alone sold accused products via the Disney websites.  *See supra* at § III.F.2.  When confronted with undisputed facts that TWDC was merely a holding company that did not perform the actions accused of infringement, Plaintiffs maintained their allegations of personal jurisdiction based on their unfounded and unconfirmed assumptions regarding TWDC's control over its subsidiaries.  *Id.*  Plaintiffs also persisted without exercising any reasonable diligence by incorrectly adding two more Disney entities as defendants in this

48

LACA_2358748.4

action.  *Id.*  Moreover, even though Plaintiffs were unable to identify DSI as the proper party until Defendants voluntarily indentified DSI for them, Plaintiffs *still assumed* that TWDC controlled DSI and alleged that the Court had personal jurisdiction over TWDC based solely on their groundless assumptions.  *Id.*

The Sixth Circuit has held that researching similar cases involving the same defendants would be objectively reasonable under the circumstances.  *See Herron*, 858 F.2d at 337 ("Moreover, a cursory inquiry would have disclosed that a similar action charging the identical facts and infringements filed by plaintiffs' co-workers, against the same defendants, had been denied just prior to [plaintiffs'] action.").  Had Plaintiffs exercised reasonable pre-suit diligence, they would have learned before filing suit that TWDC is a holding company that has never hosted any website and that has never sold or offered for sale any product.  *See, e.g.*, *Abamson v. Walt Disney Co.*, 132 Fed. Appx. 273, 276-77 (11th Cir. 2005); *Lahera v. Walt Disney Co.*, No. 08-11677, 2008 U.S. Dist. LEXIS 64726, at *2-4 (E.D. Mich. Aug. 22, 2008); *Triune Star, Inc.*, 2008 U.S. Dist. LEXIS 62305, at *8-11; *Barrett v. Walt Disney Co.*, No. 02-1285, 2003 U.S. Dist. LEXIS 19782, at *4-10 (D. Conn. May 1, 2003); *Dark Horse Trading Co. v. Walt Disney Co.*, No. 98-5251, 1999 U.S. Dist. LEXIS 7896, at *8-13 (N.D. Ill. 1999); *Rapp v. Walt Disney Co.*, 48 U.S.P.Q.2d (BNA) 1157, 1159-60 (E.D. Penn. 1998).

Indeed, three of the courts dismissing TWDC for lack of personal jurisdiction, as well as other courts, have considered and rejected Plaintiffs' agency theory with respect to TWDC.  *See, e.g.*, *Abamson*, 132 Fed. Appx. at 276-77; *Barrett*, 2003 U.S. Dist. LEXIS 19782, at *4-10; *Rapp*, 48 U.S.P.Q.2d at 1159-60; *see also Shulman v. Walt Disney World Co.*, No. 91-5259, 1992 U.S. Dist. LEXIS 2267, at *9 (E.D. Penn. Feb. 25, 1992) (citing *MGM Grand, Inc. v. Eighth Judicial Dist. Court*, 807 P.2d 201 (Nev. 1991)).

LACA_2358748.4

In sum, the allegations in the Complaint regarding personal jurisdiction over TWDC was unsupported by any factual evidence and an objectively reasonable investigation would have shown that the allegations were baseless.

### 3. Plaintiffs' Failure to Conduct a Reasonable Pre-Filing Investigation Regarding Claims of False Designation of Origin

Plaintiffs' counsel's failure to conduct a reasonable pre-filing investigation into the claims in the Complaint is also shown by their baseless claims of false designation of origin and deceptive trade practices. *See supra* at § III.F.3. Courts have awarded sanctions for similar types of baseless claims. *See, e.g.*, *S. Bravo Sys., Inc*, 96 F.3d at 1376-77 (awarding sanctions for frivolous appeal of unfair competition claims under California law) ("There is therefore no legal support for Bravo's contention that proof of patent infringement, standing alone, provides the basis for a claim of unfair competition."). The Supreme Court has held that "'[t]he Lanham Act … does not exist to reward manufacturers for their innovation in creating a particular device; this is the purpose of patent law and its period of exclusivity.'" *See* Order at 16 (June 19, 2009) (Dkt. # 48) (quoting *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34 (2003) (quoting *Traffix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 34 (2001))). Plaintiffs' counsel failed to conduct a reasonable pre-filing inquiry in researching whether his claims of false designation of origin and deceptive trade practices were warranted by existing law.

### F. Defendants Satisfied Rule 11's Safe Harbor Provision

Defendants satisfied the safe harbor requirements of Rule 11 by serving Plaintiffs' counsel with a motion for Rule 11 sanctions on November 17, 2008 via email. *See supra* at § III.B.2. The motion cited the applicable case law and identified the key missing limitation from the accused products demonstrating Plaintiffs' violation. *Id.* Thus, Plaintiffs have been on

50

notice of the frivolousness of the claims and their potential liability for Defendants' attorneys' fees for the entire litigation.

Moreover, Defendants have attempted to mitigate their expenses by requesting stays in discovery, voluntarily identifying the correct Defendant entity, and bringing the frivolousness of the claims to the Court's attention at the earliest opportunity.  *See supra* at §§ III.C; III.F.2; III.G.2.  In addition, Defendants' counsel have repeated these warning to Plaintiffs' counsel in numerous communications throughout the entire litigation.  Plaintiffs and their counsel chose to ignore the warnings of both Defendants' counsel and Rule 11, and have therefore forced Defendants to incur hundreds of thousands of dollars in defending themselves against a frivolous claim of patent infringement.  Indeed, Plaintiffs' unreasonable demands and vexatious litigation tactics unnecessarily increased Defendants' costs even further.  *See supra* at § III.G.  Defendants should not pay for Plaintiffs and their counsel's disregard of the requirements of Rule 11 and irresponsible claims.

LACA_2358748.4

## VI.    CONCLUSION

For all of the reasons stated herein, Defendants should be awarded their attorneys' fees and costs pursuant to Rule 11.

Dated:  October 7, 2009                              Respectfully submitted,

                                           By:  /s/ Michael C. Lueder
                                           Michael C. Lueder
                                           Foley & Lardner LLP
                                           777 E. Wisconsin Ave.
                                           Milwaukee, WE 53202
                                           Tel:  (414) 297-4900
                                           Trial Attorney

                                           /s/ Grant E. Kinsel
                                           Grant Kinsel (Admitted Pro Hac Vice)
                                           Michael Song (Admitted Pro Hac Vice)
                                           Foley & Lardner LLP
                                           555 South Flower St.,  Suite 3500
                                           Los Angeles, CA  90071
                                           Tel: (213) 972-4500

                                           Attorneys for Defendants
                                           JAKKS PACIFIC, INC., PLAY ALONG TOYS,
                                           TOYS "R" US, AND DISNEY SHOPPING, INC.

## CERTIFICATE OF SERVICE

     I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served today with a copy of this document via the Court's CM/ECF system per Local Rule 5.2. Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

     Dated: October 7, 2009                     /s/ Michael J. Song

| | |
|---|---|
| Brian Edward Dickerson<br>The Dickerson Law Group<br>5003 Horizons Drive<br>Suite 200<br>Upper Arlington , OH 43220<br>614-339-5370<br>Fax: 614-442-5942<br>bdickerson@dickerson-law.com<br><br>Kevin R Conners<br>5003 Horizons Drive<br>Suite 101<br>Columbus , OH 43220<br>614-562-5877<br>kevinconners@kevinconners.com<br><br>Sharlene I Chance<br>The Dickerson Law Group<br>5003 Horizons Drive<br>Suite 200<br>Columbus , OH 43220<br>614-339-5370<br>Fax: 614-442-5942<br>schance@dickerson-law.com<br><br>Jonthan Rea Secrest<br>The Dickerson Law Group, P.A.<br>5003 Horizons Drive<br>Suite 101<br>Columbus, OH 43220<br>614-339-5370<br>Fax: 614-442-5942<br>jsecrest@dickerson-law.com | Attorneys for Plaintiffs Aaron Clark and John Peirano |