# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **AARON CLARK,** | |
| **Plaintiff** | |
| **v.** | |
| **THE WALT DISNEY COMPANY; JAKKS PACIFIC, INC.; PLAY ALONG TOYS; KB TOYS; AMAZON.COM; and TOYS 'R US,** | Civil Action No. 2:08CV982 |
| **Defendant** | |

## DEFENDANT JAKKS PACIFIC, INC.'S MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11

# TABLE OF CONTENTS

Page

I.      INTRODUCTION .................................................................................................. 1

II.     FACTS ................................................................................................................. 2
        A.      The '272 Patent ................................................................................. 2
        B.      The Accused JAKKS Posters............................................................. 3

III.    ARGUMENT ....................................................................................................... 4
        A.      The Law Of Patent Infringement ...................................................... 4
                1.      *Claim Construction*............................................................... 5
                2.      *Claims 1 and 5 require a housing prepared with the art that will be
                        covered when the housing unit is placed on the poster* ............. 6
                3.      *JAKKS Posters Cannot Infringe The '272 Patent, As A Matter Of
                        Law*........................................................................................ 9
        B.      Rule 11 Sanctions Are Appropriate ................................................... 9

IV.     CONCLUSION.................................................................................................. 11

LACA_1987251.1

Exhibit 4

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Bus. Guides, Inc. v. Chromatic Commc 'ns Enters., Inc.*, 498 U.S. 533,554 (1991) ....................10

*CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co.*, KG, 224 F.3d 1308 (Fed. Cir.
2000) ...........................................................................................................................................4

*Dow Chem Co. v. Sumitomo Chem. Co.*,
341 F.3d 1370 (Fed. Cir. 2001).................................................................................................6

*G.c. & K.B. Invs., Inc. v. Wilson*,
326 F.3d 1096,1109 (9th Cir. 2003) ......................................................................................10

*Gart v. Logitech, Inc.*,
254 F.3d 1334 (Fed. Cir. 2001).................................................................................................5

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*,
381 F.3d 1111 (Fed. Cir. 2004).................................................................................................5

*Insituform Technologies v. Cat Contracting, Inc.*,
161 F.3d 688 (Fed. Cir. 1998)...................................................................................................5

*Inverness Med. Switz. GmbH v. Princeton Biomeditech Corp.*,
309 F.3d 1365 (Fed. Cir. 2002)............................................................................................ 5-6

*Johnson Worldwide Assoc., Inc. v. Zebco Corp.*,
175 F.3d 985 (Fed. Cir. 1999)...................................................................................................5

*Kahn v. Gen. Motors, Corp.*,
135 F.3d 1472 (Fed. Cir. 1998).................................................................................................4

*Kegel Co. v. AMF Bowling, Inc.*,
127 F.3d 1420 (Fed. Cir. 1997).................................................................................................4

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996) .................................. 4-5

*Montrose Chern. Corp. of Cal. v. Am. Motorists Ins. Co.*,
117 F.3d 1128 (9th Cir. 1997) ...............................................................................................10

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc).......................................................................... 5-6

*Texas Digital Sys., Inc. v. Telegenix, Inc.*,
308 F.3d 1193 (Fed. Cir. 2002)............................................................................................ 5-6

LACA_1987251.1

# TABLE OF AUTHORITIES (CONT.)

Page

*V-Fromation, Inc. v. Benetton Group SAP et al.*,
    401 F.3d 1307 (Fed. Cir. 2005)................................................................................5

*View Engineering, Inc. v. Robotic Vision Systems, Inc.*,
    208 F.3d 981 (Fed. Cir. 2000)................................................................................9

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996)............................................................................ 4-6

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997)................................................................................................4

## RULES

F.R.C.P. 11 .......................................................................................................... 1, 9-11

iii

## I.     INTRODUCTION

JAKKS Pacific, Inc. ("JAKKS") files this Motion for Sanctions in an attempt to avoid the extraordinary—and avoidable—expense occasioned by Plaintiff's filing of this patent litigation. While JAKKS, as a substantial holder of intellectual property, recognizes the need to enforce intellectual property rights, JAKKS also believes that the power to force parties into protracted and expensive litigation should not be taken lightly.  Rule 11 is designed to help prevent filings, like the present one, that should never have been made.

This case claims infringement of U.S. Patent No. 5,548,272 (the "'272 patent").  The '272 patent discloses a "talking poster" comprised of a poster, a housing, a speech circuit, and a trigger.  The concept is that the housing for the speech device can be camouflaged by covering the housing unit with art from the underlying poster.  Thus, as disclosed by the '272 patent, when the housing unit is attached to the poster, the housing looks like that portion of the poster that is covered by the housing, thereby causing the housing to blend into the underlying poster.

Putting aside the obvious validity problems the patent faces—and there are many—there is simply no way that the accused JAKKS products can infringe this patent.  As shown below, JAKKS' posters do not include a housing where the surface is covered by the underlying poster art.  As a result, JAKKS' posters do not "artistically blend in" with the underlying poster art.  As such, there is simply no way for JAKKS' posters to infringe the '272 patent.

Before filing this motion, JAKKS identified this problem to counsel for Plaintiff and invited Plaintiff to withdraw the Complaint.  Plaintiff refused.  As such, Plaintiff forced JAKKS to file this motion to protect itself.

1

## II.    FACTS

### A.    The '272 Patent

The '272 patent,[1] entitled *Talking Poster* issued on August 20, 1996 to Aaron Clark.  The

'272 patent includes five claims—one independent apparatus claim, three dependent apparatus

claims, and one method claim.  Claim 1 states,

> 1. An assembly, comprising:
>
> a poster comprised of a first material, said poster having a first surface, said first surface including poster art thereon;
>
> a housing comprised of a second material, said housing attached to a portion of said first surface of said poster; a speaker concealed between said housing and said first surface of said poster;
>
> an electric circuit including a sound production component, operatively connected to said speaker and concealed between said housing and said first surface of said poster;
>
> a trigger attached to said electric circuit and concealed within said housing, said trigger adapted to be actuated through said housing to produce said sound;
>
> wherein a surface of said housing is prepared with a matching art which is substantially the same as that [area] of said poster art which appears on said portion of said poster that said housing covers when said housing is attached to said poster, such that said housing artistically blends in with the surrounding poster art that is not covered by said housing.

('272 patent at 2:57-3:13.)

The key limitations for purposes of this case are the limitations dealing with the surface

of the housing.  All of the claims require that the housing surface be prepared with art that

matches the portion of the poster over which the housing is placed so that the housing

"artistically blends in" with the surrounding poster.  These limitations are not directed to a

---

[1] Attached as Ex. "1" to the Declaration of Grant Kinsel ["Kinsel Decl."].

2

housing that merely looks similar to, or that has complementary colors with, the underlying poster.  Rather, these limitations were intended to ensure that the housing from the speaker is covered with the very art that will be covered by the housing unit when it is placed onto the poster.

### B.    The Accused JAKKS Posters





The Complaint accuses JAKKS' Hannah Montana and Cheetah Girls posters (the "Posters") of infringing the '272 patent.  Images of the Posters are shown above. [2]  As the Court can see, the housing for the speaker units on the Posters (the pink object at the bottom of the *Hannah Montana* poster, and the purple object at the bottom of the *Cheetah Girls* poster) is not designed with "matching art" that is "substantially the same" as the underlying Poster so that the speakers "artistically blend" with the underlying Poster.  To the contrary, the speaker units are

---

[2] The two designs above are representative of all of the accused JAKKS' products. Images of the other designs of the accused JAKKS' products are attached as Exhibit "2" to the Kinsel Decl.  In all cases, as shown in Ex. 2, the Posters are designed so that the speaker housing surface is not covered with art from the portion of the poster over which the housing is placed. Rather, the housings are simply colored with complimentary colors.

LACA_1987251.1

placed over the top of the posters, covering-up the underlying art. This is directly contrary to the teaching in the '272 patent.

## III.    ARGUMENT

### A.    The Law Of Patent Infringement

The patentee bears the burden of establishing infringement by the accused product by a preponderance of the evidence. *Kegel Co. v. AMF Bowling, Inc.*, 127 F.3d 1420, 1425 (Fed. Cir. 1997). Patent infringement requires that an accused product have all the same elements, or substantial equivalents thereof, present in the claim of the patent. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997). If *even one element*, or limitation, is not present, the accused product does not literally infringe as a matter of law. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581 (Fed. Cir. 1996).

A two-step analysis is performed to determine whether a patent has been infringed. *CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co.*, KG, 224 F.3d 1308 (Fed. Cir. 2000). "First, the claims must be correctly construed to determine the scope of the claims. Second, the claims must be compared to the accused device" to determine if the limitations are met. *Kahn v. Gen. Motors, Corp.*, 135 F.3d 1472, 1476 (Fed. Cir. 1998). Generally, the terms of the claim are given their ordinary meaning, unless it appears that the inventor used them differently. *Vitronics*, 90 F.3d at 1582. A court should interpret the language of the claims in light of the claim language itself, the specification, the relevant prior art, and the prosecution history from the perspective of a person of ordinary skill in the relevant art. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979-80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). While claim construction is solely a matter of law for the court, *id.*, a determination of

infringement is a question of fact.  *Insituform Technologies v. Cat Contracting, Inc.*, 161 F.3d 688, 692 (Fed. Cir. 1998).

### 1.    *Claim Construction*

In order to determine whether there is infringement, the Court must first construe the claims at issue.  Claim interpretation begins with an examination of the intrinsic evidence of record, which includes the patent claims, the specification, and, if in evidence, the prosecution history and prior art.  *Vitronics*, 90 F.3d at 1582, 1584; *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316-17 (Fed. Cir. 2005) (en banc); *V-Fromation, Inc. v. Benetton Group SAP et al.*, 401 F.3d 1307, 1310 (Fed. Cir. 2005).  Courts also may use extrinsic evidence, for example expert or inventor testimony, to resolve ambiguities in the disputed claim terms, but only if the intrinsic evidence does not resolve the ambiguities.  *Vitronics*, 90 F.3d at 1583-84; *Phillips*, 415 F.3d at 1317-18.  Further, extrinsic evidence, such dictionaries, encyclopedias, and technical treatises may be consulted at any time to help determine the meaning of claim terms.  *Vitronics*, 90 F.3d at 1584 n.6; *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1203 (Fed. Cir. 2002); *Inverness Med. Switz. GmbH v. Princeton Biomeditech Corp.*, 309 F.3d 1365, 1378 (Fed. Cir. 2002). All such evidence—both intrinsic and extrinsic—should be viewed from the perspective of a person of ordinary skill in the relevant art.  *Markman v. Westview Instruments Inc.*, 52 F.3d 967, 979-80 (Fed. Cir. 1995) (en banc).

Generally, courts begin with a "heavy presumption" that "the terms in the claim are to be given their ordinary and accustomed meaning."  *Johnson Worldwide Assoc., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999); *see also Gart v. Logitech, Inc.*, 254 F.3d 1334, 1341 (Fed. Cir. 2001).  This ordinary and customary meaning is the meaning a claim term "would have to a person of ordinary skill in the art at the time of the invention."  *Innova/Pure Water, Inc. v. Safari*

LACA_1987251.1

**Exhibit 4**

*Water Filtration Sys.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc).

In determining the ordinary and customary meaning of claim terms, the Court relies heavily on the intrinsic evidence. First, the Court looks to the claim language. *See Dow Chem Co. v. Sumitomo Chem. Co.*, 341 F.3d 1370, 1372 (Fed. Cir. 2001); *Vitronics Corp.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Second, the Court will turn to the specification, which, is the "single best guide to the meaning of a disputed term." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc). In doing so the Court will, of course, take care to avoid "importing limitations [from the specification] into the claims." *Texas Digital*, 308 F.3d at 1204. Further, if provided, the Court will look to the prosecution history.

Additionally, dictionaries, a special form of extrinsic evidence, are particularly useful as well. *Tex Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1203 (Fed. Cir. 2002); *Inverness Med. Switz. Gmbh v. Princeton Biomeditech Corp.*, 309 F.3d 1365, 1372 (Fed. Cir. 2002). In *Phillips*, the Federal Circuit affirmed that courts may "consult dictionaries and technical treatises 'at any time to better understand claim terms.'" *Phillips*, 415 F.3d at 1321 (*quoting Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1584 n.6 (Fed. Cir. 1996)).

### 2. *Claims 1 and 5 require a housing prepared with the art that will be covered when the housing unit is placed on the poster*

Claims 1 and 5 have identical language with respect to the housing unit surface. Claim 1 states: "wherein a surface of said housing is prepared with a ***matching art*** which is ***substantially the same*** as that [area] of said poster art which appears on said portion of said poster that ***said***

***housing covers*** when said housing is attached to said poster, such that said housing ***artistically blends in*** with the surrounding poster art that is not covered by said housing." 272 patent, cls. 1 & 5 [emphasis added]. As is clear from the plain, ordinary meaning of these terms, the housing must be prepared with a material that matches the poster material that is covered by the housing. The claim language compels this result when it requires "matching art" that is "substantially the same" as the art that the "housing covers" when it is attached to the poster. The claims describe the result of so preparing the housing surface as causing the housing to "artistically blend[] in" with the poster.

The common dictionary definitions of the terms are also consistent with this reading. "Match" is defined as "[a] person or thing that is exactly like another; counterpart." *American Heritage Dictionary of the English Language*, ed. 1981, at p. 805. "Blend" means to "combine or mix so as to render the constituent parts indistinguishable from one another." *Id.* at 140.[3] Reading the two together, the housing surface must be "exactly" like the art over which the housing is placed so that the housing and poster become "indistinguishable from one another." This, after all, is exactly the purpose the supposed invention of the '272 patent.

This meaning—that the housing must be prepared with art that matches the art over which the housing is placed—is also compelled by the specification. For instance, in discussing the preferred embodiment, the inventor described the material covering the housing as follows: "When finished, the material piece will artistically fit onto the poster, ***without any disruption in the poster artwork***. In other words, the material piece will have the ***exact coloring and artwork*** on it, as if the material piece was not present." '272 patent at 2:24-29. In describing the novelty of the alleged invention, the inventor states, "[t]he present invention is a novel method and

_____

[3] Copies of these definitions are attached to the Kinsel Decl. as Ex. "3."

apparatus for providing sound techniques under a material that ***incorporates the poster artwork into the material***." '272 patent at 1:18-20 [emphasis added]. The inventor further explains that the "material is ***painted with a portion of the artwork from the poster***." '272 patent at 1:20-23 [emphasis added]. Further, the benefit of the invention is described as providing a "poster with the sound equipment without interfering with the artwork on the poster." 272 patent at 1:58-60.

The figures also illustrate that the housing surface must be prepared with the art over which the housing is placed. For instance, in Fig. 1 the uneven lines 15 (highlighted in red) represent a continuation of the artwork on the underlying poster: "The uneven and broken lines 15 shown on the face of material piece 10 exemplify ***portions of poster artwork***." 272 patent at 1:66-



2:11 [emphasis added]. Thus, it is not just that the housing surface be part of the same color scheme. Rather, the surface must include the portions of the artwork over which the housing will be placed.

This is even more clearly shown in Fig. 4, to the right annotated in red and blue. As the specification describes Fig. 4: "Fig. 4 is a cutaway view of the present invention as applied to a poster. An outline of the material piece is shown in dashed lines at 32 to indicate that the material piece may not be visible on the poster except on close inspection."



8

'272 patent at 12-16. Put differently, the material must be prepared in such a way that it fits like a puzzle piece onto the underlying artwork.

### 3. *JAKKS Posters Cannot Infringe The '272 Patent, As A Matter Of Law*

Both independent claims (Claims 1 and 5) of the '272 patent require that the housing for the sound element be prepared with the art that will be covered by the housing. As is clear from the images of the Posters above, the housing units as JAKKS' Posters do not include the underlying art. Rather, they are placed ***over*** the underlying art. Far from fitting like a puzzle piece onto the Posters, the housing units in the JAKKS' products are simply placed on top of the poster art, interrupting it, and not blending into it. The JAKKS' housings do not become indistinguishable from the underlying Poster Art. This is easily seen from the images above where the speaker has been removed. Because Plaintiff cannot show that the Posters meet this critical limitation, Plaintiff's infringement claims are doomed as a matter of law.

### B. Rule 11 Sanctions Are Appropriate

The Federal Circuit has made it clear that Rule 11 applies to patent infringement complaints, just as it applies to any other case. But in the patent infringement context, the Federal Circuit has warned:

> [A] patent suit can be an expensive proposition. Defending against baseless claims of infringement subjects the alleged infringer to undue costs—precisely the scenario Rule 11 contemplates. Performing a pre-filing assessment of the basis for each infringement claim is, therefore, extremely important. In bringing a claim of infringement, the patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement. Failure to do so should ordinarily result in the district court expressing its broad discretion in favor of Rule 11 sanctions, at least in the absence of a sound excuse or considerable mitigating circumstances.

*View Engineering, Inc. v. Robotic Vision Systems, Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000).

9

The Supreme Court has held that at the "heart of Rule 11" is the message conveyed by the signer's certification that he "has conducted a  reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both. . . ." *See Bus. Guides, Inc. v. Chromatic Commc 'ns Enters.*, *Inc.*, 498 U.S. 533,554 (1991). "Where . . . the complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing it." *Id.* (citation omitted); *see also Montrose Chern. Corp. of Cal. v. Am. Motorists Ins. Co.*, 117 F.3d 1128, 1133 (9th Cir. 1997). Subjective bad faith is not required under Rule 11; the inquiry is objective. *See G.c. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096,1109 (9th Cir. 2003).

There is no question that the allegations in the Complaint are legally baseless. The Posters simply cannot infringe. The Posters lack the key inventive element of the patent; namely that the housing be prepared with the art over which the housing unit is placed. Thus, the first prong is easily met.

So too is the second prong. The only analysis that Plaintiff had to undertake would have been to look at the Posters, and perhaps remove the housing units. Plaintiff clearly had possession of exemplar Posters because he attached images of the Posters to his Complaint. Had Plaintiff compared the Posters that he had in his possession with the limitations in the patent, he would have immediately realized that he could not establish infringement as a matter of law.

JAKKS attempted to point this out to Plaintiff's counsel. JAKKS informed Plaintiff's counsel that the Posters could not read on the limitations of the '272 patent because the housing surface did not match the underlying poster art. JAKKS even provided images of the Posters

10

Exhibit 4

LACA_1987251.1

with the housing units removed, showing unequivocally that the housing units are not prepared with the poster art over which they are placed.  At that point, if it hadn't been clear before, it should have been clear that Plaintiff could not establish his action.  As such, both prongs of the Rule 11 test are satisfied.

## IV.     CONCLUSION

For all of the reasons stated herein, JAKKS should be awarded its attorneys fees and costs pursuant to Rule 11.

Dated:  November ___, 2008                          Respectfully submitted,


                                                    /s/ Grant E. Kinsel
                                                     Grant E. Kinsel CA Bar No. 172407
                                                    **FOLEY & LARDNER LLP**
                                                    555 South Flower Street, Suite 3500
                                                    Los Angeles, CA 90071-2411
                                                    213.972.4500

                                                    Attorneys for Defendant
                                                    JAKKS PACIFIC, INC.

11

## Kinsel, Grant E.

**From:** Brian Dickerson [BDickerson@dickerson-law.com]

**Sent:** Monday, November 17, 2008 7:01 AM

**To:** Kinsel, Grant E.

**Subject:** RE: Clark/JAKKS

Grant:

I have received your email. I just want you and your client to be aware I will not have time to address this issue this week as I am in trial in Florida. I will discuss with my client when I conclude this trial, which at the latest should conclude next Monday. I will extend the mid December response date to accommodate this delay. If this is an issue, please let me know, but I am sure as a trial lawyer you are aware of the attention that has to be provided to a trial.

Brian

---

**From:** Kinsel, Grant E. [mailto:GKinsel@foley.com]
**Sent:** Friday, November 14, 2008 7:52 PM
**To:** Brian Dickerson
**Subject:** Clark/JAKKS

Brian,

Attached please find JAKKS' Motion for Sanctions Pursuant to Rule 11. Pursuant to Rule 11, we are serving this on you prior to filing in hopes that you will review the material and withdraw the complaint. As the papers make clear, it just will not be possible for your client to establish infringement as a matter of law.

Further, because my client has had to incur the cost of preparing this motion, please consider JAKKS' previous settlement offer of $5,000 to be formally withdrawn.

Please let me know if you have any questions.

Regards.

<<1987251_1.pdf>> <<Kinsel Declaration re Motion for Sanctions with Exhibits.pdf>>

---

Grant Kinsel
Foley & Lardner LLP
555 So. Flower Street
35th Floor
Los Angeles, CA 90071
office: 213.972.4615
mobile: 818.235.2312

**Exhibit 4**

9/15/2009

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding message contains advice relating to a Federal tax issue, unless expressly stated otherwise the advice is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding Federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.

**Exhibit 4**

9/15/2009