# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| AARON CLARK, et al., | : | |
| Plaintiffs, | : | Case No. 2:08-cv-982 |
| v. | : | Judge Holschuh |
| THE WALT DISNEY CO., et al., | : | Magistrate Judge Abel |
| Defendants. | : | |
| | : | |

## MEMORANDUM OPINION & ORDER

Plaintiffs Aaron Clark and John Peirano maintain that Defendants have manufactured, sold and distributed Hannah Montana and Cheetah Girls Talking Posters that infringe on Plaintiffs' patent. Plaintiffs also previously alleged that Defendants' conduct constitutes a false designation of origin, in violation of the Lanham Act, 15 U.S.C. § 1125(a), and violates Ohio's Deceptive Trade Practices Act, Ohio Revised Code § 4165.02.

Defendants JAKKS Pacific, Inc., Play Along Toys, and Toys 'R' Us filed a motion to dismiss for failure to state a claim. (Doc. 11).[1] On June 19, 2009, the Court granted that motion in part, dismissing the false designation of origin and deceptive trade practices claims. With respect to the claim of patent infringement, the Court gave the parties notice that it was converting the motion into a motion for summary judgment. The parties then submitted supplemental briefs and additional evidence. Also pending is Defendants' motion to strike the declaration of Ellen Shapiro (Doc. 56), Plaintiffs' expert witness.

---

[1] Defendant Disney Shopping, Inc. subsequently joined in the motion.

I.      **Background and Procedural History**

According to the Third Amended Complaint, on August 20, 1996, the United States Patent and Trademark Office issued U.S. Patent No. 5,548,272 ("the 272 Patent"), entitled "Talking Poster," to Plaintiff Aaron Clark. (Third Am. Compl. ¶ 24). This invention allows the user to activate a pre-recorded message by pushing a button attached to the surface of a poster. In May of 1999, Clark assigned a 50% ownership interest in the 272 Patent to Plaintiff John Peirano. (Id. at ¶ 38). After obtaining the appropriate licenses, Plaintiffs produce Talking Posters featuring various entertainers, cartoon characters and movie characters. (Ex. K to Third Am. Compl.). They have also licensed their technology to enable other companies to produce Talking Posters. (Third Am. Compl.¶ 27).

On October 17, 2008, Plaintiff Aaron Clark filed suit against The Walt Disney Company, JAKKS Pacific, Inc., Play Along Toys, KB Toys, Amazon.com, and Toys 'R' Us, alleging patent infringement, false designation of origin and deceptive trade practices.[2] He subsequently dismissed the claims against Amazon.com, and The Walt Disney Company, and added BabyUniverse, Inc., EToys Direct, Inc., and Disney Shopping, Inc. as additional defendants. John Peirano later joined the suit.

Plaintiffs allege that Defendants have manufactured, distributed, licensed, offered to sell, sold and shipped at least nine different Hannah Montana Talking Posters and Cheetah Girls Talking Posters ("the Accused Posters") that embody the subject matter claimed in the 272 Patent. (Id. at ¶¶ 31-32) ("the Accused Posters"). Plaintiffs maintain that Defendants have infringed on Claims 1 and 5 of the 272 Patent. Those Claims are set forth in the 272 Patent as follows:

---

[2] Defendant KB Toys has filed for bankruptcy protection.

What is claimed is:

1. An assembly, comprising:

    a poster comprised of a first material, said poster having a first surface, said first surface including poster art thereon;
    a housing comprised of a second material, said housing attached to a portion of said first surface of said poster;
    a speaker concealed between said housing and said first surface of said poster;
    an electric circuit including a sound production component, operatively connected to said speaker and concealed between said housing and said first surface of said poster;
    a trigger attached to said electric circuit and concealed within said housing, said trigger adapted to be actuated through said housing to produce said sound;
    wherein a surface of said housing is prepared with a matching art which is substantially the same as that area of said poster art which appears on said portion of said poster that said housing covers when said housing is attached to said poster, such that said housing artistically blends in with the surrounding poster art that is not covered by said housing.

***

5. A method for making a talking poster, comprising the steps of:

    providing a poster with poster art on a first surface thereof;
    providing human actuatable sound components adapted to be contained on said poster;
    providing a housing adapted to be secured onto a portion of said first surface of said poster;
    applying matching art to said housing which is substantially the same as that area of said poster art which appears on said portion of said poster that said housing covers when said housing is attached to said poster, such that said housing artistically blends in with the surrounding poster art that is not covered by said housing; and
    securing said housing onto said portion of said first surface of said poster, such that said housing conceals said sound components.

(Claims 1 and 5 of the 272 Patent; Ex. J to Third Am. Compl.).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants JAKKS Pacific, Inc., Play Along Toys, and Toys 'R' Us filed a motion to dismiss for failure to state a claim upon which relief can be granted. Defendants argued that Plaintiffs could not succeed on their patent infringement

claim because the surface of the housing unit on the Accused Posters is not prepared with a "matching art which is substantially the same as that area of said poster art which appears on said portion of said poster that said housing covers when said housing is attached to said poster, such that said housing artistically blends in with the surrounding poster art that is not covered by said housing." On June 19, 2009, the Court gave the parties notice that, with respect to the patent infringement claim, it was converting the motion into a motion for summary judgment. The parties were given an opportunity to supplement the record.

**II.     Motion for Summary Judgment**

Defendants argue that the Accused Posters do not possess each and every claim limitation contained in Claims 1 or 5 of the 272 Patent as properly construed, and that no reasonable jury could find literal infringement. They also argue that Plaintiffs' claims under the doctrine of equivalents are barred by prosecution history estoppel. Plaintiffs maintain that the Accused Posters do possess each and every claim limitation and that genuine issues of material fact preclude summary judgment.

**A.     Standard of Review**

Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). The standard for summary judgment is found in Federal Rule of Civil Procedure 56(c):

> [Summary judgment] . . . should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Summary judgment will be granted "only where the moving party is entitled to judgment as a matter

of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467 (1962) (quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)). See also Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. Lashlee v. Sumner, 570 F.2d 107, 111 (6th Cir. 1978). The court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Weaver v. Shadoan, 340 F.3d 398, 405 (6th Cir. 2003).

In a motion for summary judgment, the moving party bears the initial burden of showing that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law. Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003). All the evidence and facts, as well as inferences to be drawn from the underlying facts, must be considered in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Wade v. Knoxville Util. Bd., 259 F.3d 452, 460 (6th Cir. 2001). Additionally, any "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-60 (1970).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no

genuine issue of material fact." Anderson, 477 U.S. at 247-48 (emphasis in original). A "material" fact is one that "would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984). See also Anderson, 477 U.S. at 248. An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. See also Leary, 349 F.3d at 897.

If the moving party meets its burden, and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. The nonmoving party must demonstrate that "there is a genuine issue for trial," and "cannot rest on her pleadings." Hall v. Tollett, 128 F.3d 418, 422 (6th Cir. 1997).

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. Anderson, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Phillip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir. 1993). The court may, however, enter

6

summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. Anderson, 477 U.S. at 251-52; Lansing Dairy, Inc., 39 F.3d at 1347.

**B.     Relevant Law**

In order to succeed on a claim of patent infringement, a plaintiff must prove that the accused product contains "elements identical or equivalent to each claimed element of the patented invention." Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co., 520 U.S. 17, 40 (1997). The process of determining whether an accused product literally infringes a patent involves two steps.

First, the court must construe the claims of the patent to determine their proper scope. This question of claim construction is to be decided by the court as a matter of law. Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1581-82 (Fed. Cir. 1996).[3] In determining the proper scope of the patent claim, the court initially looks to intrinsic evidence, *i.e.*, the patent itself and the prosecution history. Id. at 1582 (citing Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995)). In analyzing the scope of the claim, the court turns first "to the words of the claims themselves." Id. The court must also consider the specification "to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning." Id. Finally, the court may consider "the prosecution history of the patent, if in evidence." Id. If these documents resolve any ambiguity in a disputed claim term, it is improper for the court to consider any extrinsic evidence. Id. at 1583. However, if ambiguities remain, the court may consider extrinsic evidence

---

[3] Although it is often helpful for the court to hold an evidentiary hearing (a "Markman" hearing) on claim construction, this is not necessarily required. If the patent claims do not contain complex, technical language, a court may be able to interpret them based only on the paper record. See Rogers v. Desa Int'l, Inc., 166 F. Supp.2d 1202, 1204-05 (E.D. Mich. 2001).

such as dictionaries, treatises, and expert testimony. Id. at 1582-83.

Second, a factfinder must determine whether the accused product infringes the asserted claim as properly construed. Vitronics, 90 F.3d at 1581-82 (citing Markman, 52 F.3d at 976). Summary judgment is proper "when no reasonable jury could find that every limitation recited in a properly construed claim . . . is . . .found in the accused devise either literally or under the doctrine of equivalents." PC Connector Solutions LLC v. SmartDisk Corp., 406 F.3d 1359, 1364 (Fed. Cir. 2005).

### C. Claim Construction Analysis

The Court turns first to the question of claim construction. Plaintiffs contend that the Accused Posters infringe on Claims 1 and 5 of the 272 Patent. As previously noted, a plaintiff alleging patent infringement must prove that the accused product contains elements identical or equivalent to each and every claimed element of the patented invention. Warner-Jenkinson, 520 U.S. at 40. It is undisputed that the Accused Posters have many of the same attributes claimed in the 272 Patent: (1) they consist of a poster made of one material and a housing unit made of another material; (2) the speaker, along with an electric circuit, is concealed between the housing unit and the poster; and (3) a trigger, actuated through the housing unit, is attached to the electric circuit. The parties disagree, however, about whether the Accused Posters satisfy the final element of Claims 1 and 5.

Claim 1 includes:

> An assembly . . . wherein a surface of said housing is prepared with a matching art which is substantially the same as that area of said poster art which appears on said portion of said poster that said housing covers when said housing is attached to said poster, such that said housing artistically blends in with the surrounding poster art that is not covered by said housing.

(Ex. J. to Third Am. Compl.). Likewise, Claim 5 of the 272 Patent refers to:

> A method for making a talking poster, comprising the steps of . . . applying matching art to said housing which is substantially the same as that area of said poster art which appears on said portion of said poster that said housing covers when said housing is attached to said poster, such that said housing artistically blends in with the surrounding poster art that is not covered by said housing.

(Id.).

Plaintiffs construe this element to mean only that the color of the housing must complement the colors used in the poster so that the housing "artistically blends in with the surrounding poster art" and forms a "harmonious visual effect." Plaintiffs then submit the declaration of their expert witness, Ellen Shapiro, who opines that the housing on the Accused Posters "artistically blends in" with the color schemes of the Accused Posters, thereby satisfying this final element.

Defendants, however, maintain that this element is considerably more narrow. They argue that it is not enough that the color of the housing unit complements the color scheme of the poster. Rather, the housing unit must be "camouflaged" because the plain language of the claim requires that the housing unit be prepared with "*matching art which* is *substantially the same as that area* of said poster art which appears on said portion of said poster *that said housing covers* when said housing is attached to said poster." (Id.) (emphasis added).

### 1. Language of Patent Claim

"The starting point for any claim construction must be the claims themselves." Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1305 (Fed. Cir. 1999) (citing Vitronics, 90 F.3d at 1582). In construing the language of a patent claim, all words defining the scope of the invention must be given effect. Bicon, Inc. v. Straumann Co., 441 F.3d 945, 950 (Fed. Cir. 2006) ("claims are interpreted with an eye toward giving effect to all terms in the claim"); Merck & Co., Inc. v. Teva

9

Pharms. USA, Inc., 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.").

Here, Claims 1 and 5 both require the surface of the housing unit to be prepared with a "matching art" which is "substantially the same as that area of said poster art which appears on said portion of said poster that said housing covers when said housing is attached to said poster, such that said housing artistically blends in with the surrounding poster art that is not covered by said housing."

Plaintiffs urge the Court to focus solely on the last phrase, which reads "such that said housing artistically blends in with the surrounding poster art that is not covered by said housing." They argue that because the colors of the housing units on the Accused Posters match certain colors used elsewhere in the posters, the housing units "artistically blend in," creating a harmonious visual effect, and therefore satisfy this element.

Plaintiffs' interpretation obviously ignores the remainder of the claim that requires that the artwork on the surface of the housing be "substantially the same as that area of said poster art which appears on said portion of said poster that said housing covers when said housing is attached to said poster." As Defendants correctly note, Plaintiffs' interpretation completely reads this key limitation out of the claims. Such a result cannot be condoned. See Ethicon Endo-Surgery, Inc. v. United States Surgical Corp., 93 F.3d 1572, 1582-83 (Fed. Cir. 1996) (refusing to read a limitation out of the claim).

When Claims 1 and 5 are read as a whole, and when all of the words defining the scope of the invention are given effect, these claims unambiguously require that the artwork on the surface of the housing be substantially the same as the artwork on that portion of the poster directly

underneath the housing. The practical effect of this limitation is that the housing unit is camouflaged. Only under these circumstances can it be said that the housing is prepared with "matching art" such that it "artistically blends in with the surrounding poster art that is not covered by said housing."

### 2. Specification

The patent claims must also be read in view of the specification, that portion of the patent document which describes the invention "in such full, clear, concise, and exact terms as to enable any person skilled in the art. . . to make and use the same." 35 U.S.C. § 112; Markman, 517 U.S. at 384. The court examines the specification "to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning. The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication." Vitronics, 90 F.3d at 1582. In this case, nothing in the specification expressly defines the terms "matching art," "substantially the same," or "artistically blends in." Nor is there any indication that these terms are to be interpreted in a specialized, technical sense.

Plaintiffs note that the section entitled "Background and Summary of the Invention" describes the invention as "a talking poster that projects a recorded sound using a device that is attached to the poster with *material that is painted to match the color scheme of the poster art.*" (Ex. J to Third Am. Compl.) (emphasis added). Admittedly, this introductory statement is broad enough to encompass Plaintiffs' interpretation of Claims 1 and 5.[4] Nevertheless, as discussed above, this interpretation is completely inconsistent with the claim language itself. As the Federal Circuit

---

[4] The Court notes that this same introductory statement also appeared in Plaintiffs' initial patent application. Even though the language of the claims was revised, this statement was not.

noted in Markman v. Westview Instruments, Inc., "[t]he written description part of the specification itself does not delimit the right to exclude. That is the function and purpose of the claims." 52 F.3d at 967, 980 (Fed. Cir. 1995). See also Environmental Instruments, Inc. v. Sutron Corp., 877 F.2d 1561, 1564 (Fed. Cir. 1989) ("[t]he claims alone delimit the right to exclude; only they may be infringed."). Because it is contrary to the claims themselves, this introductory statement may not be considered in determining the proper scope of the 272 Patent.

The specification also includes a "Preferred Embodiment" of the invention. It states that "[t]he invention uniquely provides the poster with the sound equipment *without interfering with the artwork* on the poster." (Ex. J to Third Am. Compl.) (emphasis added). Figure 4, a cutaway view of the preferred embodiment, indicates that the housing "*may not be visible on the poster except on close inspection.*" Id. (emphasis added). An example for constructing a preferred embodiment describes how the housing

> may be lithographed using a *multi-color process printing technology to match the poster artwork*. When finished, the material piece will artistically fit onto the poster, *without any disruption in the poster artwork.* In other words, the material piece will have the *exact coloring and artwork* on it, as would the space on the poster board where the piece resides, if the material piece was not present.

Id. (emphasis added).

Examples of the preferred embodiment are attached as Exhibit K to Plaintiffs' Third Amended Complaint. On one of those Talking Posters, depicting the group NSync, the housing unit is placed on the bottom right corner of the poster, over the top of Justin Timberlake's left foot. The housing unit is lithographed to match Timberlake's pants and shoe so that the poster artwork is not interrupted by the housing unit. In another Talking Poster, depicting entertainer Ricky Martin, the housing unit is camouflaged, being printed with the same purple-and-white checkered background

12

that covers the rest of the poster. In this respect, the examples of the preferred embodiment are entirely consistent with the plain language of the claims.

In contrast to these examples, the Accused Posters do not have camouflaged housing units. Instead, each Accused Poster has a housing unit consisting of a solid color bar running the entire width of the bottom of the poster. Although the color of the housing unit generally complements the color scheme used in the poster, clearly the housing unit is not covered with artwork that is substantially the same as the poster artwork directly underneath it. See Ex. 1 to Defs.' Supp. Mem.

Plaintiffs correctly note that the Accused Posters "must be compared to the claims rather than to a preferred or commercial embodiment." Amgen Inc. v. Hoeschst Marion Roussel, Inc.. 314 F.3d 1313, 1347 (Fed. Cir. 2003). Plaintiffs accuse Defendants of importing claim limitations from the specification contained in the 272 Patent. As a general rule, the scope of the invention is not limited by the specification. See Phillips v. AWH Corp., 415 F.3d 1303, 1323 (Fed. Cir. 2005); JVW Enterprises, Inc. v. Interact Accessories, Inc., 424 F.3d 1324, 1335 (Fed. Cir. 2005) (holding that it is generally improper to limit claim language to the specific embodiment disclosed in the written description). The 272 Patent specifically states that "[t]he scope of the invention is not to be considered limited by the above disclosure, and modifications are possible without departing from the spirit of the invention . . ." (Ex. J to Third Am. Compl.).

Ordinarily, the patent claims will be broader than the preferred embodiment. Phillips, 415 F.3d at 1323. In such a case, the fact that the accused product differs from the preferred embodiment would not necessarily foreclose a finding of infringement. In this case, however, the claim language and the preferred embodiment appear to be equal in scope. Properly construed, the claims are coextensive with the preferred embodiment as described in the 272 Patent. Both require that the

housing be camouflaged.

### 3. Prosecution History

In addition to considering the plain language of the claims and the specifications, the Court may also consider the prosecution history of the 272 Patent. In this case, the prosecution history supports Defendants' interpretation of the claims. When Plaintiff Clark first submitted his patent application, the relevant portion of Claim 1 consisted of "a blister pack attached to said poster, wherein said blister pack . . . matches the artwork of the poster to which it is attached." (Ex. 5 to Kinsel Decl.). This claim, along with all others, was rejected as being "unpatentable over Hoshi (U.S. Patent No. 4,934,079)." (Ex. 5 to Kinsel Decl.). With respect to Claim 1, the examiner noted that "[t]he claimed blister pack matching the art work of the poster lacks criticality because the housing in Hoshi would still serve the same function as a housing for the electrical components." (Id.). Claim 8 of the original patent application, dealing with a method for making Talking Posters, included "printing a portion of the artwork on said poster on blister pack material." (Id.). The examiner rejected this claim as well, noting that although this claim was not met by Hoshi, it still lacked criticality for the same reasons given for rejecting Claim 1. (Id.).

In response to the rejection, Plaintiff Clark submitted amendments and remarks. Attempting to distinguish his invention from Hoshi's, he noted that Hoshi's poster and the display device containing the speakers were two separate pieces, whereas Plaintiff's invention consisted of one piece, allowing "artwork to be placed on the blister pack by lithograph color technology, for example, so that the electronic circuitry and sound emanating means under the housing is 'camouflaged' in the poster presentation." (Id.). He further noted that "the sound module housing can be printed with artwork so as to visually blend in with the actual artwork of the poster, and

14

effectively hide the sound module so as not to disturb or interrupt the visual flow of the poster." (Id.).[5]

An interview was then held with patent examiner. The examiner's hand written note indicates that Clark agreed "to add limitation to the claim such that the blister pack is printed so that it blends in with the artwork at the area where the blister pack is attached to." (Id.). Accordingly, Clark amended his claims to include the language currently at issue, *i.e.,* "wherein a surface of said housing is prepared with a matching art which is substantially the same as that area of said poster art which appears on said portion of said poster that said housing covers when said housing is attached to said poster, such that said housing artistically blends in with the surrounding poster art that is not covered by said housing." This amendment resulted in a narrowing of the scope of the invention. Whereas the original patent application required only that the blister pack "matches the artwork of the poster," the patent, as issued, requires the blister pack to be prepared with artwork that is "substantially the same" as the portion of the poster it covers.

### 4. Extrinsic Evidence

To summarize, an examination of the intrinsic evidence of record, *i.e.*, the language of the claims, the specification, and the prosecution history, leads the Court to conclude that the claims at issue, as properly construed, unambiguously require the housing to be prepared with artwork that is substantially identical to the artwork on the area of the poster it covers so that the housing is, in

---

[5] The Court rejects Plaintiffs' attempt to now distance themselves from these statements. They argue that the use of the word "camouflaged" merely meant that the housing artwork could be used to render the functional components of the electronic circuitry and speakers less conspicuous by using housing that "artistically blends in" with the color scheme of the poster. As the Court has already held, this interpretation is clearly contrary to the plain language of the claims.

effect, camouflaged and the visual flow of the poster art is not interrupted.

Because there are no remaining ambiguities, it would be improper for the Court to consult the extrinsic evidence submitted by the parties, including dictionary definitions and the declaration of Ellen Shapiro, submitted by Plaintiffs in support of their memorandum in opposition. Therefore, Defendants' motion to strike Shapiro's declaration is granted.[6]

### D. Summary Judgment

Having determined the proper construction of Claims 1 and 5 of the 272 Patent, the Court turns next to the question of whether a reasonable jury could find that the Accused Posters infringe on Claims 1 or 5 of the 272 Patent, as properly construed. This question is easily answered. The housing unit on each of the nine Accused Posters consists of a solid color bar running the entire width of the bottom of the poster. (Ex. 1 to Defs.' Supp. Mem.) On each poster, the housing completely interrupts the visual flow of the poster, covering up the underlying artwork. The housing units are not prepared with artwork that is "substantially the same" as the artwork contained directly underneath them on the poster. The Accused Posters, therefore, do not satisfy this key limitation.

---

[6] Even if the Court found that extrinsic evidence would be helpful in construing the claims, Shapiro's declaration is lacking in several respects. Shapiro is a graphic designer who concluded that because the housing units on the Accused Posters "artistically blend in" with the colors used in the posters and form a "harmonious visual effect," the Accused Posters infringe on Claims 1 and 5 of the 272 Patent. (Shapiro Decl. ¶¶ 12-13, 16). In the context of patent infringement cases, the Federal Circuit has held that "a court should discount any expert testimony 'that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent.' *Key Pharms.*, 161 F.3d at 716." Phillips v. AWH Corp., 415 F.3d 1303, 1318 (Fed. Cir. 2005). Shapiro's declaration falls squarely within this category. Her interpretation of the claim language, like that of Plaintiffs, completely ignores the key limitation that requires that the housing unit be prepared with "matching art which is substantially the same as that area of said poster art which appears on said portion of said poster that said housing covers when said housing is attached to said poster."

"There can be no infringement as a matter of law if a claim limitation is totally missing from the accused device." London v. Carson Pirie Scott & Co., 946 F.2d 1534, 1538 (Fed. Cir. 1991). Based on the evidence presented, no reasonable jury could find that the Accused Posters literally infringe on Claims 1 or 5 of the 272 Patent.

In their supplemental memo, Plaintiffs argue that even if there is no literal infringement, infringement may be found under the "doctrine of equivalents." Pursuant to that doctrine, "[t]he scope of a patent is not limited to its literal terms but instead embraces all equivalents to the claims described." Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 732 (2002). The application of this doctrine prevents others from making "unimportant and insubstantial changes and substitutions" to the invention in order to circumvent the protection afforded by the patent. Id.

As the Federal Circuit noted in Abbott Laboratories v. Sandoz, Inc., 566 F.3d 1282, 1296 (Fed. Cir. 2009), "a generalized showing of equivalency between the claim as a whole and the allegedly infringing product or process is not sufficient to show infringement." Rather, equivalency must be shown with respect to each element of the claim. Id. "An element in the accused product is equivalent to a claim limitation if the differences between the two are insubstantial." AquaTex Indus., Inc. v. Techniche Solutions, 419 F.3d 1374, 1382 (Fed. Cir. 2005). Plaintiffs argue that, based on the evidence presented, a reasonable jury could find that the differences between the housing of the Accused Posters and what is claimed in the 272 Patent are insubstantial, and that summary judgment is, therefore, inappropriate.

Defendants argue, however, that prosecution history estoppel bars Plaintiffs from arguing that the Accused Posters infringe under the doctrine of equivalents. The Court agrees. "Prosecution history estoppel . . . preclud[es] a patentee from regaining, through litigation, coverage of subject

17

matter relinquished during prosecution of the application for the patent." Wang Labs., Inc. v. Mitsubishi Elec. Am., Inc., 103 F.3d 1571, 1577-1578 (Fed. Cir. 1997). As the Supreme Court explained,

> [w]hen . . . the patentee originally claimed the subject matter alleged to infringe but then narrowed the claim in response to a rejection, he may not argue that the surrendered territory comprised unforeseen subject matter that should be deemed equivalent to the literal claims of the issued patent. On the contrary, "[b]y the amendment [the patentee] recognized and emphasized the difference between the two phrases[,] . . . and [t]he difference which [the patentee] thus disclaimed must be regarded as material." *Exhibit Supply Co. v. Ace Patents Corp.*, 315 U.S. 126, 136-137, 62 S.Ct. 513, 86 L.Ed. 736 (1942).

Festo, 535 U.S. at 733-34. The Court went on to explain,

> [a] patentee who narrows a claim as a condition for obtaining a patent disavows his claim to the broader subject matter, whether the amendment was made to avoid the prior art or to comply with § 112. We must regard the patentee as having conceded an inability to claim the broader subject matter or at least as having abandoned his right to appeal a rejection. In either case estoppel may apply.

Id. at 737.

In this case, all of the claims in Plaintiff Clark's original patent application were rejected as being "unpatentable over Hoshi," which was prior art. (Ex. 5 to Kinsel Decl.). In discussing possible cures and revisions with the patent examiner, Plaintiff agreed to add a limitation to his claims to emphasize that the housing would be printed so that it blends in with the artwork on the area of the poster where it is attached. (Id.). In accordance with this agreement, Plaintiff amended his claims to include the limitations at issue here, requiring the surface of the housing to be "prepared with a matching art which is substantially the same as that area of said poster art which appears on said portion of said poster that said housing covers when said housing is attached to said poster, such that said housing artistically blends in with the surrounding poster art that is not covered by said housing."

18

Plaintiffs have the burden of proving the reason for this amendment. Where, as here, no explanation is established, a rebuttable presumption arises that the amendment was made to cure the alleged defect, *i.e.*, avoid the prior art, thereby triggering prosecution history estoppel. Warner-Jenkinson, 520 U.S. at 33, 40-41. As Plaintiffs point out, this presumption does not automatically operate as a complete bar to a subsequent claim of infringement under the doctrine of equivalents. Festo, 535 U.S. at 737. The Supreme Court has held that a narrowing amendment should not be deemed "to relinquish equivalents unforeseeable at the time of the amendment and beyond a fair interpretation of what was surrendered." Id. at 738. The patentee bears the burden of proving that the amendment did not "surrender the particular equivalent in question," and may do so by showing that "at the time of the amendment one skilled in the art could not reasonably be expected to have drafted a claim that would have literally encompassed the alleged equivalent." Id. at 740-41.

Plaintiffs argue that, even if prosecution history estoppel applies, they should be still given the opportunity to present expert testimony and other evidence to show that the housing artwork scheme on the Accused Posters was unforeseeable at the time of the amendment. Plaintiffs, however, have already been given that opportunity and failed to take advantage of it. In converting Defendants' motion to dismiss into a motion for summary judgment, the Court gave the parties the opportunity to present whatever additional evidence they wanted. Plaintiffs have failed to present any evidence from which a reasonable jury could find that, at the time of the amendment, the alleged equivalent was unforeseeable. The doctrine of prosecution history estoppel therefore bars Plaintiffs' infringement claims under the doctrine of equivalents.

19

**IV.    Conclusion**

For the reasons stated above, the Court **GRANTS** Defendants' motion to strike Ellen Shapiro's declaration. (Doc. 56). The Court also **GRANTS** Defendants' motion for summary judgment with respect to the patent infringement claim. (Doc. 11). The Clerk is directed to enter judgment in favor of Defendants.

**IT IS SO ORDERED.**


Date: October 9, 2009                                        **/s/John D. Holschuh**
                                                             John D. Holschuh, Judge
                                                             United States District Court