## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

AARON CLARK, et al.,                    :
                                        :
    *Plaintiffs,*                       :
v.                                      :        Case No.  2:08CV982
                                        :
THE WALT DISNEY COMPANY, et  :          Judge Holschuh
al.,                                    :
    *Defendants.*                       :        Magistrate Judge Abel

---

### PLAINTIFFS AARON CLARK AND JOHN PEIRANO'S
### COMBINED MEMORANDUM IN OPPOSITION TO
### (1) MOTION OF DEFENDANTS JAKKS PACIFIC, INC., PLAY ALONG TOYS, TOYS "R" US AND DISNEY SHOPPING INC.'S FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11 (DOC 63)
### AND
### (2) DEFENDANT JAKKS PACIFIC, INC.'S SUPPLEMENTAL MOTION FOR ATTORNEYS FEES PURSUANT TO 35 U.S.C. § 285 AND 28 U.S.C. §§ 1927 AND 1961 (DOC. 68)

Now come Plaintiffs Aaron Clark and John Peirano (collectively "Plaintiffs") by and though undersigned counsel who respectfully submit this Combined Memorandum in Opposition to (1) Motion of Defendants JAKKS Pacific, Inc., Play Along Toys, Toys "R" Us and Disney Shopping, Inc.'s for Sanctions Pursuant to Federal Rule of Civil Procedure 11 (Doc. 63); and (2) Defendant JAKKS' Supplemental Motion for Attorneys Fees Pursuant to 35 U.S.C. § 285 and 28 U.S.C. §§ 1927 and 1961 (Doc. 68). The reasons in support of Plaintiffs' Combined Memorandum in Opposition are fully set forth in the accompanying Memorandum in Support.

Respectfully submitted,

**THE DICKERSON LAW GROUP, P.A.**

/s/ Brian E. Dickerson
Brian E. Dickerson     (0069227)
Sharlene I. Chance     (0070999)
5003 Horizons Drive, Suite 101
Columbus, OH 43220

Dockets.Justia.com

Telephone: (614) 339-5370
Facsimile:  (614) 442-5942
bdickerson@dickerson-law.com
schance@dickerson-law.com
***Attorneys for Plaintiffs***

## TABLE OF CONTENTS

### MEMORANDUM IN OPPOSITION TO MOTION OF DEFENDANTS JAKKS FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11 (DOC. 63)

**PAGE**

I.    LAW AND ARGUMENT..................................................................................1

  A.  Rule 11 of the Federal Rules of Civil Procedure........................................1

  B.  Plaintiffs' initial pleadings and subsequent submissions to the court
      do not warrant sanctions under Rule 11................................................5

    1.  Plaintiffs' counsel determined prior to filing suit there was a
        reasonable chance of proving infringement.........................................6

      a.    Plaintiffs' claim of infringement was supported by a
            sufficient factual basis.......................................................8

        i.    Counsels' reasonable pre-suit inquiry.........................................8

          A.    Brian E. Dickerson, Esq..................................................8

          B.    Sharlene I. Chance, Esq................................................16

        ii.    Plaintiffs' reasonable pre-suit inquiry.......................................18

        iii.    Plaintiffs continued reasonable inquiry into the law
               and facts of the claim of infringement......................................22

  C.    Plaintiffs and their counsel made a sufficient pre-filing inquiry to
        determine whether Defendant JAKKS' accused posters infringed....................25

    1.  Plaintiffs' counsel pre-filing infringement investigation.............................30

### MEMORANDUM IN OPPOSITION TO DEFENDANT JAKKS SUPPLEMENTAL MOTION FOR ATTORNEYS FEES PURSUANT TO 35 U.S.C. § 285 AND 28 U.S.C. §§ 1927 AND 1961 (DOC. 68)

I.    LAW AND ARGUMENT................................................................................33

  A.    Attorney fees pursuant to 35 U.S.C. § 285.......................................34

  B.    Defendant JAKKS has not met its burden of establishing that
        this is an "exceptional" case...................................................37

    1.  Plaintiffs and counsel did not engage in frivolous litigation.......................40

    2.  Plaintiffs and counsel did not engage in litigation misconduct...................47

  C.    In the event this Honorable Court finds this case to be "exceptional,"
        an award of attorneys' fees is not warranted....................................49

  D.    Defendant JAKKS should not be awarded fees under 28 U.S.C. § 1927
        and 1961........................................................................50

II.   CONCLUSION......................................................................................52

    CERTIFICATE OF SERVICE............................................................................54

## TABLE OF AUTHORITIES

**CASES**                                                                          **PAGE**

*Alyeska Pipeline Service Co. v. Wilderness Soc'y.*,
    421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)....................................................34

*Am. Council of Certified Podiatric Phys. & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*,
    185 F.3d 606 (6th Cir. 1999).......................................................................35

*Antonious et al. v. Spalding & Evenflo Cos.*,
    275 F.3d 1066 (Fed. Cir. 2002)..........................................................*Passim*

*Associated Indem. Corp. v. Fairchild Industries, Inc.*,
    961 F.2d 32 (2nd Cir. 1992)...........................................................................1

*Bailey* v. *Papa John's USA, Inc.*,
    2007 U.S. App. LEXIS 13850 (6th Cir. 2007)...............................................51

*Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*,
    267 F.3d 1370 (Fed. Cir. 2001)......................................................................36

*Brooks Furniture Mfg., Inc. v. Dutailer Int'l. Inc.*,
    393 F.3d 1378 (Fed. Cir. 2005)...............................................36, 40, 43, 47

*Brubaker v. City of Richmond*,
    943 F.2d 1363 (4th Cir. 1991)......................................................................viii

*Bunning v. Kentucky*,
    42 F.3d 1008 (6th Cir.1994)........................................................................34

*Bus. Guides, Inc. v. Chromatic Communs. Enters., Inc.*,
    498 U.S. 533 (1991)......................................................................................3

*Cambridge Prods. Ltd. v. Penn Nutrients Inc.*,
    962 F.2d 1048 (Fed. Cir. 1992).............................................................26, 27

*Century Products, Inc. v. Sutter*,
    837 F.2d 247 (6th Cir. 1988)..........................................................................1

*Cooter & Gell v. Hartmax Corp.*,
    496 U.S. 384 (1990).................................................................................3, 32

*CTS Corp. v. Piher Int'l Corp.*,
    727 F.2d 1550 (Fed. Cir. 1984)...............................................................46, 47

ii

*Cybor Corp v. FAS Tech., Inc.*,
    138 F.3d 1448 (Fed. Cir. 1998)...................................................................49

*Deyerle v. Wright Mfg. Co.*,
    496 F.2d 45, (6th Cir. 1974)....................................................................37

*Diego, Inc. v. Audible, Inc.*,
    505 F.3d 1362 (Fed. Cir. 2007)................................................................35

*Dixon v. Clem*,
    2006 U.S. Dist. LEXIS 11790 (E.D. KY. 2006)........................................52

*Dunhall Pharms., Inc. v. Discus Dental, Inc.*,
    2000 U.S. App. LEXIS 26924 (Fed. Cir. 2000).....................................39, 43

*Eagles, Ltd. v. Am. Eagle Found.*,
    356 F.3d 724 (6th Cir. 2004)....................................................................35

*Eastway Constr. Corp. v. City of New York*,
    762 F.2d 243 (2nd Cir. 1985).....................................................................1

*Eltech Sys. Corp v. PPG Indus., Inc.*,
    903 F.2d 805 (Fed. Cir. 1990)................................................37, 40, 43, 46

*Eltra Corp v. Basic, Inc.*,
    599 F.2d 745 (6th Cir. 1979)................................................................37, 38

*Enzo Biochem Inc. v. Calgene, Inc.*,
    188 F.3d 1362 (Fed. Cir. 1999)................................................................35

*Epcon Gas Sys. Inc. v. Bauer Compressors, Inc.*
    279 F.3d 1022 (Fed. Cir. 2002)................................................................43

*F & G Research, Inc. v. Google, Inc.*,
    2007 U.S. Dist LEXIS 70072 (S.D. Fla. Sept. 21, 2007)............................37

*Forest Labs., Inc. v. Abbott Labs., Inc.*
    339 F.3d 1324 (Fed. Cir. 2003).......................................................43, 46, 47

*Frank Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*,
    389 F.3d 1370 (Fed. Cir. 2004)................................................................51

*Glaxo Group Ltd v. Apotex, Inc.*,
    376 F.3d 1339 (Fed. Cir. 2004)................................................................34

*Haynes Int'l Inc. v. Jessop Steel Co.*,
    8 F.3d 1573 (Fed. Cir. 1993)..................................................................38, 46

*Hoffman-La Rouche v. Genpharm, Inc.*
    50 F.Supp.2d 367 (D.N.J. 1999)..........................................................26, 52

*Hoffmann-La Rouche Inc. v. Invamed, Inc.*,
    213 F.3d 1359 (Fed. Cir. 2000).......................................................25, 36, 46

*Hoge Warren Zimmermann Co. v., Nourse & Co.*,
    293 F.2d 779, 784 (6th Cir. 1961).............................................................37

*Hyperphrase Tech., LLC v. Google, Inc.*,
    2007 U.S. Dist. LEXIS 11059 (W.D. Wisc. 2007)...................................52

*ICU Med., Inc. v. Alaris Med. Sys., Inc.*,
    2007 U.S. Dist. LEXIS 34467 (C.D. Cal. Apr. 16, 2007)........................42

*iLor, LLC v. Google, Inc.*,
    2009 WL 3367391 (E.D. Ky. Oct. 15. 2009)...........................................40

*In re Ruben*,
    825 F.2d 977 (6th Cir. 1987)...............................................................2, 51

*Interspiro USA, Inc. v. Figgie Int'l, Inc.*
    18 F.3d 927 (Fed. Cir. 1994)....................................................................40

*J.P. Stevens Co., Inc. v, Lex Tex Ltd., Inc.*,
    822 F.2d 1047 (Fed. Cir. 1987).................................................................34

*Judin v. United States*,
    110 F.3d 780 (Fed Cir. 1997).............................................................*Passim*

*Lam, Inc. v. Johns-Manville Corp.*,
    718 F.2d 1056 (Fed. Cir. 1983).................................................................47

*Loctite Corp. v. Fel-Pro, Inc.*,
    667 F.2d 577 (7th Cir. 1981)..................................................................46

*Mach. Corp. of Am. v. Gullfiber AB*,
    774 F.2d 467 (Fed. Cir. 1985).............................................................34, 38

*Mann v. G & G Mfg., Inc.*,
    900 F.2d 938 (6th Cir. 1990)......................................................................1

*McGhee v. Sanilac County*,
      934 F.2d 89 (6th Cir. 1991)................................................................................3

*MEMC Electronic Materials, Inc.* v. *Mitsubishi Materials Silicone Corp.*,
      420 F.3d 1369 (Fed. Cir. 2005)..........................................................................50

*Nat'l Presto Indus., Inc. v. West Bend Co.*,
      76 F.3d 1185 (Fed. Cir. 1996)......................................................................36, 49

*Nilssen v. Osram Sylvania, Inc.*,
      528 F.3d 1352 (Fed. Cir. 2008)....................................................................34, 39

*O'Neal v. Kilbourne Med. Labs., Inc.*,
      251 F.RD. 247 (E.D. KY. 2008)..........................................................................51

*Phillips v. AWH Corp.*,
      415 F.3d 1303 (Fed. Cir. 2005)..........................................................................48

*Phonometrics, Inc. v. Westin Hotel, Co.*
      350 F.3d 1242 (Fed. Cir. 2003)..........................................................................35

*Propat Int'l, Corp. v. Rpost, Inc.*,
      473 F.3d 1187 (Fed. Cir. 2007)..........................................................................52

*Q-Pharma, Inc. v. The Andrew Jergens Co.*,
      360 F.3d 1295 (Fed. Cir. 2004).....................................................................*Passim*

*Red Carpet Studios Div. of Source Advantage, Ltd. v. Neil Sater*,
      465 F.3d 642 (6th Cir. 2006)......................................................................51, 52

*Refac Int'l, Inc., v. IBM Corp.*,
      710 F.Supp. 569 (D.N.J. 1989)..........................................................................41

*Roadway Express, Inc. v. Piper*,
      447 U.S. 752, 65 L.Ed. 2d 488, 100 S.Ct. 2455.................................................50

*S. Bravo Sys., Inc. v. Containment Techs. Corp.*,
      96 F.3d 1372 (Fed. Cir. 1996).....................................................................*Passim*

*S.C. Johnson and Son, Inc. v. Carter-Wallace, Inc.*,
      781 F.2d 198 (Fed. Cir. 1986)..........................................................................49

*Sensonics, Inc. v. Aerosonic Corp.*,
      81 F.3d 1566 (Fed. Cir. 1996)..........................................................................36

*Sentex Sys., Inc. v. Elite Access Sys., Inc.*,
     2000 U.S. App. LEXIS 13560 (Fed. Cir. 2000)......................................38, 43

*Serio-US Indus., Inc. v. Plastic Recovery Tech. Corp.*,
     459 F.3d 1311 (Fed. Cir. 2006)......................................36

*Smith v. ACME General Corp.*,
     614 F.2d 1086 (6th Cir. 1980)......................................38

*Speedplay, Inc. v. Bebop, Inc.*,
     211 F.3d 1245 (Fed. Cir. 2000)......................................46

*Stephen W. Boney, Inc. v. Boney Servs., Inc.*,
     127 F.3d 821 (9th Cir. 1997)......................................35

*Stephens v. Tech Int'l., Inc.*,
     393 F.3d 1269 (Fed. Cir. 2004)......................................40

*Stern v. Leucadia Nat'l Corp.*,
     844 F.2d 997 (2nd Cir. 1988)......................................1

*Stevenson v. Sears, Roebuck & Co.*,
     713 F.2d 705 (Fed. Cir. 1983)......................................46

*Summit Valley Indus.* v. *United Ed. of Carpenters & Joiners*,
     456 U.S. 717, 102 S. Ct. 2112, 72 L. Ed. 2d 511 (1982)......................................14, 53

*Superior Fireplace Co. v. Majestic Prods. Co.*,
     270 F.3d 1358 (Fed. Cir. 2001)......................................36, 38

*Taj Mahal Enters. Ltd v. Trump*,
     745 F.Supp. 240 (D.N.J. 1990)......................................34

*Ultratech, Inc. v. Tamalk Scientific Co.*,
     2005 WL 2562623 (N.D. Cal. 2005)......................................39

*Uniflow Mfg. Co. v. King-Seeley Thermos Co.*,
     428 F.2d 335 (6th Cir. 1970)......................................37

*View Eng'g, Inc. v. Robotic Vision Sys. Inc.*,
     208 F.3d 981 (Fed. Cir. 2000)......................................*Passim*

*Vitronics Corp. v. Conceptronic, Inc.*,
     90 F. 3d 1576 (Fed. Cir. 1996)......................................48

*Waymark Corp. v. Porta Systems Corp.,*
    334 F.3d 1358 (Fed. Cir. 2003)......................................................................50

*Westmoreland v. CBS, Inc.,*
    770 F.2d 1168 (D.C. Cir. 1985).....................................................................2

*Whittle v. Procter & Gamble, et al.,*
    2008 WL 4925797 (S.D. Ohio Nov. 14, 1998)...........................................36

*Yamanouchi Pharm. Co., Ltd. v. Danbury Pharmacal, Inc.,*
    231 F.3d 1339 (Fed. Cir. 2000).....................................................................35

## FEDERAL STATUTES

35 U.S.C. § 285....................................................................................................*Passim*

28 U.S.C. § 1927..................................................................................................*Passim*

## RULES

Fed. R. Civ. P. 11.................................................................................................*Passim*

## ADDITIONAL AUTHORITY

*Practice Makes Perfect? An Empirical Study of Claim Construction Reversal*
*Rates in Patent Cases*,
    107 MICHIGAN LAW REVIEW, 223 (2008)...........................................40

## <u>SUMMARY</u>

Defendants JAKKS' Motions are replete with numerous charges of bad faith and allegations that Plaintiffs and Plaintiffs' counsel utterly disregarded the law.  Defendant JAKKS' Motions, as will be demonstrated below, are clearly baseless.  As part of their allegation of bad faith, Defendant JAKKS suggest that Plaintiffs and their counsel failed to make an appropriate inquiry before filing suit.   Defendant JAKKS contend that "with a thirty-second pre-suit investigation" or "just a glance" at the accused posters, Plaintiffs and their counsel would have been able to determine that the accused posters did not infringe.  Doc. 63, p. 3.  Defendant JAKKS assumes that an inquiry was not made prior to filing suit when, in fact, an extensive pre-suit inquiry was undertaken.  Further, courts have disagreed with Defendant JAKKS' contention that Plaintiffs and counsel would have been able to determine the accused posters did not infringe: "Claim interpretation is not always an exact science, and it is not unusual for parties to offer competing definitions of even the simplest claim language."   *Q-Pharma, Inc. v. The Andrew Jergens Co.*, 360 F.3d 1295, 1301 (Fed. Cir. 2004).

Counsel for Plaintiffs had ample reason to bring this action.  Counsel did not solely rely on Plaintiffs' claim construction, but also performed an independent claim analysis and compared Defendant JAKKS' accused posters to Claims 1 and 5 of the '272 Patent.  Rule 11 required that Plaintiffs' counsel, at minimum, interpret the asserted '272 patent claims and compare the accused posters with Claims 1 and 5 before filing a claim against Defendant JAKKS alleging infringement.  Counsels' legal arguments in the Complaint are supported by "some basis in law."   *See*, *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991) ("To be reasonable, the prefiling factual investigation must uncover some information to support the

allegations in the complaint."); *Antonious et al. v. Spalding & Evenflo Companies*, 275 F.3d 1066, 1072 (Fed. Cir. 2002).

In patent infringement actions, it is not for the Court to determine whether Plaintiffs' pre-filing interpretation of the asserted claims were correct, but only whether it was frivolous. *Antonious*, 275 F.3d at 1073; *Q-Pharma*, 360 F.3d at 1301.   Defendants JAKKS' arguments address the strength of Plaintiffs' claims in regards to the merits of the case, which is separate and distinct from whether the claim is objectively frivolous and deserving of sanctions.   The mere fact that Plaintiffs' counsel engaged in such extensive pre-suit investigation demonstrates this action was not frivolous.

Motions under Fed.R.Civ.P. 11 and 35 U.S.C. § 285 are different.   Rule 11 provides for sanctions for failure to conduct a reasonable inquiry into legal and factual bases of claims and § 285 gives the Court discretion to award attorney fees to the prevailing party in exceptional cases. Plaintiffs and Plaintiffs' counsel made a sufficient pre-filing inquiry to determine whether the accused posters infringed.   As such, sanctions under Rule 11 are not warranted.

Furthermore, the pre-filing infringement investigation does not rise to the level of bad faith litigation or even gross negligence required for an award of attorney fees under 35 U.S.C. §285.   In the totality of the circumstances, this Honorable Court should find that this is not an "exceptional case," but that Plaintiffs acted reasonably and did not multiply proceedings vexatiously.   As such, this Court should decline to award attorneys fees under 35 U.S.C. § 285.

**MEMORANDUM IN OPPOSITION TO MOTION OF DEFENDANTS JAKKS FOR
SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11 (DOC. 63)**

## I.   LAW AND ARGUMENT

### A.   Rule 11 of the Federal Rules of Civil Procedure

Rule 11 of the Federal Rules of Civil Procedure imposes a duty on attorneys to certify, by
their signature, that (1) the attorney has read the pleadings or the motions they file and (2) the
pleading or motion is "well-grounded in fact," has a colorable basis in law, and is not filed for an
improper purpose.   Fed.R.Civ.P. 11.    In the Sixth Circuit, the test for determining whether
sanctions are warranted under Rule 11 is whether the attorney's conduct was reasonable under
the circumstances. *Mann v. G & G Mfg., Inc.,* 900 F.2d 938, 953 (6th Cir. 1990), *cert. denied,*
498 U.S. 959 (1990); *Century Products, Inc. v. Sutter*, 837 F.2d 247 (6th Cir. 1988).   "The
question of whether an individual's conduct was reasonable under the circumstances is a mixed
question of law and fact…"   *Id.* at 253.

In seeking sanctions, Defendant JAKKS has a high burden to meet:

> Rule 11 is targeted at situations 'where it is patently clear that a claim
> has absolutely no chance of success under the existing precedents, and
> where no reasonable argument can be advanced to extend, modify or
> reverse the law as it stands.'

*Associated Indem. Corp. v. Fairchild Industries, Inc.,* 961 F.2d 32, 34 (2nd Cir. 1992), citing
*Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997, 1005 (2nd Cir. 1988), quoting *Eastway Constr.
Corp. v. City of New York*, 762 F. 2d 243, 254 (2nd Cir. 1985), *cert denied*, 484 U.S. 918, 108
S.Ct. 269, 98 L.Ed. 2d 226 (1987), *cert denied*, 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed. 2d. 109
(1988).   Once a party seeking sanctions under Rule 11 moves based upon non-frivolous
allegations, the burden of proof shifts to the non-movant to show it made a reasonable pre-suit
inquiry into the claim.   *View Eng'g, Inc. v. Robotic Vision Sys. Inc.*, 208 F.3d 981, 986 (Fed. Cir.

2000) (affirming Rule 11 sanctions in the amount of attorney's fees totaling almost $100,000 imposed against patent counsel for filing infringement counterclaim on eight patents without having seen the accused product or conducting a independent formal or informal claim construction and infringement analysis for each asserted patent claim but basing the infringement claims on the accused infringer's advertising and the knowledge of an employee of the patentee as to the patents). Unlike the conduct exhibited by counsel in *View Engineering*, Plaintiffs' counsel in the case at bar purchased and visually inspected Defendant JAKKS accused posters and further conducted an extensive independent claim construction and infringement analysis of Claims 1 and 5 of the '272 patent, rather than basing infringement on representations of Plaintiffs or on Defendant JAKKS' advertising of the accused posters.

The Sixth Circuit has stated:

> While we endorse the view that sanction proceedings should not be allowed to bloom into protracted satellite litigation, see *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1179 (D.C. Cir. 1985); Advisory Committee Notes to 1983 Amendment to Rule 11, 97 F.R.D. 198, 201 (1983), a district judge faced with a sanction motion must make certain findings in determining that an award is appropriate. Careful analysis and discrete findings are required, no matter how exasperating the case. The grounds for sanctions explored here are designed to improve the litigation process, but improvement cannot come at the expense of vigorous advocacy. District courts must strike a delicate balance between protecting the adversary system and not allowing attorneys to exploit the system for their own purposes.

*In re Ruben*, 825 F. 2d 977, 984 (6th Cir. 1987) (the Sixth Circuit requires "some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.")

"The relevant inquiry is whether a specific filing was, if not successful, at least well founded." *Bus. Guides, Inc. v. Chromatic Communs. Enters., Inc.*, 498 U.S. 533, 553 (1991). "Rule [11] must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy." *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 393 (1990). Rule 11 "'is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories.'" *McGhee v. Sanilac County*, 934 F.2d 89, 92 (6th Cir. 1991), *quoting*, Fed.R.Civ.P.11 advisory committee's note.

Rule 11 sanctions in a patent case are justified when the claims alleged are neither well-founded nor subject to a reasonable inquiry. *View Eng'g*, 208 F.3d at 985, n. 4 (affirming the imposition of Rule 11 sanctions to defendant's counterclaims for patent infringement because defendant had no factual basis for counterclaims). It is up to this Honorable Court to determine not whether Plaintiffs' pre-filing interpretation of Claim 1 and Claim 5 of the '272 Patent were correct, but whether their pre-filing interpretation was frivolous. *See*, *Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1073 (Fed. Cir. 2002) ("...an attorney violates Rule 11...when an objectively reasonable attorney would not believe, based on some actual evidence uncovered during the prefiling investigation, that each claim limitation reads on the accused device either literally or under the doctrine of equivalents.").

In terms of patent infringement actions, Rule 11 requires an attorney, at minimum, to interpret the pertinent claims of the patent in issue before filing a complaint alleging patent infringement. *View Eng'g*, 208 F.3d at 986.; *S. Bravo Sys., Inc. v. Containment Techs. Corp.*, 96 F.3d 1372, 1375 (Fed. Cir. 1996); *Judin v. United States*, 110 F.3d 780, 784 (Fed Cir. 1997) (denial of Rule 11 sanctions due to patent counsel's unreasonable conduct in blindingly deferring to his client's opinion of infringement without conducting its own comparison of the claims with

the accused poster).  Here, Plaintiffs' counsel did not blindly defer to Plaintiffs' opinion of infringement.  In addition to numerous conversations with Plaintiffs, Plaintiffs' counsel reviewed the '272 patent and the prosecution history.  Counsel purchased Defendant JAKKS' accused posters (*See*, *Dickerson and Chance Decl.*, pages 1-9 of *Appendix 1*), known to counsel at the time, removed the posters from the plastic protective covering, removed the housing units and compared the accused posters to the Plaintiffs' patented posters.  Counsel each conducted independent analysis of the patent claims, including a claim construction analysis which accounted for the prosecution history, and a comparison of the construed claims to the accused posters.  *See*, *Dickerson and Chance Decl.*, generally.  Counsel applied the claims of the '272 patent to Defendant JAKKS' accused poster and concluded that there is a reasonable basis for a finding of infringement of claims 1 and 5 of the '272 patent. *See*, *Dickerson and Chance Decl.*, generally.  Plaintiffs' counsel also consulted extensively with experts and other patent attorneys prior to filing suit in order to confirm there was a reasonable basis to proceed forward with prosecuting the patent infringement lawsuit.  *See, Dickerson Decl.* at ¶¶ 17, 20, 22.

Under Rule 11, an attorney who files a patent infringement action is required to compare the accused device with the construed patent claims (*View Eng'g*, 208 F.3d at 986) and conduct an independent claim analysis.  *See*, *S. Bravo Sys.*, 96 F.3d at 1375;  *Antonious*, 275 F.3d at 1072.  Despite Defendant JAKKS' contention that Plaintiffs' counsel failed to conduct a pre-suit inquiry, counsel engaged in an extensive comparison and independent claim analysis.

Rule 11 also requires:

…the law firm to, at a bare minimum, apply the claims of each and every patent that is being brought into the lawsuit to an accused device and conclude that there is a reasonable basis for finding of infringement of at least one claim of each patent so asserted.  The presence of an infringement analysis plays the key role in

determining the reasonableness of the pre-filing inquiry made in a patent infringement case under Rule 11.

*View Eng'g*, 208 F.3d at 986; *Q-Pharma, Inc.*, 360 F.3d at 1301 ("[A] claim chart is not a requirement of a pre-filing infringement analysis, as the owner, inventor, and/or drafter of a patent ought to have a clear idea of what the patent covers without the formality of a claim chart.")

Here, Plaintiffs' counsel fully read Claims 1 and 5 of the '272 patent, paid close attention to the prosecution history and filings with the USPTO that could have affected the interpretation of the patent. Counsel applied the claims of the '272 patent to Defendant JAKKS' accused posters and based on their infringement analysis, concluded there was reasonable basis for finding of infringement of Claims 1 and 5 of the '272 patent. To confirm their assessment, Plaintiffs' counsel consulted extensively with experts and patent attorneys to determine the viability of an infringement claim against Defendant JAKKS.

**B.** **Plaintiffs' initial pleadings and subsequent submissions to the court do not warrant sanctions under Rule 11.**

The allegations made in Plaintiffs' Complaints and pleadings were not frivolous, but were made with reasonable factual basis and demonstrated that the Plaintiffs and counsel made reasonable inquiry into the veracity of the allegations. In Plaintiffs' Original and amended Complaints, Plaintiffs set forth that Defendant JAKKS, being aware of the '272 Patent, infringed on Plaintiffs' patent by manufacturing, reproducing and/or selling Hannah Montana Talking Posters and Cheetah Girls Talking Posters which embody the subject matter claimed in the '272 Patent. The "wherein" clause of Claim 1 of the '272 patent reads:

> wherein a surface of said housing is prepared with a matching art which is
> substantially the same as that area of said poster art which appears on said portion
> of said poster that said housing covers when said housing is attached to said

poster, such that said housing artistically blends in with the surrounding poster art that is not covered by said housing.[1]

*'272 patent 3:6-12.*  Defendant JAKKS' suggestion that a "thirty-second pre-suit investigation" by Plaintiffs' counsel would have revealed this case was baseless in preposterous.  One cannot even take apart one talking poster in thirty seconds, let alone the nine different posters counsel located (*See*, *Appendix 1*, to *Dickerson and Chance Decl.*) to conduct the pre-suit investigation. Plaintiffs and counsel interpreted and analyzed Claim 1 and Claim 5 of the '272 patent prior to filing suit and conducted an independent analysis of the accused posters and compared the accused posters with the constructed patent claims and reasonably concluded that Defendant JAKKS' accused posters infringed on Plaintiffs' 272 patent.

   **1.   *Plaintiffs' counsel determined prior to filing suit there was a reasonable chance of proving infringement.***

Counsel performed a pre-filing assessment of the basis of each infringing Claims 1 and 5 of the '272 Patent prior to filing suit.  Case law in the Federal Circuit makes it clear that "the key factor in determining whether a patentee performed a reasonable pre-filing inquiry is the presence of an infringement analysis," which can simply be "a good faith, informed comparison of the claims of a patent against the accused subject matter."  *Q-Pharma, Inc.*, 360 F.3d at 1302.

The Appellate Court in *Q-Pharma* affirmed the Western District of Washington's decision denying Jergens' Rule 11 motion for sanctions and motion for attorney fees under 35 U.S.C.§ 285.  Q-Pharma owns the '373 patent which is a method for therapeutically treating damaged skin by topically applying Coenzyme $Q_{10}$ ("$COQ_{10}$").  Jergens' markets and sells Curél® Age Defying Therapeutic Moisturizing Lotion with $COQ_{10}$.  Q-Pharma sued Jergens alleging Jergens' sale of the Curél® $CoQ_{10}$ lotion infringed on its '373 patent.  Jergens

_____

[1] Except for the opening – "Wherein a surface of said housing is prepared with a matching art which is…" the "wherein" limitation of Claim 5 has identical language to Claim 1.

counterclaimed for declaratory judgments of noninfringement, invalidity and unenforceability and for damages for violation of the antitrust laws.  *Id.* at 1298.  After discovery Q-Pharma sought a voluntarily dismissal with prejudice.

In denying Jergens' Rule 11 motion, the court found that Q-Pharma conducted a sufficient pre-filing inquiry to determine whether the accused product infringed.  *Id.* at 1298. The court noted that although Q-Pharma did not conduct a chemical analysis of the Jergens' Curél® CoQ$_{10}$ lotion before commencing suit, Q-Pharma's attorneys performed a nonfrivolous claim construction analysis and also relied on Jergens' advertising statements.  *Id.*  Furthermore, Q-Pharma's belief in the validity of the '373 patent was supported by the fact that several companies took licenses in its patent.[2]  *Id.* at 1300.  In defeating Jergens' contentions that Q-Pharma's attorneys failed to interpret any of the claims of the '373 patent prior to filing suit, one of Q-Pharma's attorneys submitted a declaration rebutting Jergens' argument stating that he interpreted and analyzed the '373 patent before filing suit against Jergens.  *Id.* at 1301.  Although Q-Pharma's attorney did not recall preparing a claim construction chart, he did review the patent's claims, written description, and prosecution history and interpreted the individual claim terms.  *Id.*

In affirming the district court findings, the Federal Circuit Appellate Court held that Q-Pharma conducted a claim interpretation analysis prior to filing suit against Jergens.  *Id.*  "In light of the patent's claims, written description, and prosecution history, as well as [Q-Pharma's attorney's] declaration, we cannot say that Q-Pharma's pre-filing claim interpretation was [objectively] baseless and made without a reasonable and competent inquiry."  *Id.* at 1301.  Q-

---

[2] Similarly, the '272 patent has had several companies agree to license the '272 patent, including Warner Brothers, Comedy Central, Saban Entertainment, New Line Cinema, Winterland, OSP, Resaurus Company and The Ohio State University Office of Trademark and Licensing Services.  *See*, *Declaration of Aaron Clark*, attached here to as "Exhibit D." ¶ 3.  This further supported counsels' belief in the validity of the '272 patent.

7

Pharma obtained a sample of Jergens' accused product, reviewed Jergens' advertisement statements and labeling of the accused poster and compared the claims of the patent with the accused poster.  *Id.* at 1302-03.  As such, the Court determined that Q-Pharma's filing of suit against Jergens for infringement was sufficient to withstand scrutiny under Rule 11.  *Id.* at 1303. As will be discussed in further detail *infra*, Plaintiffs' counsel conducted the same, if not a more detailed pre-suit analysis as counsel in *Q-Pharma*.

> **a.    Plaintiffs' claim of infringement was supported by a sufficient factual basis.**

Similar to counsels' actions in *Q-Pharma*, Plaintiffs' counsels' infringement analysis consisted of a good faith, informed comparison of the claims of the '272 patent against Defendants JAKKS' accused posters.  Based on this pre-suit assessment, Plaintiffs' counsel reasonably believed that Defendant JAKKS' accused posters infringed.  Counsel not only purchased samples[3] of Defendant JAKKS' accused posters and compared Claims 1 and 5 of the '272 Patent with the accused poster, but they also consulted with experts prior to instituting suit and continued to do so during the course of this litigation as a basis of proving the reasonableness of proceeding forward with prosecuting the infringement claim.

> **i.    Counsels' reasonable pre-suit inquiry.**

> **A.    Brian E. Dickerson, Esq.**

Prior to filing the Complaint in this case, Mr. Dickerson engaged in a three month investigation to determine whether Defendant JAKKS infringed one or more of the claims of the '272 patent.  *Brian E. Dickerson Declaration*, attached hereto as "Exhibit A," ¶ 2.  During his

---

[3] "…when a number of different products are charged with infringement it is not always necessary for the plaintiff's attorneys to inspect each product separately to verify the facts on which the plaintiff bases its infringement allegations. At a minimum, however, the evidence uncovered by the patent holder's investigation must be sufficient to permit a reasonable inference that all the accused products infringe."  *Antonious*, 275 F.3d at 1075.

initial consultation with Plaintiff Clark, Mr. Dickerson questioned Plaintiff Clark extensively about the patent, his work leading up to the patent, past licenses, the prosecution of the patent and the Talking Poster industry. *Dickerson Decl.* at ¶ 3. Mr. Dickerson also inquired of Plaintiff Clark's prior involvement in any prior patent litigation which he sued based upon any alleged infringement. *Dickerson Decl.* at ¶ 3. Mr. Dickerson reviewed publically-available information, including Defendants' websites, which advertised the sale of and described the accused posters. *Dickerson Decl.* at ¶ 3.

After his initial consultation with Plaintiff Clark, Mr. Dickerson reviewed the '272 patent and the patent's file history to arrive at an understanding of the proper meaning for various claim terms in the patent. *Dickerson Decl.* at ¶ 3. Although Mr. Dickerson did not prepare a "claims chart" he did thoroughly review and analyze Claims 1 and 5 "word by word and line by line." *Dickerson Decl.* at ¶ 8. Mr. Dickerson attests to paying extra attention to the words and description of the patent in addition to anything in the file, specifically the prosecution history that would have affected his interpretation of the claims of the '272 patent. *Dickerson Decl.* at ¶ 8. Mr. Dickerson paid extra attention to any rejections that the USPTO made to determine if any such rejections materially limited the scope of the '272 patent claims. *Dickerson Decl.* at ¶ 11.

Furthermore, Mr. Dickerson concluded that even though "camouflaged" was discussed in the prosecution history, the examining attorney did not require this language in the final claim and rather accepted the phrase "substantially similar" in describing the housing unit. *Dickerson Decl.* at ¶ 12. Based on this review, Mr. Dickerson concluded that there was nothing in the prosecution history that limited the "wherein" limitation of Claims 1 and 5 of the '272 patent. *Dickerson Decl.* at ¶ 11.

Mr. Dickerson concluded that the scope of the Talking Poster invention was not to be limited by the preferred embodiments provided for in the disclosures as modifications were possible without departing from the spirit and intent of the invention. *Dickerson Decl.* at ¶ 13. Mr. Dickerson reasonably concluded that the "substantially the same" phrase of Claims 1 and 5 meant that the color, finish and surface of the plastic housing unit forms a harmonious visual effect and is not identical to the surrounding poster art or the art that appeared directly underneath the housing unit. *Dickerson Decl.* at ¶ 13.  Mr. Dickerson reasoned that if Defendant JAKKS was not selecting colors for the housing unit that "artistically blends" or was "substantially the same" to the poster art, then housing units would not be the same pantone color which was present in the first material or poster art.  *Dickerson Decl.* at ¶ 13.  If that were the case, then Defendant JAKKS could have made the housing units black, white or even silver. Rather, Defendant JAKKS chose to have the housing unit artistically blend or form a harmonious effect with the surrounding poster art.

As a result of his review of the prosecution history and extensive conversations with Plaintiffs, Mr. Dickerson concluded that when Plaintiff Clark filed the application with the USPTO the claims included terminology that the housing unit had artwork that "matched" the artwork on the surrounding poster and that when Plaintiff Clark amended the claim to include "substantially the same" he intended to broaden the claim as the terms "match" and "camouflaged" were limiting[4]. *Dickerson Decl.* at ¶ 14.

Additionally, prior to filing suit and as part of his pre-filing assessment, Mr. Dickerson hired the services of a private investigator to investigate which of the accused posters Defendant JAKKS made, used, sold, offered to sell, or imported the accused posters within the State of

_____

[4] This was confirmed in discussions with other counsel and further supported and confirmed by Mr. Nard.

10

Ohio. *Dickerson Decl.* at ¶ 4.    Mr. Dennis Hanzel[5] investigated various retail stores and websites to determine which party offered for sale the Hannah Montana and Cheetah Girls Talking Poster.  During May, June, August and September 2008, Mr. Hanzel visited various central Ohio retail stores (KB Toys, and Toys "R" Us) and websites (http://www.kbtoys.com, http://disneyshipping.go.com,   http://www.amazon.com;   http://www.shopping.aol.com,   and http://www.toysrus.com) to investigate whether these retailers offered the accused posters for sale.

Based on Mr. Hanzel's research, Mr. Dickerson purchased the Hannah Montana "Who Said," "If I Were A Movie," Life's What You Make It" and "Make Some Noise" and the Cheetah Girls "Do Your Own Thing" Talking Posters.  *Dickerson Decl.* at ¶ 15.  Images of accused posters attached to *Dickerson Decl.* at *Appendix 1*, pages 6, 2, 3, 4, and 9, respectively. Mr. Dickerson conducted an independent investigation and examination of the purchased accused posters. *Dickerson Decl.* at ¶¶ 15, 16, 17.

Mr. Dickerson's inspection of the above-identified accused posters led him to reasonably believe that the color, finish and surface of the housing unit on each of the accused posters formed a harmonious visual effect with the surrounding poster art of the talking poster. *Dickerson Decl.* at ¶ 16.  For example, Mr. Dickerson's inspection and analysis of the Hannah Montana "If I Were A Movie" *(See*, *Dickerson Decl.*, *Appendix 1*, at page 2) Talking Poster led him to reasonably conclude that Defendant JAKKS' infringed on Plaintiffs' '272 patent. *Dickerson Decl.* at ¶ 17.  Specifically, Mr. Dickerson determined that the housing unit on the Hannah Montana "If I Were A Movie" Talking Poster is colored to match and artistically blend in with the surrounding poster art.  For instance, the housing unit is pink in color and blends

---

[5] Dennis Hanzel Affidavit attached to Doc. 2, Exhibit G; Doc. 45, Exhibit I; and Doc. 51, Exhibit I.  Mr. Hanzel's affidavit is incorporated herein.

perfectly with (a) the background (which is mostly pink in color) of the poster art; and the images of the guitars on the poster art. *Dickerson Decl.* at ¶ 17, *Appendix 1* at page 2.

To further confirm his assessment, analysis and legal conclusion of the infringing posters, and prior to filing suit, Mr. Dickerson, in September 2008, retained an expert search team who determined, based on the facts and legal dynamics of this case, Ms. Ellen Shapiro was qualified as she possessed extensive experience with patents and graphic design. *Dickerson Decl.* at ¶ 18. Mr. Dickerson consulted with and retained Ms. Shapiro based on her expertise. *Dickerson Decl.* at ¶ 18. Mrs. Shapiro came highly recommended. Not only is she a patent holder, but her husband is a patent attorney. Mrs. Shapiro holds a B.A. in art with a specialization in design and is the owner of Visual Language LLC, a company that creates and produces logos, identity systems, publications, advertisements, and marketing communications materials for corporations and nonprofit organizations. *See*, Doc. 54, Exhibit A, ¶ 1.

Mrs. Shapiro has served as adjunct professor and lecturer in corporate design, typography, and design presentations at leading design schools and colleges, including Pratt Institute; Parsons School of Design, School of Visual Arts; and Purchase College State University of New York. Doc. 54, Exhibit A, ¶ 1. As a design writer, Mrs. Shapiro has authored approximately 100 articles on design education, visual merchandising, retail packaging, corporate and brand identity, typography, illustration, photography, profiles of prominent firms and practitioners in these fields, and industry and cultural trends. Doc. 54, Exhibit A, ¶ 1. Mrs. Shapiro has testified in prior patent litigation cases and most importantly the prior Pantone coloring litigation case.

Based on Mrs. Shapiro's extensive background and experience in graphic design, Mr. Dickerson concluded that Mrs. Shapiro was qualified to render an opinion as to the infringing

nature of the accused posters and more importantly whether there existed any basis to file a patent infringement suit against Defendant JAKKS.  *Dickerson Decl.* at ¶ 18.

Mr. Dickerson provided Mrs. Shapiro with samples of Defendant JAKKS accused posters; specifically, Hannah Montana "Bigger Than Us" (*Dickerson Decl.*, *Appendix 1* at page 1) and "Make Some Noise" (*Dickerson Decl.*, *Appendix 1* at page 4) Talking Posters. *Dickerson Decl.* at ¶ 19.   Based on her analysis, Mrs. Shapiro advised Mr. Dickerson that the talking posters have major elements described in Plaintiffs, invention. Specifically, Mrs. Shapiro concluded that the housing units on each respective talking poster had selected colors designed to match and artistically blend in with the surrounding poster art.  Doc. 54, Exhibit A; *Dickerson Decl.* at ¶ 19.   For example, Mrs. Shapiro advised Mr. Dickerson that the lavender housing unit on the "Make Some Noise" (*Dickerson Decl.*, *Appendix 1* at page 4) talking poster was made of lavender hue which matched perfectly with several key elements of the poster art. *Dickerson Decl.* at ¶ 19.   Furthermore, the turquoise housing unit on the "Bigger Than Us" (*Dickerson Decl.*, *Appendix 1* at page 1) talking poster also met the same key elements of the '272 patent. Mrs. Shapiro, as a patent holder and one who has experience testifying in previous patent cases dealing with art and design, also concluded that under the patent, there can be many different embodiments of how and where the housing unit is attached and to the degree to which it blends with the surrounding poster art.  *Dickerson Decl.* at ¶ 19.   From her analysis and confirmation, Mr. Dickerson concluded that more likely than not, Defendant JAKKS' accused posters met the terms of Claims 1 and 5 of the '272 patent.  *Dickerson Decl.* at ¶ 20.

Further, Mr. Dickerson's had discussions with other attorneys who affirmed his interpretation of the '272 patent and that his pre-suit assessment was reasonable.  Mr. Dickerson was advised that his "arguments are supported by the specification and are fair and reasonable."

*Dickerson Decl.* at ¶ 9.  As a result, a Complaint was filed against Defendant JAKKS for patent infringement.  *Dickerson Decl.* at ¶ 20.

As the foregoing demonstrates, Plaintiffs and Plaintiffs' counsel examined Defendant JAKKS' accused posters and independently determined the posters infringed on the '272 patent. Plus, Plaintiffs and Plaintiffs' counsel had their determinations confirmed by a graphic design expert, Mrs. Shapiro, who also determined that Defendant JAKKS' posters infringed on the '272 patent.  Sanctioning Plaintiffs and Plaintiffs' counsel for filing this lawsuit would result in the exact quelling of advocacy that Courts strive to avoid in ruling on Rule 11 motions.  *Summit Valley Indus.* v. *United Ed. of Carpenters* & *Joiners*, 456 U.S. 717, 724, 102 S. Ct. 2112, 72 L. Ed. 2d 511 (1982).

When Defendant JAKKS asserted in its Motion to Dismiss that the '272 patent was not infringed upon due to the art directly under the housing unit not matching, Mr. Dickerson determined it was necessary to consult with another expert in order to ascertain the validity of Defendant JAKKS' limited argument and the viability of Plaintiffs' lawsuit.  Mr. Dickerson, in May 2009, retained the services of Craig Nard in order for him to review the motion and to confirm that there was a reasonable basis to proceed forward with prosecuting the case. *Dickerson Decl.* at ¶ 21.

Mr. Nard is the Tom J.E. and Bette Lou Walker Professor of Law and the founding director of the Center for Law, Technology and the Arts Case Western Reserve University School of Law. He is also a Senior Lecturer at the World Intellectual Property Organization Academy at the University of Torino, Italy, and Principal Advisor to the Center for Studies and Research in Intellectual Property in Calcutta, India.  Mr. Nard is the author of the patent law casebook, *The Law of Patents* (Aspen Publishers 2008), *Fundamentals of United States*

14

*Intellectual Property Law*, (Kluwer Law International 2006) and *The Law of Intellectual Property* (Aspen Publishing) (2005). He has served as member of the Northern District of California Advisory Committee on Model Patent Jury Instructions appointed by the Honorable Ronald M. Whyte of the Northern District of California. He is also licensed to practice before the Patent and Trademark Office.  As an "expert judicial assistant" for Judge Lynn Adelman of the U.S. District Court of Wisconsin, Mr. Nard has counseled Judge Adelman on issues relating to claim construction and liability.  *See,* curriculum vitae, appended to *Craig Nard Declaration*, attached hereto as "Exhibit B," at Appendix A.

Based on his vast knowledge and experience as a patent professor and expert, Mr. Nard opined and confirmed Mr. Dickerson's reasonable inquiry that Claims 1 and 5 of the '272 Patent could be determined by a court to have been infringed by Defendant JAKKS' accused posters. *Dickerson Decl.* at ¶ 21; *Nard Decl.* at ¶ 14.

Plaintiffs and Plaintiffs' counsel both examined Defendant JAKKS' accused posters and determined they infringed with Plaintiffs' '272 patent.  Then, prior to filing lawsuit a graphic design expert also determined that Defendant JAKKS' posters infringed on Plaintiffs' posters.  Counsel contacted a graphic design expert due to the sole issue of the art and the interpretation of the phrases "artistically blends" and "substantially the same" of the '272 patent.  Next, when Plaintiffs reached a critical stage in this litigation when faced with Defendant JAKKS' Motion to Dismiss, Plaintiffs' retained the services of yet another expert to determine if their position in this litigation was tenable.  Despite all these efforts to determine the legitimacy of their claims, Defendant JAKKS has the audacity to contend that despite the fact Plaintiffs retained two (2) experts that opined Plaintiffs' claims were supported by law, Plaintiffs should have simply dismissed their Complaint and their failure to do so is sanctionable.

15

Mr. Dickerson conducted a reasonable pre-suit assessment investigation into the merits of the claim of infringement. *Dickerson Decl.* at ¶¶ 22, 23. He conducted a reasonable inquiry into the law and facts before filing suit and throughout the lawsuit. *Dickerson Decl.* at ¶ 22. Mr. Dickerson spent $107,000 in expert fees in the review and prosecution of this litigation. *Dickerson Decl.* at ¶ 24. An attorney who spends this significant amount of money in prosecuting a case is not filing a frivolous lawsuit. Based on this sound inquiry, the claims raised in the lawsuit were not frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose.[6] *Dickerson Decl.* at ¶ 24. Based on the foregoing, Mr. Dickerson satisfied the requirements of Rule 11 by independently construing the patent claims. *Q-Pharma, Inc.*, 360 F.3d at 1303; *View Eng'g*, 208 F.3d at 986; *Judin*, 110 F.3d at 784; *S. Bravo Sys.*, 96 F.3d at 1375.

### B.  Sharlene I. Chance, Esq.

As an Associate with Dickerson Law Group, Ms. Chance was involved in the case law research, review, analysis and interpretation of the '272 patent before and after suit was filed against Defendant JAKKS. *Sharlene I. Chance Declaration*, attached hereto as "Exhibit C," ¶ 3. Ms. Chance independently reviewed the '272 patent, independently conducted case law research as it pertained to the law of patent infringement, the elements of patent infringement, and the types of infringement. *Chance Decl.* at ¶¶ 3, 4, 5. Ms. Chance also visited various websites to ascertain if Defendant JAKKS made, used, sold, offered to sell, or imported the accused posters into the state of Ohio. *Chance Decl.* at ¶ 6. For example, Ms. Chance visited www.kbtoys.com;

---

[6] To further demonstrate non-frivolous behavior, Plaintiffs counsel dismissed with prejudice Amazon.com early in the lawsuit after counsel determined that Amazon did not directly sell the infringing poster, but that the posters were being sold by individuals (Doc. 6).

www.disneyshopping.go.com; www.amazon.com; www.shopping.aol.com; www.toysrus.com; and www.playalongtoys.com.   *Chance Decl.* at ¶ 6.

Of the accused poster purchased by Mr. Dickerson, Ms. Chance independently compared Defendant JAKKS' Hannah Montana "Who Said" (*See*, *Chance Decl.*, page 6 of Appendix 1) "Bigger Than Us" (*See*, page 1 of Appendix 1) and "Make Some Noise" (*See*, page 4 of Appendix 1) Talking Poster with the '272 Patent.   *Chance Decl.* at ¶¶ 7, 8, 11, 12, 13, 14.   Based on her observations, Ms. Chance determined that each accused poster had a housing unit made of plastic material that with one push of a button, one had the ability to hear a pre-recorded sound. *Chance Decl.* at ¶ 7.   In the case of the Hannah Montana's "Who Said" "Bigger Than Us" and "Make Some Noise" Talking Poster, the pre-recorded sound/message was that of the character's hit songs and phrases from her television show.   *Chance Decl.* at ¶ 8.

Further analysis and comparison of Claims 1 and 5 of the '272 patent with the accused posters confirmed Ms. Chance's belief that major elements of the claims of the '272 patent were present in Defendant JAKKS' accused posters.   For example,[7] the Hannah Montana "Bigger Than Us" (*See*, *Chance Decl.*, page 1 of Appendix 1) Talking Poster consisted of a poster with a printed image, with a plastic turquoise housing unit affixed to the bottom of the underlying poster; the housing unit which had speaker holes on both sides and a speaker concealed inside. *Chance Decl.* at ¶ 11.   Upon taking the housing unit apart, the unit only had one speaker inside even though the housing unit itself had the appearance of two speakers.   *Chance Decl.* at ¶ 11. Furthermore, the housing unit on the Hannah Montana "Bigger Than Us" (*See*, *Chance Decl.*, page 1 of Appendix 1) Talking Poster is colored to match and artistically blend in with the

---

[7] Similar pre-suit assessment and analysis was conducted with Defendant JAKKS' Hannah Montana "Make Some Noise" (*See*, *Chance Decl.*, page 4 of Appendix 1) Talking Poster.   *Chance Decl.* at ¶¶ 13, 14.

surrounding poster art.  For example, the housing unit is turquoise in color and blends perfectly with (a) the "Part Time Pop Star" heading on the first material; (b) the center of the background of the Hannah Montana logo; and (c) the turquoise top worn under the brown sweater by the character on the left of the first material.  *Chance Decl.* at ¶ 11.

At the end of her investigation, Ms. Chance concluded that the claims of the '272 patent, specifically Claims 1 and 5, were present in Defendant JAKKS' accused posters and that the posters literally infringed or at the very least, the equivalent structure of Defendant JAKKS' accused poster performed the claimed function in substantially the same way to achieve substantially the same result as the '272 patent.  *Chance Decl.* at ¶¶ 15, 16, 17, 18, 19.   Ms. Chance's independent pre-suit investigation further confirmed the conclusions reached by Plaintiffs and Mr. Dickerson.  *Chance Decl.* at ¶ 19.

Ms. Chance conducted a reasonable pre-suit assessment investigation into the merits of the claim of infringement.  *See*, *Chance Decl.*, *generally*.  She conducted a reasonable inquiry into the law and facts before filing suit.  *See*, *Chance Decl.*, *generally*.  Based upon this sound inquiry, the claims raised in the lawsuit were not frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose.  *Chance Decl.* at ¶ 20.   As demonstrated above, Ms. Chance satisfied the requirements of Rule 11 by independently construing the patent claims. *Q-Pharma, Inc.*, 360 F.3d at 1303; *View Eng'g*, 208 F.3d at 986; *Judin*, 110 F.3d at 784; *S. Bravo Sys.*, 96 F.3d at 1375.

### ii.        Plaintiffs' reasonable pre-suit inquiry.

In the Spring of 2008, Plaintiff Clark became aware, through his family, that Defendant JAKKS' accused posters were available for sale in stores.  *Aaron Clark Declaration*, attached hereto as "Exhibit D," ¶ 4.  Mr. Clark found the accused posters at a Toys "R" Us store in

18

Columbus, Ohio and online through various retailers on Amazon.com.  *Clark Decl*. at ¶ 4.   Mr.

Clark was also informed of the accused posters by Kelly Kirk, a businessman with whom he was

in the process of conducting a business deal pertaining to licensing right of the '272 patent.

*Clark Decl*. at ¶ 4; *See also*, *Kelly Kirk Declaration*, attached hereto as "Exhibit E," ¶ 4.   Mr.

Kirk informed Plaintiff Clark of the Hannah Montana talking poster already on the market and

available at Toys "R" Us in Columbus, Ohio and online.  *Kirk Decl.* at ¶ 4.

  Mr. Kirk wanted to license the '272 patent through a royalty payment agreement with Mr.

Clark.  *Kirk Decl*. at ¶ 2.  Mr. Kirk "liked the product and believed that under protection of the

patent, [he] could start small and grow the business without fear of direct competition from large

manufacturers threatening my investment."   *Kirk Decl*. at ¶ 2.   When Mr. Kirk discovered

Defendant JAKKS' accused posters in a Toys "R" Us store and as well as on Amazon.com, he

compared the '272 patented posters with Defendant JAKKS' accused posters and concluded that

"the common sense deduction between the two products is that they are both posters with

colored voice modules attached, they hang on the wall, you hit the button, and they talk.  They

look the same, do the same thing, serve the same purpose, and function the same way, so

common sense tells me they are the same thing."  *Kirk Decl.* at ¶ 5.  As a result of Mr. Kirk's

discovery of Defendant JAKKS' accused posters, Mr. Kirk withdrew from the licensing deal

with Mr. Clark because Mr. Kirk did not want to obtain a licensing agreement on the '272 patent

if there existed other identical products on the market which were infringing.  *Kirk Decl*. at ¶¶ 5,

6.

  Mr. Kirk's decision to withdraw from the deal devastated Plaintiff Clark.  *Clark Decl*. at

¶ 5.  Plaintiff Clark purchased samples of Defendant JAKKS' accused posters and through his

investigation of the posters function, features, colored housing units matching the underlying

poster, and the software in the chipset and speaker unit, Mr. Clark concluded that "it appeared that the product violated our patent in every way possible…"  *Clark Decl*. ¶¶ 7, 8.  Mr. Clark "took apart all of [the accused posters], tested the parts, the buttons, the speakers, the housing units, the chip boards and each piece of the product was investigated and compared to all of our products and against our patent language.  I found every aspect of the concept, function, and manufacture of the poster to be in direct violation of each respective portion of the patent."  *Clark Decl*. at ¶ 8.

Plaintiff Clark contacted his business partner, John Peirano, to discuss his finding based on his pre-suit independent claim analysis.  *Clark Decl*. at ¶ 9.  Plaintiff Peirano visually inspected the accused posters on Defendant JAKKS' website, in addition to eBay.com and Amazon.com.  *John Peirano Declaration*, attached hereto as "Exhibit F," at ¶ 3.  Plaintiff Peirano concluded there was infringement based on his comparison of the '272 patent with Defendant JAKKS' Hannah Montana accused posters.  *Peirano Decl*. at ¶ 7.  Plaintiff Peirano attested that "as a businessman…an electric, musical, or talking poster, no matter what you call it, is what it is…"  *Peirano Decl*. at ¶ 7.   Mr. Peirano determined, based on his knowledge of the '272 patent and as co-owner, Defendant JAKKS' accused posters displayed a housing unit that matched the poster's image color art within the art print of the poster.  *Peirano Decl*. at ¶ 7.  Mr. Periano concluded this was done by Defendant JAKKS to offer an improved poster print which aesthetically matches the housing unit to a portion of the poster image in an effort to simply boost it sales.   *Peirano Decl*. at ¶ 7.  Further pre-suit investigation by Mr. Periano revealed that several of the accused posters housing units identically match the color directly above the housing unit in attempt to blend the housing unit to the color found directly above or attached to the housing unit.  *Peirano Decl*. at ¶ 7.   Based on his independent pre-suit assessment and

discussions with Plaintiff Clark, Plaintiff Peirano concluded that the housing units attached to Defendant JAKKS' accused posters blended or matched the colors within the surrounding poster art. *Peirano Decl.* at ¶¶ 7, 10.

Based on Plaintiffs' independent pre-suit investigation, Plaintiff Clark decided to contact legal counsel. *Clark Decl.* at ¶ 9. Upon his initial consultation with Plaintiff Clark, Mr. Dickerson advised Mr. Clark that although his initial review of the accused posters would lead to a conclusion of infringement, he needed to thoroughly review the case and obtain an opinion from a relevant expert. *Dickerson Decl.* at ¶¶ 2, 17, 19. After speaking with a couple of lawyers and obtaining the opinion of an expert (Mrs. Shapiro) Mr. Dickerson opined that he reasonably believed that Defendant JAKKS' accused posters infringed on the '272 patent. *Clark Decl.* at ¶ 9; *Dickerson Decl.* at ¶¶ 17, 22, 24.

After consultation with Mr. Dickerson and Plaintiff Peirano, and his independent investigation and informed comparison of the claim of the '272 patent with Defendant JAKKS' accused posters, Plaintiff Clark reasonably believed there existed a claim of infringement against Defendant JAKKS. *Clark Decl.* at ¶¶ 11, 12. Plaintiff Clark conducted a reasonable pre-suit assessment investigation into the merits of the claim of infringement. *Clark Decl.* at ¶ 12. Specifically, Plaintiff Clark "…purchased different versions [of the accused posters] with different images, different sound bytes and different colored housing units to see if the insides were identical. [Plaintiff Clark] took apart all of them, tested the parts, the buttons, the speakers, the housing units, the chip boards and each piece of the product was investigated and compared to all of [Plaintiffs'] products and against [Plaintiffs'] patent language. [Plaintiff Clark] found every aspect of the concept, function, and manufacture of the poster to be in direct violation of each respective portion of the patent." *Clark Decl.* at ¶ 8.

21

Plaintiff Clark conducted a reasonable inquiry into the facts before filing suit.  *Clark Decl.* at ¶ 12.  Plaintiff Clark, as inventor, drafter of the '272 patent and patent holder, is fully aware of patent law providing that if a patent owner is aware of infringing product or suspected infringing product, and does nothing, the patent holder is effectively waiving his protective rights.  *Clark Decl.* at ¶ 6.  Based on his sound inquiry, Plaintiff Clark was determined to protect his rights as a patent holder.

Based on Plaintiff Clark's pre-suit assessment of Defendant JAKKS' accused posters, the claims raised in the lawsuit were not frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose.  Based on the foregoing, Plaintiff Clark satisfied the requirements of Rule 11 by independently construing the patent claims.  *Q-Pharma, Inc.*, 360 F.3d at 1303; *View Eng'g*, 208 F.3d at 986; *Judin*, 110 F.3d at 784; *S. Bravo Sys.*, 96 F.3d at 1375.

       **iii.**       **Plaintiffs' continued reasonable inquiry into the law and facts of the claim of infringement.**

When Defendants JAKKS filed its Motion to Dismiss, which was converted to a Motion for Summary Judgment, and propounded discovery advancing its defenses, Mr. Dickerson retained the services of Craig Nard, as stated above, to review Defendant JAKKS' assertions and to confirm whether there was a reasonable argument to proceed with prosecuting this case.  *Dickerson Decl.* at ¶ 21.

In addition to the accolades discussed above, Mr. Nard as "expert judicial assistant" for Judge Adelman consulted on issues relating to claim construction and liability in the cases of *Cooper Industries v. ASEA Brown and ABB, Inc.*, (E.D. Wisconsin 2005) and *National Graphics v. Digital Replay and Travel Tags*, (E.D. Wisconsin 2005).  *See*, <u>curriculum vitae</u>, attached to

*Nard Decl.*, Appendix A.  Mr. Nard also served as a consultant in *Purdue Pharma L.P. v. Endo Pharmaceuticals, Inc.* (S.D.N.Y 2004) and *Vita-Mix v. Back to Basics* (N.D. Ohio 2008).  Just recently, Mr. Nard served as a testifying expert in the matter of *In re Katz Interactive Call Processing Litigation* (C.D. CAL. 2008) and was hired in 2005 to testify on issues regarding patent prosecution in *Smith & Nephew v. Synthes, Inc.* (W.D. Tenn. 2005).  *See*, <u>curriculum vitae</u>, attached to *Nard Decl.*, *Appendix A*.

Again, Mr. Nard is just not an expert, he is a practitioner in the field; he lives and breathes patent law.  Mr. Nard is the Tom J.E. and Bette Lou Walker Professor of Law and the founding director of the Center for Law, Technology and the Arts at the Case Western Reserve University School of Law.  He is also a Senior Lecturer at the World Intellectual Property Organization Academy at the University of Torino, Italy, and Principal Advisor to the Center for Studies and Research in Intellectual Property in Calcutta, India. *See*, <u>curriculum vitae</u>, attached to *Nard Decl.* Mr. Nard has authored the patent law casebook, *The Law of Patents* (Aspen Publishers 2008), *Fundamentals of United States Intellectual Property Law*, (Kluwer Law International 2006) and *The Law of Intellectual Property* (Aspen Publishing) (2005). He has served as member of the Northern District of California Advisory Committee on Model Patent Jury Instructions appointed by the Honorable Ronald M. Whyte of the Northern District of California. He is also licensed to practice before the Patent and Trademark Office.  *See*, <u>curriculum vitae</u>, attached to *Nard Decl.*, *Appendix A*.

Mr. Nard opined, based on his extensive experience in patent law and serving as an expert, his review of the respective motions, the '272 patent and prosecution history, there there existed a sufficient basis for Plaintiffs to continue prosecuting the infringement case.  *Nard Decl*. at ¶ 7.  Mr. Nard opined that the "wherein" limitation in Claims 1 and 5 of the '272 patent, which

provides that "said housing artistically blends in with the surrounding poster art that is not covered by said housing," means that the color, finish, and surface of the housing unit forms a harmonious visual effect ("artistically blend in") with the surrounding poster art and not with the art directly underneath the housing unit, which would essentially render the patent meaningless. *Nard Decl.* at ¶ 11.

Additionally, Mr. Nard's review of the '272 patent's prosecution history also confirmed that there existed no limitation of the "wherein" clause of Claims 1 and 5 of the '272 patent, as suggested by Defendants JAKKS. *Nard Decl.* at ¶ 12. Mr. Nard concluded that the word "camouflaged" referenced in the prosecution history referred to the artwork that "artistically blend in" with the surrounding poster art and had nothing to do with whether the artwork on the housing unit matched the artwork of the poster. *Nard Decl.* at ¶ 12. Mr. Nard further advised Mr. Dickerson that even if the Court was to interpret the word "camouflaged" in the manner suggested by Defendant JAKKS, his review of the language contained within the prosecution history provided for just one example of how the artwork can be used and does not limit the claim language to a single example of an embodiment. *Nard Decl.* at ¶ 13. Essentially, Mr. Nard supported Plaintiffs and Plaintiffs' counsel's pre-suit inquiry and interpretation of Defendant JAKKS' infringing posters and provided Plaintiff and Plaintiffs' counsel with reason to believe that not only were the claims supported, but likely to succeed.

Mr. Nard advised Mr. Dickerson that based on his expert background and experience with claim construction and liability, and his review of Defendant JAKKS' Motion to Dismiss, the '272 patent and prosecution history, there existed a reasonable basis for Plaintiffs to proceed forward with prosecuting the infringement case. *Nard Decl.* at ¶ 14. Mr. Nard, as a patent expert, patent professor at Case Western Reserve University School of Law and Senior Lecturer

at the World Intellectual Property Organization Academy, informed Mr. Dickerson that his pre-suit investigation analysis was entirely reasonable and supported his opinion.  *Nard Decl*. at ¶ 15. Based on this confirmation by Mr. Nard, Plaintiffs proceeded to defend the Motion to Dismiss filed by Defendant JAKKS.

C.   **Plaintiffs and their counsel made a sufficient pre-filing inquiry to determine whether Defendant JAKKS' accused posters infringed.**

Based on the foregoing, Plaintiffs and their counsel made more than a reasonable inquiry and efforts to ascertain whether the accused posters satisfied the two key claim limitations of the '272 patent either literally or under the doctrine of equivalents.  There is no doubt that Plaintiffs met the minimum standards imposed by Rule 11, and their counsel acted reasonably in performing an independent claim analysis.  There is no suggestion that counsel relied solely on Plaintiffs' for their claim analysis or the fact Plaintiffs licensed the '272 patent with Fortune 500 companies.  Rather, counsel independently construed the patent claims before filing suit against Defendants JAKKS by purchasing many of the accused posters.  *See*, *Dickerson and Chance Decl.*, pages 1-9 of *Appendix 1*.  Counsel made a reasonable effort to determine whether the accused posters satisfied Claims 1 and 5 of the '272 patent.  *Judin*, 110 F.3d at 784.

In denying Rule 11 sanctions, the Court in *Hoffmann-La Roche*, ruled that the plaintiffs' "pre-filing inquiry with respect to defendant…was reasonable."  *Hoffmann-La Rouche Inc. v. Invamed Inc.*, 213 F.3d 1359, 1363 (Fed. Cir. 2000).  When the plaintiffs discovered that defendant had filed an application covering a generic form of the drug ticlopidine hydrochloride, plaintiffs' concern centered around whether the manufacture of the product infringed on their patents on the processes for making it.  The plaintiffs attempted to ascertain whether the processes used by defendants were infringing, but were unable to do so.  Although the defendant

refused to disclose the manufacturing process, it did provide the plaintiffs with samples of its generic drug.  Unfortunately, the plaintiffs could not determine by reverse engineering whether the drug had been manufactured by the patented processes.

As a result, the plaintiffs filed an infringement complaint and described the inquiry they conducted and explained the reason for bringing the suit.  *Id.* at 1364-65.  The plaintiffs resorted to the judicial process and the aid of discovery to obtain information required confirmation of their belief and present evidence to the court of the defendant's infringement on their patent. The Federal Appellate Court, in affirming the decision of the District Court, held that although plaintiffs "'could have assumed non-infringement' when '[a]t the end of the plaintiff's pre-suit investigation it had neither evidence of infringement nor non-infringement…they chose to file suit and engage in discovery instead does not subject them to sanctions.'"  *Id. at 1362, quoting Hoffman-La Rouche v. Genpharm, Inc.* 50 F.Supp.2d 367, 374 (D.N.J. 1999).

Similarly, in *Cambridge Prods. Ltd. v. Penn Nutrients Inc.*, 962 F.2d 1048 (Fed. Cir. 1992) the Court rejected a similar Rule 11 motion for sanctions based on allegedly inadequate pre-filing investigation.  In *Cambridge*, based on the defendant's sale of a competing product, Cambridge filed a suit alleging infringement of its patent on the method by which the product was made.  *Id.* at 1049.  Before trial, the Cambridge voluntarily dismissed its suit based on a declaratory judgment of another district.  *Id.*  The defendant moved for attorney fees under Rule 11 and 35 U.S.C. § 285. The district court denied defendant's motion and the Federal Circuit affirmed, stating:

> The record contains evidence upon which the district court, 'rationally could have based its decision' and Cambridge appears to have undertaken a reasonable pre-filing inquiry in preparing for and commencing this litigation.  Cambridge had tested a sample of the allegedly infringing product and had commissioned further chemical

26

> analyses and acquired documentary evidence that appeared to confirm that the product alleged to infringe fell within the chemical specifications of the patented method.  Without the aid of discovery, any further information was not practicably obtainable.  Thus Cambridge met the Rule 11 standard for filing and maintaining its case.

*Id.* at 1050.

Sanctions under Rule 11 are appropriate only if a reasonable attorney would have concluded that the claim construction proposed by Plaintiffs' counsel was frivolous.   As provided for above, Plaintiffs and their counsel reasonably concluded, as confirmed by experts within the field and as well as argued in opposition to Defendant JAKKS' Motion for Summary Judgment, that the "wherein" limitation of Claims 1 and 5 meant that the color, finish and surface artwork of the housing unit form an harmonious visual effect which artistically blends with the surrounding art on the Talking Poster.  This construction is supported by a dictionary definition of the term "blend" and "artistic."  As provided for by the expert in the relevant field, Mrs. Shapiro (*See*, Doc. 54, Exhibit A), the *American Heritage Dictionary of the English Language* (4th ed. 2000) defines "blend:"  "1a: to mingle intimately or unobtrusively; b. to combine into an integrated whole; 2. To produce a harmonious effect or result. Example: picked a tie that blended with the jacket."  The *Random House Webster's Unabridged Dictionary* (Random House, 2005) additionally defines "blend" as "to fit or relate harmoniously."  In *The Oxford American Dictionary of Current English* (Oxford University Press, 1999), the definition of the intransitive verb, "blend" is defined as "go well together; harmonize."  *The Oxford American Dictionary* defines the word "artistic" as: "1) having natural skill in art 2) made or done with art 3) of art or artists."

Plaintiffs and counsel reasonably believed that these dictionary definitions were wholly consistent with Claims 1 and 5 of the '272 patent.    Furthermore, as part of the pre-suit

investigation, Plaintiffs and counsel logically believed that the prosecution history of the '272 patent supported their claim interpretation.

Counsel and Plaintiffs engaged in a more extensive investigation than the inquiry performed in *Cambridge*, which the Court held was a reasonable one.  Cambridge merely tested the alleged infringing product, while in this case Plaintiffs and their counsel, before filing suit, did more than the law requires.  Rule 11 requires, at a minimum, for an attorney to interpret the asserted patent claims and compare the accused device with those claims before filing suit alleging infringement.  *See*, *Antonious*, 275 F.3d at 1072; *View Eng'g*, 208 F.3d at 986; *Judin*, 110 F.3d at 784; *S. Bravo Sys.*, 96 F.3d at 1375.  In this case, Plaintiff's counsel not only interpreted the asserted claims and compared Defendant JAKKS' accused posters with Claims 1 and 5 of the '272 patent, but counsel also consulted with a graphic design expert and other counsel prior to filing suit in order to confirm their interpretation of the claim construction of the '272 patent.  "…[A]n infringement analysis can simply consist of a good faith, informed comparison of the claims of a patent against the accused subject matter."  *Q-Pharma, Inc.*, 360 F.3d at 1301.  Defendant JAKKS have failed to make a substantial Rule 11 showing in this case.  The claim construction proposed by Plaintiffs' counsel was not frivolous.  *See, Antonious*, 275 F.3d at 1073 (attorney may be sanctioned under Rule 11 "only if a reasonable attorney would have concluded that the claim construction proposed by the…attorneys was frivolous.").

Plaintiffs and counsel did more than this good faith informed comparison, which is sufficient to comport with Rule 11.  Plaintiffs' counsel made a reasonable effort to determine whether the accused posters satisfied each of the claim limitations.  *Judin*, 110 F.3d at 784.  An attorney "has a duty to analyze the patent claims and determine whether [the client's] assertions were plausible.  The attorney had the obligation to satisfy himself that a proper construction of

28

the claims, in light of the facts brought to him by the client, permits argument that each element of the claims appear in the accused devices." *Id.* at 783.  Plaintiffs' counsels' conduct was more than "minimally sufficient to preclude sanctions." *Id.*

Plaintiffs' counsel interpreted the claims of the '272 patent prior to filing suit, purchased several samples of Defendant JAKKS' accused posters and conducted a non-frivolous claim construction which was factually and reasonably supported by the intrinsic record. *See generally*, *Dickerson and Chance Decl*. Counsel's interpretation of Claims 1 and 5 were supported by Mrs. Shapiro and further reaffirmed by Mr. Nard. *Dickerson Decl.* at ¶¶ 18, 20, 21, 22. Counsel spent $107,000 in expert fees in the pre-suit assessment and prosecution of this infringement suit. *Dickerson Decl.* at ¶ 22. Further, Mr. Dickerson's discussion with other attorneys also affirmed his interpretation of the '272 patent and that his pre-suit assessment was reasonable. Mr. Dickerson was advised that his "arguments are supported by the specification and are fair and reasonable." *Dickerson Decl.* at ¶ 9. The evidence uncovered by Plaintiffs' counsel was sufficient to permit a reasonable inference that all of Defendant JAKKS' accused posters infringed. *See generally*, *Dickerson and Chance Decl*.; *Antonious*, 275 F.3d at 1075 ("…when a number of different products are charged with infringement it is not always necessary for the plaintiff's attorneys to inspect each product separately to verify the facts on which the plaintiff bases its infringement allegations. At a minimum, however, the evidence uncovered by the patent holder's investigation must be sufficient to permit a reasonable inference that all the accused products infringe.").

Plaintiffs' counsel even went further in their pre-filing claim interpretation and consulted with and hired an expert to also conduct an analysis of the accused poster prior to counsels' decision to file suit. *Dickerson Decl.* at ¶ 18. *Cf.*, *S. Bravo Systems, Inc.*, 96 F.3d at

29

1375 ("there is no evidence that either of Bravo's attorneys ever compared the accused devised with the patent claims.  If the district court finds that Bravo's attorneys conducted no investigation of the factual and legal merits of Bravo's claims other than to rely on Mr. Bravo's lay opinion that CTC was infringing on the '024 patent, it would be difficult to avoid the conclusion that sanctions are appropriate.").

Unlike the attorneys in *Bravo* and *Judin,* 110 F.3d at 784, who blindly deferred to their client's opinion on infringement without conducting their own comparison of the claims with the accused product, Plaintiffs' counsel considered Plaintiffs' lay opinion that Defendant JAKKS' infringed on the '272 patent, but also conducted further pre-suit infringement analysis as mandated by Rule 11.  For Defendant JAKKS to liken Plaintiffs' counsels' conduct to that of counsel in *View Engineering*, where counsel filed an infringement counterclaim on eight patents without even seeing the accused products or without even conducting an independent claim construction (formal or informal), is insulting.  Like counsel in *Q-Pharma*, who performed a nonfrivolous claim construction analysis (reviewed the patent's claims, written description and prosecution history, and interpreted the individual claim terms), relied upon Jergens' advertising statements, believed in the validity of Q-Pharma's patent due to several companies who took licenses in the patent, Plaintiffs' counsels' extensive pre-filing claim interpretation consisted of a good faith informed comparison of the claims of the '272 patent and was made with reasonable and competent inquiry.

### 1.    *Plaintiffs' counsel pre-filing infringement investigation*

- Counsel discussed at length with Plaintiff Clark, the '272 patent, the prosecution history, any past litigation involving infringement, and what companies took licensing in the '272 patent. *Dickerson Decl.* at ¶ 2; *Chance Decl.*, ¶¶ 4, 5, 7;

- Counsel conducted an independent investigation and examination of Defendant JAKKS' accused posters, performed an analysis of the patent claims of the '272 patent, including a claim construction analysis which accounted for the prosecution history, and a comparison of the construed claims to Defendant JAKKS' accused posters. *Dickerson Decl.* at ¶ 2; *Chance Decl.* ¶ 7;

- Counsel read Claims 1 and 5 of the '272 patent word by word and line by line and paid extra attention not only to the words and description in the patent, but also to anything in the USPTO file that could have affected my interpretation of the patent. *Dickerson Decl.* at ¶ 7;

- Counsel hired a private investigator to determine what accused posters Defendant JAKKS made, used, sold, offered to sell, or imported the accused posters within the State of Ohio. *Dickerson Decl.* at ¶ 3;

- Counsel held discussions with other attorneys to affirm counsel's interpretation of the '272 patent and that their pre-suit assessment was reasonable. Counsel was advised that their "arguments are supported by the specification and are fair and reasonable." *Dickerson Decl.* at ¶ 9;

- Counsel purchased and visually inspected Defendant JAKKS' accused posters: the Hannah Montana "Who Said," "If I Were A Movie," Life's What You Make It" and "Make Some Noise" and the Cheetah Girls "Do Your Own Thing" Talking Posters to compare against Claims 1 and 5 of the '272 Patent. *Dickerson and Chance Decl.*, at *Appendix 1*. Counsels' pre-suit investigation concluded that the Hannah Montana's "If I Were A Movie," Life's What You Make It" and "Make Some Noise" Talking Posters (*See*, *Dickerson and Chance Decl.*, pages 2, 3, and 4, to Appendix 1), color, finish, surface of the artwork on each accused poster formed a harmonious visual effect with the surrounding poster art. *Dickerson Decl.* at ¶ 15. For example, the housing unit on the Hannah Montana "If I Were A Movie" Talking Poster is colored to match and artistically blend in with the surrounding poster art. For instance, counsel determined that the housing unit is magenta in color and blends perfectly with the background (which is mostly magenta in color) of the poster art and the images of the guitars on the poster art. *Dickerson Decl.* at ¶ 16;

- Additional pre-suit analysis by Counsel concluded that Defendant JAKKS' Hannah Montana's "Who Said" (*See*, *Chance Decl.*, page 4 of Appendix 1) "Bigger Than Us" (*See*, *Chance Decl.*, page 1 of Appendix 1) had major elements described in the summary of Plaintiffs invention and thus infringed on Plaintiffs' '272 patent. *Chance Decl.* at ¶¶ 7, 11, 13. For example, the "Bigger Than Us" Talking Poster consisted of a poster with a printed image, with a plastic turquoise housing unit affixed to the bottom of the underlying poster; the housing unit which had speaker holes on both sides and a speaker concealed inside. Upon taking the housing unit apart, the unit only had one speaker inside even though the housing unit itself had the appearance of two speakers. Furthermore, the housing unit on the Hannah Montana "Bigger Than Us" Talking Poster

is colored to match and artistically blend in with the surrounding poster art.  For example, the housing unit is turquoise in color and blends perfectly with (a) the "Part Time Pop Star" heading on the first material; (b) the center of the background of the Hannah Montana logo; and (c) the turquoise top worn under the brown sweater by the character on the left of the first material. *Chance Decl.* at ¶ 11;

- In addition to their independent pre-suit analysis, counsel consulted with and obtained the opinion of a graphic design expert, Mrs. Shapiro, to confirm counsels' interpretation of the '272 patent.  *Dickerson Decl.* at ¶¶ 17, 18. Mrs. Mrs. Shapiro confirmed counsels' pre-suit interpretation and opined that the interpretation of the "wherein" limitation in Claims 1 and 5 and how the color, finish, and surface artwork of the housing unit on the accused posters would formed a harmonious visual effect with the art on the poster. *Dickerson Decl.* at ¶¶ 17, 18;

- Based on their independent pre-suit analysis and investigation, counsel concluded that, more likely than not, Defendant JAKKS was selling a product that met the terms of Claims 1 and 5 of the '272 patent. *Dickerson Decl.* at ¶¶ 13, 19; *Chance Decl.* at ¶¶ 9, 11, 12, 13, 14, 18.  Since counsel did not possess any information that indicated that the scope of the claim was invalid, and since it was presumed valid pursuant to statute, counsel signed the complaint that Plaintiffs brought against Defendant JAKKS. *Dickerson Decl.* at ¶ 19;

- When Defendant JAKKS asserted in its Motion to Dismiss that the '272 patent was not infringed upon due to the art under the housing unit not matching, Plaintiffs' counsel retained and consulted with Mr. Nard in order to ascertain the validity of Defendant JAKKS' argument and the viability of Plaintiffs' lawsuit.  *Dickerson Decl.* at ¶ 20. Based on his review of Defendant JAKKS' motion, Mr. Nard confirmed counsels' reasonable inquiry that even with Defendant JAKKS' legal argument, Claims 1 and 5 of the '272 Patent could be determined by a court to have been infringed by Defendant JAKKS' accused posters.  *Dickerson Decl.* at ¶ 20;

- Mr. Nard's opinion confirmed that prior to instituting this patent infringement, counsel conducted an independent analysis of the patent claims, including a claim construction analysis which accounted for the prosecution history; a comparison of the construed claims to the accused posters; application of the claims of the '272 patent of the lawsuit to the accused poster and concluded that there is a reasonable basis for a finding of infringement of claims 1 and 5 of the '272 patent.  *Dickerson Decl.* at ¶ 21

"A district court's ruling that a litigant's position is factually well grounded and legally tenable for Rule 11 purposes is …fact specific."  *Cooter & Gell*, 496 U.S. 384, 393, 403, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).  This case is replete with the factual support of Plaintiffs and their counsels' reasonable pre-suit inquiry.  Of all of the Claims involved in the '272 patent,

Plaintiffs and counsels' pre-suit analysis derived the very issue that Defendant JAKKS and this Honorable Court focused on and what ultimately became the issue that would be litigated.  The remainder of the Claims of the '272 patent were not applicable and the remainder of the talking poster was not applicable.  What is applicable and highly relevant is the poster art and the matching aspect with the housing unit.  Plaintiffs and their counsel identified the imperative issue pre-suit and consulted with a graphic design expert in order to determine if this essential language was enough to proceed forward with an infringement claim.  Plaintiffs and counsel were advised in the affirmative. This was not a situation where Plaintiffs and counsel consulted with a mechanical engineer and then determined that the mechanics of the talking poster is not the issue but rather it is the matching art.  Plaintiffs and counsel knew beforehand and identified the issue with pre-suit diligence and further received a different response from an expert than that which this Court ruled.  In patent infringement actions, it is not for the Court to determine whether Plaintiffs pre-filing interpretation of the asserted claims were correct, but only whether it was frivolous.  *Antonious*, 275 F.3d at 1073; *Q-Pharma*, 360 F.3d at 1301.

For the reasons discussed above, Plaintiffs reasonably believed that the '272 Patent was infringed when suit was filed.  This Honorable Court "is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted."  Fed.R.Civ.P. 11, 1983 Amendments Advisory Committee Notes.  Based on the foregoing, this Honorable Court should decline to order sanctions under Rule 11.

<u>**MEMORANDUM IN OPPOSITION TO DEFENDANT JAKKS SUPPLEMENTAL MOTION FOR ATTORNEYS FEES PURSUANT TO 35 U.S.C. § 285 AND 28 .S.C. §§ 1927 AND 1961 (DOC. 68)**</u>

**I.      LAW AND ARGUMENT**

A.    <u>**Attorney fees pursuant to 35 U.S.C. § 285**</u>

35 U.S.C. § 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  A party maybe required by the court to pay the excess costs, expenses and attorneys' fees reasonably incurred if the court determines that party multiplied the proceedings unreasonably and vexatiously.  28 U.S.C. § 1927.  The "American Rule" with regard to attorney fees is that each party, including the prevailing party, must bear his or her own attorney fees. *Alyeska Pipeline Service Co. v. Wilderness Soc'y.*, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Bunning v. Kentucky*, 42 F.3d 1008, 1013 (6th Cir.1994); *Nilssen v. Osram Sylvania, Inc.*, 528 F.3d 1352, 1357 (Fed. Cir. 2008)

Under § 285 a heightened standard is appropriate.  "[V]exatious or unjustified litigation or frivolous filings" are the type of conduct that can justify the award of fees under § 285.  *Glaxo Group Ltd v. Apotex, Inc.*, 376 F.3d 1339, 1350 (Fed. Cir. 2004).  Stated another way, Defendant JAKKS must demonstrate that there is evidence of Plaintiffs' actual wrongful intent or gross negligence in bringing the patent infringement suit.  *See*, *Mach. Corp. of Am. v. Gullfiber AB*, 774 F.2d 467, 470 (Fed. Cir. 1985).  The purpose of § 285 "is to provide discretion where it would be grossly unjust that the winner be left to bear the burden of his own counsel which prevailing litigants normally bear."  *J.P. Stevens Co., Inc. v, Lex Tex Ltd., Inc.*, 822 F.2d 1047, 1052 (Fed. Cir. 1987).

The fact that this Honorable Court granted Defendant JAKKS' Motion for Summary Judgment is not dispositive (no pun intended).  *See*, *Taj Mahal Enters., Ltd. v. Trump*, 745 F.Supp. 240, 253 (D.N.J. 1990) (court denied defendant's motion for attorney fees even though plaintiff "failed to present more than a mere scintilla of evidence to support its claims" and lost on summary judgment).  The Sixth Circuit has previously held that "where a plaintiff sues under

34

a colorable, yet ultimately losing argument, an award of attorney's fees is inappropriate." *Eagles, Ltd. v. Am. Eagle Found.*, 356 F.3d 724, 728 (6th Cir. 2004), *quoting*, *Am. Council of Certified Podiatric Physicians & Surgeons v. American Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 625 (6th Cir. 1999); *See also*, *Stephen W. Boney, Inc. v. Boney Servs., Inc.*, 127 F.3d 821, 827 (9th Cir. 1997) (where plaintiff raised debatable issues of law and fact, the case was not "exceptional" so as to justify an award of attorney's fees).    Awarding attorney's fees to Defendant JAKKS requires this Honorable Court to conduct an objective inquiry into whether this suit was unfounded when Plaintiffs brought it and a subjective inquiry into Plaintiffs conduct during the litigation. *See*, *Eagles*, 356 F.3d at 729.

The process for determining whether an award of attorney's fees is appropriate is twofold.  First, the court must determine if the prevailing party has shown that the case is "exceptional" by clear and convincing evidence. *Enzo Biochem Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1370 (Fed. Cir. 1999).  If so, the court must then determine, at its discretion, whether awarding attorney's fees is warranted given the circumstance of the case. *Id.*; *Yamanouchi Pharm. Co., Ltd. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1347 (Fed. Cir. 2000) (when assessing whether a case qualified for an award of fees under § 285, a Court "must look at the totality of the circumstances.").  "[I]f there is clear and convincing evidence that a plaintiff has brought a baseless or frivolous suit against an accused infringer, that is a sufficient basis to require a district court to deem the case exceptional under § 285." *Diego, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1367 (Fed. Cir. 2007).

The prevailing party may prove the existence of an exceptional case by establishing inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement. *Phonometrics, Inc. v. Westin Hotel*,

35

*Co.* 350 F.3d 1242, 1246 (Fed. Cir. 2003); *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1380 (Fed. Cir. 2001), citing, *Hoffmann-La Rouche, Inc., v. Invamed,* 213 F.3d at 1365.  Neither of these situations exists with the facts of this case.  At best, this case involves a situation whereby counsel made a reasoned decision regarding the infringing nature of Defendant JAKKS' accused posters.  *See*, *Brasseler,* 267 F.3d 1370, 1381-82 (Fed. Cir. 2001) ("Reasoned judgments based upon all of the known facts of course can give rise to a defense of good faith, which could be sufficient to overcome the determination of exceptionality.").

Litigation misconduct and unprofessional behavior are relevant to the award of attorney fees, and may suffice to make a case exceptional.  *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574 (Fed. Cir. 1996), *See also*, *Serio-US Indus., Inc. v. Plastic Recovery Tech. Corp.*, 459 F.3d 1311, 1321-22 (Fed. Cir. 2006) (noting that "[e]xceptional cases usually feature some material, inappropriate conduct related to the manner in litigation, such as … misconduct during litigation, vexatious or unjustified litigation, conduct that violated Federal Rule of Civil Procedure 11, or like infractions").

Unless there is no equitable conduct, sanctions may only be imposed against the patentee if "the litigation is brought in subjective bad faith" and "the litigation is objectively baseless." *Brooks Furniture Mfg., Inc. v. Dutailer Int'l. Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005). (citations omitted).  If a case is declared "exceptional," the decision to award attorney fees remains "discretionary and 'permits [a] judge to weigh intangible as well as tangible factors." *Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1378 (Fed. Cir. 2001), *quoting Nat'l Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1197 (Fed. Cir. 1996); *Whittle v. Procter & Gamble, et al.*, 2008 WL 4925797, *2 (S.D. Ohio Nov. 14, 1998).  These factors

include "the closeness of the question, litigation behavior, and any other factors whereby fee shifting may serve as an instrument of justice." *Id.*

When used in connection with Rule 11, "frivolous" connotes a filing which is both baseless and made without a reasonable and competent inquiry.  "Frivolousness" pursuant to 35 U.S.C. § 285 can be based upon facts which would also justify a Rule 11 violation if:

> ...the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness, or gross negligence.  The alternative, abuse of the courts through manifestly unreasonable law suits based on uninvestigated allegations, would constitute a blot on the escutcheon of the law and a violation of Rule 11.

*Eltech Sys. Corp v. PPG Indus., Inc.*, 903 F.2d 805, 811 (Fed. Cir. 1990).

This Court has a long standing principle that "in order to support an award of attorney's fees in a patent case, there must be a showing of conduct which is unfair, in bad faith, inequitable, or unconscionable."  *Eltra Corp v. Basic, Inc.*, 599 F.2d 745, 758 (6th Cir. 1979); *Deyerle v. Wright Mfg. Co.*, 496 F.2d 45, 54-55 (6th Cir. 1974); *Uniflow Mfg. Co. v. King-Seeley Thermos Co.*, 428 F.2d 335, 341 (6th Cir. 1970), *cert. denied*, 400 U.S. 943, 91 S.Ct. 245, 27 L.Ed.2d 248 (1970); *Hoge Warren Zimmermann Co. v., Nourse & Co.*, 293 F.2d 779, 784 (6th Cir. 1961).  "...[A]wards under this provision are based on the conduct of the parties, not on the quality of their proof."  *Eltra*, 599 F.2d at 758.

## B.  Defendant JAKKS has not met its burden of establishing that this is an "exceptional" case.

The record is devoid of any requisite unfairness, bad faith, inequitable or unconscionable conduct on the part of Plaintiffs and their counsel.  Plaintiffs have not set forth frivolous legal claims or failed to conduct any reasonable inquiry into either the facts of this case of the applicable law.  *Cf, F & G Research, Inc. v. Google, Inc.*, 2007 U.S. Dist LEXIS 70072, at *37

(S.D.Fla. Sept. 21, 2007) (on several occasions, plaintiff was correctly informed by defendant and an independent mediator of its baseless legal theories.  Plaintiff failed to heed the warnings and continued to litigate the infringement matter.).  Defendant JAKKS have not had to defend a baseless infringement suit.  As such, any award of attorney fees is unwarranted.  *Smith v. ACME General Corp.*, 614 F.2d 1086, 1095 (6th Cir. 1980); *Eltra Corp.*, 599 F.2d at 756.

The burden is on Defendants JAKKS to prove by clear and convincing evidence that this case is exceptional by proving that Plaintiffs brought a frivolous lawsuit because they knew or should have known that the accused posters did not infringe.  *See*, *Haynes Int'l Inc. v. Jessop Steel Co.*, 8 F.3d 1573, 1579 (Fed. Cir. 1993) ("A frivolous infringement suit is one which the patentee knew or, on reasonable investigation, should have known, was baseless."); *Superior Fireplace Co.*, 270 F.3d at 1377-78 (inadequacy of pre-filing preparation may be relevant to the "exceptional" case question).  Defendant JAKKS is required to prove actual wrongful intent or gross negligence, i.e., that Plaintiffs' conduct was short of fraud, but in excess of simple negligence.  *See*, *Mach. Corp. of Am*, 774 F.2d at 473; *Sentex Sys., Inc. v. Elite Access Sys., Inc.*, 2000 U.S. App. LEXIS 13560, at *7 (Fed. Cir. 2000).

Defendant JAKKS have failed to carry its burden.  Bad faith is not established simply because Plaintiffs lost on the merits.  Defendant JAKKS has failed to demonstrate by clear and convincing evidence that Plaintiffs were grossly negligent in their beliefs of infringement.  This case presents unexceptional issues of the type which are virtually common to all patent infringement cases, turning on the legal construction of Claims 1 and 5 of the '272 patent.  After this Honorable Court sided with Defendant JAKKS, Defendants now seek an award of attorneys' fees and costs in the amount of $200,702.34 arguing this case is "exceptional" merely because Plaintiffs lost.  Defendant JAKKS is mistaken.  "[S]imply because the district court…ultimately

38

ruled against the party on the merits is insufficient by itself to establish bad faith or gross negligence in filing and prosecuting an infringement claim." *Dunhall Pharms., Inc. v. Discus Dental, Inc.*, 2000 U.S. App. LEXIS 26924, at *28 (Fed.Cir. 2000). As demonstrated herein, Plaintiffs did not intentionally, recklessly, or with gross negligence file and prosecute a baseless infringement claim. In *Dunhall*, the Court observed:

> Defendants also contend that even if Dunhall did not appreciate that its patent claims required a rigid appliance prior to filing suit, it was made aware of the fact after the district court's *Markman* rulings. After that ruling, defendants assert that they suggested to Dunhall that it simply acknowledge non-infringement on the appeal of the construction. However, Defendants contend that Dunhall declined to do so and that such an action demonstrates that Dunhall was litigating in bad faith. As to this argument, we note that simply because the district court and this court ultimately rule against the party on the merits is insufficient by itself to establish bad faith or gross negligence in filing and prosecuting an infringement action.

*Dunhall Phars.*, 2000 U.S. App. LEXIS, at *28.

At issue in this case was the legal construction of Claims 1 and 5 of the '272 patent. While this Court ultimately determined that Plaintiffs' construction was incorrect, it is not frivolous since Plaintiffs claim construction "followed the standard canons of claim construction," and was supported by the intrinsic record. *See*, *Ultratech, Inc. v. Tamalk Scientific Co.*, 2005 WL 2562623 at *7 (N.D.Cal 2005) (the court cannot hold "that [plaintiff's] claim construction position is so frivolous as to warrant sanctions; to be candid, this Court is reluctant to hold any claim construction frivolous, given the well-known reversal rate in the Federal Circuit."). Courts often differ in their interpretation of patent claim terms, even in instances when the term is apparently "simple." Although the undersigned is not asserting that this Honorable Court misconstrued the claim terms, other district courts, in 20-25% of cases, have erroneously construed a patent claim term. *See*, David L. Schwartz: *Practice Makes*

*Perfect?  An Empirical Study of Claim Construction Reversal Rates in Patent Cases*, 107 MICHIGAN LAW REVIEW, 223 (2008).

      1.     ***Plaintiffs and counsel did not engage in frivolous litigation.***

A frivolous patent infringement suit "is one which the patentee knew, or on reasonable investigation, should have known was baseless." *Stephens v. Tech Int'l., Inc.*, 393 F.3d 1269, 1273-74 (Fed. Cir. 2004).  "[T]he pertinent inquiry is whether [the patentee] knew or should have known that it could not successfully assert the…patent against [the accused infringer] but pursued its infringement claim anyway." *Id.* at 1274.  The litigation must be brought in subjective bad faith and must be objectively baseless. *Brooks Furn. Mfg., Inc.*, 393 F.3d at 1384 ("Bringing an infringement action does not become unreasonable under in terms of § 285 if the infringement can reasonably be disputed.  Infringement is often difficult to determine, and a patentee's ultimately incorrect view of how a court will find does not in itself establish bad faith.").

Plaintiffs and counsel reasonably believed, from before this action was filed and throughout the proceedings, that their claim construction was the correct one and that Defendant JAKKS infringed on the '272 patent.  Furthermore, not once has this Honorable Court suggested or held at any time that Plaintiffs' lawsuit was frivolous, brought in bad faith, or baseless.  When a court thinks a case is frivolous, it says so in no uncertain terms. *Eltech Sys. Corp.*, 903 F.2d 805; *Interspiro USA, Inc. v. Figgie Int'l.*, 18 F.3d 927 (Fed. Cir. 1994).

Defendant JAKKS cites to several cases for its proposition that this case is exceptional because Plaintiffs' position was "frivolous."  Contrary to the case at bar, those cases involved more extreme conduct than is present before this Honorable Court.  For example, in *iLor, LLC v. Google, Inc.*, 2009 WL 3367391 (E.D. Ky. Oct. 15. 2009), the patentee asserted an infringement

theory that was contrary to the theory asserted during the prosecution of the patent.  In *Refac Int'l, Inc., v. IBM Corp.*, 710 F.Supp. 569, 571 (D.N.J. 1989), the patentee attempted to enforce a patent which was not described in the patent application.  In this case, the pre-suit investigation performed by Plaintiffs and counsel determined that the '272 patent provided for many different embodiments and that the prosecution history did not limit the claim language of the '272 patent to a single example of an embodiment.  *See*, *Nard Decl.* at ¶ 13; *Dickerson Decl.* at ¶ 19. Despite this Honorable Court's finding that Plaintiffs' interpretation of the word "camouflaged" was contrary to the plain language of the claims in the '272 patent, Plaintiffs and counsels pre-suit inquiry, which was also confirmed by Mr. Nard, provided that the word "camouflaged" referred to the artwork that "artistically blend in" with the surrounding poster art and had nothing to do with whether the artwork on the housing unit matched the artwork of the poster.  *Dickerson Decl.* at, ¶ 11; *Nard Decl.*, at ¶¶ 12-13.

Plaintiffs' counsel was advised by Mr. Nard (expert judicial assistant for the U.S. District Court, Eastern District of Wisconsin, patent law professor at Case Western Reserve University School of Law and Senior Lecturer at the World Intellectual Property Organization Academy at the University of Torino, Italy) that even if the term "camouflaged" was interpreted in the manner suggested by Defendant JAKKS' the language of the prosecution history of the '272 patent provided that this is just one example of how the artwork can be used and as such a good made can be made that the term "camouflaged" does not limit the claim language at issue to a single example of an embodiment.  *Nard Decl.* at ¶ 13.  In no manner, based on counsel's reasonable pre-suit inquiry, did counsel attempt to advance an argument, theory or conclusion of the term "camouflaged" that was contrary to the prosecution history of the '272 patent.  Based upon these circumstances, counsels' was reasonable under the circumstances. *Mann*, 900 F.2d at

41

958.  Plaintiffs and counsels' pre-filing inquiry interpretation of the term "camouflaged" was made with reasonable and competent inquiry.  *Q-Pharma*, 360 F.3d at 1301.

Furthermore, in *ICU Med., Inc. v. Alaris Med. Sys., Inc.* 2007 U.S. Dist. LEXIS 34467 (C.D. Cal. Apr. 16, 2007) the court found that the patentee's claim construction of a "spike" lacked dictionary or treatise support and omitted a required function necessary for the asserted patents' claims.   Contrary to the lack of dictionary support for ICU's claim construction, Plaintiffs claim interpretation of the terms "blend" and "artistic" were supported by general purpose dictionaries and comparable sources (*See*, Doc. 54, Exhibit A) and were entirely consistent with the context and prosecution history of the '272 patent.  Mrs. Shapiro, a person of ordinary skill in the art (patent holder, expert in graphic design, adjunct professor and lecturer in corporate design, typography and design presentations, and involved in the launch of the Pantone Goe color system), confirmed Plaintiffs and counsels' pre-suit inquiry by determining that based on the dictionary definitions and comparable sources (i.e., Pantone color wheel), the "wherein" limitation of the '272 patent requires that the color of the housing unit "artistically blend in" with the poster art – that is one would choose a color for the housing unit that is significant in the color scheme of the overall poster. *See,* Doc. 54, Exhibit A, ¶ 13.  For example, on the Hannah Montana "Make Some Noise" (*See*, *Dickerson and Chance Decl.*, page 4 of Appendix 1) Talking Poster, the lavender housing unit matched exactly to the lavender of the background area on the upper right side of the talking poster.  *See*, Doc. 54, Exhibit A, ¶ 13.  Ms. Shapiro noted that the housing unit is adjacent to a turquoise area at the bottom of the talking poster.  She noted that lavender and turquoise are an analogous color scheme and that a "to a person of ordinary skill in the art, these two colors 'artistically blend in' as the terms is used in [C]laims 1 and 5 of the '272 patent" and "is also supported by dictionary definitions."  Doc. 54, Exhibit A, ¶ 13-14.  Mr. Nard

42

further confirmed that the "'wherein' limitation means that the color, finish, and surface of the housing unit forms a harmonious visual effect ('artistically blend in') with the surrounding poster art and not with the art directly underneath the housing unit. *Nard Decl.* at ¶ 11.

Based on Plaintiffs' counsels' consultation with Mrs. Shapiro and Mr. Nard, a reasonable attorney would have construed the "wherein" limitation in the '272 patent as Plaintiffs and their counsel did and would have reasonably believed that Claims 1 and 5 read on Defendant JAKKS' accused posters either literally or under the doctrine of equivalents. The foregoing demonstrates that Plaintiffs and counsel maintained a non-frivolous claim construction position supported by their pre-suit filing investigation, expert opinion and dictionary definitions.

Despite the cases cited by Defendant JAKKS, there are many cases where a prevailing party has raised similar arguments and the courts have not found the case to be "exceptional." *See*, *Dunhall Pharms. Inc.*, *supra*; *Sentex Sys.*, *supra*; *Brooks Furn. Mfg.*, *supra*; *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.* 279 F.3d 1022 (Fed. Cir. 2002); *Forest Labs., Inc. v. Abbott Labs., Inc.* 339 F.3d. 1324 (Fed. Cir. 2003). Ruling against Plaintiffs on the merits is insufficient only to establish bad faith or gross negligence and prosecuting this infringement action. Plaintiffs and counsel reasonably believed that the '272 patent was infringed when suit was filed and their claim of infringement was therefore neither frivolous nor unjustified. Unlike the plaintiffs in *Eltech Sys.*, 903 F.2d 805 and *Mach.Corp*, 774 F.2d 471, where the patentee was manifestly unreasonable in assessing infringement and continuing to assert infringement in court; such conduct inferred bad faith, whether grounded in or exhibited wrongful intent, recklessness, or gross negligence, the record here clearly demonstrates Plaintiffs and Plaintiffs' counsels' sufficient bases for filing the complaint:

- Counsel discussed at length with Plaintiff Clark, the '272 patent, the prosecution history, any past litigation involving infringement, and what companies took licensing in the '272 patent. *Dickerson Decl.* at ¶ 2; ; *Chance Decl.*, ¶¶ 4, 5, 7

- Counsel conducted an independent investigation and examination of Defendant JAKKS' accused posters, performed an analysis of the patent claims of the '272 patent, including a claim construction analysis which accounted for the prosecution history, and a comparison of the construed claims to Defendant JAKKS' accused posters.  *Dickerson Decl.* at ¶ 2; *Chance Decl.* ¶ 7;

- Counsel read Claims 1 and 5 of the '272 patent word by word and line by line and paid extra attention not only to the words and description in the patent, but also to anything in the USPTO file that could have affected my interpretation of the patent.  *Dickerson Decl.* at ¶ 7;

- Counsel hired a private investigator to determine what accused posters Defendant JAKKS made, used, sold, offered to sell, or imported the accused posters within the State of Ohio.  *Dickerson Decl.* at ¶ 3;

- Counsel held discussions with other attorneys to affirm counsel's interpretation of the '272 patent and that their pre-suit assessment was reasonable.  Counsel was advised that their "arguments are supported by the specification and are fair and reasonable." *Dickerson Decl.* at ¶ 9;

- Counsel purchased and visually inspected Defendant JAKKS' accused posters:  the Hannah Montana "Who Said," "If I Were A Movie," Life's What You Make It" and "Make Some Noise" and the Cheetah Girls "Do Your Own Thing" Talking Posters to compare against Claims 1 and 5 of the '272 Patent.  *Dickerson and Chance Decl.*, at *Appendix 1.*  Counsels' pre-suit investigation concluded that the Hannah Montana's "If I Were A Movie," Life's What You Make It" and "Make Some Noise" Talking Posters (*See*, *Dickerson and Chance Decl.*, pages 2, 3, and 4, to Appendix 1), color, finish, surface of the artwork on the housing unit on each accused poster formed a harmonious visual effect with the surrounding poster art.  *Dickerson Decl.* at ¶ 15.  For example, the housing unit on the Hannah Montana "If I Were A Movie" Talking Poster is colored to match and artistically blend in with the surrounding poster art.  For instance, counsel determined that the housing unit is magenta in color and blends perfectly with the background (which is mostly magenta in color) of the poster art and the images of the guitars on the poster art. *Dickerson Decl.* at ¶ 16;

- Additional pre-suit analysis by Counsel concluded that Defendant JAKKS' Hannah Montana's "Who Said" (*See*, *Chance Decl.*, page 4 of Appendix 1) "Bigger Than Us" (*See*, *Chance Decl.*, page 1 of Appendix 1) had major elements described in the summary of Plaintiffs invention and thus infringed on Plaintiffs' '272 patent.  *Chance Decl.* at ¶¶ 7, 11, 13.  For example, the "Bigger Than Us" Talking Poster consisted of a poster with a printed image, with a plastic turquoise housing unit affixed to the bottom of the

underlying poster; the housing unit which had speaker holes on both sides and a speaker concealed inside.  Upon taking the housing unit apart, the unit only had one speaker inside even though the housing unit itself had the appearance of two speakers. Furthermore, the housing unit on the Hannah Montana "Bigger Than Us" Talking Poster is colored to match and artistically blend in with the surrounding poster art.  For example, the housing unit is turquoise in color and blends perfectly with (a) the "Part Time Pop Star" heading on the first material; (b) the center of the background of the Hannah Montana logo; and (c) the turquoise top worn under the brown sweater by the character on the left of the first material. *Chance Decl.* at ¶ 11;

- In addition to their independent pre-suit analysis, counsel consulted with and obtained the opinion of a graphic design expert, Mrs. Shapiro, to confirm counsels' interpretation of the '272 patent.  *Dickerson Decl.* at ¶¶ 17, 18. Mrs. Mrs. Shapiro confirmed counsels' pre-suit interpretation and opined that the interpretation of the "wherein" limitation in Claims 1 and 5 and how the color, finish, and surface artwork of the housing unit on the accused posters would formed a harmonious visual effect with the art on the poster. *Dickerson Decl.* at ¶¶ 17, 18;

- Based on their independent pre-suit analysis and investigation, counsel concluded that, more likely than not, Defendant JAKKS was selling a product that met the terms of Claims 1 and 5 of the '272 patent.  *Dickerson Decl.* at ¶ 13, 19; *Chance Decl.* at ¶¶ 9, 11, 12, 13, 14, 18.  Since counsel did not possess any information that indicated that the scope of the claim was invalid, and since it was presumed valid pursuant to statute, counsel signed the complaint that Plaintiffs brought against Defendant JAKKS. *Dickerson Decl.* at ¶ 19;

- When Defendant JAKKS asserted in its Motion to Dismiss that the '272 patent was not infringed upon due to the art under the housing unit not matching, Plaintiffs' counsel retained and consulted with Mr. Nard in order to ascertain the validity of Defendant JAKKS' argument and the viability of Plaintiffs' lawsuit.  *Dickerson Decl.* at ¶ 20. Based on his review of Defendant JAKKS' motion, Mr. Nard confirmed counsels' reasonable inquiry that even with Defendant JAKKS' legal argument, Claims 1 and 5 of the '272 Patent could be determined by a court to have been infringed by Defendant JAKKS' accused posters.  *Dickerson Decl.* at ¶ 20;

- Mr. Nard's opinion confirmed that prior to instituting this patent infringement counsel conducted an independent analysis of the patent claims, including a claim construction analysis which accounted for the prosecution history; a comparison of the construed claims to the accused posters; application of the claims of the '272 patent of the lawsuit to the accused poster and concluded that there is a reasonable basis for a finding of infringement of claims 1 and 5 of the '272 patent.  *Dickerson Decl.* at ¶ 21.

Plaintiffs' Complaint was based on claims of infringement supported by in law and fact.

Plaintiffs and their counsel reasonably believed that the '272 patent was valid and was infringed

by Defendant JAKKS.  Plaintiffs and counsel were clearly justified in believing that the '272 patent was valid throughout this litigation.  There is no evidence that Plaintiffs subjectively knew that their lawsuit was baseless; or, given the issues involved, that a reasonable person could say with certainty what the outcome of the claim construction would be.  The Federal Circuit has consistently held that even knowledge of facts that may ultimately defeat an infringement claim does not necessarily justify an award of fees.  The Court in *Forest Labs., Inc.*, has held that:

> The record, however, does not support the district court's finding that Abbott maintained its infringement counterclaim in bad faith.  Even if Abbott had knowledge of the events that would ultimately lead to a holding of equitable estoppel, its litigation position was not frivolous or baseless.

*Forest Labs., Inc.*, 339 F.3d. at 1330 (patentee's lack of success was "far from a foregone conclusion").  *See also*, *Q-Pharma, Inc.*, 360 F.3d at 1298, 1303; *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1259-60 (Fed. Cir. 2000).  There is nothing "manifestly unreasonable" about Plaintiffs' infringement claim.  *See*, *Eltech Sys. Corp.*, 903 F.2d at 811; *Hoffmann-La Rouche, Inc., v. Invamed, Inc.* 213 F.3d at 1363-66; *Haynes Int'l, Inc.,* 8 F.3d at 1579-80; *CTS Corp. v. Piher Int'l Corp.*, 727 F.2d 1550, 1558 (Fed. Cir. 1984); *Stevenson v. Sears, Roebuck & Co.*, 713 F.2d 705, 712-13 (Fed. Cir. 1983).

Defendant JAKKS has failed to show, in its burden to establish, that Plaintiffs' decision to proceed forward with the lawsuit was in bad faith.  *See*, *Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577, 584 (7th Cir. 1981) (exceptional case where patentee initiated suit with unconfirmed data to support infringement while refusing to produce test reports which would substantiate the charges and concealed a suspicion, later proven to be fact, that the test data were tainted and unreliable).  Although this Honorable Court concluded that Plaintiffs' infringement claim could not succeed, this case was neither frivolous nor brought only for harassment or delay.  *See also*,

*CTS Corp.*, 727 F.2d at 1558; *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056 (Fed. Cir. 1983).

For the reasons demonstrated above, Plaintiffs reasonably believed that the '272 patent was infringed when it filed suit and that its claim of infringement was therefore neither frivolous nor unjustified.

### 2.   *Plaintiffs and counsel did not engage in litigation misconduct.*

Plaintiffs' actions during the pendency of the litigation were not in bad faith.  Defendant JAKKS wants this Honorable Court to assume that Plaintiffs conducted no reasonable pre-filing investigation because of Plaintiffs' alleged deficient discovery responses to Defendant JAKKS' discovery requests.  To the extent this Honorable Court may draw such an inference, such a conclusion does not meet the clear and convincing standard which Defendant JAKKS are required to meet for an exceptional case.  Defendant JAKKS have failed to demonstrate that Plaintiffs discovery requests and responses amounted to litigation misconduct.  *See*, *Forest Labs.*, 339 F.3d at 1329 ("In the context of fee awards to prevailing accused infringers, we have…upheld findings of exceptionality to prevent [a gross injustice] only when the patentee has [committed inequitable conduct] or has litigated its claim of infringement in bad faith.").

Defendant JAKKS must satisfy the high burden of proof in order to support an award of costs and fees based on an "exceptional" case under § 285.  The controlling Federal Circuit law demands that attorneys fee awards are appropriate only to prevent a "gross injustice" to an accused infringer, and only when the award is supported by clear and convincing evidence that the patent owner, for example, pursued an infringement claim through "vexatious, unjustified or frivolous litigation."  *Forest Labs.*, 339 F.3d at 1320; *Brooks Furn. Mfg.*, 393 F.3d at 1381.  The facts of this case do not meet this threshold evidentiary standard.

Plaintiffs offered evidence to support its claims against Defendants.  Plaintiffs properly opposed Defendants' Motion to Dismiss, reasserted claims against Defendants in their Third Amended Complaint and adamantly opposed Defendants JAKKS' Motion to Dismiss, which was converted to a Motion for Summary Judgment.   In opposing Defendant JAKKS Motion for Summary Judgment, Plaintiffs pointed out that Defendant JAKKS was inconsistent and contradicted the specification of the'272 patent.   As has been previously pointed out, the law dictates that this Honorable Court, as well as the Defendant JAKKS, must "always" interpret the claims in light of the specification – a dictionary always used to define terms in the claims of a patent.

> It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history…Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language.

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F. 3d 1576, 1582 (Fed. Cir. 1996).

It has always been the law that definitions contained in a patent and the intrinsic evidence controls claim construction.   "…[T]he specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess.  In such cases, the inventor's lexicography governs."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005).

Plaintiffs' claims against Defendant JAKKS were clearly justified from the very inception.   This case is not exceptional under 35 U.S.C. § 285.   This Court's finding that Plaintiffs made a pre-filing inquiry will also support a finding that this is not an exceptional case. Defendants have not presented any facts that when Plaintiffs filed their Complaint they had reason to believe that the claims of the '272 Patent did not cover Defendant JAKKS' accused

48

posters.  The record evidence supports a conclusion that Plaintiffs acted in good faith.  *Cybor Corp v. FAS Tech., Inc.*, 138 F.3d 1448, 1461 (Fed. Cir. 1998) ("[Defendants] mere argument that [Plaintiffs'] claims were 'baseless' and pursued in 'bad faith' does not undermine the district court's conclusions to the contrary.  The record evidence supports the district court's conclusions that [they] acted in good faith.").

### C.   In the event this Honorable Court finds this case to be "exceptional," an award of attorneys' fees is not warranted.

Even if this Honorable Court was to find this an exceptional case, "the award of attorney fees is not automatic."  *Nat'l Presto Indus.*, 76 F.3d at 1197.  In determining whether to award fees and in what amount, the court "must weigh factors such as the degree of culpability, closeness of the questions, and litigation behavior."  *Nilssen*, 528 F.3d at 1359.

Applying the above factors to this case, Plaintiffs and counsel did not engage in litigation misconduct or pursue a frivolous case, and while ultimately unsuccessful on the litigated issues, Plaintiffs and their counsel were not guilty of the type of culpable conduct supporting any fee award. The difficulty and uncertainty in establishing claim construction in patent cases, such as the present one, also argues against any fee award. Under the totality of the circumstances, Plaintiffs and counsels' actions in this case, while unsuccessful, do not justify it having to pay over two hundred thousand dollars in fees to Defendant JAKKS.  *See*, *S.C. Johnson and Son, Inc. v. Carter-Wallace, Inc.,* 781 F.2d 198, 201 (Fed. Cir. 1986) ("Even an exceptional case does not require in all circumstances the award of attorneys' fees.").  Even more, despite Defendant JAKKS' contentions that a simple inspection of the housing unit of the accused posters would have determined non-infringement, and that this case was "frivolous" and "baseless," it took two partners, two associates, and two summer associates defending Defendant JAKKS to accumulate

406 hours to defeat a "simple" case.

> **D.** **Defendant JAKKS should not be awarded fees under 28 U.S.C. § 1927 and 1961.**

Defendant JAKKS maintains that it is entitled to attorneys' fees and expenses under 28 U.S.C. § 1927, which provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Section 1927 "is not a catch all provision designed to serve as a basis for sanctioning any and all conduct courts want to discourage." *Waymark Corp. v. Porta Systems Corp.,* 334 F.3d 1358, 1365 (Fed. Cir. 2003). Section 1927 "authorizes sanctions only for the multiplication of proceedings, it applies only to unnecessary filings and tactics once a lawsuit has begun." *MEMC Electronic Materials, Inc.* v. *Mitsubishi Materials Silicone Corp.,* 420 F.3d 1369, 1382 (Fed. Cir. 2005).

Neither Plaintiffs nor counsel filed any unnecessary pleading, engaged in any egregious, disreputable, unfair, or unprofessional misconduct warranting sanctions under § 1927. Plaintiffs' counsels' dealings with Defendant JAKKS were candid, fair, reasonable, and professional. None of their actions were unreasonable and vexatiously multiplied the proceedings before this Honorable Court. After this infringement claim was filed, neither Plaintiffs nor their counsel unnecessarily multiplied the proceedings; abused discovery; delayed proceedings; engaged in unnecessary motion practice, or acted unprofessionally. The arguments raised by Plaintiffs were made in good faith in order to assert its rights in the '272 patent rights, and were not made to harass Defendant JAKKS.

Further, § 1927 "is concerned only with limiting the abuse of court processes." *Roadway*

*Express, Inc. v. Piper,* 447 U.S. 752, 762, 65 L.Ed. 2d 488, 100 S.Ct. 2455 (1980); *See also*, *Bailey* v. *Papa John's USA, Inc.,* 2007 U.S. App. LEXIS 13850, at *205 (6th Cir. 2007) ("A claim is not groundless simply because it was ultimately unsuccessfu1."). This Honorable Court may impose sanctions under § 1927 if it determines that Counsel knows or reasonably should have known that the infringement claim pursued was frivolous, or that their litigation tactics needlessly obstructed the litigation of non-frivolous claims. *See*, *O'Neal v. Kilbourne Med. Labs., Inc.,* 251 F.RD. 247, 251 (E.D. KY. 2008).

As discussed in detail above, the claims pursued by Plaintiffs and counsel were not frivolous, and Defendant JAKKS have failed to establish Plaintiffs' counsel knew or reasonably should have known that the infringement claims were frivolous. In order for Defendant JAKKS to prevail, "there must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court in which, as a result, causes additional expense to the opposing party." *In re Ruben,* 825 F.2d at 984 (6th Cir. 1987). No such misconduct is present here. "The purpose [of § 1927] is to deter dilatory litigation practices and to punish aggressive tactics that far exceeds advocacy." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Neil Sater,* 465 F.3d 642, 646 (6th Cir. 2006). Plaintiffs' counsel did not engage in dilatory litigation practices or excessively aggressive tactics. To borrow the Federal Circuit Court's observation in *Frank Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.,* 389 F.3d 1370, 1379 (Fed. Cir. 2004), "[t]his is simply not a case in which the conduct of the plaintiff in filing and prosecuting the action, was offensive to the court (even mildly so)."

Further, even if this Court finds that some sanction is appropriate, which Plaintiffs and their counsel argue adamantly against, Defendant JAKKS is not entitled to all of its fees and

expenses under § 1927. "An award to defendants should be limited to the additional expense caused by plaintiff's attorney's improper conduct." *Dixon v. Clem,* 2006 U.S. Dist. LEXIS 11790, *8 (E.D. KY. 2006); *see also*, *Red Carpet Studios Div. of Source Advantage, Ltd.*, 465 F.3d at 646 ("A sanctioned attorney is thus required to personally satisfy the <u>excess costs</u> <u>attributable to his misconduct.</u>") (<u>emphasis added</u>).   Here, not only is there the absence of misconduct by Plaintiffs' counsel, but even if this Court were to find that there was, Defendant JAKKS have failed to adequately show the amount that its costs were increased by such conduct.   Given Plaintiffs' motivation in filing this infringement claim to protect their patent rights this Honorable Court should "leave the parties where it finds them." *Propat Int'l, Corp. v. Rpost, Inc.,* 473 F.3d 1187, 1195 (Fed. Cir. 2007).

Based on the foregoing, Defendant JAKKS has not met its "burden of establishing that this is an exceptional case," in that the litigation Plaintiffs and counsel instituted "was vexatious, unjustified, or brought in bad faith."   *Hoffmann-La Roche v. Genpharm, Inc.*, 50 F.Supp.2d at 373.

## II.   CONCLUSION

Plaintiffs' case is similar to *Hyperphrase Tech., LLC v. Google, Inc.,* 2007 U.S. Dist. LEXIS 11059, *2-3 (W.D. Wisc. 2007), where defendant's counsel, after winning on summary judgment, sought attorneys' fees. The Court denied the motion, stating:

> Defendant contends that this action was brought in bad faith and was objectively baseless, warranting the award of fees. The evidence of either subjective bad faith or objective baselessness does not meet the clear and convincing standard and does not warrant an award of fees. Although the Court ultimately rejected plaintiffs' overly broad claim interpretation, adopting a more narrow interpretation which could not sustain a finding of infringement, the case was not exceptional. There is virtually no evidence that this case was brought in bad faith. Defendants' support for its motion on this point consists almost exclusively of hindsight reliance on the summary judgment

decision in its favor. An objective view of the entire file and the conduct of this litigation suggests to the contrary that plaintiff commenced the action in good faith believing that it could prevail on the broad claim construction it advanced. To award fees in this instance would be to convert § 285 into a routine fee shifting statute. This matter was not exceptional and defendant's request for fees is denied.

This Honorable Court's objective review of the entire file and careful analysis and discrete findings will determine that Plaintiffs and counsel commenced this infringement claim in good faith and their actions are not deserving of sanctions.

**WHEREFORE**, Plaintiffs respectfully requests that Defendant JAKKS' Motion for Sanctions pursuant to Rule 11 and Supplemental Motion for Attorneys Fees pursuant to 35 U.S.C. § 285 and 28 U.S.C. §§ 1927 and 1961 be denied.  This case does not present the type of exceptionally egregious conduct warranting sanctions or the award of attorneys' fees. "[Plaintiffs and their counsel] should not be penalized for merely defending or prosecuting a lawsuit." *Summit Valley Indus.*, 456 U.S. at 724.

<div style="margin-left:40%">

Respectfully submitted,

**THE DICKERSON LAW GROUP, P.A.**

/s/ Brian E. Dickerson_____
Brian E. Dickerson     (0069227)
Sharlene I. Chance      (0070999)
5003 Horizons Drive, Suite 101
Columbus, OH 43220
Telephone: (614) 339-5370
Facsimile:  (614) 442-5942
bdickerson@dickerson-law.com
schance@dickerson-law.com
*Attorneys for Plaintiffs*

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 9, 2009, I electronically filed the foregoing document

with the Clerk of the Court using the CM/ECF system upon counsels of record.

/s/ Sharlene I. Chance_____

Sharlene I. Chance      (0070999)

***Attorney for Plaintiffs***