EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| AARON CLARK, et al., | : |
| *Plaintiffs,* | : |
| v. | : Case No. 2:08CV982 |
| THE WALT DISNEY COMPANY, et al., | : Judge Holschuh |
| *Defendants.* | : Magistrate Judge Abel |

### DECLARATION OF AARON CLARK

STATE OF OHIO     )
                  )SS
COUNTY OF FRANKLIN )

Aaron Clark, being first duly cautioned and sworn, states the following:

1. My name is Aaron Clark. For the past 20 years I have been in the business of creating and marketing new products. As such, I have a great deal of experience in taking products from the idea phase to a completed product on the shelf. In many cases patents and trademarks are involved. In all cases, development of a new idea that is not yet in the marketplace is involved. These successes include The Talking Poster™, an electronic Sound of Memories^R scrapbook, and the proprietary formula to Epsom Salt Gel™.

2. In addition to my own products, I have consulted for many other companies and individuals assisting them in taking their idea from concept to product on the shelf. My entire career and entire adult life has been devoted to the invention, development, and marketing of new products and companies.

3. With regards to the The Talking Poster™ multiple patents were obtained. I worked with attorneys to protect the concept as it was the first and only talking poster in the

world at the time. We worked carefully to intentionally cover the product in as broad a manner as possible protecting it from the most obvious embodiments with current technology, to future anticipated embodiments using technology that might exist in the future. In addition we were awarded coverage on a manufacturing process to produce The Talking Poster™ so that the idea and the process to make it were both protected. We licensed many companies over the years who all respected and honored the patents including Warner Brothers, New Line Cinema, NSYNC, Backstreet Boys, and Michael Jordan to name a few. In addition, OSP, the largest poster company in the world at the time honored our patent by doing a licensing deal and paying a royalty to produce The Talking Poster™. Resaurus, a prominent toy company in the late 90's also penned a licensing deal to pay us royalties for rights to manufacture The Talking Poster™.

4. In the spring 2008, I became aware, through a family member, of a Hannah Montana Talking Poster available in stores. I found the product in Toys R Us, in a Columbus, OH location and online through retailers such as Amazon.com. As the owner of the Patent on The Talking Poster™ this was alarming. I also became aware of this through consumers who congratulated me on doing a Hannah Montana Talking Poster. They did not realize it was not our product. Additionally, I was informed by a gentleman, Kelly Kirk, with whom I was in the middle of a business deal concerning licensing rights on this very patent, that he too had located the Hannah Montana infringing product on the market. This ultimately caused Mr. Kirk to withdraw from the deal.

5. This was devastating to me. After over a decade of having the patent respected enough to do licensing deals with some of the largest companies in the industry, to lose a deal due to lack of belief in the validity of the patent was alarming. A lot of money and time was invested in the invention, patent process, development within the marketplace and the forging of

relationships over the years to establish ourselves as the proprietary owner of this space as a business. This is my livelihood. With nearly a decade remaining on the patent it was a scary to realize this intellectual property I had relied on for so many years to provide income for my family was being run over by some of the largest companies in the world. It had just literally taken money out of my pocket and my worry was that this was only the beginning of opportunities being lost if I did not somehow protect my intellectual property. As a business, we could potentially be finished if we did not defend the validity of our patent.

6. As an inventor and entrepreneur for nearly two decades, and patent holder for over a decade, I was fully aware of patent law which states in general that if a patent owner is aware of infringing product or suspected infringing product, and does nothing, they are effectively waiving their protective rights. With this knowledge, I have kept an eye out for any product which could possibly fit the criteria so that I may abide by the law to avidly protect the intellectual property, in which so much time effort and money was and continues to be invested.

7. Over the years, other than the Disney product now in question, there has only been one other product that raised cause for concern. Upon investigation, which involved removal of the sound unit from the poster, dissection of the housing, comparison of the electronics inside, etc… of this previous product of concern, it was discovered that there was a "removable chip" which the consumer could interchange in the sound unit. My business partner, John Peirano and I discussed it and believed that it did not directly infringe due to this modification which gave the poster a different interactive function and required different hardware and software in the chip set the '272 Patent which did not allow for a removable chip to switch out multiple audio. So, we did not take any action.

3

8. On this Disney Hannah Montana product in question however, the case is quite different. Through investigation of the product function, features, colored housing units matching the poster, identical hardware, software in the chipset and speaker, it appeared the product violated our patent in every way possible and was a blatant rough shot run over our clearly patented product. I purchased several of the Hannah Montana talking posters at Toys R Us in Columbus, Ohio in the Spring of 2008 as stated above. I purchased different versions with different images, different sound bytes and different colored housing units to see if the insides were identical. I took apart all of them, tested the parts, the buttons, the speakers, the housing units, the chip boards and each piece of the product was investigated and compared to all of our products and against our patent language. I found every aspect of the concept, function, and manufacture of the poster to be in direct violation of each respective portion of the patent.

9. I shared my opinions, thoughts, and findings with my business partner, John Peirano and we discussed at length on the telephone in multiple conversations. The decision was made to contact legal counsel, Brian Dickerson. I discussed in length with Mr. Dickerson the '272 patent, the prosecution history, any past patent infringement cases, and all companies I had licensed the '272 patent to. Upon my first meetings, explanation and demonstration to counsel, the opinion of Mr. Dickerson was concurrent with our belief that the Disney Hannah Montana Talking Poster appeared to violate all aspects and all claim.

10. Furthermore, it was explained to me that beyond obvious and utter violation of all aspects of the patent, there is a law called the "doctrine of equivalents" which protects the spirit of an invention being copied even if the word for word violation is not exact. A product designed and manufactured in a similar fashion, which performs in a similar fashion, producing a

similar result for the same purpose is in violation even if not identical. In other words, a Talking Poster is a Talking Poster and we have a patent on a Talking Poster.

11. After further discussion with my business partner, Mr. Peirano, it was decided that given (1) the confusion by consumers (2) the loss of business partners who are concerned about violation of the patent (3) my investigation and dissection of the product leading to my opinion of direct violation in every way (4) the advice and opinion of Mr. Dickerson that the patent was being infringed in every way and (5) the application of the doctrine of equivalents, we must take action.

12. In summary, based on my independent investigation and informed comparison of the claims of our patent with the accused posters, consultation with my business partner, Mr. Peirano and advice of counsel, Mr. Dickerson, I reasonably believed I had a claim of infringement against Defendants JAKKS. In addition, based on the same above and understanding and legal advisement concerning patent law, I believed I was compelled by patent law to bring action in order to protect the validity and enforceability of the patent.

13. I declare under penalty of perjury that the foregoing declaration is true and correct to the best of my knowledge and belief.

FURTHER DECLARANT SAYETH NOT.

__12-9-09__  
DATE

__/s/ A. D. C._____  
AARON CLARK