EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AARON CLARK, et al., | : | |
| | : | |
| *Plaintiffs,* | : | |
| v. | : | Case No. 2:08CV982 |
| | : | |
| THE WALT DISNEY COMPANY, et al., | : | Judge Holschuh |
| | : | |
| *Defendants.* | : | Magistrate Judge Abel |

### DECLARATION OF KELLY KIRK

STATE OF OHIO            )
                                   )SS
COUNTY OF TRUMBULL  )

Kelly Kirk, being first duly cautioned and sworn, states the following:

1. My name is Kelly Kirk. I am a business man with Entrepreneurial and Marketing experience in the scientific industries. As an owner of Sleep Care of America, LLC, for 6 years serving as VP Business Development I am experienced in working with proprietary systems and business practices to turn them into successful ventures.

2. Having sold my interest in Sleep Care of America, I was fortunate enough to have the means and the time to devote to a new venture. With this interest in mind, in early 2008, I approached Aaron Clark to inquire as to obtaining license for his patented Talking Posters. My intent was to license posters through a royalty payment agreement. I liked the product and believed that under protection of the patent, I could start small and grow the business without fear of direct competition from large manufacturers threatening my investment.

3. After speaking with Mr. Clark's partner, I believe John Peirano, and some negotiation between us, Mr. Clark and I arrived at an agreement in principal. The basic terms

were that I pay a royalty on a per unit basis, I guarantee a total amount of royalty to be paid over a time period, and I pay an advance against that royalty guarantee up front.

4.  During the time period of draft of the agreement, I became aware through Mr. Clark of a Hannah Montana talking poster already on the market available at Toys R Us in Columbus, Ohio and online.

5.  After being made aware of this, I tested the product at Toys R Us in Columbus, Ohio and viewed the product online through Amazon.  It appeared to me to be the same patented product I was attempting to license.  As far as I was concerned, a talking poster is a talking poster.  I am not an engineer, but neither are the consumers who buy the product and I view the product from the perspective of the customer I will be trying to sell. To me, the common sense deduction between the two products is that they are both posters with colored voice modules attached, they hang on the wall, you hit the button, and they talk.  They look the same, do the same thing, serve the same purpose, and function the same way, so common sense tells me they are the same thing.  It was my intent to license a patented, protectable talking poster and be the only company on the market with such product.  It would defeat the purpose of obtaining a licensing agreement on a patented product if there are other identical products on the market which are infringing.  Moreover, the companies infringing in this case were of the most powerful in the world in this arena.

6.  My intent was to license a patented item so that I would *not* have to compete with these companies.  Therefore, I informed Mr. Clark that under the circumstances I could not go forward with our agreement.

7.  I declare under penalty of perjury that the foregoing declaration is true and correct to the best of my knowledge and belief.

2

FURTHER DECLARANT SAYETH NOT.

<u>12-9-09</u>        <u>R Kelly Kirk</u>
DATE              KELLY KIRK