# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **AARON CLARK and JOHN PEIRANO,**<br><br>　　　　**Plaintiffs**<br><br>　　　　**v.**<br><br>**THE WALT DISNEY COMPANY, et al**<br><br>　　　　**Defendants.** | Case No. 08 cv 0982<br><br>Hon. John D. Holschuh |

**JAKKS Pacific, Inc.'s Reply Brief in Support of Motion for Attorneys' Fees (Dkt ## 63 and 68)**

**TABLE OF CONTENTS**

                                                                   Page

1. Introduction ............................................................................................................. 1

2. Rule 11 Sanctions Are Appropriate: Plaintiffs' Defense Of Their Pre-Filing Investigation Fails ................................................................................................... 2

    A. Plaintiffs' counsel's pre-filing investigation demonstrates that filing this case was objectively unreasonable. .................................................................. 2

        (1) Plaintiffs' counsels' review of the patent and products was objectively unreasonable because it was not informed .............................. 3

        (2) Counsel's discussions with Plaintiffs do not satisfy Rule 11 .................... 6

        (3) Shapiro's retention does not demonstrate a reasonable pre-filing investigation ............................................................................................... 6

    B. Nard's opinion does not establish reasonableness of the pre-filing investigation .............................................................................................................. 7

        (1) Nard's opinion is inadmissible ................................................................. 7

        (2) Nard's opinion is unreliable ..................................................................... 9

        (3) Even assuming arguendo that Nard's opinion is admissible, it fails to establish the relevant point ................................................................. 10

3. Sanctions Are Appropriate Under 35 U.S.C. § 285 ............................................... 11

4. Plaintiffs' Concede The Reasonableness Of JAKKS' Lodestar Calculation ................... 13

5. JAKKS Is Entitled To An Additional Recovery For Bill Of Costs Related Briefing, The Supplemental Brief, And This Reply ............................................. 14

6. Conclusion ............................................................................................................ 15

# TABLE OF AUTHORITIES

Page

**Cases**

*Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066 (Fed. Cir. 2002) .......................... 3

*Badalamenti v. Dunham's Inc.*, 896 F.2d 1359 (Fed. Cir. 1990) .................................... 13

*Bayer Aktiengesellschaft v. Duphar Int'l Research B.V.*, 738 F.2d 1237 (Fed. Cir. 1984) ............ 1

*Bicon, Inc. v. Straumann* Co.¸ 441 F.3d 945 (Fed. Cir. 2006) ............................................ 4

*Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805 (Fed. Cir. 1990) .......................... 11

*Endress + Hauser, Inc. v. Hawk Measurement Sys. Pty Ltd.*, 122 F.3d 1040
    (Fed. Cir. 1997) ...................................................................................................... 7

*Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.*, 93 F.3d 1572 (1996) ....................... 4

*Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562 (Fed. Cir. 1997) .................................... 4

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .................................................................. 13

*ICU Med., Inc. v. Alaris Med. Sys., Inc.*, No. SA CV 04-00689 MFP (VBKx), 2007 U.S.
    Dist. LEXIS 49094, at *6 (C.D. Cal. June 28, 2007), *aff'd,* 558 F.3d 1368
    (Fed. Cir. 200) ........................................................................................................ 13

*Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.,* 381 F.3d 1111
    (Fed. Cir. 2004) ........................................................................................................ 5

J.P. Stevens Co. v. Lex Tex Ltd., 822 F.2d 1047 (Fed. Cir. 1987) .................................. 13

*Judin v. U.S.*, 110 F.3d 780 (Fed. Cir. 1997) ................................................................ 10

*Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 249 F.3d 1314 (Fed. Cir. 2001) ................. 4

Mann v. G&G Mfg., Inc., 900 F.2d 938 (6th Cir 1990) ...................................................... 2

*Mathis v. Spears*, 857 F.2d 749 (Fed. Cir. 1988) .......................................................... 13

*Medtronic Inc. v. Intermedics, Inc.*, 799 F.2d 734 (Fed. Cir. 1986) .............................. 8

*Nisus Corp. v. Perma-Chink Systems, Inc.*, 2005 WL 6112992, *4
    (E.D. Tenn. May 27,2005) .................................................................................... 8

*Oliveri v. Thompson,* 803 F.2d 1265 (2d Cir.1986) ...................................................... 2

## TABLE OF AUTHORITIES
(continued)

Page

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ............................................................. 5

*Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295 (Fed. Cir. 2004) ..................................... 3

*Sundance, Inc. v. Demonte Fabricating Ltd.*, 550 F.3d 1356 (Fed. Cir. 2008) ............................. 7

*TechSearch, L.L.C. v. Intel Corp.,* 286 F.3d 1360 (Fed. Cir. 2002) ............................................... 4

*Texas Instruments Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165 (Fed. Cir. 1993) .................. 4

*Union Carbide Corp. v. Am. Can Co.*, 724 F.2d 1567 (Fed. Cir. 1984) ........................................ 8

*Wood v. Lecureux*, 110 F.3d 1215 (6th Cir. 1997) ....................................................................... 8

**Statutes**

35 U.S.C. § 285 ................................................................................................... 1, 11, 12, 13

**Regulations and Rules**

Federal Rule of Civil Procedure 11 ............................................................... 1, 2, 6, 10, 11, 12, 15

**1.     Introduction**

Plaintiffs' attempt to swamp the truth fails.  The truth is that notwithstanding more than fifty pages, Plaintiffs offer virtually *nothing* in defense for having filing this frivolous lawsuit.  Plaintiffs offer *no* explanation for how they could have reasonably believed that the accused products met the housing surface limitation.  Plaintiffs repeat on page after page as a mantra that their interpretation of the patent-in-suit in which critical claim limitations were simply ignored, was reasonable.  Yet, Plaintiffs are unable to muster anything to support such a conclusion.

Similarly, Plaintiffs do not offer *any* defense for the massive litigation misconduct identified in detail in JAKKS' Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11 (Dkt. # 63) (the "Rule 11 Motion") or in JAKKS' Supplemental Motion for Attorneys' Fees (Dkt. # 68) (the "Supplemental Brief").  Plaintiffs' failure to address—much less disprove—JAKKS' litigation misconduct evidence must be accepted as a concession that Plaintiffs, in fact, engaged in litigation misconduct.  This concession, all by itself, is sufficient to grant JAKKS' request for fees under 35 U.S.C. § 285.  *See Bayer Aktiengesellschaft v. Duphar Int'l Research B.V.,* 738 F.2d 1237, 1242 (Fed. Cir. 1984) (exceptional circumstances include inequitable conduct before the PTO; vexatious, unjustified, and otherwise bad faith litigation; or the filing of a frivolous lawsuit).

Incredibly, Plaintiffs' also do not even question the reasonableness of JAKKS' lodestar calculation.  JAKKS' Supplemental Brief offered detailed time records showing every minute charged by their attorneys, and described in detail JAKKS' attorneys' rates and how they compared to rates charged by similar attorneys.  Plaintiffs do not so much as mention either the number of hours charged or the rate charged.  Therefore, Plaintiffs simply concede that the requested lodestar fee is reasonable.

Indeed, the only thing new in Plaintiffs' Opposition is the supposed expert declaration of Craig Nard. As demonstrated below, however, Nard's declaration is inadmissible. But even if the declaration was admissible, it fails to prove the point for which it was offered. That is, Plaintiffs offered Nard's declaration as supposed evidence of the reasonableness of their pre-filing investigation. Trouble is, Plaintiffs retained Nard some eight months *after* they filed the Complaint. Thus, Nard's declaration offers no support of any kind for the supposed reasonableness of Plaintiffs' pre-filing investigation.

Plaintiffs' Opposition is more old wine in new bottles. Given Plaintiffs' concessions, it is now indisputable that (1) Plaintiffs could never have reasonably believed that the accused products met the housing surface limitation, (2) Plaintiffs engaged in massive litigation misconduct throughout this case, and (3) JAKKS' requested fees are reasonable. Given these now established facts, there is no doubt that JAKKS is entitled to recover the full amount of its attorneys' fees ($223,983.57).

## 2. Rule 11 Sanctions are Appropriate: Plaintiffs' Defense of Their Pre-Filing Investigation Fails

### A. Plaintiffs' counsel's pre-filing investigation demonstrates that filing this case was objectively unreasonable

The parties agree that the standard for imposing Rule 11 sanctions is *objective*, not subjective. *See e.g., Oliveri v. Thompson,* 803 F.2d 1265, 1275 (2d Cir.1986), *cert. denied,* 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987). As Plaintiffs concede, the Sixth Circuit and the Federal Circuit follow an objective reasonableness test for imposition of Rule 11 sanctions. *See* Dkt. # 71 at p. 1 (*citing* Mann v. G&G Mfg., Inc., 900 F.2d 938, 953 (6th Cir 1990), *cert. denied,* 498 U.S. 959 (1990)). "[A]n attorney violates Rule 11… when an objectively reasonable attorney

would not believe, based on some actual evidence uncovered during the prefiling investigation, that each claim limitation reads on the accused device either literally or under the doctrine of equivalents." *Antonious v. Spalding & Evenflo Cos.,* 275 F.3d 1066, 1073 (Fed. Cir. 2002) (quoted at Dkt. # 71 at p. 3.)

Where the parties disagree is whether Plaintiffs' counsel's pre-filing investigation meet this objectively reasonable standard. Plaintiffs' pre-filing investigation consisted of (1) Plaintiffs' counsel's own review of the products and patents, (2) discussions between Plaintiffs and their lawyers, and (3) retention of a supposed expert in design. See Dkt. #71 at pp. 8-21. Plaintiffs' counsel's pre-filing investigation was manifestly insufficient.

**(1)    *Plaintiffs' counsels' review of the patent and products was objectively unreasonable because it was not informed***

The Federal Circuit has recently held that while no magic words are required for a sufficient pre-filing investigation, at a minimum, the pre-filing investigation must be informed. A pre-filing investigation must include a "good faith, *informed* comparison of the claims of a patent against the accused subject matter." *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1302 (Fed. Cir. 2004) (emphasis added).

Plaintiffs' counsels' comparison of the accused products with the claim language was not "informed." As the Court has found, Plaintiffs' claim construction ignores *obvious* claim limitations. The Court held, "Plaintiffs' interpretation [of the housing limitation] *obviously* ignores the remainder of the claim that requires that the artwork on the surface of the housing be 'substantially the same as that area of said poster art which appears on said portion of said poster that said housing covers when said housing is attached to said poster.'" See Dkt. No. 64 at p. 10 (emphasis added). The Court further found, "when Claims 1 and 5 are read as a whole, and

- 3 -

when all of the words defining the scope of the invention are given effect, these claims *unambiguously require* that the artwork on the surface of the housing be substantially the same as the artwork on that portion of the poster directly underneath the housing." *Id.* at 10-11 (emphasis added). The reasonableness—or lack thereof—of Plaintiffs' counsel's comparison of the products with the claims comes down to whether Plaintiffs' counsel did anything to be in a position to say that it would be consistent with the law to ignore these "obvious" claim limitations or to ignore what the claims "unambiguously require."

      No reasonable, competent patent lawyer would have believed that it was reasonable to ignore these limitations. It is black-letter patent law that a patent should be interpreted to include all of its language. *Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562, 1566 (Fed. Cir. 1997) ("It is elementary patent law that all limitations are material"); *Bicon, Inc. v. Straumann* Co.¸ 441 F.3d 945, 950 (Fed. Cir. 2006) ("claims are interpreted with an eye toward giving effect to all terms in the claim."); *Texas Instruments Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1172, (Fed. Cir. 1993) (The patentee's claim interpretation argument "would read an express limitation out of the claims. This, we will not do because '[c]ourts can neither broaden nor narrow claims to give the patentee something different than what he has set forth.'"); *Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.*, 93 F.3d 1572, 1582 (1996) (the patentee's infringement argument "invites us to read [a] limitation out of the claim. This we cannot do."); *Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 249 F.3d 1314, 1324 (Fed. Cir. 2001) (A district court "erred by improperly broadening the scope of the claimed function by 'reading out' the limitations contained in the claim language."); *TechSearch, L.L.C. v. Intel Corp.,* 286 F.3d 1360, 1373 (Fed. Cir. 2002) ("specific claim limitations cannot be ignored as insignificant or immaterial in determining infringement."); *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.,* 381 F.3d 1111,

1119 (Fed. Cir. 2004), (*reaffirmed in* Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005) (en banc)) ("While not an absolute rule, all claim terms are presumed to have meaning in a claim.").

Plaintiffs' counsel claims that they read the file history, but they did nothing to determine that they could ignore obvious claim limitations or ignore what the claims unambiguously required. More importantly, Plaintiffs' counsel did not seek a second opinion from a lawyer with patent experience.[1] Nothing in the web-biographies of either of Plaintiffs' primary counsel, Brian Dickerson and Sharlene Chance, suggests that either had meaningfully patent experience before this case. *See* Kinsel Decl. at pp. 3-7. Mr. Dickerson and Ms. Chance appear to be experts in criminal law. For instance, on Mr. Dickerson's "Super Lawyer" referral page, Mr. Dickerson indicates that his practice area is 70% white collar, 20% business litigation, and 10% general litigation. *See* Kinsel Decl. at pp. 7-10  Ms. Chance's "Super Lawyer" referral page lists "criminal defense" as "100%" of her practice. *Id.* This is not to suggest that Plaintiffs' counsel *couldn't* engage in patent litigation, just that they *hadn't* prior to filing this case. Thus, the question is whether a reasonable lawyer who is an expert in criminal law but had little or no patent experience would have sought a second opinion *before* filing a patent infringement case, particularly in a case where it would be necessary to ignore obvious claim limitations in order to prove infringement. Clearly, it was incumbent on Plaintiffs' counsel to seek the opinion of someone with patent law experience *before* filing this lawsuit.[2]

---

[1] At various points in their Opposition, Plaintiffs claim that they consulted "extensively with experts and other patent attorneys prior to filing suit." *See* Dkt. # 71, at p. 4. Plaintiffs never identify, however, who these supposed patent attorneys were, when they were consulted, why they were consulted, or what they said. Clearly, such consultations are relevant to this Motion. That Plaintiffs offer no evidence of these supposed pre-suit consultations, tends to indicate that either (1) they did not happen, or (2) they would have shown the unreasonableness of Plaintiffs' position.

[2] Plaintiffs' counsel eventually sought out Craig Nard as a supposed expert in patent law. But as demonstrated below Nard's opinion came much to late to be useful and is itself highly dubious.

- 5 -

**(2)** *Counsel's discussions with Plaintiffs do not satisfy Rule 11*

Plaintiffs' counsel did nothing to check their client's belief that JAKKS infringed their patent. According the Aaron Clark's declaration he and Peirano appear to be under the delusion that any poster with a sound module necessarily infringes the '272 patent. Thus, his conclusion that "I found every aspect of the concept, function, and manufacture of the poster to be in direct violation of each respective portion of the patent" was unencumbered by the facts or the law.

This is where a lawyer with experience in patent litigation comes in: To check the client's hope against the realities of the law. And it is here that Plaintiffs' counsel's pre-filing investigation truly failed. Had Plaintiffs' counsel simply asked another lawyer who had litigated patent cases whether Clark's conclusion was well-founded, they would have unquestionably discovered that it was not. Thus, Plaintiff's counsel's discussions with his client do not supply the missing pieces to make the pre-filing investigation reasonable.

**(3)** *Shapiro's retention does not demonstrate a reasonable pre-filing investigation*

Plaintiffs' reliance on their retention of Shapiro also does not change the unreasonableness of filing this case. Shapiro is not an expert in patent law. She is not a lawyer. Shapiro purports to be an expert in design. But consulting an expert in design does not make Plaintiffs' interpretation of the '272 patent any more reasonable. Indeed, it appears that Shapiro merely parroted Plaintiffs' counsel's flawed interpretation, and, based on this flawed interpretation, concluded that the accused products infringed. No surprise there for a paid expert.

Indeed, as the Court recognized in connection with the Motion for Summary Judgment, Shapiro's supposed expert opinion was utterly irrelevant. The Court recognized that because there was nothing ambiguous about the limitations of the '272 patent, Sharpiro's opinion echoing Plaintiffs' counsel's fundamentally flawed interpretation was besides the point. See Dkt. #64 at

- 6 -

p. 16.  The same is true in connection with the Plaintiffs' pre-filing investigation.  Shapiro's paid acceptance of an uninformed claim construction does not make Plaintiffs' counsel's original flawed determination any better.

**B.     Nard's opinion does not establish reasonableness of the pre-filing investigation**

Plaintiffs rely heavily—indeed almost exclusively—on the opinion of Craig Nard as justifying the initial filing of the Complaint.  Nard's opinion, however, came almost a year too late, is inadmissible, unreliable in the extreme, and fails to address the material points in dispute.

**(1)     *Nard's opinion is inadmissible[3]***

Nard's opinion is inadmissible on, at least, two separate counts.  First, Nard's opinion is little more than an attempt to reargue claim construction and to substitute his opinion on proper claim construction for the Court's.  Nard's expertise relates, at best, to patent law, and he offers no evidence that he has any background or experience of any kind related to the pertinent art.  As such, Nard's declaration is inadmissible legal opinion.  "We hold that it is an *abuse of discretion* to permit a witness to testify as an expert on the issues of noninfringement or invalidity unless that witness is qualified as an expert in the pertinent art."  *Sundance, Inc. v. Demonte Fabricating Ltd.*, 550 F.3d 1356, 1363 (Fed. Cir. 2008) (reversing as abuse of discretion trial court's admission of supposed expert testimony on noninfringement or invalidity) (emphasis added); *see also Endress + Hauser, Inc. v. Hawk Measurement Sys. Pty Ltd.*, 122 F.3d 1040, 1042 (Fed. Cir. 1997) ("[T]his court has on numerous occasions noted the impropriety of patent lawyers testifying as expert witnesses and giving their opinion regarding the proper interpretation of a claim as a matter of law, the ultimate issue for the court to decide.");; *Medtronic Inc. v.*

---

[3]     JAKKS hereby moves to strike Nard's declaration on the grounds set forth below.

- 7 -

*Intermedics, Inc.*, 799 F.2d 734, 741 (Fed. Cir. 1986) (affirming exclusion of patent law expert's testimony on infringement of the asserted claims); *Union Carbide Corp. v. Am. Can Co.*, 724 F.2d 1567, 1572 (Fed. Cir. 1984) (agreeing with district court that gave little weight to the opinion of a former patent attorney with no "expertise as to the scope of the field of endeavor of the inventions of the patents in suit or as to what other fields are analogous art."); *Nisus Corp. v. Perma-Chink Systems, Inc.*, 2005 WL 6112992, *4 (E.D. Tenn. May 27,2005) ("testimony offering nothing more than a legal conclusion or which seeks to instruct the jury as to the applicable law is improper and should be excluded.  Even if this matter is tried non-jury, any testimony which purports to instruct the judge, as the trier of fact, as to what result to reach or which otherwise offers mere legal conclusions, is no less improper.")

Second, Nard's opinion that Plaintiffs' counsel supposedly acted reasonably in filing this case is inadmissible under clear Sixth Circuit precedent.  For instance, in *Wood v. Lecureux*, 110 F.3d 1215 (6th Cir. 1997), the Sixth Circuit affirmed the district court's refusal to admit testimony regarding the conduct of officials subject to a section 1983 suit.  Plaintiff's expert sought to testify that the officials were "deliberately indifferent" to the plaintiff and the district court excluded the testimony.  The Sixth Circuit affirmed finding that "testimony offering nothing more than a legal conclusion—*i.e.*, testimony that does little more than tell the jury what result to reach—is properly excludable under the Rules." *Id.* at 1220.  Further, "[f]or a witness to stack inference upon inference and then state an opinion regarding the ultimate issue is even more likely to be unhelpful to the trier of fact." *Id.*

That's Nard's opinion—an inadmissible legal opinion that there was a not unreasonable argument for infringement, combined with an unfounded opinion regarding the ultimate question

of whether Plaintiffs' counsel acted reasonably.  Overwhelming Federal Circuit and Sixth Circuit authority require that such unhelpful evidence be excluded.

### (2) *Nard's opinion is unreliable*

Nard's opinion is—to put it mildly—unreliable because it fails to opine about the language at issue.  The linchpin of Nard's opinion is his—erroneous—belief that Plaintiffs' counsel's interpretation of the patent-in-suit was not unreasonable.  Unfortunately for Plaintiffs', however, the portion of the patent-in-suit that Nard judges as being reasonably interpreted is *the wrong portion*.

The portion of the housing surface limitation that JAKKS raised in *November 2008* as impossible to satisfy reads, "substantially the same as that area of said poster art which appears on said portion of said poster that said housing covers when said housing is attached to said poster."  But Nard's opinion makes absolutely no attempt to interpret this language, nor does he specifically state anywhere in his declaration that a reasonable patent lawyer would have believed that the accused products had housing surfaces that met this limitation.  He offers not a stitch of evidence for how one interprets the word "covers" in the above-quoted limitation.

Instead, **<u>THE ONLY LANGUAGE</u>** Nard even attempts to interpret is "said housing artistically blends in which the surrounding poster art that is not covered by said housing." *See* Dkt. #71-2 at p. 4, ¶11.  But of course Nard's interpretation of this portion of the limitation is again besides the point.  The question is whether the entire limitation, including the portion of the language JAKKS has been highlighting since immediately upon being served with the Complaint, reads on the accused devices.  Nard now joins Plaintiffs and their counsel as viewing claim interpretation as little more than an exercise in simply ignoring the language that is unhelpful to one's position.  This omission from Nard's opinion is truly stunning, and seriously

- 9 -

calls into question Nard's reliability as an expert in this area.[4]  Given the utter unreliability of Nard's opinion, it must be rejected out of hand.

**(3)** *Even assuming arguendo that Nard's opinion is admissible, it fails to establish the relevant point*

Nard's opinion is inadmissible and unreliable.  But even on the assumption that it is admissible, the opinion fails to prove the point for which it is offered.  Nard's opinion purports to be offered to support the reasonableness of Plaintiffs' *initial filing decision*.  But Nard was not consulted until May 2009, more than seven months *after* the case was filed.  Compare Dkt. #2 (original compl filing date Oct. 17, 2008), and Dkt. #71-2, at p.3, ¶2.  Moreover, Nard was not consulted until six months *after* Plaintiffs' counsel received the safe harbor Rule 11 Motion in November 2008.  See Dkt. #63, at p.7.

It appears that what triggered Plaintiffs' decision to seek Nard's opinion was a scathing opinion from Magistrate Judge Abel, in which he found,

> If defendants' interpretation of the claims is correct, then I read plaintiff's answer to the interrogatory to *concede that the claim element at issue is not literally infringed by the accused devices because there is no poster art under the housings of the two allegedly infringing devices thus far identified by plaintiff.*

*See* Order at p. 2 (Apr. 20, 2009) (Dkt. # 41) (emphasis added).

Shortly after receiving this order, Plaintiffs' retained Nard.  But what a *paid* expert who is consulted *after* the Complaint is filed, *after* the Motion to Dismiss is filed, and *after* a Rule 11 Motion is received has to say about the reasonableness of the *initial* filing of a Complaint is hard to imagine.  Indeed, the Federal Circuit has specifically held that after-the-fact investigations do not cure Rule 11 violations.  *See Judin v. U.S.*, 110 F.3d 780, 785 (Fed. Cir. 1997) ("Because

---

[4]   It is worth noting that a Westlaw search conducted on December 10, 2009 of the "All Feds" database using the search terms "Craig w/s Nard" identified four cases.  These four cases cited articles written by Nard. Apparently, not a single Court in a written opinion has ever relied on Nard's opinion.  *See* Kinsel Decl. ¶ 4.  Given his opinion in this case, it's not hard to see why.

Rule 11 is not about after-the-fact investigation, [client] and [attorney's] violation of Rule 11 was not cured by the fact that, after filing the complaint, [client] consulted with an expert and was able to make 'colorable' arguments in response to a motion for summary judgment of noninfringement"). Such is the case here. Nard's opinion comes much to late to assist Plaintiffs in resisting Rule 11 sanctions. [5]

### 3. Sanctions are Appropriate Under 35 U.S.C. § 285

Sanctions are warranted under 35 U.S.C. § 285 when "the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness or gross negligence." *Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 811 (Fed. Cir. 1990). It is beyond dispute that Plaintiffs were manifestly unreasonable in believing that the accused products infringed the patent-in-suit. There is no objectively reasonable interpretation of the patent-in-suit in which portions of the housing surface limitation are simply read out of the patent. Plaintiffs' intransigence with respect to this issue is sufficient *by itself* to impose sanctions under section 285. But Plaintiffs' bad faith has now been demonstrated beyond dispute by Plaintiffs' litigation misconduct.

JAKKS pointed to massive litigation misconduct in its Rule 11 Motion and Supplemental Brief. Specifically, JAKKS, identified among other things (1) Plaintiffs' misrepresentation regarding patent ownership, (2) substantial discovery abuse, and (3) abuse with respect to personal jurisdiction over The Walt Disney Company. *See* Dkt. # 63, at pp. 11-27, 43-53, Dkt. #

---

[5] If the Court is inclined to consider Nard's opinion in deciding this Motion, JAKKS requests an opportunity to take Nard's deposition and submit supplemental briefing. JAKKS informally requested the opportunity to take Nard's deposition immediately after receiving Plaintiffs' opposition. Perhaps recognizing that Nard's opinion is indefensible, Plaintiffs' counsel refused to make Nard available. *See* Kinsel Decl. ¶ 8. The Court should require Nard to stand behind his erroneous declaration under oath and under cross-examination before the Court considers Nard's opinion.

68, at p. 3-4. In Opposition, Plaintiffs make *absolutely no attempt* to explain any of this. Indeed, Plaintiffs don't even mention most of it, thereby conceding the point. *See e.g.,* Dkt. # 71, at pp. 47-49 (discussing litigation misconduct, but failing to offer any explanation for the examples raised by JAKKS).

If anything, Plaintiffs' Opposition makes the litigation misconduct, and therefore bad faith, more obvious. For instance, as described in detail in both the Rule 11 Motion and the Supplemental Brief, Plaintiffs alleged multiple times in the Complaint and amended Complaint that Clark was the "*sole owner* of the '272 patent" and at the time of the Complaint "has been and *still is* the rightful owner of *all* rights, title and interest to the '272 patent." *See* Compl. at ¶ ¶ 29, 39 (Dkt. #2) (emphasis added). We know now that this is a complete falsehood. Incredibly, Plaintiffs do not even mention this issue, much less attempt to explain it.

Worse yet, according to Clark's declaration filed in support of the Opposition, Clark actively consulted with Peirano *before* filing the Complaint, and nevertheless misrepresented his ownership of the patent. He states, "I shared my opinions, thoughts, and findings with my business partner, John Peirano and we discussed *at length* on the telephone *in multiple conversations*." *See* Dkt. # 71-4 at p. 4 (emphasis added). Yet, Plaintiffs make no attempt to explain how someone who had "multiple conversations" with his co-owner could have misrepresented his sole ownership of the patents. The conclusion is, as it must be with respect to the rest of the litigation misconduct described in detail by JAKKS, that Plaintiffs concede they acted in bad faith, but hope the Court won't notice.

The purpose of section 285 is two-fold. First, the statute permits an award of fees "where it would be *grossly unjust* that the winner be left to bear the burden of his own counsel which prevailing litigants normally bear." *Badalamenti v. Dunham's Inc.*, 896 F.2d 1359, 1364 (Fed.

Cir. 1990), *cert. denied*, 498 U.S. 851 (1990) (*quoting* J.P. Stevens Co. v. Lex Tex Ltd., 822 F.2d 1047, 1052 (Fed. Cir. 1987) (emphasis in original)).  Second, the statute deters parties from bringing bad faith litigation, which protects litigants, the courts, and the judicial process from abuse.  *Mathis v. Spears*, 857 F.2d 749, 753-54 (Fed. Cir. 1988).

Both purposes are served here by imposing sanctions against Plaintiffs.  It would indeed be grossly unjust to require JAKKS to bear the burden of its own counsel's fees in a case that could have, and should have, been avoided from the get-go.  This was not a close case of a difficult to interpret patent applied to a sophisticated device.  This was an obvious case of a party running rough shot over an inexperienced counsel's head.  Forcing JAKKS to incur fees in such a case is grossly unjust.  Further, as demonstrated by Plaintiffs' refusal to so much as attempt to explain its gross misconduct, there can be little doubt that Plaintiffs filed this case in bad faith, and litigated the case in bad faith.  Imposing sanctions in this case deters other parties from engaging in such conduct.  In short, this case was made for sanctions pursuant to section 285.

### 4. Plaintiffs' Concede the Reasonableness of JAKKS' Lodestar Calculation

Courts determine fee amounts using the "lodestar" analysis.  *See ICU Med., Inc. v. Alaris Med. Sys., Inc.*, No. SA CV 04-00689 MFP (VBKx), 2007 U.S. Dist. LEXIS 49094, at *6 (C.D. Cal. June 28, 2007), *aff'd,* 558 F.3d 1368 (Fed. Cir. 200).  Under this approach, the court determines a lodestar by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

In its Supplemental Brief, JAKKS offered evidence of both the number of hours reasonably spent and the hourly rate changed by JAKKS' counsel.  Plaintiffs offer no evidence addressing JAKKS' fees.  Plaintiffs, therefore, concede both the reasonable number of hours

spent and the reasonable hourly rate. The reasonableness of JAKKS' lodestar calculation is, therefore, established by concession.

## 5. JAKKS Is Entitled to An Additional Recovery for Bill of Costs Related Briefing, the Supplemental Brief, and This Reply

In addition to the $200,702.34 requested in JAKKS' Supplemental Brief, JAKKS is entitled to another $23,381.23 representing attorneys' fees incurred in connection with three additional matters. First, continuing Plaintiffs' counsel's abusive litigation tactics, Plaintiffs' counsel forced JAKKS' counsel to brief JAKKS' entitlement to just over $900 in costs requested in connection with the Bill of Costs, and then, incredibly, withdrew their opposition. That is, on November 10, 2009, JAKKS' filed a Bill of Costs requesting just more than $900 in costs. *See* Dkt. # 67. Plaintiffs opposed JAKKS' request on various frivolous grounds, forcing JAKKS to file yet another brief. Thus, on December 10, 2009, JAKKS filed its reply in support of its Bill of Costs. *See* Dkt. #72. Days later, Plaintiffs withdrew their opposition and sent an unsolicited check covering costs to JAKKS' counsel. *See,* Kinsel Decl. ¶ 4. But, once again, the damage had already been done, as JAKKS' counsel had to spend time replying to yet another frivolous filing.

JAKKS' counsel also spent substantial hours preparing the Supplemental Brief and this Reply. To date, the total billed to JAKKS in connection with the Bill of Costs, the Supplemental Brief, and this Reply is $23,381.23. *See* Kinsel Decl. ¶ 7, pp. 12-13. JAKKS, therefore, is entitled to this additional amount as well.

## 6. Conclusion

For all of the reasons stated in JAKKS' Rule 11 Motion, the Supplemental Brief and this Reply, JAKKS is entitled to the $200,702.34 requested in the Supplemental Brief and the additional $23,281.23 requested in this Reply for a grand total of $223,983.57

Dated: December 23, 2009                                  Respectfully submitted,

          /s/ Grant E. Kinsel
          Grant E. Kinsel CA Bar No. 172407
          **PERKINS COIE LLP**
          1888 Century Park East, Suite 1700
          Los Angeles, CA 90067
          310.788.3215
          Attorneys for Defendant
          JAKKS PACIFIC, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2009, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system upon counsels of record.

>/s/ Grant E. Kinsel
>Grant E. Kinsel (172407)
>***Attorney for Defendants***
>Perkins Coie LLP
>1888 Century Park East, Suite 1700
>Los Angeles, CA 90067
>(310) 788-9900
>(310) 788-3399
>Gkinsel@perkinscoie.com

- 16 -