IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AARON CLARK, et al., | : | |
| Plaintiffs, | : | Case No. 2:08-cv-982 |
| v. | : | Judge Holschuh |
| THE WALT DISNEY CO., et al., | : | Magistrate Judge Abel |
| Defendants. | : | |
| | : | |

**MEMORANDUM OPINION & ORDER**

Plaintiffs Aaron Clark and John Peirano, owners of a patent for a "Talking Poster," filed suit against numerous defendants, alleging patent infringement, false designation of origin, and deceptive trade practices. This matter is currently before the Court on two motions: (1) a motion for sanctions pursuant to Federal Rule of Civil Procedure 11, filed by Defendants JAKKS Pacific, Inc., Play Along Toys, Toys 'R Us, and Disney Shopping Inc. (Doc. 63); and (2) a motion for attorneys' fees pursuant to 35 U.S.C. § 285 and 28 U.S.C. §§ 1927 and 1961 filed by Defendant JAKKS Pacific, Inc. (Doc. 68).

**I.      Background and Procedural History**

Plaintiffs Aaron Clark and John Peirano own U.S. Patent No. 5,548,272 ("the 272 Patent"), issued by the United States Patent and Trademark Office ("USPTO") on August 20, 1996, in connection with Clark's invention of a "Talking Poster." Essentially, when someone pushes a button mounted on the surface of the poster, this activates a pre-recorded message or song. Plaintiffs obtain licenses from various entertainment companies and then produce and sell Talking Posters featuring various entertainers, cartoon characters and movie characters.

On October 17, 2008, Aaron Clark filed suit against The Walt Disney Company, JAKKS Pacific, Inc., Play Along Toys, KB Toys, Amazon.com, and Toys 'R Us alleging patent infringement, false designation of origin, and deceptive trade practices.  Clark alleged that Defendants unlawfully manufactured, sold, distributed, and licensed Hannah Montana Talking Posters and Cheetah Girls Talking Posters (the "Accused Posters") which embody the subject matter set forth in Claims 1 and 5 of the 272 Patent. Those Claims read as follows:

> 1. An assembly, comprising:
>
>> a poster comprised of a first material, said poster having a first surface, said first surface including poster art thereon;
>> a housing comprised of a second material, said housing attached to a portion of said first surface of said poster;
>> a speaker concealed between said housing and said first surface of said poster;
>> an electric circuit including a sound production component, operatively connected to said speaker and concealed between said housing and said first surface of said poster,
>> a trigger attached to said electric circuit and concealed within said housing, said trigger adapted to be actuated through said housing to produce said sound;
>> wherein a surface of said housing is prepared with a matching art which is substantially the same as that area of said poster art which appears on said portion of said poster that said housing covers when said housing is attached to said poster, such that said housing artistically blends in with the surrounding poster art that is not covered by said housing.
>
> ∗∗∗
>
> 5. A method for making a talking poster, comprising the steps of:
>
>> providing a poster with poster art on the first surface thereof;
>> providing human actuatable sound components adapted to be contained on said poster;
>> proving a housing adapted to be secured onto a portion of said first surface of said poster
>> applying matching art to said housing which is substantially the same as that area of said poster art which appears on said portion of said poster that said housing covers when said housing is attached to said poster, such that

2

>>said housing artistically blends in with the surrounding poster art that is not covered by said housing; and
>>>securing said housing onto said portion of said first surface of said poster, such that said housing conceals said sound components.

(Claims 1 and 5 of 272 Patent; Ex. J to Third Am. Compl.).

Just weeks after the suit was filed, Defendants served Clark with a Rule 11 motion for sanctions, alleging that the suit was frivolous. Defendants maintained that the housing units on the Accused Posters were not prepared with art that was "substantially the same" as the area of the poster they covered so that they "artistically blend[] in with the surrounding poster art," producing a camouflage effect. Instead, the housing units on the Accused Posters consisted of solid-colored bars placed along the bottom of the posters, completely interrupting the visual flow. According to Defendants, because it was obvious that the Accused Posters lacked this key limitation, there could be no infringement.

Clark refused to dismiss the case. So, on January 2, 2009, Defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted. They noted that the prosecution history indicated that the USPTO refused to issue the patent for the Talking Poster unless the claims were amended to add a limitation that the housing units be printed with artwork that was substantially the same as the area of the poster they covered. Clark, however, insisted that because the housing units on the Accused Posters matched the general color scheme of the posters, forming a "harmonious visual effect," the limitation was satisfied.

On January 23, 2009, Defendant The Walt Disney Company ("TWDC") filed a motion to dismiss for lack of personal jurisdiction. It argued that it was a simply a holding company with no operations in Ohio, that it hosted no websites, and that it had never sold any products whatsoever, including the Accused Posters. Defendants' counsel voluntarily identified Disney Shopping, Inc.

3

("DSI") as the proper Disney defendant. Clark, however, believed that DSI may be controlled by TWDC; he therefore refused to dismiss the claims against TWDC. When confronted with the motion to dismiss, Clark requested additional time to conduct limited discovery on the issue of personal jurisdiction, and the Court granted his request. Eventually, on September 21, 2009, Clark voluntarily dismissed all claims against TWDC.

The original Complaint and the First Amended Complaint stated that Clark was the sole owner of the 272 Patent. Nevertheless, exhibits attached to those pleadings indicated that he had assigned a portion of his interest in the 272 Patent to someone else. On March 13, 2009, in an answer to an interrogatory, Clark disclosed that he and John Peirano were joint owners of the patent. Nevertheless, on May 7, 2009, when Clark filed his Second Amended Complaint, adding BabyUniverse, Inc., Etoys Direct, Inc. and Disney Shopping, Inc. as defendants, he again stated that he was the sole owner of the 272 Patent. Thereafter, Defendants obtained copies of the assignment from the USPTO and, on May 18, 2009, they filed a motion to dismiss for failure to join a necessary and indispensable party. In response, Clark sought leave to file a Third Amended Complaint, adding Peirano as a party plaintiff.

On June 19, 2009, the Court dismissed Plaintiffs' claims of false designation of origin and deceptive trade practices pursuant to Federal Rule of Civil Procedure 12(b)(6). It also converted Defendants' motion to dismiss the claim of patent infringement into a motion for summary judgment and gave the parties the opportunity to supplement the record.

On October 7, 2009, while that motion was still pending, Defendants DSI, JAKKS Pacific, Play Along Toys, and Toys 'R Us filed a 62-page motion for sanctions pursuant to Federal Rule of Civil Procedure 11, alleging that Plaintiffs' claim of patent infringement was frivolous, that

Plaintiffs did not complete a reasonable pre-suit inquiry, that the Complaint was not well grounded in law and fact, and that Plaintiffs were acting for an improper purpose. Defendants also alleged that Plaintiffs had needlessly increased the cost of litigation by: ignoring the patent's prosecution history; failing to dismiss claims against TWDC even after it became clear that the Court lacked personal jurisdiction; failing to name Peirano as a party plaintiff; and refusing to stay discovery; serving deficient discovery responses, and failing to produce basic documents.

On October 9, 2009, the Court granted Defendants' motion for summary judgment on the patent infringement claim concluding that, based on the evidence presented, no reasonable jury could find that the Accused Posters literally infringed on Claims 1 or 5 of the 272 Patent as properly construed. The Court also found that prosecution history estoppel barred Plaintiffs from arguing that the Accused Posters infringed under the doctrine of equivalents. Defendant JAKKS Pacific then filed a supplemental motion for attorney fees pursuant to 35 U.S.C. § 285 and 28 U.S.C. §§ 1927 and 1961, again arguing that the case was frivolous and that Plaintiffs had engaged in litigation misconduct.

**II.     Motion for Sanctions Under Fed. R. Civ. P. 11**

The Court turns first to Defendants' motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure.

**A.     Relevant Law**

Rule 11 provides, in pertinent part:

> (b) *Representations to the Court*. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

5

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; . . .

Fed. R. Civ. P. 11(b).

If Rule 11(b) is violated, a court may impose appropriate sanctions to deter similar conduct. See Fed. R. Civ. P. 11(c)(1). Sanctions, however, are discretionary.[1] They may include nonmonetary directives, penalties to be paid to the court, or an order directing the offending attorney, law firm, or party to pay reasonable attorney fees and expenses resulting from the violation. See Fed. R. Civ. P. 11(c)(4). Rule 11 contains a "safe harbor" provision whereby the motion for sanctions must be served on the opposing party at least 21 days before being filed with the court. See Fed. R. Civ. P. 11(c)(2). This gives the opposing party the opportunity to remedy the alleged violation prior to facing the possibility of sanctions.[2]

"[T]he central purpose of Rule 11 is to deter baseless filings in district court." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990). The individual signing the document certifies that he or she "has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both, and is acting without any improper motive." Business Guides,

---

[1] Prior to the 1993 amendment to the Rule, sanctions were mandatory.

[2] In this case, Defendants served Clark with a copy of the Rule 11 motion on November 17, 2008, and filed it with the Court on October 9, 2009.

6

Inc. v. Chromatic Comm. Enterprises, Inc., 498 U.S. 533, 542 (1991).  "Rule 11 sanctions are not tied to the outcome of litigation; the relevant inquiry is whether a specific filing was, if not successful, at least well founded." Id. at 553.  In addition, "an attorney and the litigant have a continuing obligation to review and reevaluate their pleadings, motions and other papers and upon discovery that such papers were without merit, to immediately dismiss the action at the risk of inviting the imposition of Rule 11 sanctions." Herron v. Jupiter Transp. Co., 858 F.2d 332, 336 (6th Cir. 1988).

In determining whether Rule 11 has been violated, "[t]he court must consider factual questions regarding the nature of the attorney's pre-filing inquiry and the factual basis of the pleading."  The court must also consider whether "a pleading is warranted by existing law or a good faith argument for changing the law." Cooter & Gell, 496 U.S. at 399.  Courts, however, should "avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." Fed. R. Civ. P. 11 advisory committee's note to the 1983 amendment.

After a Rule 11 motion is filed, alleging that a claim is frivolous, the burden shifts to the non-movant to show that it made a reasonable pre-suit investigation.  See Digeo, Inc. v. Audible, Inc., 505 F.3d 1362, 1368 (Fed. Cir. 2007).  Regional circuit law is applicable to the imposition of Rule 11 sanctions, even in patent infringement cases.  See Phonometrics, Inc. v. Economy Inns of Am., 349 F.3d 1356, 1361 (Fed. Cir. 2003).  Under Sixth Circuit law, the applicable question is "whether the attorney's conduct was reasonable under the circumstances." Ridder v. City of Springfield, 109 F.3d 288, 293 (6th Cir. 1997).

**B.     Analysis**

**1.     Claim Construction**

Prior to filing a patent infringement suit, a plaintiff and his or her attorneys have a duty to conduct a claim construction analysis, comparing the accused product to the properly construed claim. Each claim limitation must be implicated either literally or under the doctrine of equivalents. See Antonious v. Spalding & Evenflo Cos., 275 F.3d 1066, 1073-74 (Fed. Cir. 2002).

In their motion for Rule 11 sanctions, Defendants mainly argue that sanctions should be imposed against Plaintiffs and their counsel because the claim of patent infringement was based on an objectively unreasonable construction of the patent claims. According to Defendants, Plaintiffs and their experts completely ignored the key limitation which required that the housing units be prepared with art that was "substantially the same" as the poster art appearing directly underneath the housing units. Defendants note that the prosecution history shows that the USPTO refused to issue the patent until this specific limitation was added. Defendants further maintain that even a cursory glance at the Accused Posters would have established that there was no possibility of infringement.

In response, Plaintiffs and their attorneys deny that their construction of the patent claims was objectively unreasonable. They also maintain that because they conducted an extensive assessment of the merits of the patent infringement claim prior to filing suit, Rule 11 sanctions are not warranted. After learning that Defendants were selling Hannah Montana and Cheetah Girls Talking Posters, Plaintiffs bought some of the Accused Posters and disassembled them, comparing them to the claims in the 272 Patent. Plaintiffs determined that the Accused Posters infringed on the patent and decided to take action to protect their intellectual property rights. (Clark Decl.;

Peirano Decl.). Plaintiff Clark then contacted attorney Brian Dickerson about representing him in a patent infringement action.

Over the course of the next several months, prior to filing suit, Dickerson engaged in several discussions with Clark about the patent and its prosecution history. They also discussed the licenses previously granted for Talking Posters. (Dickerson Decl. ¶ 2). Notably, a few of the Talking Posters subject to prior licensing agreements have single-color housing units akin to those on the Accused Posters. (Peirano Decl. ¶ 9). Dickerson also disassembled the Accused Posters and compared them to the claims in the 272 Patent. (Dickerson Decl. ¶ 2). Dickerson interpreted Claims 1 and 5 to require only "that the housing unit artistically blends or that its color, finish, and surface form a harmonious visual effect with the art on the surrounding poster art." He did not interpret these claims to require that the art on the housing units be identical to the poster art directly underneath them, producing a camouflage effect. Dickerson examined the file history and the previous rejection of the patent application and determined that nothing in the file history materially limited the scope of the claims in that manner. He noted that although the word "camouflage" had been discussed in the context of the prosecution history, the final claim language required only that the housing units be prepared with art that was "substantially the same" as the art they covered. (Id. at ¶¶ 8-11). Based on his interpretation of the claims at issue, Dickerson determined that the Accused Posters infringed on the 272 Patent. (Id. at ¶ 15).

To confirm his belief that there was a reasonable basis to proceed, Dickerson also consulted with other attorneys prior to filing suit. (Id. at ¶ 9).[3] Dickerson's co-counsel, Sharlene Chance,

---

[3] Defendants note, however, that there is no evidence that Dickerson consulted with any attorneys who had experience in patent law.

9

examined the Accused Posters and compared them to the claims in the 272 Patent. She agreed that they infringed, either literally or under the doctrine of equivalents. (Chance Decl. ¶¶ 4, 7, 17). In addition, Dickerson hired Ellen Shapiro, a graphic design expert, who opined that the colors of the housing units on the Accused Posters artistically blended with the surrounding poster art. (Dickerson Decl. at ¶¶ 17-18). Dickerson then filed the Complaint on Plaintiff Clark's behalf. (Id. at ¶ 19).[4]

Although the Court ultimately disagreed with Plaintiffs' proposed claim construction and granted summary judgment in favor of Defendants, this does not necessarily mean that Plaintiffs' interpretation was objectively baseless or that the patent infringement claim was frivolous. See Business Guides, Inc., 498 U.S. at 553 (the relevant question is whether the "specific filing was, if not successful, at least well founded.").

In its October 9, 2009 Memorandum Opinion and Order granting summary judgment in favor of Defendants on the patent infringement claim, the Court found that Plaintiffs' proposed claim construction simply could not be condoned because it completely read a key limitation out of the claims. The Court noted that the prosecution history indicated that the USPTO refused to issue the patent unless that same limitation was added to the claims, narrowing the scope of the patent. The Court concluded that "the claims at issue, as properly construed, unambiguously require the housing to be prepared with artwork that is substantially identical to the artwork on the area of the poster it covers so that the housing is, in effect, camouflaged and the visual flow of the poster art is not

---

[4] Dickerson also notes that after Defendants filed their motion to dismiss, he consulted with Craig Nard, a professor of patent law at Case Western Reserve University School of Law, who determined that Plaintiffs had a reasonable basis for continuing to litigate the patent infringement claim. (Dickerson Decl. at ¶¶ 20-21; Nard Decl. at ¶¶ 7, 14).

10

interrupted." (10/9/09 Mem. Op. & Order at 15-16). The Court also concluded that no reasonable jury could find that the Accused Posters infringed on the 272 Patent. (Id. at 16-17).

In the Court's view, Plaintiffs' interpretation of the claim language, although flawed, was not so objectively unreasonable that sanctions are warranted. As the Federal Circuit noted in Q-Pharma v. Andrew Jergens Co., 360 F.3d 1295, 1301 (Fed. Cir. 2004), "[c]laim interpretation is not always an exact science, and it is not unusual for parties to offer competing definitions of even the simplest claim language."

In support of their motion for sanctions, Defendants rely primarily on Triune Star, Inc. v. The Walt Disney Company, WDIG Mobile, LLC, No. 07-1256, 2008 WL 5068943 (C.D. Ill. Nov. 25, 2008). Triune Star, assignee of a patent for a telecommunications locating system, alleged that mobile phones used in defendant's WDIG Mobile Program infringed on that patent. The court disagreed. Prior to issuing the patent, the USPTO had required the applicant to include a limitation that the video component of the system was "in the form of a miniature infra-red camera." Triune Star conceded that the WDIG system did not contain an infra-red camera; therefore, there could be no literal infringement. In addition, because the addition of the "infra-red camera" limitation was a prerequisite to the issuance of the patent, prosecution history estoppel precluded the use of the doctrine of equivalents. The court concluded that because any reasonable pre-suit investigation would have revealed that there was no possibility of infringement, Rule 11 sanctions were appropriate. Id. at *9.

In the Court's view, Triune Star is distinguishable on two important grounds. Triune Star conceded that there could be no literal infringement because the claims at issue required the use of an infra-red camera. Id. at *7. Plaintiffs made no such concession in this case. Rather they argued

11

that the Accused Posters literally infringed on the 272 Patent. They steadily maintained that the housing units were, in fact, "prepared with a matching art which is substantially the same as that area of said poster art which appears on said portion of said poster that said housing covers when said housing is attached to said poster, such that said housing artistically blends in with the surrounding poster art that is not covered by said housing."

Triune Star is also distinguishable because the attorneys in that case had also prosecuted the patent and had been involved in amending the application to overcome the rejections on the basis of prior art. For this reason, the court found untenable any suggestion that plaintiff's interpretation was "merely erroneous rather than frivolous." Triune Star, 2008 WL 5068943, at *9. In the instant case, Plaintiffs' attorneys, Brian Dickerson and Sharlene Chance, did not prosecute Plaintiffs' patent and were not involved in amending the application to overcome the prior art rejection. They, therefore, cannot be charged with the same degree of knowledge with respect to the patent prosecution history.

Defendants also rely on View Engineering, Inc. v. Robotic Vision Systems, Inc., 208 F.3d 981 (Fed. Cir. 2000), in which the court upheld the imposition of Rule 11 sanctions based on defendants' failure to conduct a reasonable pre-filing inquiry into the counterclaim of patent infringement. That case, however, is clearly distinguishable. Defendants admitted that prior to filing the counterclaim, they had no physical access to the allegedly infringing product, and performed no claim construction analysis whatsoever. Rather, the claims were based solely on a corporate officer's belief that, based on what he knew, it was "likely" that the accused product infringed on the patent.

In contrast, in the instant case, Plaintiffs and their counsel conducted an extensive pre-filing inquiry. Although, in the Court's view, they reached the wrong conclusion with respect to the question of infringement, it cannot be said that they made little or no effort to conduct a proper analysis. As set forth in their affidavits, Plaintiffs Clark and Peirano bought the Accused Posters, disassembled them and compared them to the patent claims. Dickerson did the same. In formulating his proposed claim construction prior to filing suit, Dickerson questioned Plaintiffs, reviewed public records, reviewed the patent's prosecution history, looked at past licenses granted for Talking Posters, and consulted with a graphic designer and other attorneys. Although Dickerson did not prepare a claim construction chart, he did analyze the claim language word-by-word and line-by-line. (Dickerson Decl. ¶ 7). Under these circumstances, the Court finds that Rule 11 sanctions are not warranted. See Q-Pharma, 360 F.3d at 1302 (holding that "the key factor in determining whether a patentee performed a reasonable pre-filing inquiry is the presence of an infringement analysis").

### 2. Other Alleged Litigation Misconduct

Defendants also argue that Rule 11 sanctions are appropriate because Plaintiffs acted for an improper purpose in filing suit, namely, to "hold up large companies in the hope of extorting a settlement payment." (Mot. for Sanctions at 3). There is simply no evidence to support this allegation. It appears to the Court that Plaintiffs were simply interested in protecting their intellectual property rights, which they sincerely believed had been violated.

As additional evidence of Plaintiffs' failure to conduct a reasonable pre-filing inquiry, Defendants point to certain alleged litigation misconduct on Plaintiffs' behalf. Defendants argue that sanctions are warranted because Plaintiffs needlessly increased the cost of litigation by: (a)

failing to dismiss claims against TWDC even after it became clear that the Court lacked personal jurisdiction; (b) failing to name Peirano as a party plaintiff; and (c) refusing to stay discovery, serving deficient discovery responses, and failing to produce basic documents.

Defendants correctly note that although Plaintiffs generally deny that they engaged in any litigation misconduct, Plaintiffs fail to specifically rebut any of these allegations. Their combined memorandum in opposition to Defendants' motions is limited almost exclusively to the question of whether the patent infringement claim was objectively baseless. Finally, Defendants argue that Plaintiffs filed claims of false designation of origin and deceptive trade practices which were unwarranted by existing law.

### a. Claims Against TWDC

Defendants allege that Plaintiffs violated Rule 11 by naming TWDC as a defendant without any evidence that TWDC operated any websites or sold any of the Accused Posters. Defendants maintain that if Plaintiffs had conducted a reasonable pre-suit inquiry, they would have discovered that TWDC was simply a holding company. Even after Defendants told Plaintiffs that TWDC was merely a holding company, and identified Disney Shopping, Inc. ("DSI") as the proper party, Plaintiffs refused to dismiss the claims against TWDC. TWDC therefore filed a motion to dismiss for lack of personal jurisdiction. In response to that motion, Plaintiffs argued that TWDC was so closely related to DSI that TWDC may also be subject to liability. At Plaintiffs' request, the Court permitted Plaintiffs to conduct limited discovery on this issue. After conducting discovery, Plaintiffs voluntarily dismissed all claims against TWDC.

In the Court's view, Plaintiffs' conduct with respect to TWDC is not sanctionable under Rule 11. Plaintiffs' Complaint alleges that the Accused Posters were offered for sale on a website,

14

www.disney.com. The Disney "empire" consists of numerous business segments and, in cases like this, it is not always easy to determine exactly how those entities are interrelated. Under these circumstances, the naming of TWDC as a party defendant is not egregious enough to warrant sanctions. Moreover, Plaintiffs cannot be faulted for wanting to verify Defendants' statements about the relationship between TWDC and DSI prior to dismissing TWDC as a party defendant.

### b. Failure to Include Peirano as a Party Plaintiff

The original Complaint and the First Amended Complaint each contain the statement that Plaintiff Aaron Clark "is the sole owner of the 272 Patent" and is the rightful owner of all rights, title and interest in that patent. Documents attached to these pleadings, however, indicated that the patent-in-suit had been assigned to Aaron Clark and John Peirano. Defendants served discovery requests asking for information about the assignment. Defendants subsequently discovered that an assignment agreement on file at the USPTO indicates that Clark and Peirano each hold a 50% ownership interest in the 272 Patent.

On March 13, 2009, in response to an interrogatory asking Plaintiff Clark to describe the chain of title, he stated that he and Peirano were joint owners of the patent. Nevertheless, on May 7, 2009, Plaintiff's counsel, Brian Dickerson, filed a Second Amended Complaint, again stating that Clark was "the sole owner of the 272 Patent" and the rightful owner of all rights, title and interest in that Patent. Defendants then filed a motion to dismiss for failure to join a necessary and indispensable party, prompting Clark to file a motion for leave to file a Third Amended Complaint, adding Peirano as a party plaintiff.

Certainly, Dickerson was aware, prior to filing suit, that Clark was <u>not</u> the sole owner of the patent. Rather Clark shared an equal interest in the patent with John Peirano. Factual statements

15

to the contrary, contained in the original Complaint, the First Amended Complaint, and the Second Amended Complaint are inexcusable particularly in light of the fact that exhibits attached to those pleadings explicitly refer to the assignment. Moreover, Dickerson filed a Second Amended Complaint containing these same misrepresentations, even though Clark had admitted two months earlier, in answers to interrogatories, that he and Peirano were joint owners of the patent.

Clearly, there was no factual basis for any of these statements at the time these pleadings were filed. The Court therefore finds that Dickerson's conduct violates Rule 11. Defendants should not have been burdened with having to file a motion to dismiss for failure to join a necessary and indispensable party.

### c. Alleged Discovery Abuses

Defendants also argue that sanctions are warranted because Plaintiffs needlessly increased the cost of defense by refusing to stay discovery pending resolution of the motion to dismiss for failure to state a claim, by serving deficient responses to discovery requests, and by failing to produce basic documents. Defendants filed several motions to compel, and the record shows that Magistrate Judge Abel held numerous conferences to resolve discovery disputes, disputes on which Defendants consistently prevailed. The record may indeed demonstrate that Plaintiffs' attorneys were difficult to work with. However, in this Court's view, their conduct did not rise to the level that warrants Rule 11 sanctions.

### d. Other Claims

Finally, as additional evidence of Plaintiffs' failure to conduct a reasonable pre-filing inquiry, Defendants also point to Plaintiffs' claims of false designation of origin and deceptive trade practices, which the Court ultimately found to be unwarranted by existing law. Although

16

Defendants prevailed on these claims, Plaintiffs' conduct in asserting these particular claims is not sanctionable.

### e. Summary

For the reasons stated above, Defendants' motion for sanctions under Rule 11 is granted in part and denied in part. The Court finds that Plaintiffs' counsel, Brian Dickerson, violated Rule 11 by including false statements in the Complaint, the First Amended Complaint, and the Second Amended Complaint concerning ownership of the 272 Patent. He knew or should have known that the statements were false at the time they were made and his conduct caused Defendants to incur unnecessary expense in filing a motion to dismiss for failure to join a necessary and indispensable party.

As a sanction, the Court therefore orders Dickerson, who signed each of the Complaints, to reimburse Defendants for the costs associated with the filing of the motion to dismiss for failure to join a necessary and indispensable party. According to Defendants, Michael Song, an intellectual property attorney employed by the Los Angeles law firm that represented Defendants, spent 10.9 hours preparing that motion. His hourly rate is $450.00. (Ex. 1 to Supp. Mot. for Atty. Fees). This results in attorney fees in the amount of $4905.00. Plaintiffs have not argued that either the hourly rate or the hours expended were unreasonable, and the Court does not find them to be so. Dickerson is ordered to pay $4905.00 to Defendants within 30 days of the date of this order.

**III.     Motion for Attorney Fees Pursuant to 35 U.S.C. § 285**[5]

After the Court granted Defendants' motion for summary judgment on the patent infringement claim, Defendants supplemented their pending motion for Rule 11 sanctions with a motion for $200,702.34 in attorneys' fees and costs pursuant to 35 U.S.C. § 285.[6] That statute provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."

The law of the Federal Circuit governs motions for attorney fees under § 285. See Digeo, 505 F.3d at 1366. "The determination of whether a case is exceptional and, thus, eligible for and warranting an award of attorney fees under § 285 is a two-step process in which the district court must (1) determine whether there is clear and convincing evidence that a case is exceptional . . . and (2) if so, then determine in its discretion whether an award of attorney fees is justified. . ." Id. at 1366-67.

Because the Court concludes that this is not an "exceptional case," the Court denies Defendants' motion for attorneys' fees and costs under § 285. As the court explained in Brooks Furniture Manufacturing, Inc. v. Dutailier International, Inc., 393 F.3d 1378 (Fed. Cir. 2005):

> A case may be deemed exceptional when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions. Absent misconduct in conduct of the litigation or in securing the patent, sanctions may be imposed against the patentee only if both (1) the litigation is brought in

---

[5] Defendants' motion also purports to seek attorney fees under 28 U.S.C. § 1927, but their memorandum in support makes no mention of this statute.

[6] In their reply brief, Defendants request an additional $23,281.23 in attorneys' fees incurred in connection with the Bill of Costs, the Supplemental Brief, and the reply.

> subjective bad faith, and (2) the litigation is objectively baseless. . . . That second inquiry does not depend on the state of mind of the plaintiff at the time that the action was commenced, but rather requires an objective assessment of the merits.

Id. at 1381-82 (internal citations omitted).

In this case, Defendants argue that this case is exceptional based on Plaintiffs' litigation misconduct. In the alternative, Defendants argue that the litigation was brought in bad faith and that it was objectively baseless. The Court has already addressed these same arguments in connection with the motion for Rule 11 sanctions. The Court did find that Plaintiffs violated Rule 11 by failing to name Peirano as a party plaintiff and has already ordered Plaintiffs' counsel to pay the attorney fees associated with that particular misconduct. But this finding, standing alone or in combination with the other alleged misconduct, does not render this case "exceptional" under § 285. Moreover, the Court has already found that the litigation was not brought in subjective bad faith and was not objectively baseless.

The Court concludes that Defendants have failed to establish by clear and convincing evidence that this is an "exceptional case." The Court therefore denies Defendants' motion for attorney fees under 35 U.S.C. § 285.

**IV.  Conclusion**

For the reasons stated above, the Court **GRANTS IN PART and DENIES IN PART** Defendants' motion for Rule 11 Sanctions (Doc. 63). The Court sanctions Plaintiffs' counsel Brian Dickerson in the amount of $4905.00, an amount equal to the attorney fees incurred by Defendants as a result of having to file a motion to dismiss for failure to join a necessary and indispensable party. Dickerson shall pay this amount to Defendants within 30 days of the date of this order.

19

Because Defendants have failed to show by clear and convincing evidence that this is an "exceptional case," the Court **DENIES** Defendants' motion for attorneys fees under 35 U.S.C. § 285. (Doc. 68).

### IT IS SO ORDERED.

Date: September 27, 2010                    **/s/ John D. Holschuh**
                                            John D. Holschuh, Judge
                                            United States District Court